CONSOLIDATED CASE NOS. 13-55017, 12-56867 & 12-56874
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

YASSIR FAZAGA, ALI UDDIN MALIK, YASSER ABDELRAHIM,
*PLAINTIFFS AND APPELLANTS*,

*vs.*

FEDERAL BUREAU OF INVESTIGATION; UNITED STATES OF AMERICA; ROBERT MUELLER,
DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION, IN HIS OFFICIAL CAPACITY;
STEVEN M. MARTINEZ, ASSISTANT DIRECTOR IN CHARGE, FEDERAL BUREAU OF
INVESTIGATION'S LOS ANGELES DIVISION, IN HIS OFFICIAL CAPACITY; J. STEPHEN
TIDWELL; BARBARA WALLS; PAT ROSE; KEVIN ARMSTRONG; PAUL ALLEN; DOES 1-20;
*DEFENDANTS AND APPELLEES.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
NO. CV 11-301-CJC (VBK)

_____

## BRIEF AMICUS CURIAE OF
## THE ELECTRONIC FRONTIER FOUNDATION
## IN SUPPORT OF PLAINTIFF-APPELLANTS
_____

CINDY COHN
LEE TIEN
KURT OPSAHL
JAMES S. TYRE
MARK RUMOLD
ANDREW CROCKER
DAVID GREENE
ELECTRONIC FRONTIER
    FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Fax: (415) 436-9993

RICHARD R. WIEBE
LAW OFFICE OF RICHARD R. WIEBE
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Fax: (415) 433-6382

THOMAS E. MOORE III
ROYSE LAW FIRM, PC
1717 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 813-9700
Fax: (650) 813-9777

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, amicus Electronic Frontier Foundation ("EFF") reports that it is a 501(c)(3) non-profit corporation incorporated in the Commonwealth of Massachusetts and makes the following disclosure:

EFF is not a publicly held corporation or other publicly held entity.

EFF has no parent corporations.

No publicly held corporation or other publicly held entity owns 10% or more of EFF.

Dated: November 24, 2014          *s/ Richard R. Wiebe*

Counsel for Amicus

# TABLE OF CONTENTS

INTEREST OF AMICUS ........................................................................ 1

INTRODUCTION ................................................................................... 2

ARGUMENT .......................................................................................... 3

I.      Section 1806(f) Displaces The State Secrets Privilege.............. 3

        A.      Congress Has Displaced The State Secrets Privilege In
                Cases Involving Electronic Surveillance ........................ 3

        B.      FISA's Statutory Purpose And Legislative History
                Confirm That Section 1806(f) Displaces The State
                Secrets Privilege ............................................................. 5

                1.      Congress Enacted FISA To Establish
                        Comprehensive Control Over National Security
                        Electronic Surveillance.......................................... 5

                2.      Section 1806(f) Is An Essential Element Of
                        Congress' Comprehensive Scheme For Judicially
                        Enforcing The Limitations It Has Imposed On
                        Electronic Surveillance.......................................... 8

        C.      Section 1806(f) Encompasses Civil Cases Arising Out
                Of Electronic Surveillance............................................... 9

        D.      Section 1806(f) Applies To All Civil Claims Arising
                Out Of Electronic Surveillance, Not Just Claims Under
                FISA's Civil Cause of Action....................................... 11

        E.      The Government's Argument Below That Congress
                Did Not Intend For Section 1806(f) To Displace The
                State Secrets Privilege Misunderstands The Power Of
                Congress To Displace Common-Law Evidentiary
                Rules ............................................................................ 14

II.   Even If Congress Had Not Displaced The State Secrets
      Privilege In Section 1806(f), The Privilege Would Not
      Provide A Ground For Threshold Dismissal Here.................. 17

      A.   The General Rule Is That The Privileged Evidence Is
           Excluded And The Lawsuit Goes Forward Without It.. 17

      B.   The Valid-Defense Exception Is Limited To
           Government Contract Claims And Does Not Apply
           Here .............................................................................. 19

      C.   Even If The Valid-Defense Exception Extended To
           Claims Not Arising Out Of Government Contracts,
           The District Court Misapplied It Here ........................... 21

      D.   Threshold Dismissal Is Premature ................................. 24

CONCLUSION ............................................................................... 28

STATUTORY APPENDIX ......................................................... 29

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Barr*,
  952 F.2d 457 (1991) .................................................................. 12

*Al-Haramain Islamic Foundation, Inc. v. Bush*,
  507 F.3d 1190 (9th Cir. 2007)............................................. 5, 18

*American Electric Power Co. v. Connecticut*,
  __ U.S. __, 131 S.Ct. 2527 (2011) .......................................... 16

*Astoria Federal Savings & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) ................................................................ 17

*Clift v. U.S.*,
  597 F.2d 826 (2d Cir. 1979).................................................... 27

*Crater Corp. v. Lucent Technologies*,
  423 F.3d 1260 (Fed. Cir. 2005)............................................... 26

*DTM Research v. AT&T*,
  245 F.3d 327 (4th Cir. 2001).................................................... 26

*Ellsberg v. Mitchell*,
  709 F.2d 51 (D.C. Cir. 1983) ................................................... 27

*General Dynamics Corp. v. U.S.*,
  ___ U.S. ___, 131 S.Ct. 1900 (2011) ................................. passim

*Halkin v. Helms*,
  598 F.2d 1 (D.C. Cir. 1978) ..................................................... 27

*Ibrahim v. Department of Homeland Security*,
  N.D. Cal. No. 06-cv-545-WHA, ECF No. 682 (Jan. 14, 2014)............... 25

*In re National Security Agency Telecommunications Records Litigation
  (Hepting)*,
  671 F.3d 881 (9th Cir. 2011).................................................... 13

*In re Sealed Case*,
  494 F.3d 139 (D.C. Cir. 2007) ................................................ 18, 22, 23, 26

*In re U.S.*,
  872 F.2d 472 (D.C. Cir. 1989) ................................................. 27

*Jewel v. National Security Agency*,
  673 F.3d 902 (9th Cir. 2012) ...................................................... 1

*Jewel v. National Security Agency*,
  965 F.Supp.2d 1090 (N.D. Cal. 2013) .................................. 1, 4

*Kasza v. Browner*,
  133 F.3d 1159 (9th Cir. 1998) ................................................. 18

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) (en banc) .................................... 20

*Milwaukee v. Illinois*,
  451 U.S. 304 (1981) ................................................................. 16

*Mohamed v. Holder*,
  E.D. Va. No. 11-cv-050-AJT, ECF No. 144 (Oct. 30, 2014) ................... 24

*Mohamed v. Jeppesen*,
  614 F.3d 1070 (9th Cir. 2010) (en banc) ........................................... passim

*Monarch Assurance P.L.C. v. U.S.*,
  244 F.3d 1356 (Fed. Cir. 2001) ................................................. 27

*Tenet v. Doe*,
  544 U.S. 1 (2005) ............................................................... 20, 25

*Totten v. U.S.*,
  92 U.S. 105 (1876) ............................................................. 20, 25

*U S. v. Johnson*,
  952 F.2d 565 (1st Cir. 1991) ................................................. 12

*U.S. v. Reynolds*,
  345 U.S. 1 (1953) ......................................................... 20, 25, 26

*U.S. v. Texas*,
  507 U.S. 529 (1993) ................................................................ 16

*Usery v. Turner Elkhorn Mining Co.*,
  428 U.S. 1 (1976) .................................................................... 14

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) .................................................................. 6

**Statutes**

18 U.S.C. § 2511(2)(f) ................................................................... 8

50 U.S.C. § 1801(f) ....................................................................... 14

50 U.S.C. § 1806(f) ................................................................. passim

50 U.S.C. § 1809(a)(1) ................................................................. 14

50 U.S.C. § 1810 ............................................................... 11, 13, 14

50 U.S.C. § 1812 ........................................................................... 8

Pub. L. No. 93-595, § 1, 88 Stat. 1933 (1975) ............................ 15

**Rules**

Fed. R. Evid. 501 ........................................................................ 15

Fed. R. Evid. 501 advisory committee's 2011 note...................... 15

**Legislative Materials**

H.R. Conf. Rep. No. 95-1720 (1978)*,
  reprinted in* 1978 U.S.C.C.A.N. 4048...................................... 10

H.R. Rep. No. 93-650 (1973),
  *reprinted in* 1974 U.S.C.C.A.N. 7075...................................... 15

H.R. Rep. No. 95-1283(I) (1978) ......................................... 10, 14

S. Rep. No. 93-1277 (1974),
  *reprinted in* 1974 U.S.C.C.A.N. 7047...................................... 15

S. Rep. No. 94-1035 (1976) ............................................................................ 8

S. Rep. No. 95-604(I) (1978),
   *reprinted in* 1978 U.S.C.C.A.N. 3904 ................................................ 7, 8, 9

S. Rep. No. 95-701 (1978),
   *reprinted in* 1978 U.S.C.C.A.N. 3973 ................................................ 12, 17

S. Select Comm. to Study Governmental Operations with Respect to
   Intelligence Activities, S. Rep. No. 94-755, BOOK II:  INTELLIGENCE
   ACTIVITIES AND THE RIGHTS OF AMERICANS (1976) .............................. 6, 7

## INTEREST OF AMICUS

The Electronic Frontier Foundation is a non-profit, member-supported organization working to protect civil liberties and preserve privacy rights in the digital world. Founded in 1990, EFF is based in San Francisco, California. EFF has over 24,000 dues-paying members and maintains one of the most-linked-to websites in the world.

EFF serves as counsel in a lawsuit currently pending before the Northern District of California arising out of the warrantless domestic dragnet surveillance conducted by the National Security Agency. *Jewel v. NSA* (N.D. Cal. No. 08-cv-0473-JSW); *see Jewel v. National Security Agency*, 673 F.3d 902 (9th Cir. 2012); *Jewel v. National Security Agency*, 965 F.Supp.2d 1090 (N.D. Cal. 2013). In that case, as in this one, the Executive has claimed that the state secrets privilege requires the Judiciary to refrain from adjudicating the lawfulness of the Executive's actions and has contended that section 1806(f) of title 50 U.S.C. does not displace the state secrets privilege in electronic surveillance cases.

Counsel for the plaintiff-appellants and counsel for the defendant-appellees have consented to the filing of this brief.[1]

---

[1] No party or party's counsel authored this brief or contributed money to fund the preparation or submission of this brief. No person other than amicus, its members, and its counsel contributed money to fund the preparation or submission of this brief.

## INTRODUCTION

Plaintiffs' allegations of unlawful domestic surveillance of numerous American citizens and lawful residents whom the government had no reason to suspect of wrongdoing are gravely troubling. Even more troubling is the Executive's attempt to circumvent the procedures Congress has put in place to permit the secure use of national security evidence in electronic surveillance cases like this one. Adopting the Executive's position would abdicate the Judiciary's Article III responsibility to adjudicate the constitutional and statutory limits on executive authority.

The tool the Executive attempts to use here to bar the Judiciary from its duty of reviewing allegations of executive overreach is the state secrets privilege. But Congress has already spoken and has displaced the state secrets privilege in lawsuits presenting claims arising out of unlawful electronic surveillance. Congress has provided the alternative procedural mechanism of section 1806(f) of title 50 U.S.C. ("section 1806(f)" or "§ 1806(f)"). Section 1806(f) protects national security evidence while permitting an adjudication on the merits. Because Congress has already balanced the need for security against the need for judicial review when it enacted section 1806(f), the Executive's attempt to escape that statute's procedures intrudes not only on the proper role of the Judiciary but on Congress' powers as well.

And even if the government defendants were correct that section 1806(f) does not displace the state secrets privilege, the state secrets

2

privilege would still not permit dismissal of this lawsuit, both because the "valid-defense" exception upon which the government defendants rely is limited to claims arising out of government contracts and because they have not presented any evidence that they possess a valid defense that the privilege prevents them from asserting.

If the Executive succeeds in expanding the state secrets privilege, it is not just plaintiffs, but all of us, who will suffer. Our constitutional system of government depends upon the availability of the courts to rein in the Executive when it acts lawlessly. Future lawless conduct will be deterred only if courts can fulfill their constitutional function of adjudicating the lawfulness of past conduct.

## ARGUMENT

### I.  Section 1806(f) Displaces The State Secrets Privilege

#### A.  Congress Has Displaced The State Secrets Privilege In Cases Involving Electronic Surveillance

Congress recognized that in civil actions challenging unlawful electronic surveillance, the evidence may include sensitive national security information that should not be publicly disclosed. In section 1806(f), Congress established a procedure enabling those actions to go forward to a decision on the merits while protecting the secrecy of the information on which the decision is based. Rather than excluding national security evidence, as would occur under the state secrets privilege, Congress instead displaced the state secrets privilege and directed courts to use all of the

relevant national security evidence, reviewed *in camera* and *ex parte* where necessary, as the basis for deciding the legality of the surveillance. *Jewel v. National Security Agency*, 965 F.Supp.2d 1090, 1103-04 (N.D. Cal. 2013).

Congress' purpose in enacting section 1806(f) is exactly what the statute states: to provide a method for the district court "to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted" in those instances where the government tells the court that "disclosure or an adversary hearing would harm the national security of the United States." § 1806(f). The district court is to make its merits determination by "review[ing] in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary," rather than excluding such evidence as would occur if the state secrets privilege were applied to it.[2] *Id.*

The overlap between section 1806(f) and the state secrets privilege is self-evident. The state secrets privilege is a common-law doctrine that addresses "exceptional circumstances [in which] courts must act in the interest of the country's national security to prevent disclosure of state secrets." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077 (9th Cir. 2010) (en banc). The subject matter of section 1806(f) is the same: circumstances in which "disclosure [of evidence] or an adversary hearing would harm the national security of the United States." § 1806(f).

---

[2] The full text of section 1806(f) is set forth in the statutory appendix hereto.

In cases involving electronic surveillance, section 1806(f) displaces and supersedes the common-law state secrets privilege. Congress expressly provided that section 1806(f) applies "notwithstanding any other law," thus confirming its intent to displace the state secrets privilege in cases challenging the lawfulness of electronic surveillance. § 1806(f). Congress required the courts to decide the merits of the lawfulness of the surveillance using national security evidence, *in camera* and *ex parte*, rather than applying the state secrets privilege to exclude that evidence. As this Court has already found, "[t]he statute, unlike the common law state secrets privilege, provides a detailed regime to determine whether surveillance 'was lawfully authorized and conducted.' " *Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190, 1205 (2007).

Section 1806(f) leaves no room for the state secrets privilege to operate. In cases to which section 1806(f) applies, it and the state secrets privilege are mutually exclusive. Applying the state secrets privilege in such a case would mean nullifying section 1806(f), contrary to Congress' intent.

### B. FISA's Statutory Purpose And Legislative History Confirm That Section 1806(f) Displaces The State Secrets Privilege

#### 1. Congress Enacted FISA To Establish Comprehensive Control Over National Security Electronic Surveillance

FISA's statutory purpose and legislative history further confirm section 1806(f)'s displacement of the state secrets privilege. FISA was enacted in 1978 in the wake of a Senate investigation (known as the "Church

Committee" after its chairman, Senator Frank Church) revealing that for many decades the Executive, without any warrants or other lawful authority, had been conducting massive, secret dragnet surveillance invading the privacy and violating the constitutional rights of thousands of ordinary Americans. S. Select Comm. to Study Governmental Operations with Respect to Intelligence Activities, S. Rep. No. 94-755, BOOK II: INTELLIGENCE ACTIVITIES AND THE RIGHTS OF AMERICANS ("BOOK II") (1976).[3] Many of these unlawful surveillance activities were strikingly similar to those alleged by plaintiffs here.

The Church Committee concluded the government's mass surveillance violated the Fourth Amendment, stating that the "massive record of intelligence abuses over the years" had "undermined the constitutional rights of citizens . . . primarily because checks and balances designed by the framers of the Constitution to assure accountability have not been applied." BOOK II at 139, 290, 289. The Committee urged "fundamental reform," recommending legislation to "make clear to the Executive branch that [Congress] will not condone, and does not accept, any theory of inherent or implied authority to violate the Constitution, the proposed new charters, or any other statutes." *Id*. at 289, 297. Citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), it noted that "there would be no such authority after Congress has . . . covered the field

_____

[3] *Available at* http://www.intelligence.senate.gov/pdfs94th/94755_II.pdf.

by enactment of a comprehensive legislative charter" that would "provide the exclusive legal authority for domestic security activities." BOOK II at 297 & n.10.

The Committee recommended the creation of civil remedies for unlawful surveillance. The purpose of these remedies would be both to "afford effective redress to people who are injured by improper federal intelligence activity" and "to deter improper intelligence activity." BOOK II at 336.

The Committee also anticipated section 1806(f)'s displacement of the state secrets privilege to permit civil claims of unlawful surveillance to be litigated, stating that "courts will be able to fashion discovery procedures, including inspections of materials in chambers, and to issue orders as the interests of justice require, to allow plaintiffs with substantial claims to uncover enough factual material to argue their case, while protecting the secrecy of governmental information in which there is a legitimate security interest." BOOK II at 337.

FISA was Congress' response to the Church Committee's revelations and recommendations: "This legislation is in large measure a response to the revelations that warrantless electronic surveillance in the name of national security has been seriously abused." S. Rep. No. 95-604(I) at 7 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3904, 3908. FISA implemented the Church Committee's recommendations by imposing strict limits on the Executive's power to conduct electronic surveillance. *E.g*., S. Rep.

No. 95-604(I) at 8, 1978 U.S.C.C.A.N. at 3910 (FISA "curb[s] the practice by which the Executive Branch may conduct warrantless electronic surveillance on its own unilateral determination that national security justifies it"); S. Rep. No. 94-1035 at 11 (1976) ("the past record establishes clearly that the executive branch cannot be the sole or final arbiter of when such proper circumstances exist"), 20 ("executive self-restraint, in the area of national security electronic surveillance, is neither feasible nor wise"). By providing "effective, reasonable safeguards to ensure accountability and prevent improper surveillance" by the Executive, FISA restored the "balance between protection of national security and protection of personal liberties." S. Rep. No. 95-604(I) at 7, 1978 U.S.C.C.A.N. at 3908.

> **2.** **Section 1806(f) Is An Essential Element Of Congress' Comprehensive Scheme For Judicially Enforcing The Limitations It Has Imposed On Electronic Surveillance**

To ensure that the Executive could not evade the limits Congress imposed on electronic surveillance, Congress expressly provided in FISA that FISA and the domestic law enforcement electronic surveillance provisions of chapter 119 (the Wiretap Act), chapter 121 (the Stored Communications Act) and chapter 206 (the pen register statute) of title 18 are the exclusive means by which the Executive may conduct electronic surveillance within the United States. Pub. L. No. 95-511; 92 Stat. 1783, 1797; *codified at* 18 U.S.C. § 2511(2)(f); *accord* 50 U.S.C. § 1812.

8

Given the history of past executive abuses, Congress knew that its mandate of statutory exclusivity would become a reality only if it also created mechanisms for judicial enforcement of the comprehensive procedural and substantive limitations on electronic surveillance set out in FISA, the Wiretap Act, and the Stored Communications Act. To make judicial enforcement possible, Congress created section 1806(f)'s requirement that courts use national security evidence to determine the legality of surveillance, instead of excluding that evidence under the state secrets privilege. Section 1806(f) provides the practical means by which the substantive limitations on surveillance can be litigated without endangering national security.

### C. Section 1806(f) Encompasses Civil Cases Arising Out Of Electronic Surveillance

Section 1806(f)'s application to civil cases, as its plain language commands, is a necessary part of the statutory scheme. Without section 1806(f), the civil enforcement mechanism that Congress created to ensure FISA's exclusivity would be toothless. By asserting the state secrets privilege to block judicial review of the lawfulness of its activities, the Executive could free itself from the restraints of FISA and once again "conduct warrantless electronic surveillance on its own unilateral determination that national security justifies it." S. Rep. No. 95-604(I) at 8, 1978 U.S.C.C.A.N. at 3910.

9

FISA's legislative history confirms that section 1806(f) applies to civil cases. The Senate and the House of Representatives proposed different versions of the provision that became section 1806(f). H.R. Conf. Rep. No. 95-1720 at 31-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4048, 4060-61 ("FISA Conf. Rep."). The House bill had two separate procedures for determining the legality of electronic surveillance, one for criminal cases and one for civil cases; the Senate bill had a single procedure for both criminal and civil cases. *Id*.

In the end, Congress adopted a modified version of the Senate procedure, deeming a single procedure sufficient both for criminal cases in which a defendant is seeking to suppress surveillance evidence and for civil cases in which a plaintiff is seeking a determination of the legality of electronic surveillance in order to vindicate constitutional and statutory rights:

> The conferees [of the joint House and Senate Committee of Conference] agree that an in camera and ex parte proceeding is appropriate for determining the lawfulness of electronic surveillance *in both criminal and civil cases*.

FISA Conf. Rep. at 32, 1978 U.S.C.C.A.N. at 4061 (emphasis added); *see also* H.R. Rep. No. 95-1283(I) at 93 (1978) ("A decision of illegality [of government surveillance] may not always arise in the context of suppression; rather it may, for example, arise incident to a discovery motion in a civil trial.").

**D.  Section 1806(f) Applies To All Civil Claims Arising Out Of Electronic Surveillance, Not Just Claims Under FISA's Civil Cause of Action**

Section 1806(f) by its terms applies to all civil claims arising out of electronic surveillance, whether brought under section 1810 of FISA or some other source of law (*e.g.*, the Constitution, the Wiretap Act).

The plain language of section 1806(f) makes no distinction between constitutional and statutory violations or among different categories of statutory violations:  it requires the district court to determine "whether the surveillance . . . was lawfully authorized and conducted"—*i.e.*, "the legality of the surveillance."  § 1806(f).  Unconstitutional surveillance is just as illegal as is surveillance in violation of a statute.  If it had intended to limit section 1806(f) to only a determination of statutory lawfulness, or to only a determination of lawfulness under one or several specific statutes, Congress could have easily done so, *e.g.*, by limiting a court's power to determining only "the legality of the surveillance under FISA, the Wiretap Act, or the Stored Communications Act."  Manifestly, Congress did not.  Moreover, in the 36 years since section 1806(f)'s enactment in 1978 no member of Congress has ever proposed any legislation to narrow or limit the scope of section 1806(f), even though there have been numerous other amendments to FISA.

As the D.C. Circuit has held, section 1806(f) does not artificially limit the legal standard by which the lawfulness of the surveillance is judged only to the substantive limitations established by FISA.  Instead, "[w]hen a

11

district court conducts a § 1806(f) review, its task is not simply to decide whether the surveillance complied with FISA. Section 1806(f) requires the court to decide whether the surveillance was 'lawfully authorized and conducted.' " *ACLU v. Barr*, 952 F.2d 457, 465 & n.7 (1991). In particular, review extends to constitutional claims like plaintiffs' Fourth Amendment claim here. *Id*. at 465 ("The Constitution is law."); *accord U.S. v. Johnson*, 952 F.2d 565, 571-72 & n.4 (1st Cir. 1991) (using section 1806(f) to review constitutional challenges to surveillance).

The legislative history confirms section 1806(f)'s broad scope. Not just section 1806(f) but the entire statutory framework of FISA was erected by Congress to safeguard constitutional rights. FISA "reconcile[s] national intelligence and counterintelligence needs with constitutional principles in a way that is consistent with both national security and individual rights." S. Rep. No. 95-701 at 16 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 3985.

Congress specifically intended that section 1806(f) apply to constitutional claims, noting that the district court would "determine whether the surveillance was authorized and conducted in a manner which did not violate any constitutional or statutory right." S. Rep. No. 95-701 at 63, 1978 U.S.C.C.A.N. at 4032; *accord*, S. Rep. No. 95-604(I) at 57, 1978 U.S.C.C.A.N. at 3959. Congress' decision to include constitutional claims in section 1806(f) accords with "[t]he judiciary's essential role in protecting constitutional rights" and the fundamental jurisprudential principle that

12

constitutional claims deserve a meaningful judicial forum. *In re National Security Agency Telecommunications Records Litigation (Hepting)*, 671 F.3d 881, 899 & n.3 (9th Cir. 2011). "The federal courts remain a forum to consider the constitutionality of the wiretapping scheme and other claims, including claims for injunctive relief." *Id.*

Thus, there is no doubt that Congress intended section 1806(f) to apply to constitutional claims just as it applies to statutory claims. Nor is there any coherent reason why constitutional rights would be subject to a lesser standard of protection than statutory rights. If anything, constitutional rights are superior to and more jealously guarded than statutory rights.

Finally, once national security evidence comes in pursuant to section 1806(f), it is in the case for all purposes and all claims. There is no coherent reason of logic or policy why Congress would direct the district court to use national security evidence to decide some of a plaintiff's claims but to abstain from using the same evidence to decide plaintiffs' other claims. A contrary rule requiring the district court when it turns to plaintiffs' constitutional claims to put out of mind the evidence it has just used to decide their statutory claims would be absurd.

Thus, the district court's refusal to apply section 1806(f), instead of the state secrets privilege, to all of plaintiffs' claims was error. The district court held that section 1806(f) did not apply to "non-FISA claims," by which it apparently meant claims other than the civil cause of action created by 50 U.S.C. § 1810. ER 47. That was wrong, as the foregoing authority

demonstrates. Moreover, the district court thought that section 1810 claims were limited to those involving " 'foreign intelligence surveillance.' " ER 47. That additional holding was also mistaken, because FISA's broad definition of "electronic surveillance" is not limited to electronic surveillance conducted for foreign intelligence purposes and because section 1810 makes actionable all electronic surveillance that is not authorized by either FISA or the Wiretap Act or the Stored Communications Act. 50 U.S.C. §§ 1801(f); 1809(a)(1); 1810. Thus, unlawful surveillance may simultaneously violate section 1810, the Wiretap Act, and the Constitution, as Congress recognized. H.R. Rep. No. 95-1283(I) at 97 (noting that unlawful surveillance could violate both FISA and the Wiretap Act).

     **E.**    **The Government's Argument Below That Congress Did Not Intend For Section 1806(f) To Displace The State Secrets Privilege Misunderstands The Power Of Congress To Displace Common-Law Evidentiary Rules**

The government's argument below that Congress did not intend for section 1806(f) to displace the state secrets privilege lacks merit.

There is no doubt that Congress has the power to displace the state secrets privilege: "Congress, of course, has plenary authority over the promulgation of evidentiary rules for the federal courts." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 31 (1976).

Congress has also set the standard by which the question of displacement should be judged. The state secrets privilege is one of the common-law privileges of the "government" Congress statutorily

incorporated into Federal Rule of Evidence 501.  *See* H.R. Rep. No. 93-650 (1973), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7082 (explaining that Rule 501 encompasses the "secrets of state" privilege); S. Rep. No. 93-1277 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7047, 7058 (same).

Congress itself drafted Rule 501 and provided that "the privilege of . . . [the] government . . . shall be governed by the principles of the common law" "[e]xcept as otherwise . . . provided by Act of Congress." Pub. L. No. 93-595, § 1, 88 Stat. 1933 (1975), *codified as* Fed. R. Evid. 501. In December 2011, Rule 501 was reworded, and now states that "[t]he common law . . . governs a claim of privilege unless any of the following provides otherwise: . . . a federal statute."  Fed. R. Evid. 501.  These changes are "stylistic only."  Fed. R. Evid. 501 advisory committee's 2011 note.

Section 1806(f) meets Rule 501's test; it is a statute that "provides otherwise" for the admission, under special protective procedures, of evidence that the state secrets privilege would exclude.  Section 1806(f) thereby displaces the common-law state secrets privilege that would otherwise apply under Rule 501.

The government argued below (ECF No. 69 at 16) that section 1806(f) does not "speak directly" to the state secrets privilege and therefore does not displace it.  Even assuming arguendo that the "speaks directly" test and not the "otherwise provides" standard of Rule 501 governs, it is satisfied here. Section 1806(f) speaks directly to the state secrets privilege because it directly addresses the admission of national security evidence that the state

15

secrets privilege would otherwise exclude. *See American Electric Power Co. v. Connecticut*, __ U.S. __, 131 S.Ct. 2527, 2537 (2011) (test for whether Congress displaced common law "is simply whether the statute speaks directly to the question at issue" (internal quotation marks and brackets omitted)). Importantly, "Congress need not 'affirmatively proscribe' the common-law doctrine at issue." *U.S. v. Texas*, 507 U.S. 529, 534 (1993); *accord Milwaukee v. Illinois*, 451 U.S. 304, 315 (1981) (test is "*not* whether Congress had affirmatively proscribed the use of federal common law" (emphasis added)); *American Electric Power*, 131 S.Ct. at 2537 ("Legislative displacement of federal common law does not require the same sort of evidence of a clear and manifest congressional purpose demanded for preemption of state law." (internal quotation marks and brackets omitted)).

Congress expressly provided that section 1806(f) applies "notwithstanding any other law"—as clear a statement as possible of its intent to displace the "other law" of the state secrets privilege in cases challenging the lawfulness of electronic surveillance. The manifest incompatibility of section 1806(f) and the state secrets privilege, together with section 1806(f)'s command that courts "shall" decide the merits of cases challenging electronic surveillance by using national security evidence relating to the surveillance, are also clear expressions of Congress' intent to displace the state secrets privilege. Further expressing its intent, Congress explained that the alternative to using the procedures of section 1806(f) is

not exclusion of the evidence, as would occur under the state secrets privilege, but "mandatory disclosure." S. Rep. No. 95-701 at 63, 1978 U.S.C.C.A.N. at 4032.

Moreover, where federal common-law adjudicatory principles like the state secrets privilege are at issue, all that is required is that " 'a statutory purpose to the contrary is evident.' " *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("[T]he courts may take it as given that Congress has legislated with an expectation that the [common-law] principle will apply except 'when a statutory purpose to the contrary is evident.' [¶] This interpretative presumption is not, however, one that entails a requirement of clear statement, to the effect that Congress must state precisely any intention to overcome the presumption's application to a given statutory scheme." (citation omitted)). Section 1806(f)'s statutory purpose of using national security evidence to decide the merits is plainly contrary to the state secrets privilege's purpose of excluding national security evidence.

## II.   Even If Congress Had Not Displaced The State Secrets Privilege In Section 1806(f), The Privilege Would Not Provide A Ground For Threshold Dismissal Here

### A.   The General Rule Is That The Privileged Evidence Is Excluded And The Lawsuit Goes Forward Without It

The state secrets privilege would not be a ground for threshold dismissal here even if Congress had not displaced it in section 1806(f).  As this Court has held, "[t]he effect of the government's successful invocation of privilege 'is simply that the evidence is unavailable, as though a witness

17

had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of evidence.' " *Al-Haramain*, 507 F.3d at 1204; *accord Mohamed*, 614 F.3d at 1082. "The privileged information is excluded and the trial goes on without it." *General Dynamics Corp. v. U.S.*, ___ U.S. ___, 131 S.Ct. 1900, 1906 (2011).

As with any privilege, the state secrets privilege excludes only evidence from a particular, privileged source, and does not prevent proof of contested facts with evidence from a non-privileged source. *Mohamed*, 614 F.3d at 1090 (a "claim of privilege does not extend to public documents"). Moreover, " '[a]s in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence.' " *In re Sealed Case*, 494 F.3d 139, 147 (D.C. Cir. 2007).

As in any case in which evidence is excluded because of a privilege or other rule of evidence, dismissal is possible in a state secrets privilege case if after discovery the plaintiff is unable to prove its case using nonprivileged evidence. "If, *after further proceedings*, the plaintiff cannot prove the *prima facie* elements of her claim with nonprivileged evidence, then the court may dismiss her claim as it would with any plaintiff who cannot prove her case." *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) (emphasis added); *accord*, *Mohamed*, 614 F.3d at 1083.

**B.     The Valid-Defense Exception Is Limited To Government Contract Claims And Does Not Apply Here**

There is a "valid-defense" exception to the general rule that when evidence is excluded under the state secrets privilege, the lawsuit goes forward without the privileged evidence.  Under the valid-defense exception, the evidence is not excluded but is used to the benefit of one party only—the defendant.  "[I]f the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant."  *Mohamed*, 614 F.3d at 1083 (internal quotation marks omitted).

Dismissing a lawsuit because the privileged evidence establishes a valid defense is contrary to the usual law of evidentiary privileges. Ordinarily, when privileged evidence is excluded, both sides are deprived of the use of it and the chips fall where they may—a rule favoring neither plaintiff nor defendant.  Each party faces the possibility of losing the case even though the privileged evidence, if admissible, would enable that party to prevail.  Under the valid-defense exception, however, the defendant prevails because the court determines the excluded privileged evidence establishes a valid defense, while the plaintiff never sees the excluded evidence and has no opportunity to rebut it.

Although this Court recognized the valid-defense exception in *Mohamed*, the Supreme Court in *General Dynamics* subsequently limited the exception to cases in which the claims arise out of government

19

contracts.[4] As *General Dynamics* explains, the state secrets privilege the Supreme Court first recognized in *U.S. v. Reynolds*, 345 U.S. 1 (1953), is separate and distinct from the justiciability rules for government contracting cases the Court has developed in the line of cases beginning with *Totten v. U.S.*, 92 U.S. 105 (1876), and extending through *Tenet v. Doe*, 544 U.S. 1 (2005), "two cases dealing with alleged contracts to spy," *General Dynamics*, 131 S.Ct. at 1906.

The *General Dynamics* Court explained first the limits of the state secrets privilege: "*Reynolds* was about the admission of evidence. It decided a purely evidentiary dispute by applying evidentiary rules: The privileged information is excluded and the trial goes on without it. . . . But the Court did not order judgment in favor of the Government." *General Dynamics*, 131 S.Ct. at 1906.

The Court next held that the source of the valid-defense exception is "our common-law authority to fashion contractual remedies in Government-contracting disputes." *General Dynamics*, 131 S.Ct. at 1906; *see also id*. at 1907 ("Judicial refusal to enforce promises contrary to public policy"); 1908 ("the law of contracts"). It grounded the valid-defense exception in the ability of the parties to a government contract to allocate the risk that they

---

[4] This panel has authority to reconsider prior Ninth Circuit precedent like *Mohamed* where, as here, a subsequent Supreme Court decision has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

will be unable to prove a contract breach claim because of the state secrets privilege. *Id.* at 1909. Refusing to enforce government contracts in those circumstances "captures what the *ex ante* expectations of the parties were or reasonably ought to have been. . . . Both parties . . . must have assumed the risk that state secrets would prevent the adjudication of [their] claims . . . ." *Id.* This reasoning has no application to claims not based on government contracts. Thus, dismissals under the valid-defense exception are limited to government contract cases. In non-contract cases, "[t]he privileged information is excluded and the trial goes on without it." *Id.* at 1906.

### C. Even If The Valid-Defense Exception Extended To Claims Not Arising Out Of Government Contracts, The District Court Misapplied It Here

Even if the valid-defense exception governed here, the district court misapplied it.

In *General Dynamics*, the Supreme Court addressed the burden a party must meet to obtain dismissal on the ground that the state secrets privilege deprives it of a valid defense. Emphasizing that dismissal is "the option of last resort, available in a very narrow set of circumstances" (*id.* at 1910), the Court held that dismissal is permissible only if the "defense is supported by enough evidence to make out a prima facie case" (*id.* at 1909), *i.e.*, "enough evidence to survive summary judgment" (*id.* at 1910).

The principle articulated by the *General Dynamics* Court is well established. This Court has held dismissal in these circumstances requires

21

that the state secrets privilege deprive the defendant of "information that would otherwise give the defendant a *valid* defense.' " *Mohamed*, 614 F.3d at 1083 (emphasis added) (citing in accord *In re Sealed Case*, 494 F.3d at 153). This is a high standard to meet: "A 'valid defense' . . . is meritorious and not merely plausible and would *require* judgment for the defendant. 'Meritorious,' in turn, means 'meriting a legal victory.' " *In re Sealed Case*, 494 F.3d at 149 (citations omitted, emphasis added). To determine whether the proposed defense is meritorious and requires judgment for the defendant, the district court must examine the privileged evidence and determine whether it proves the existence of the defense: "If the defendant proffers a valid defense *that the district court verifies upon its review of state secrets evidence*, then the case must be dismissed." *Id*. at 153 (emphasis added). To avoid strategic assertions of the privilege, this verification must be especially searching when the government is not an intervenor but a defendant simultaneously withholding evidence under the privilege while seeking dismissal on the ground that it has thereby crippled itself from presenting a valid defense.

The District of Columbia Circuit, in the decision this Court relied upon in *Mohamed*, explained why the defense must be proven by the secret evidence to be "demonstrably valid" and not just "plausible":

> Were the valid-defense exception expanded to mandate
> dismissal of a complaint for any plausible or colorable defense,
> then virtually every case in which the United States
> successfully invokes the state secrets privilege would need to be

dismissed. This would mean abandoning the practice of deciding cases on the basis of evidence—the unprivileged evidence and privileged-but-dispositive evidence—in favor of a system of conjecture. . . . [I]t would be manifestly unfair to a plaintiff to impose a presumption that the defendant has a valid defense that is obscured by the privilege. There is no support for such a presumption among the other evidentiary privileges because a presumption would invariably shift the burdens of proof, something the courts may not do under the auspices of privilege.

*In re Sealed Case*, 494 F.3d at 149-50.

Here, the district court's analysis undercuts its assertion that "the privileged information gives Defendants a valid defense." ER 60. It does not appear that the government submitted to the district court any privileged evidence (as opposed to declarations asserting that evidence exists that is privileged). In its analysis, the court at most determined only that the broad categories of information subject to the privilege assertion were potentially relevant to plaintiffs' claims, not that actual evidence existed establishing a demonstrably valid defense to each of the dismissed claims. ER 53, 61-62 (plaintiffs' claims raise "fact-intensive questions that necessitate a detailed inquiry into the nature, scope, and reasons for the investigations under Operation Flex"; "with regard to Plaintiffs' FTCA claim, the United States may have a valid defense"; "To establish that this defense applies to the Government's counterterrorism investigations that purportedly violated Plaintiffs' constitutional rights, the Government must marshal facts that fall within the three privileged categories of information related to Operation Flex"). The district court's analysis falls far short of the requirement that the

23

court determine that for each claim there is a defense that is demonstrably valid, not just possible.

### D.    Threshold Dismissal Is Premature

The past fifteen years have seen an explosion in the frequency with which the government asserts the state secrets privilege.  Once an arcane bit of rarely-used evidence law, in the post-9/11 era the state secrets privilege has become the Executive's principal line of defense for its newly expanded powers, including its expanded domestic surveillance powers, and it has used the privilege repeatedly to deflect any judicial inquiry into the lawfulness of those powers.

Thus, it is now a matter of routine for the Executive to demand at the outset of a lawsuit not just the exclusion of privileged evidence, but outright dismissal of entire claims or the entire case, as occurred here.  Avoiding judicial inquiry entirely, and not merely protecting national security evidence from public disclosure, is the Executive's goal.

Courts are exercising with renewed vigor their obligation to view skeptically and critically the Executive's assertions of the privilege, and the Executive's demands for threshold dismissal based on its dire predictions of the impossibility of litigating a lawsuit without inadvertent disclosure.  *See*, *e.g.*, *Mohamed v. Holder*, E.D. Va. No. 11-cv-050-AJT, ECF No. 144 (Oct. 30, 2014).  There is a growing recognition that predictions of whether a lawsuit can be feasibly litigated using only non-secret evidence are ordinarily impossible to make at the outset of the case, and that courts are

24

capable of protecting secrets in civil litigation just as they do in criminal litigation under the Classified Information Procedures Act. *See*, *e.g.*, *Ibrahim v. Department of Homeland Security*, N.D. Cal. No. 06-cv-545-WHA, ECF No. 682 (Jan. 14, 2014).

The district court here clearly erred in granting a threshold dismissal of all claims against the government on the ground that litigating plaintiffs' claims using only nonprivileged evidence nonetheless presented an unjustifiable risk of revealing state secrets. ER 63-64. As this Court counseled in *Mohamed*, only in "rare" and "exceptional circumstances" is the "drastic result" of a threshold dismissal justifiable.[5] *Mohamed*, 614 F.3d at 1077, 1089; *accord General Dynamics*, 131 S.Ct. at 1910 (dismissal is "the option of last resort, available in a very narrow set of circumstances"). Ordinarily, a court is in no position to determine whether litigation is feasible until after discovery has proceeded, the government has asserted the state secrets privilege with respect to specific items of evidence, the court

---

[5] Indeed, it is dubious that any of *Mohamed's* reasoning approving threshold dismissals survives the sharp distinction the *General Dynamics* court drew between dismissals under the *Totten/Tenet* line of cases, which it limited to government contracting cases, and the *Reynolds* evidentiary privilege. This Court held in *Mohamed* that dismissals under the unjustifiable-risk exception were authorized by *Reynolds*. *Mohamed*, 614 F.3d at 1083. *General Dynamics*, however, held that *Reynolds* was an evidentiary rule whose only consequence was to exclude evidence, that it was *Totten*, not *Reynolds*, that authorized such dismissals, and that *Totten* dismissals were a consequence of the common law of contracts. *General Dynamics*, 131 S.Ct. at 1906, 1907, 1909, 1910. *General Dynamics* thus has effectively overruled *Mohamed* on this point.

has " 'critically . . . examine[d]' " the privilege assertion as to each item of evidence, and, in instances in which it has sustained the privilege, has " 'disentangled' " privileged information from nonprivileged information. *Mohamed*, 614 F.3d at 1082. A court must also carefully separate any claims or defenses that can be litigated from those that cannot go forward because of the privilege. *General Dynamics*, 131 S.Ct. at 1907 n.*.

Attempting to discern "the impact of the government's assertion of the state secrets privilege" at the pleading stage before the plaintiff's claims have been developed and the relevancy of privileged evidence has been determined "is akin to putting the cart before the horse." *Crater Corp. v. Lucent Technologies*, 423 F.3d 1260, 1268 (Fed. Cir. 2005). Instead, litigation goes forward with the privileged evidence excluded, at least until an informed determination can be made as to whether the nonprivileged evidence can be disentangled from the privileged evidence. That is what happened in *Reynolds*, where after excluding the privileged evidence the Supreme Court remanded for further proceedings to give the plaintiffs the opportunity "to adduce the essential facts as to causation without resort to material touching upon military secrets." 345 U.S. at 11. It is what happens in state secrets cases generally. *See*, *e.g.*, *In re Sealed Case*, 494 F.3d at 153 (remanding for further proceedings); *Crater Corp.*, 423 F.3d at 1268-69 (reversing dismissal because record was not sufficiently developed to determine whether claims could proceed without the excluded state secrets evidence); *DTM Research v. AT&T*, 245 F.3d 327, 334 (4th Cir. 2001) ("we

cannot conclude at this stage as a matter of law that a fair trial cannot be had"; "the plaintiff's case should be allowed to proceed, even if some otherwise relevant evidence might not be presented"); *Monarch Assurance P.L.C. v. U.S.*, 244 F.3d 1356, 1364 (Fed. Cir. 2001) (holding dismissal was "premature" because plaintiff should be "give[n] a fair amount of leeway" "in building their case from non-government sources"); *In re U.S.*, 872 F.2d 472, 478 (D.C. Cir. 1989) ("an item-by-item determination of privilege will amply accommodate the Government's concerns"); *Clift v. U.S.*, 597 F.2d 826, 827-30 (2d Cir. 1979) (reversing dismissal where plaintiff "has not conceded that without the requested documents he would be unable to proceed, however difficult it might be to do so"); *Halkin v. Helms*, 598 F.2d 1, 11 (D.C. Cir. 1978) (case remanded for further proceedings to determine whether the plaintiffs could prove some of their claims without resort to state secrets evidence); *Ellsberg v. Mitchell*, 709 F.2d 51, 64-65 & n.55 (D.C. Cir. 1983) (reversing dismissal and remanding for district court to "consider whether the plaintiffs were capable of making out a prima facie case without the privileged information").

Here, it appears that the district court based its unjustifiable-risk dismissal on the conclusion that the privileged evidence regarding "the factual context of Operation Flex as a whole" would be "important background for a finder of fact to consider in her analysis." ER 64. But that will almost always be true. Privileged evidence, whatever the nature of the privilege, is often important and relevant information that, but for the

privilege, should and would be considered by the trier of fact. The privileged evidence's significance to the merits says nothing about whether the evidence could be feasibly excluded from the litigation process. Thus, the district court's analysis does not support its conclusion.

## CONCLUSION

The Court should hold that section 1806(f) displaces the state secrets privilege for claims based on evidence of electronic surveillance, or, alternatively, that the valid-defense exception is limited to claims arising out of government contracts and that the valid-defense exception is not met here.

Dated: November 24, 2014          Respectfully submitted,


                                  s/ *Richard R. Wiebe*

                                  RICHARD R. WIEBE
                                  LAW OFFICE OF RICHARD R. WIEBE

                                  CINDY COHN
                                  LEE TIEN
                                  KURT OPSAHL
                                  JAMES S. TYRE
                                  MARK RUMOLD
                                  ANDREW CROCKER
                                  DAVID GREENE
                                  ELECTRONIC FRONTIER FOUNDATION

                                  THOMAS E. MOORE III
                                  ROYSE LAW FIRM

                                  COUNSEL FOR AMICUS

# STATUTORY APPENDIX

## 50 U.S.C. § 1806(f)

50 U.S.C. § 1806(f) In camera and ex parte review by district court.

Whenever a court or other authority is notified pursuant to subsection (c) or (d), or whenever a motion is made pursuant to subsection (e), or whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States of any State before any court or other authority of the United States or any state to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this Act, the United States district court or, where the motion is made before another authority, the United States district court in the same district as the authority, shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted.  In making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. Pro. 29(d) and 32(a)(7)(B) because it contains 6604 words, excluding the parts of the brief exempted by Fed. R. App. Pro. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: November 24, 2014          *s/ Richard R. Wiebe*

                             Counsel for Amicus