Consolidated Case Nos.: 12-56867, 12-56874, 13-55017

U.S.D.C. Case No. 8:11-cv-00301-CJC-VBK

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

YASSIR FAZAGA, et al.

Plaintiff/Appellants/Cross-Appellees,

v.

FBI, et al.,

Defendants/Appellees/Cross-Appellants.
_____

On Appeal From The United States District Court
For The Central District of California
_____

## CROSS-APPELLANTS PAT ROSE, PAUL ALLEN AND KEVIN
## ARMSTRONG'S OPENING/RESPONSIVE BRIEF
_____

DAVID C. SCHEPER (SBN 120174)
ALEXANDER H. COTE (SBN 211558)
ANGELA M. MACHALA (SBN 224496)
AMOS A. LOWDER (SBN 269362)
SCHEPER KIM & HARRIS LLP
601 WEST FIFTH STREET, 12TH FLOOR
LOS ANGELES, CALIFORNIA 90071-2025
TELEPHONE: (213) 613-4655
FACSIMILE: (213) 613-4656
*Attorneys for Pat Rose, Paul Allen and Kevin
Armstrong*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendants/Appellees/Cross-Appellants Pat Rose, Paul Allen, and Kevin

Armstrong are individuals.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................1

II. JURISDICTIONAL STATEMENT ...................................................5

III. STATEMENT OF FACTS ................................................................6

    A.    INVESTIGATIVE TECHNIQUES ALLEGEDLY EMPLOYED BY THE FBI .................................................................................................6

    B.    PLAINTIFFS LEARNED OF MONTEILH'S ACTIONS AFTER THE FACT ...............................................................................................9

    C.    PROCEEDINGS BEFORE THE DISTRICT COURT ......................................10

IV. SUMMARY OF ARGUMENT .......................................................11

V. STANDARD OF REVIEW ..............................................................13

VI. ARGUMENT....................................................................................14

    A.    THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' FISA CLAIM ...............................................14

        1.    Legal Standard For Evaluating Qualified Immunity ...............14

        2.    Plaintiffs' Fail To Allege A Violation Of FISA ......................15

            (a)    Surveillance Conducted In Monteilh's Presence Did Not Violate FISA ...................................................18

            (b)    Unattended Recordings In The Prayer Hall Did Not Violate FISA ..........................................................22

            (c)    Plaintiffs Fail to Adequately Allege that the Agent Defendants Placed Surveillance Devices In A Mosque, House, Car and Phone .............................27

    B.    THE DISTRICT COURT PROPERLY DISMISSED THE DISCRIMINATION AND THE SEARCH CLAIMS UNDER THE STATE SECRETS PRIVILEGE ...................................................................28

1. The District Court Properly Found That Litigation of Plaintiffs' Claims Necessarily Tread On Privileged Materials .................................................................. 29

2. Plaintiffs' Claimed Ability To Prove Their Prima Facie Case Is Beside The Point ................................. 30

3. The District Court Dismissed The Discrimination And The Search Claim At The Appropriate Stage ........................... 31

4. The Dismissal Of The Search Claim Was Proper ................... 32

C. FISA SECTION 1806(F) CANNOT BE USED TO LITIGATE THE MERITS OF PLAINTIFFS' CLAIMS ........................................... 35

1. Section 1806(f) Is An Evidentiary Procedure ........................... 36

2. An In Camera And Ex Parte Adjudication Of The Agent Defendants' Liability Would Raise Serious Constitutional Questions ........................................... 37

D. THE FTCA'S JUDGMENT BAR REQUIRES DISMISSAL OF ALL OF PLAINTIFFS' CLAIMS AGAINST THE AGENT DEFENDANTS ............. 39

E. THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE DISCRIMINATION AND THE SEARCH CLAIMS ................................................................. 40

1. Defendant Rose Is Entitled To Qualified Immunity As To All Claims Under Iqbal ..................................... 42

2. Qualified Immunity Bars The Free Exercise And RFRA Claims ................................................. 45

(a) Plaintiffs Fail To Plead A Substantial Burden On Their Religion ............................................. 46

(b) The Investigation Advanced A Compelling Government Interest ..................................... 50

(c) The Investigation Was Narrowly Tailored To Further A Compelling Government Interest ................. 52

-ii-

3.     Qualified Immunity Bars The Establishment Clause Claims ............................................................... 53

       (a)     Plaintiffs Fail To Allege Improper Purpose ................... 53

       (b)     Plaintiffs Fail To Allege the Sending of A Message ........................................................ 54

       (c)     Plaintiffs Failed To Plead Excessive Entanglement .................................................. 55

4.     Qualified Immunity Bars The Equal Protection Claims ............................................................... 56

5.     Qualified Immunity Bars The Search Claim ........................... 57

F.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985(3) ................................................................ 58

1.     Plaintiffs Fail To Allege A Conspiracy Under Section 1985(3) ........................................................ 58

2.     Plaintiffs Failed To Allege An Unlawful Purpose ................... 61

G.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER *BIVENS* ........................... 65

1.     Plaintiffs' Have No Automatic Right to a Bivens Remedy ................................................... 65

2.     Plaintiffs' Biven Claim is precluded by the Privacy Act ........................................................ 67

3.     Plaintiffs Fail To Allege An Unlawful Purpose ..................... 71

VII. CONCLUSION ............................................................... 73

# TABLE OF AUTHORITIES

<u>Page</u>

## Federal Cases

*Action v. Gannon,*
    450 F.2d 1227 (8th Cir. 1971) ..................................................... 63
*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) .................................................... 67
*American Civil Liberties Union vs. National Security Agency,*
    493 F.3d 644 (6th Cir. 2007) ..................................................... 17
*Arevalo v. Woods,*
    811 F.2d 487 (9th Cir. 1987) ..................................................... 40
*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074, 2085 (2011) ............................................. *passim*
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................... *passim*
*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................. 44
*Berry v. Hollander,*
    925 F.2d 311 (9th Cir. 1991) ..................................................... 67
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971) ....................................................... *passim*
*Blunt v. County of Sacramento,*
    No. 2:04-cv-1743, 2006 U.S. Dist. LEXIS 11099 at *36
    (E.D. Cal. Mar. 2, 2006) ........................................................ 59
*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263 (1993) ......................................................... 61, 62
*Bush v. Lucas,*
    462 U.S. 367 (1983) ............................................................. 66
*Cammack v. Waihee,*
    932 F.2d 765 (9th Cir. 1991) ..................................................... 56
*Carlson v. Green,*
    446 U.S. 14 (1980) .............................................................. 39
*Chambliss v. Foote,*
    562 F.2d 1015 (5th Cir. 1977) ................................................... 60
*Chavez v. United States,*
    683 F.3d 1102 (9th Cir. 2012) ......................................... 42, 43, 44, 45
*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ......................................................... 50, 52

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
   526 U.S. 687 (1999) ...................................................................38

*County of Allegheny v. ACLU*,
   492 U.S. 573 (1989) ...................................................................54

*Crowe v. County of San Diego*,
   608 F.3d 406 (9th Cir. 2010)......................................................58

*Curtis v. Loether*,
   415 U.S. 189 (1974) ...................................................................38

*Denney v. City of Albany*,
   247 F.3d 1172 (11th Cir. 2001)..................................................60

*Devereaux v. Perez*,
   218 F.3d 1045 (9th Cir. 2000)....................................................41

*Dickerson v. Alachua County Comm'n*,
   200 F.3d 761 (11th Cir. 2000)....................................................59

*Doe v. Chao*,
   540 U.S. 614 (2004) ...................................................................67

*Downie v. City of Middleburg Heights*,
   301 F.3d 688 (6th Cir. 2002)................................................68, 69

*F.A.A. v. Cooper*,
   132 S.Ct. 1441 (2012) ...............................................................68

*Fitzgerald v. Penthouse Int'l*,
   776 F.2d 1236 (4th Cir. 1985)....................................................33

*Fonda v. Gray*,
   707 F.2d 435 (9th Cir. 1983)......................................................59

*Gasho v. United States*,
   39 F.3d 1420 (9th Cir. 1994)......................................................40

*Gooden v. Howard County*,
   954 F.2d 960 (4th Cir. 1992)......................................................62

*Haig v. Agee*,
   453 U.S. 280 (1981) ...................................................................51

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ...................................................................14

*Hobson v. Wilson*,
   737 F.2d 1 (D.C. Cir. 1984)...................................................63, 64

*Hoefer v. Fluor Daniel, Inc.*,
   92 F. Supp. 2d 1055 (C.D. Cal. 2000)...................................59, 60

*Hoffa v. United States*,
   385 U.S. 293 (1966) ...................................................................24

*Jacob v. City of New York*,
   315 U.S. 752 (1942) ...................................................................38

*Kasza v. Browner,*
    133 F.3d 1159, 1166 (9th Cir. 1998)............................................................31
*Katz v. United States,*
    389 U.S. 347, 351 (1967) ........................................................18, 19, 23, 26
*Kee v. City of Rowlett, Tex.,*
    247 F.3d 206, 213 (5th Cir. 2001)........................................................24, 25
*Kotarski v. Cooper,*
    866 F.2d 311 (9th Cir. 1989).......................................................................67
*Kreisner v. City of San Diego,*
    1 F.3d 775 (9th Cir. 1993).....................................................................53, 54
*Laird v. Tatum,*
    408 U.S. 1 (1972) ........................................................................................49
*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) ........................................................................53, 54, 55
*Libas Ltd. v. Carillo,*
    329 F.3d 1128 (9th Cir. 2003).....................................................................67
*Lynch v. Donnelly,*
    465 U.S. 668, 673 (1984) ............................................................................53
*Mirmehdi v. United States,*
    689 F.3d 975 (9th Cir. 2012)......................................................65, 66, 67, 71
*Mohamed v. Jeppesen Dataplan, Inc.,*
    614 F.3d 1070 (2010) ...............................................................28, 29, 31, 33
*Mory v. City of Chula Vista*,
    No. 07CV0462, 2008 U.S. Dist. LEXIS 9911, *19 (S.D. Cal. Feb. 11,
    2008)............................................................................................................60
*Nadarajah v. Gonzales,*
    443 F.3d 1069 (9th Cir. 2006).....................................................................37
*Navajo Nation v. U.S. Forest Service,*
    535 F.3d 1058 (9th Cir. 2008).............................................46, 47, 49, 50, 52
*Nelson Radio & Supply Co. v. Motorola, Inc.,*
    200 F.2d 911 (5th Cir. 1952).......................................................................59
*Nurre v. Whitehead*,
    580 F.3d 1087 (9th Cir. 2009)........................................................53, 54, 55
*Nurse v. United States,*
    226 F.3d 996 (9th Cir. 2000).......................................................................39
*Orin v. Barclay,*
    272 F.3d 1207 (9th Cir. 2001).....................................................................56
*Padilla v. Yoo,*
    678 F.3d 748 (9th Cir. 2012)..................................................................13, 21

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ..................................................................14

*Pers. Admin'r of Mass. v. Feeney,*
    442 U.S. 256 (1979) ..................................................................72

*Plumhoff v. Rickard,*
    134 S. Ct. 2012 (2014) ..........................................................6, 17

*Portman v. County of Santa Clara,*
    995 F.2d 898 (9th Cir. 1993)....................................................60

*Presbyterian Church v. United States,*
    870 F.2d 518 (9th Cir. 1989)....................................................24

*Rabkin v. Dean,*
    856 F. Supp. 543 (N.D. Cal. 1994)...........................................60

*Ren v. Holder,*
    648 F.3d 1079 (9th Cir. 2011)..................................................37

*Runs After v. United States,*
    766 F.2d 347 (8th Cir. 1985)....................................................60

*Schmitz v. Mars, Inc.,*
    261 F. Supp. 2d 1226 (D. Or. 2003)..........................................60

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) ..................................................................66

*Smith v. Maryland,*
    442 U.S. 735 (1979) ..................................................................17

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott,*
    463 U.S. 825 (1983) ..................................................................58

*United States v. Aguilar,*
    883 F.2d 662 (9th Cir 1989).................................21, 22, 24, 26, 52

*United States v. Bautista,*
    362 F.3d 584 (9th Cir. 2004)....................................................25

*United States v. Belfield,*
    692 F.2d 141 (D.C. Cir. 1982) .................................................36

*United States v. Brathwaite,*
    458 F.3d 376 (5th Cir. 2006)....................................................19

*United States v. Cavanagh,*
    807 F.2d 787 (9th Cir. 1986)....................................................36

*United States v. Gering,*
    716 F.2d 615 (9th Cir. 1983)..........................................47, 48, 49

*United States v. Gonzalez,*
    328 F.3d 543 (9th Cir. 2003)....................................................24

*United States v. Little,*
    753 F2d 1420 (9th Cir. 1984)....................................................24

*United States v. Mayer,*
    503 F.3d 740 (9th Cir. 2007) .......................................................19, 21, 22, 24
*United States v. Nerber,*
    222 F.3d 597 (9th Cir. 2000) .......................................................17, 19
*United States v. Reynolds,*
    345 U.S. 1 (1953) ................................................................................29
*United States v. Wachumwah,*
    710 F.3d 862 (9th Cir. 2013) .......................................................17, 18, 19, 20
*Vernon v. City of Los Angeles,*
    27 F.3d 1385 (9th Cir. 1994) .......................................................4, 49, 54, 55
*Western Radio Servs. Co. v. U.S. Forest Serv.,*
    578 F.3d 1116 (9th Cir. 2009) ....................................................66, 67, 70, 71
*Whren v. United States,*
    517 U.S. 806 (1996) ...........................................................................2, 21
*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ...........................................................................65, 66
*Wilson v. Libby,*
    535 F.3d 697 (D.C. Cir. 2008), cert. denied 129 S. Ct. 2825 (2009)......69, 71
*Woldeab v. 7-Eleven, Inc.,*
    No. 03-0615, 2006 U.S. Dist. LEXIS 82191, *9 (S.D. Cal. Nov 8, 2006)...60
*Wolde-Giorgis v. Dillard,*
    No. 06-0289, 2006 U.S. Dist. LEXIS 71356 (D. Ariz. Sept. 22, 2006)........61
*Wood v. City of San Diego,*
    678 F.3d 1075 (9th Cir. 2012) .......................................................41
*Wright v. Ill. Dept. of Children & Family Servs.,*
    40 F.3d 1492 (7th Cir. 1994) .......................................................60

Federal Statutes

5 U.S.C. § 552a(a)(3) ....................................................................................67
5 U.S.C. § 552a(e)(7) ....................................................................................67, 70
5 U.S.C. § 552a(g)(1)(D) ..............................................................................68
5 U.S.C. § 552a(g)(4) ....................................................................................68
28 U.S.C. § 2676 ...........................................................................................4, 12, 40
42 U.S.C. § 1985 ...........................................................................................13
42 U.S.C. § 1983 ...........................................................................................56, 57
42 U.S.C. § 1985(3) ......................................................................................4, 56, 58, 59
50 U.S.C. § 1801(f) .......................................................................................16
50 U.S.C. § 1806(g) ......................................................................................37
50 U.S.C. § 1809 ...........................................................................................16, 23
50 U.S.C. § 1810 ...........................................................................................15, 16, 23

U.S. Const. Amend I ................................................................. 53

### Federal Rules

F.R.C.P. 54(b) ..................................................................... 10

### Federal Regulations

39 C.F.R. § 233.3(c)(1) ........................................................... 47

### Miscellaneous

Foreign Intelligence Surveillance Act Section 1806(f) ................................ 3, 35, 36

Federal Tort Claims Act Section 2676 ................................................. 39

# I.

# INTRODUCTION

Plaintiffs/Appellants/Cross-Appellees Yassir Fazaga, Ali Uddin Malik, and Yasser AbdelRahim ("Plaintiffs") allege that current and former FBI Agents Defendants/Appellees/Cross-Appellants Pat Rose, Kevin Armstrong, and Paul Allen (the "Agent Defendants") directed confidential informant Craig Monteilh to "infiltrate" mosques throughout Southern California as part of a "dragnet" investigation of all Muslims "simply because the targets were Muslim" and "without further specification." Based on these allegations, Plaintiffs assert causes of action against the Agent Defendants arising under the First Amendment's Establishment Clause (First and Second Causes of Action), Free Exercise Clause and the Religious Freedom Restoration Act (Third through Fifth Causes of Action), the Fifth Amendment's Equal Protection Clause (Sixth and Seventh Causes of Action), the Fourth Amendment (Ninth Cause of Action) and the Foreign Intelligence Surveillance Act ("FISA") (Tenth Cause of Action).[1] Pursuant to the defendants' motions, the district court dismissed every cause of action but the FISA Claim. Plaintiffs now appeal that

---

[1] Plaintiffs dubbed the First through Seventh Causes of Action the "Discrimination Claims" in their opening brief, and the Agent Defendants adopt that nomenclature here. The Ninth Cause of Action will hereafter be the "Search Claim" while the Tenth Cause of Action will be the "FISA Claim."

dismissal, while the Agent Defendants cross-appeal the district court's denial of their motion to dismiss the FISA Claim.

The district court erred in denying the Agent Defendants' motion to dismiss the FISA Claim. Section 1810 of FISA requires Plaintiffs to allege that the Agent Defendants intentionally infringed on Plaintiffs' reasonable expectations of privacy. But Plaintiffs primarily allege that Monteilh recorded Plaintiffs in conversations with him when he was present or when they were in a public space. Under well established case law, such recordings do not violate Plaintiffs' reasonable expectations of privacy. Plaintiffs also make hazy allegations concerning "listening devices" allegedly planted by unknown persons in various places, including an office and a home. But these allegations fail under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), because they lack the supporting detail necessary to make them plausible – including who placed the listening devices, where they were placed or how they were discovered.

Nor can Plaintiffs save their FISA Claim by smuggling their religious discrimination allegations into the analysis. FISA is coextensive with the Fourth Amendment, and the Supreme Court has consistently rejected "Fourth Amendment challenges based on the actual motivations of individual officers." *Whren v. United States,* 517 U.S. 806, 813 (1996). The Court should reach the same conclusion here: because the alleged investigation did not infringe on

Plaintiffs' reasonable expectations of privacy, the Agent Defendants' alleged discriminatory intent is irrelevant. Accordingly, the district court's refusal to dismiss the FISA Claim should be reversed.

In contrast, the district court properly dismissed the Discrimination and Search Claims in light of the government's successful assertion of the state secrets privilege. The district court's reasoning is sound and the Court should affirm the dismissal of those claims for the reasons stated in the government's brief. This Court should also reject Plaintiffs' novel suggestion that FISA Section 1806(f) preempts or displaces the state secrets privilege, again for the reasons stated in the government's brief. But the Court should be especially suspicious of Plaintiffs' suggestion that Section 1806(f) authorizes the district court to adjudicate the merits of Plaintiffs' claims against the individual defendants – both the FISA and non-FISA claims – in an *ex parte* and *in camera* proceeding. Plaintiffs' argument finds no support in the statute, and interpreting FISA as authorizing secret trials against the individual defendants on secret evidence would raise serious constitutional questions.

But even if the district court erred in dismissing the Discrimination and the Search Claims on state secrets grounds, this Court should still affirm on four alternative grounds. *First*, as explained in the government's brief, because the district court entered judgment on behalf of the United States on Plaintiffs'

Federal Tort Claims Act claim, that statute's judgment bar, 28 U.S.C. § 2676, now applies. Accordingly, all of Plaintiffs' claims should be dismissed without reaching their merits.

*Second*, the Agent Defendants are entitled to qualified immunity on the Discrimination Claims. Qualified immunity protects all federal officers except "the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) ("*al-Kidd*"). The Agent Defendants deserve neither label, not the least because the Ninth Circuit held almost twenty years ago in *Vernon v. City of Los Angeles,* 27 F.3d 1385 (9th Cir. 1994) ("*Vernon*") that a religiously motivated investigation does *not* necessarily offend the First Amendment. Thus, even if Plaintiffs convince this Court – in 2014 – to prohibit the use of religion as a factor in a counterterrorism investigation, that right was not "beyond debate" when the investigation occurred. *al-Kidd* at 2083.

*Third*, the Discrimination Claims fail because the Plaintiffs fail to plead their necessary elements. Although the Second, Fourth and Seventh Causes of Action alleging a violation of 42 U.S.C. § 1985(3) require Plaintiffs to allege a conspiracy to violate their constitutional rights, here Plaintiffs allege only an agreement between the FBI and its agents. But a government agency cannot conspire with its own agents, and therefore these claims fail. Plaintiffs also

-4-

assert three causes of action – the First, Third and Sixth – for constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). But these claims fail because the Supreme Court has "declined to extend *Bivens* to a claim sounding in the First Amendment," *Iqbal*, 556 U.S. at 675, and because the Privacy Act is a comprehensive statutory remedy that supplants the *Bivens* remedy sought here.

*Fourth*, Plaintiffs' Search Claim fails under qualified immunity for the same reason that Plaintiffs' FISA Claim fails: because Plaintiffs fail to allege a violation of their reasonable expectations of privacy.

In short, each and every claim asserted against the Agent Defendants fails. Thus, the Agent Defendants respectfully request that this Court reverse the district court's denial of the Agent Defendants' motion to dismiss the FISA Claim, and that it affirm the district court's dismissal of the Discrimination and the Search Claims.

## II.

## JURISDICTIONAL STATEMENT

The Agent Defendants join the jurisdictional statement in Plaintiffs-Appellants' Principal Brief (hereafter "APB").

# III.

## STATEMENT OF FACTS

The Brief For the Federal Appellees (hereafter "Government's Brief") capably summarizes the Plaintiffs' allegations, and those facts will not be repeated at length here. (*See generally* Government's Brief at 5-16.) Instead, the Agent Defendants briefly summarize certain additional allegations relevant to the arguments set forth below.

### A.   INVESTIGATIVE TECHNIQUES ALLEGEDLY EMPLOYED BY THE FBI

In the FAC, Plaintiffs claim they suffered from three types of surveillance that allegedly violate the Fourth Amendment and/or FISA: (i) that Monteilh recorded his interactions with Plaintiffs, (ii) that Monteilh left audio recording devices unattended in a prayer hall; and (iii) that unknown individuals installed electronic surveillance devices in mosques, houses, cars and phones.[2] (Plaintiffs-Appellants' Excerpts of Record ("ER") 246-247 (FAC ¶¶ 251, 252).) Not all allegations are made by all Plaintiffs, as set forth in more detail below.

---

[2] Each Plaintiff has standing under the Fourth Amendment only to the extent he alleges to have been the victim of unlawful searches; no plaintiff has standing to assert claims or seek relief for allegedly unlawful searches of third parties. *See, e.g., Plumhoff v. Rickard,* 134 S. Ct. 2012, 2022 (2014) and Section VI.A.2, *infra*. Accordingly, the following discussion identifies the allegedly unlawful searches suffered by each of *these* Plaintiffs, and disregards the FAC's allegations of unlawful searches suffered by others.

*Recording of Monteilh's Interactions with Plaintiffs.* Plaintiffs allege that Monteilh made the following recordings of Plaintiffs using devices on his person:

- Plaintiff Fazaga alleges that Monteilh recorded him leading public prayer services and hosting public lectures at the Islamic Center of Irvine ("ICOI"). (ER 228-230 (FAC at ¶¶ 172-173, 178).)

- Plaintiff AbdelRahim alleges that Monteilh recorded him attending and participating in Arabic language teachings at ICOI. (ER 237-238 (FAC at ¶ 211).) AbdelRahim also alleges that Monteilh, as an invited guest, recorded "conversations he had with AbdelRahim and the other members of [AbdelRahim's] house." (ER 235-236 (FAC at ¶ 201, 202).) AbdelRahim further alleges that Monteilh recorded casual soccer games that AbdelRahim played. (ER 236 (FAC at ¶ 206).)

- Plaintiff Malik alleges that Monteilh recorded him "talking in the prayer hall, particularly after *ishaa* prayer." (ER 232-233 (FAC at ¶ 192).) Malik further alleges that Monteilh recorded all of his conversations with Malik. (ER 234 (FAC at ¶ 195).)

Apart from the foregoing, Plaintiffs do not identify any objectionable recording by Monteilh in person.

*Monteilh's Unattended Recordings*. Plaintiffs allege that Monteilh made the following unattended recordings:

- AbdelRahim alleges that Monteilh left "his things – including the recording device (disguised as a key fob or cell phone) – near to where the group was talking…. The recording device would capture their conversations when Monteilh was not within earshot." (ER 237-238 (FAC at ¶ 211).)

- Malik alleges that Monteilh left a similar recording device in the prayer hall to capture Malik's conversations with young Muslims. (ER 232-233 (FAC at ¶ 192).)

Apart from the foregoing, Plaintiffs do not identify any other unattended recording by Monteilh.

*Installation of Recording Devices*. Plaintiffs allege that the FBI also installed unidentified recording devices:

- Fazaga alleges that "Agents Allen and Armstrong caused [] electronic surveillance equipment to be installed at the Mission Viejo mosque" to record Fazaga's conversations in non-public locations, including his office. (ER 208-209 (FAC at ¶¶ 95).)

- AbdelRahim alleges that "the FBI had electronic listening devices in AbdelRahim's house, as well as in AbdelRahim's car and phone." (ER 237 (FAC at ¶¶ 209).)

Notably, however, the FAC fails to identify the "listening devices" used, when they were installed, who installed them, how Allen and Armstrong "caused" them to be installed, how Plaintiffs learned of them, who discovered the devices, where in the mosque they were installed, or any other facts to corroborate this allegation.

### B. PLAINTIFFS LEARNED OF MONTEILH'S ACTIONS AFTER THE FACT

Plaintiffs allege they were ignorant of Monteilh's role as a confidential informant during the time he was allegedly working with the FBI. (ER. 181 (*See, e.g.,* FAC ¶¶ 1, 5).) Specifically, Monteilh's surveillance activities allegedly ended in October 2007, but Plaintiffs claim they did not discover his role until February 24, 2009. (ER 223, 224 (FAC at ¶¶ 152, 159).) Plaintiffs contend that they "did not know and could not reasonably have known that Monteilh was working for the FBI as an informant" prior to this date. (ER 225 (*Id.* at ¶ 160).) This action followed on February 22, 2011. (ER 302 (initial complaint).)

### C.   PROCEEDINGS BEFORE THE DISTRICT COURT

On August 14, 2012, the district court heard (1) the government's motion to dismiss and motion and for summary judgment (Defendants/Appellees/Cross-Appellants Pat Rose, Paul Allen, and Kevin Armstrong's Supplemental Excerpts of Records ("SER") 215-285 (Dkt No. 55)); (2) the Agent Defendants' motion to dismiss (SER 168-214 (Dkt No. 57)); (3) Defendants Stephen J. Tidwell and Barbara Walls' motion to dismiss. (SER 125-167 (Dkt No. 58).) That same day, the district court issued two written orders. (ER 18-66 (Dkt Nos. 101 and 102).) The first order found that the government had successfully asserted the states secrets privilege and dismissed the Discrimination and the Search Claims (the "State Secrets Order"). (ER 31-66 (Dkt No. 101).) The second order dismissed the FISA Claim against the government, but denied the Agent Defendants' motion to dismiss that claim (the "FISA Order"). (ER 18-30 (Dkt No. 102).)

On October 12, 2012, the Agent Defendants appealed the district court's denial of their respective motions to dismiss the FISA Claim. (SER 1-2 (Dkt No. 115).) On November 1, 2012, Plaintiffs filed a motion for partial final judgment pursuant to F.R.C.P. 54(b). (ER 316 (Dkt No. 121).) On December 3, 2012, the district court granted Plaintiffs motion for partial final judgment. (ER

-10-

317 (Dkt. No. 128).) Plaintiffs filed their appeal on January 3, 2013. (ER 1-10 (Dkt. No. 130).)

## IV.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's denial of the Agent Defendants' motion to dismiss the FISA Claim, and affirm the dismissal of the Discrimination and the Search Claims, for the reasons that follow.

**I.** The district court erred when it denied the Agent Defendants qualified immunity on Plaintiffs' FISA Claim. In order to state a claim for violation of FISA, Plaintiffs must plead a violation of their reasonable expectations of privacy. Here, Plaintiffs accuse Monteilh primarily of recording audio and video with a device on his person, but under the well-established invited informer doctrine, these recordings cannot violate a reasonable expectation of privacy. Plaintiffs also accuse Monteilh of recording conversations in mosques and other public places, however, it was not clearly beyond debate at the time of the investigation that Plaintiffs had a reasonable expectation of privacy in those locations. Finally, Plaintiffs' vague allegations that someone *other than* Monteilh installed electronic surveillance equipment in various places are not properly pled under *Iqbal*. Because none of the allegations in Plaintiffs' complaint give rise to a violation of FISA, the district

-11-

court erred in denying the Agent Defendants' motion to dismiss that claim. (*See* Section VI.A *infra.*)

**II.** The district court properly dismissed the Discrimination and Search Claims after finding that the successful assertion of the state secrets privilege deprived the Agent Defendants of a defense. Plaintiffs fail to identify any basis in law or fact to overturn that finding, as explained more amply in the government's brief. Accordingly, the dismissal of these claims should be affirmed. (*See* Section VI.B *infra.*) Plaintiffs' suggestion that FISA Section 1806(f) preempts or displaces the state secrets privilege, and requires the district court to conduct an *in camera* and *ex parte* adjudication of the merits of their claims against the Agent Defendants, is also without any basis or support, and should be rejected by this Court under the canon of constitutional avoidance. (*See* Section VI.C *infra.*)

**III.** Because the district court entered judgment in favor of the government on the Federal Tort Claims Act Claim, the FTCA's judgment bar now applies. Because the Plaintiffs' claims against the Agent Defendants arise from "the same subject matter" as the FTCA claim against the government, those claims should now be dismissed under 28 U.S.C. § 2676. (*See* Section VI.D *infra.*)

**IV.**    In the alternative, this Court should affirm the district court's dismissal of the Discrimination and the Search Claims on qualified immunity grounds. In order to overcome qualified immunity, Plaintiffs must show that that the Agent Defendants violated a well-established right, but Plaintiffs' claimed right to be free from a religiously motivated investigation is far from well established. To the contrary, the law of this Circuit, as articulated in *Vernon* more than twenty years ago, holds that religiously motivated investigations do not necessarily violate the First Amendment. Similarly, Plaintiffs' Search Claim should be dismissed because Plaintiffs fail to properly plead a violation of their reasonable expectations of privacy that was well established at the time of the investigation. (*See* Section VI.E *infra.*)

**V.**    This Court should also affirm the district court's dismissal of the Discrimination Claims for two additional reasons: (a) because Plaintiffs fail to allege a conspiracy under 42 U.S.C. § 1985 and (b) because alternative statutory remedies bar Plaintiffs' *Bivens* claims. (*See* Sections VI.F and VI.G *infra.*)

**V.**

**STANDARD OF REVIEW**

The Agent Defendants agree that this Court should conduct a *de novo* review of the district court's FISA and State Secrets Orders. *See Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012) (*de novo* review of a district court's denial of

-13-

motion to dismiss based on qualified immunity); *see also* APB at 23 (de novo standard of review for the district court's dismissal of the Discrimination and Search Claims).)

## VI.

## ARGUMENT

## A.    THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' FISA CLAIM

### 1.    *Legal Standard For Evaluating Qualified Immunity*

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080 (2011). To

be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. "[C]onduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* The Supreme Court has consistently advised courts "not to define clearly established law at a high level of generality." *Id.* at 2084 (general rule that "an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quote omitted).

### 2. *Plaintiffs' Fail To Allege A Violation Of FISA*

The FISA Claim, Plaintiffs' Tenth Cause of Action, alleges that the Agent Defendants[3] violated 50 U.S.C. § 1810 by conducting warrantless electronic surveillance. (ER 247 (FAC ¶ 253).) The Agent Defendants moved to dismiss the FISA Claim on the ground that Plaintiffs failed to allege that

---

[3] The Court need not reach this issue with respect to any of the Agent Defendants, if it concludes that the FTCA's judgment bar requires dismissal of Plaintiffs' FISA Claim (*see* Government Brief at 39-41; *see also* Section IV.D, *infra*) and it need not reach this issue with respect to Agent Defendant Rose, because Plaintiffs' FISA Claim against Rose is based solely on insufficient *respondeat superior* allegations (*see* Section IV.E.I, *infra*).

Monteilh's recordings invaded their reasonable expectation of privacy, a necessary element under FISA, and because the other alleged surveillance failed to state a claim under *Iqbal*.

In its FISA Order, the district court disagreed. (*See* ER 26-27 (FISA Order at 9-10).) But in reaching this conclusion, the trial court erred by failing to separately address each Plaintiffs' allegations against the Agent Defendants. Instead, the district court reduced 51 paragraphs of allegations to a single sentence: that the "FAC alleges that this surveillance often took place outside the presence of the informant and was all conducted without a warrant." (ER 27 (FISA Order at 10 (citing FAC ¶¶ 86-137)).) While the FAC is admittedly replete with allegations of purported surveillance, only 13 paragraphs out of 217 identify Fazaga, AbdelRahim, or Malik as the alleged targets of the challenged surveillance. (*See* ER 208, 228-230, 232-234, 236-238 (FAC ¶¶ 95, 172, 273, 178, 179, 192, 195, 201, 202, 206, 207, 209, 211).)

However, the district court's conflation of the individual Plaintiffs' allegations with each other, and with allegations concerning alleged surveillance of non-parties, is improper under FISA. Section 1810 provides a private right of action only to an "aggrieved person," that is, an individual who was the target of electronic surveillance under circumstances in which he or she had a reasonable expectation of privacy. *See* 50 U.S.C.§§ 1801(f), 1809, 1810.

-16-

"Aggrieved person" is coextensive with standing to assert claims under the Fourth Amendment. *See American Civil Liberties Union vs. National Security Agency*, 493 F.3d 644, 683 (6th Cir. 2007) (citing H.R. Rep. No. 95-1283, at 66 (1978)). Yet, "Fourth Amendment rights are personal rights which … may not be vicariously asserted." *Plumhoff v. Rickard,* 134 S. Ct. 2012, 2022 (2014) (internal citations omitted). In other words, each Plaintiff complaining of an unlawful search must separately establish that *his* Fourth Amendment rights – not some other party's rights – were violated. *Id.* ("the question before us is whether petitioners violated [plaintiff's] Fourth Amendment rights, not" another party's rights).

Government action will not offend the Fourth Amendment unless: (1) the individual has exhibited a subjective expectation of privacy and (2) the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. *United States v. Wachumwah*, 710 F.3d 862, 867 (9th Cir. 2013); *see also United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). Plaintiffs can establish a subjective expectation of privacy if they allege that they sought to preserve something as private. *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979). Whether or not an expectation of privacy is objectively reasonable is a question of law. *Nerber*, 222 F.3d at 599.

-17-

Thus, in order to overcome the Agent Defendants' assertion of qualified immunity, *each* Plaintiff must allege that the Agent Defendants intentionally invaded *his* well-established expectations of privacy. But once the FAC's allegations are properly segregated and connected to the named Plaintiffs, it is clear that Plaintiffs' allegations do not satisfy this requirement. Accordingly, the Agent Defendants are entitled to qualified immunity on Plaintiffs' FISA Claim.

**(a)    Surveillance Conducted In Monteilh's Presence Did Not Violate FISA**

Much of the surveillance alleged in the FAC pertains to audio and video surveillance that Monteilh conducted with devices he carried on his person, and therefore, these allegations cannot, as a matter of law, support Plaintiffs' FISA Claim. (*See e.g.* ER 181, 211-212, 216-217, 228-230, 232-234, 236-238 (FAC ¶¶ 2, 108, 124, 128-129, 172, 173, 178, 179, 192, 195, 201, 202, and 206).) But, with regard to their FISA Claim it was not "beyond debate," in 2006, that Monteilh's use of recording devices on his person violated the Plaintiffs' expectations of privacy.

The Fourth Amendment does not protect information that an individual "knowingly exposes to the public, even in his own home or office." *Wachumwah*, 710 F.3d at 867 (*quoting Katz v. United States*, 389 U.S. 347, 351

-18-

(1967)). "Undercover operations, in which the agent is a so-called 'invited informer,' are not 'searches' under the Fourth Amendment." *United States v. Mayer*, 503 F.3d 740, 750 (9th Cir. 2007). This is because an individual "generally has no privacy interest in that which he voluntarily reveals to a government agent." *Wachumwah*, 710 F.3d at 867; *see also Nerber*, 222 F.3d at 604 ("defendants bore the risk that their activities with the informants were being surveilled" using a video camera)*; see also United States v. Brathwaite*, 458 F.3d 376, 380-81 (5th Cir. 2006) (defendant "forfeited his privacy interest in those activities that were exposed to the CI".) And, as this Court recently held, the distinction between audio and video recording "is not constitutionally relevant". *Wachumwah,* 710 F.3d at 867 (internal quotations omitted).

This Court's opinion in *Wachumwah* is directly on point, and bars any FISA claim based on recordings made in Monteilh's presence. In *Wachumwah*, an undercover government agent wore a concealed audio-video recording device to a suspect's home. *Wachumwah*, 710 F.3d at 866. The suspect claimed that the recording violated his Fourth Amendment rights, but this Court soundly rejected the argument. *Id.* at 866-68. This Court held that "[w]hen [the suspect] invited the [undercover agent] into his home, he forfeited his expectation of privacy as to those areas that were knowingly expose[d] to the undercover agent." *Id.* at 867 (internal citations and quotations omitted). Accordingly, this

-19-

Court held that "an undercover agent's warrantless use of a concealed audio-video device in a home into which has been invited by a suspect does not violate the Fourth Amendment." *Id* at 868.

In light of the Court's holding in *Wachumwah*, Plaintiffs cannot claim that any of the alleged audio and video recordings taken with recording devices on Monteilh's person violated their expectations of privacy, including any recordings that allegedly occurred in mosques, homes, or other locations. (ER 181, 211-212, 216-217, 228-230, 232-234, 236-238 (FAC ¶¶ 2, 108, 124, 128-129, 172, 173, 178, 179, 192, 195, 201, 202, and 206).) Because Plaintiffs knowingly exposed their activities to Monteilh, they cannot plead that their expectation of privacy in these activities was well established. Accordingly, the Agent Defendants are entitled to qualified immunity with respect to alleged surveillance conducted by Monteilh using devices on his person.

On appeal, Plaintiffs argue, as they did below, that the invited informer doctrine does not apply in this case because the Agent Defendants conducted their investigation with a discriminatory intent, *i.e.*, "in bad faith." (APB at 63-66.) Even if Plaintiffs could plead bad faith, it would not save their FISA Claim, because motives are irrelevant to the Fourth Amendment analysis. *al-Kidd* at 2080 ("the Fourth Amendment regulates conduct rather than thoughts."). Indeed, the Supreme Court has "almost uniformly rejected invitations to probe

-20-

subjective intent" when examining the constitutionality of an alleged search. *al-Kidd* at 2081; *see also Wren*, 517 U.S. at 812 ("Not only have we never held … that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."); *see also Padilla*, 678 F.3d at 758 (finding that the Supreme Court's "decisions as a whole had emphasized that Fourth Amendment reasonableness is predominantly an objective inquiry") (internal citations and quotations omitted).

Plaintiffs cite to *Mayer* and *United States v. Aguilar*, 883 F.2d 662 (9th Cir 1989) in support of their contention that the Fourth Amendment contains a "good faith" requirement. But this argument reflects a misunderstanding of those authorities, as the "good faith" requirement articulated in *Aguilar* and *Mayer* is not a Fourth Amendment limitation, but a Fifth Amendment limitation on investigations. *See Mayer*, 503 F.3d at 751 ("Good faith has been an implicit requirement for investigations under the Fifth Amendment."); *cf., Wren*, 517 U.S. at 813 ("the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment"). As explained by this Court in *Mayer*, "good faith" means "not carried out for the purpose of abridging First Amendment freedoms." *Mayer*, 503 F.3d at 751. This Court added that "to avoid running afoul of the First Amendment," not the Fourth Amendment, the government must "ha[ve] a

legitimate law enforcement purpose." *Id.* Accordingly, *Mayer* and "*Aguilar* articulate[] a Fifth Amendment requirement of good faith." *Mayer*, 503 F.3d at 754. Thus, contrary to Plaintiffs' suggestion, neither *Mayer* nor *Aguilar* permit Plaintiffs to transform otherwise lawful surveillance into a violation of Plaintiffs' reasonable expectations of privacy merely by alleging a discriminatory intent.[4]

Accordingly, to the extent Plaintiffs' FISA claim is based on surveillance conducted in Monteilh's presence, the Agent Defendants are entitled to qualified immunity on these allegations.

> **(b)      Unattended Recordings In The Prayer Hall Did Not Violate FISA**

Plaintiffs Malik and AbdelRahim also claim that Monteilh allegedly left his recording devices unattended in a prayer hall while they were present. (ER 232-233 (FAC ¶¶ 192, 211).) As a result, only Malik and AbdelRahim may

---

[4] In any event, the FAC fails to allege bad faith. Instead, Plaintiffs concede that they were not intended to learn of the covert investigation, and therefore that the investigation could not have had the purpose of "abridging First Amendment Freedoms." (ER 225 (FAC at ¶ 160).) Plaintiffs also concede that Operation Flex was a counterterrorism investigation, *i.e.*, that it had a "legitimate law enforcement purpose." (ER 187-188, 195-196, 214, 217-218 (FAC at ¶¶ 24, 25, 26, 43, 117, 132).) Thus, even if Plaintiffs attempted to allege a "bad faith" search claim under the Fifth Amendment, the claim would nevertheless fail. Moreover, the government's assertion of the state secrets privilege would prevent the litigation of the Agent Defendants' supposed "bad faith," because the government's reasons for its investigation are privileged.

assert that Monteilh's unattended audio recordings violated FISA, but these allegations fail for two reasons: (a) because Plaintiffs fail to allege that the Agent Defendants intended to make such recordings and (b) because Plaintiffs fail to plead a well established expectation of privacy in their conversations in public places.

*First,* actionable violations of FISA must be intentional – accidental violations are not actionable. 50 USC §§ 1809 and 1810 ("a person is guilty of an offense if he *intentionally*…engages in electronic surveillance under color of law except as authorized by" statute) (emphasis added). But here, Plaintiffs fail to allege that the Agent Defendants *instructed* or intended Monteilh to leave unattended recording devices in the prayer hall while Malik and AbdelRahim were present. Instead, Plaintiffs allege only that Armstrong and Allen "received the notes where Monteilh said that he had recorded these conversations without being physically present, and never told him not do this." (ER 232-233 (FAC ¶ 192).) However, awareness after the fact is not synonymous with a pre-existing intent, and therefore, Plaintiffs fail to state a violation of FISA.

*Second*, speech voluntary disclosed in public places is not protected by the Fourth Amendment. *Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection"). Moreover, "the risk of being overheard by an

eavesdropper…. is the kind of risk we necessarily assume whenever we speak."

*Hoffa v. United States*, 385 U.S. 293, 303 (1966); *see also Aguilar*, 883 F.2d at

701 ("persons have no expectation of privacy or confidentiality in their

conversations and relations with other persons, no matter how secretive the

setting"). Accordingly, the recording of a person's speech, voluntarily disclosed

in a public place, cannot infringe on his reasonable expectation of privacy.

*United States v. Gonzalez*, 328 F.3d 543, 547-48 (9th Cir. 2003) (holding that

the expectation of privacy is diminished in places accessible to the community);

*United States v. Little*, 753 F2d 1420, 1435-1436 (9th Cir. 1984) (no reasonable

expectation of privacy in reception area when public may enter freely). Nor are

activities that take place within a religious institution afforded a greater

expectation of privacy than normally provided by the Fourth Amendment.

*Mayer*, 503 F.3d at 750-51; *see also Aguilar,* 883 F.2d at 696-703; *Presbyterian*

*Church v. United States*, 870 F.2d 518, 527 (9th Cir. 1989). Because "the

Fourth Amendment protects people, not places," an individual cannot invoke

the protections of the Fourth Amendment simply because he is overheard in a

church. *Katz*, 389 U.S. at 351. Instead, the dispositive considerations for

constitutional protection are whether an individual subjectively expected his

conversations to be private and whether the individual "took normal precautions

to maintain privacy." *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 213 (5th Cir.

2001). Courts may also consider the right, or lack thereof, to exclude others. *U.S. v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004) ("The absence of a right to exclude others from access to a situs is an important factor militating against a legitimate expectation of privacy").

In *Kee*, the plaintiffs claimed that the city and several government agents violated the Fourth Amendment and the Federal Wire Tap Act when the government agents recorded the plaintiffs' conversations at an outdoor grave site memorial service. 247 F.3d at 209-10. The district court granted summary judgment in favor of the defendants on the grounds that the plaintiffs failed to demonstrate a "subjective expectation of privacy in their conversations and prayers at the grave site," and that the defendants were entitled to qualified immunity. *Id.* at 210. On appeal, the Fifth Circuit affirmed, holding that the plaintiffs failed "to demonstrate that an issue of material fact exist[ed] as to whether their subjective expectation of privacy was violated." *Id.* at 217. The Fifth Circuit noted that the plaintiffs did not offer any evidence that they sought "to protect their conversations from 'uninvited ears,'" nor did they "assert that their oral statements were communicated free from the possibility of eavesdroppers who might have been in close proximity." *Id.* at 216. Additionally, the plaintiffs did not provide any evidence that they took affirmative steps to preserve their privacy. *Id.*

Plaintiffs have similarly failed to allege that it was beyond debate in 2006 that they had an expectation of privacy in their communications in the prayer halls. While Plaintiffs allege that the ICOI must grant permission to record in the prayer hall, and that signs notified congregants when an outside entity recorded an event (ER 233 (FAC ¶ 193)), these facts are irrelevant to the analysis of whether Malik and AbdelRahim sought to preserve their communications in the prayer halls as private by taking steps to prevent disclosure to the other inhabitants of the prayer halls. As noted above, activities held in a religious institution are not afforded a greater expectation of privacy than normally provided by the Fourth Amendment. Moreover, an individual cannot invoke the protections of the Fourth Amendment simply due to his location. *See Aguilar,* 883 F.2d at 696-703; *Katz,* 389 U.S. at 351. Malik and AbdelRahim conducted the alleged conversations in an area seemingly open to the public, and populated by Monteilh and other unidentified third parties. (ER 232-233, 237-238 (FAC ¶¶ 192, 211).) They thus bore the risk of being overheard, and therefore lacked a reasonable expectation of privacy.

**(c)     Plaintiffs Fail to Adequately Allege that the Agent**

**Defendants Placed Surveillance Devices In A Mosque,**

**House, Car and Phone**

On its face, the FISA Claim is limited to surveillance conducted by

Monteilh. (ER 247 (FAC ¶ 253 ("Defendants, under color of law, acting

through Monteilh, used electronic, mechanical, and/or other surveillance

devices, without a warrant")).) Thus, with regards to the FISA claim, this Court

need not consider Plaintiffs Fazaga and AbdelRahim's allegations that the

Agent Defendants "caused" listening devices to be installed a mosque, house,

car and phone. (ER 208-209, 237 (FAC ¶¶ 95, 209).)

But even if Plaintiffs attempt to shift tactics now, and include these

"listening devices" in their FISA Claim, their allegations still fail to meet the

plausibility standard set forth in *Iqbal*, because they do not allege any facts to

support these conclusory allegations. For example, Plaintiffs fail to allege how

they learned of these supposed devices, who installed the devices, when the

devices were installed, who (if anyone) discovered the devices, or where within

the mosque, house or car they were installed. Such naked assertions "devoid of

further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556

U.S. at 678.

* * *

In sum, the FAC fails to properly allege a violation of Plaintiffs' clearly established rights. Neither the surveillance conducted in Monteilh's presence nor the surveillance in the prayer hall violated Plaintiffs' reasonable expectations of privacy as protected by FISA Section 1810. Furthermore, the conclusory allegations of installed surveillance devices fail under *Iqbal*. Accordingly, this Court should reverse the district court and grant the Agent Defendants' motion to dismiss the Tenth Cause of Action.

**B.** **THE DISTRICT COURT PROPERLY DISMISSED THE DISCRIMINATION AND THE SEARCH CLAIMS UNDER THE STATE SECRETS PRIVILEGE**

The district court properly sustained the government's assertion of the state secrets privilege, and properly found that the privilege barred Plaintiff's Discrimination and Search Claims under *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (2010). While Plaintiffs assert that the district court's decision to dismiss the Discrimination and the Search Claims is a "profound abdication of its judicial responsibility," (APB at 24), this assertion ignores the plain language of the State Secrets Order, which faithfully adheres to well established precedent in this Circuit.

### 1. The District Court Properly Found That Litigation of Plaintiffs' Claims Necessarily Tread On Privileged Materials

In the State Secrets Order, the district court correctly found that the successful assertion of the state secrets privilege would deny the Defendants a valid defense. (ER 59-62 (SSO at 29-32).) "A successful assertion of privilege under *United States v. Reynolds*, 345 U.S. 1 (1953) will remove the privileged evidence from the litigation." *Jeppesen*, 614 F.3d at 1079. "Application of the privilege may require dismissal of the action." *Id.* at 1083. Of particular relevance to the Agent Defendants, "if the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant." *Id.* (internal citations and quotations omitted). Moreover, "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential." *Id.* at 1089. Accordingly, "it may become clear during the *Reynolds* analysis that dismissal is required at the outset." *Id.*

On this appeal, Plaintiffs claim that the district court erred in dismissing the Discrimination and the Search Claims because (a) Plaintiffs do not need privileged evidence to make their prima facie showing of discrimination (APB 37-41), (b) that the dismissal was premature (APB at 42-50), and (c) that the

-29-

Search Claim does not implicate the privileged materials. None of these arguments has merit.

### 2. *Plaintiffs' Claimed Ability To Prove Their Prima Facie Case Is Beside The Point*

Plaintiffs' suggestion that they can prove their *prima facie* case of discrimination without the privileged evidence reflects a misunderstanding of the State Secrets Order. In that order, the district court did "not speculate on what Plaintiffs already have in their possession and whether that is enough to prove their claims at this stage of the proceeding." (ER 61 (SSO at 31).) Rather, the district court based its decision, in part, on its finding "that privileged information provides essential evidence for Defendants' full and effective *defense* against Plaintiffs' claims." (*Id.*) The district court expanded on this critical finding, explaining that defending against Plaintiffs' allegations – *e.g.*, proving the investigation was not based improperly on religion and was not overbroad – would require Defendants "to summon privileged evidence related to … the subjects who may or may not have been under investigation, the reasons and results of those investigations, and their methods and sources." (*Id.*) In other words, it was the Agent Defendants' inability to defend themselves – not Plaintiffs' inability to support their allegations – that required dismissal of the Discrimination and Search Claim. Thus, Plaintiffs' claim that they can

establish a *prima facie* showing of discrimination without the privileged

evidence is simply beside the point.

> ### 3. The District Court Dismissed The Discrimination And The
> ### Search Claim At The Appropriate Stage

*Second*, Plaintiffs' claim that the district court acted precipitously in

dismissing the Discrimination and the Search Claim betrays a misunderstanding

of the consequences of the district court's ruling on the state secrets privilege.

Contrary to Plaintiffs' argument, *Jeppesen* explicitly *requires* the district court

to assess whether "the privilege deprives the *defendant* of information that

would otherwise give the defendant a valid defense to the claim." (ER 61 (SSO

at 31 (*quoting Kasza v. Browner,* 133 F.3d 1159, 1166 (9th Cir. 1998)).) Based

on the allegations in the FAC, it is obvious that any litigation of the Agent

Defendants' motives and tactics would require access to evidence removed

from the case by the state secrets privilege. Without the privileged evidence, the

Agent Defendants cannot offer evidence speaking to the central issue in this

case – who was targeted for surveillance, how they were surveilled and why.

Indeed, the district court correctly found that defending against Plaintiffs' First

Amendment claims would involve "fact-intensive questions that necessitate a

detailed inquiry into the nature, scope, and reasons for the investigations under

Operation Flex." (ER 62 (State Secrets Order at 32).) On the basis of this

decision, the district court properly dismissed the Discrimination and the Search Claims.

In an attempt to escape the district court's factual findings, Plaintiffs repeatedly mischaracterize their claim as "narrow" and argue that they will prevail with only minimal discovery into Operation Flex. (APB at 40.) This again misses the point. As the district court correctly found, Plaintiffs' "core allegation [is] that Defendants engaged in an indiscriminate investigation, surveillance, and collection of information of Plaintiffs … because they are Muslim." (ER 61 (SSO at 31).) Litigating this case will require an inquiry into the Agent Defendants' reasons for the investigation – information that is plainly barred by the state secrets privilege.

Finally, Plaintiffs ignore that the district court also found that "the subject matter of this case, Operation Flex, involves both privileged and nonprivileged information, which cannot be separated as a practical matter." (ER 64 (State Secrets Order at 34)). This entanglement of privileged and nonprivileged information is yet another reason why dismissal was proper in the district court.

### 4. *The Dismissal Of The Search Claim Was Proper*

Plaintiffs also claim that the district court erred by dismissing the Search Claim after upholding the state secrets privilege, because the government did not explicitly seek that dismissal in its motion to dismiss. (APB at 29-32.)

Plaintiffs raised this argument below, and the district properly rejected it. (ER 118 (Dkt. No. 63 at 67:16-20).) [5]

The district court is not bound by the four corners of the government's motion when ruling on whether a claim may proceed in light of the state secrets privilege. Instead, the district court may hear and consider arguments by a non-governmental party. *See Fitzgerald v. Penthouse Int'l*, 776 F.2d 1236, 1239 n.4 (4th Cir. 1985) (rejecting the argument that private parties cannot argue the effect of the government's assertion of the state secrets privilege). Here, the Agent Defendants explicitly requested dismissal of the Search Claim under the state secrets doctrine, and therefore, Plaintiffs' suggestion that the district court exceeded its powers lacks merit. (SER 211 (Dkt No. 57 at 33:12-21).)

Indeed, even in the absence of an explicit request by a party, the district court must still independently determine whether a cause of action may proceed in light of the state secrets privilege. For example, in *Jeppesen*, this Court noted that the district court must "assess whether it is feasible for the litigation to proceed without the protected evidence." *Jeppesen* at 1082. Thus, the law of this Circuit expressly calls on the district court, not the government, to

_____

[5] While the government did not seek dismissal of the Search Claim in its motion for summary judgment, the government acknowledged below – and again here – that the privilege may prevent litigation of the Search Claim. (SER 235-236 (*see* Dkt No. 55 at 4-5); *see also* Government's Brief at 53).

determine how a case may proceed in light of a successful assertion of the privilege.

Here, the district court properly relied on *Jeppesen* to conclude that it must independently evaluate which claims could proceed in light of the state secrets privilege. (ER 59-64 (State Secrets Order at 29-34).) In so doing, the district court found that Plaintiffs' Search Claim must be dismissed "because it is impossible to excise the facts directly related to this claim from the factual context of Operation Flex as a whole." (ER 64 (State Secrets Order at 34).) Based on its review of the Government's submissions, the district court found that Operation Flex, the subject of Plaintiffs complaint, "comprises only a small part of the *classified* mosaic in the FBI's larger counterterrorism investigations." (*Id.* (emphasis added).) Thus, any response to the Search Claim would require the disclosure of information covered by the state secrets privilege.

The district court properly dismissed the Search Claim for an additional reason: Plaintiffs' attempt to smuggle an element of discriminatory intent into the Search Claim. As described above, Plaintiffs claim that the invited informer doctrine is no defense to the Search Claim, because the Agent Defendants acted with a discriminatory intent, *i.e.*, in "bad faith." (APB at 63.) This argument is legally untenable, because "the Fourth Amendment regulates conduct rather

than thoughts" *al-Kidd* at 2080. But, to the extent Plaintiffs would base their Search Claim on the Agent Defendants' *reasons* for investigating Plaintiffs, the state secrets privilege necessarily applies. (*See also* Government's Brief at 53-4.) Accordingly, Plaintiffs' own theory of the case shows that the state secrets privilege required the district court to dismiss the Search Claim.

## C. FISA SECTION 1806(F) CANNOT BE USED TO LITIGATE THE MERITS OF PLAINTIFFS' CLAIMS

Plaintiffs appear to suggest, in their brief, that Section 1806(f) of FISA preempts the state secrets privilege. For the reasons stated in the Government's Brief, this contention lacks merit. (Government's Brief at 66-72)

More troubling, Plaintiffs also appear to contend that the district court could or should use Section 1806(f) to adjudicate the merits of Plaintiffs' claims – both the FISA and non-FISA claims – against the Agent Defendants through an *in camera* and *ex parte* proceeding under Section 1806(f) of FISA. (*See, e g,* APB at 59 ("the district court should have applied FISA's procedure… to any secret evidence related to electronic surveillance need to litigate the Non-FISA claims").

Plaintiffs offer no authority in support of this remarkable proposition, because none can be found. Neither the plain language of FISA, nor any other authority, supports Plaintiffs' request for a secret trial on secret evidence to

determine the Agent Defendants' personal civil liability. Indeed, any such adjudication would plainly violate the Agent Defendants' due process rights.

### 1.    Section 1806(f) Is An Evidentiary Procedure

Plaintiffs' suggestion that the *merits* of their claims may be adjudicated *ex parte* and *in camera* finds no support in the statutory text or the case law. Instead, the plain terms of Section 1806(f) reveal that the statute provides procedures for determining when the *government* can use information obtained from foreign intelligence surveillance. In other words, Section 1806(f) sets forth an evidentiary procedure, not a procedure to adjudicate individual officers' liability for violating the statute.

Section 1806(f) review determines only whether an aggrieved person may obtain discovery of "applications or orders or other materials relating to electronic surveillance or [] discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under [FISA]". 50 U.S.C.§ 1806(f). "[T]he FISA inquiry at issue [in Section 1806(f)] is merely to determine whether the [FISA] application and [FISA] order comply with the statutory requirements." *United States v. Belfield,* 692 F.2d 141, 149 (D.C. Cir. 1982); *see also United States v. Cavanagh*, 807 F.2d 787, 789 (9th Cir. 1986) (following Section 1806(f) to review "the government's application for the wiretap and the order authorizing it" for compliance with FISA). Indeed, by its

plain terms, Section 1806(g) dictates that, if the district court determines that the surveillance was unlawful, it shall either (a) suppress the unlawfully obtained evidence or (b) order the disclosure of the applications, orders, or other materials relating to electronic surveillance. 50 U.S.C. § 1806(g). Nothing in the statute permits the district court to determine the merits of a civil rights claim brought against federal officers in their individual capacities – and Plaintiffs cite no authority holding that the statutory language supports such a remarkable procedure.

### 2. An *In Camera* And *Ex Parte* *Adjudication Of The Agent Defendants' Liability Would Raise Serious Constitutional Questions*

Even if Section 1806 were susceptible to Plaintiffs' proffered interpretation, this Court should decline to reach it under the canon of constitutional avoidance. That canon "'requires a statute to be construed so as to avoid serious doubts as to the constitutionality of an alternate construction.'" *Ren v. Holder*, 648 F.3d 1079, 1092 (9th Cir. 2011) (quoting *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006)).[6]

---

[6] The canon typically applies only when a statute is subject to multiple interpretations, and one or more raises serious constitutional questions. *Ren*, 648 F.3d at 1092 ("even if the language had been ambiguous, the canon of constitutional avoidance requires us to come to the result discussed above.") Here, Plaintiffs do not suggest that section 1810(f) is ambiguous. Nor can they,

Here, Plaintiffs' proffered interpretation of the statute would likely violate several constitutional provisions. For example, *ex parte* and *in camera* adjudication of the Discrimination and Search Claims would violate the Agent Defendants' due process rights, because it would expose the Agent Defendants to personal liability without the benefit of counsel or the opportunity to mount a defense. Secret trials on secret evidence, conducted in chambers and without the benefit of counsel, cannot comport with due process.

Plaintiffs' requested procedure would also infringe on the Agent Defendants' Seventh Amendment right to a jury trial. "The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment." *Jacob v. City of New York*, 315 U.S. 752, 752 (1942). "It is settled law [] that the Seventh Amendment jury guarantee extends to statutory claims unknown to the common law, so long as the claims can be said to sound basically in tort, and seek legal relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999) (internal citations and quotations omitted); *see also Curtis v. Loether*, 415 U.S. 189, 194 (1974) (upholding the right to jury trial when

---

because the statute's plain terms demonstrate that Congress designed Section 1810(f) as an evidentiary procedure, not a procedure for adjudicating the merits of civil liability claims brought against federal officers. Thus, the canon could apply only if the Court were to find some latent ambiguity in the text, making it susceptible to Plaintiffs' proffered reading.

federal statute sounds in tort). In particular, both the United States Supreme Court and this Court have found that *Bivens* claims of the sort alleged here are subject to the Seventh Amendment's jury trial guarantee. *See Carlson v. Green*, 446 U.S. 14 (1980) and *Nurse v. United States,* 226 F.3d 996, 1005 (9th Cir. 2000).

But Plaintiff's suggested application of Section 1806(f) would deprive the Agent Defendants of this fundamental right. Indeed, Plaintiffs' suggestion that the district court determine the defendants' liability via a secret trial with secret evidence overlooks the fact that Plaintiffs have sued the Agent Defendants *in their individual capacities* and that these individuals are therefore entitled to the same constitutional protections as any other litigant. Accordingly, Plaintiffs' claims against the Agent Defendants in their individual capacity cannot proceed under the procedure requested by Plaintiffs.

**D.** **THE FTCA'S JUDGMENT BAR REQUIRES DISMISSAL OF ALL OF PLAINTIFFS' CLAIMS AGAINST THE AGENT DEFENDANTS**

The FAC's Eleventh Cause of Action alleges a violation of the Federal Tort Claims Act. (ER 247-248 (FAC ¶¶ 254-260).) Section 2676 of the FTCA makes clear that "[t]he judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise

to the claim." 28 U.S.C. § 2676 (emphasis added). Thus, where the district court enters judgment on a FTCA claim on behalf of the government, any claims against individual officer defendants arising out of the same core factual allegations must be dismissed. *See, e.g., Gasho v. United States*, 39 F.3d 1420, 1437 (9th Cir. 1994) and *Arevalo v. Woods*, 811 F.2d 487, 490 (9th Cir. 1987).

That is exactly what happened here. After the district court found that the government's assertion of the state secrets privilege warranted dismissal of all of Plaintiffs' claims against the United States, including the FTCA claim, the district court entered partial final judgment on all of the dismissed claims, including the FTCA claim. (ER 11-12 (Dkt No 129).) As a result of this final judgment, all of Plaintiffs' claims against the Agent Defendants – including the FISA Claim, the Discrimination Claims and Search Claim – must be dismissed. *See* 28 U.S.C. § 2676; (*see also* Government's Brief at 39-41.)

**E.  THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE DISCRIMINATION AND THE SEARCH CLAIMS**

As noted, both the state secrets privilege and the FTCA's judgment bar require dismissal of the Discrimination and the Search Claims against the Agent Defendants. But even if this Court were to reach the merits of those causes of action, it should find that the Agent Defendants are entitled to qualified immunity.

For Plaintiffs to overcome the defense of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083; *see also* Section VI.A.1, *supra*. With respect to Plaintiffs' Discrimination Claims, qualified immunity is particular appropriate because, when "the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Devereaux v. Perez*, 218 F.3d 1045, 1055 (9th Cir. 2000) (internal citations and quotations omitted). Based on the authorities cited below, it is, at best, an open question whether a covert criminal investigation whose admitted purpose is investigating terrorists violates the Free Exercise Clause, RFRA, or the Establishment Clause. Thus, even if this Court reverses the district court's dismissal on state secret grounds, it should nonetheless affirm the district court's order dismissing the Discrimination and the Search Claims on these alternative grounds. *See, e.g., Wood v. City of San Diego*, 678 F.3d 1075, 1086 (9th Cir. 2012) (Ninth Circuit "can affirm the district court on any basis supported by the record").

## 1. Defendant Rose Is Entitled To Qualified Immunity As To All Claims Under Iqbal

As the Supreme Court held in *Iqbal*, 556 U.S. at 676 , "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *See also Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012). Accordingly, in order for Plaintiffs to state a cause of action against Agent Defendant Pat Rose, they must allege that she has violated the Constitution through her own individual actions. *See Iqbal*, 556 U.S. at 676.

Here, Plaintiffs fail to allege any individual conduct by Rose. As the district court recognized in its order, out of 260 paragraphs in the FAC, only two have anything to do with substantive conduct by Rose. (ER 28-29 (FISA Order at 11-12 (*citing* FAC ¶¶ 22 and 138)).) But the district court erred in finding that these paragraphs stated a claim against her. Paragraph 22 alleges only that Rose was the Special Agent in charge of the entire Santa Ana branch office and that she supervised Agent Defendants Armstrong and Allen during the time period in question. (ER 186-187 (FAC ¶ 22).) Paragraph 138 alleges that that Defendant "Rose maintained extremely close oversight and supervision of Monteilh [and] knew in great detail the nature and scope of the operation, including the methods of surveillance Monteilh used and the criteria used to

decide his targets, and continually authorized their ongoing use." (ER 39 (FAC ¶ 138).) These allegations amount to *respondeat superior*, nothing more, and therefore cannot give rise to liability under *Iqbal*.[7]

Indeed, the Supreme Court rejected precisely these kinds of allegations in *Iqbal*. There, the plaintiff alleged that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Iqbal*, 556 U.S. at 680. The Supreme Court held that these allegations were not entitled to the assumption of truth because they were a mere "'formulaic recitation of the elements' of a constitutional discrimination claim." *Id*. at 681. "As such, the allegations [were] conclusory and not entitled to be assumed true." *Id*.

This Court's recent decision in *Chavez* provides further support for Agent Rose's position. In *Chavez*, plaintiffs, who operated a shuttle service in Arizona, alleged that Border Patrol agents stopped their shuttle in violation of their Fourth Amendment rights. Plaintiffs brought *Bivens* claims against both the agents who stopped them and against supervisors who they claimed

---

[7] Plaintiffs also allege that Defendant Rose gave a speech at the Irvine Pacific Club, and also planned to open a "Muslim gym" so that the FBI could monitor Muslims while they exercised. (ER 186-187, 197, 221-222 (FAC ¶¶ 22, 43, 145).) The FAC does not seek any relief for these supposed actions, and therefore they are irrelevant.

reviewed and directed the stops. Relying on both *Iqbal* and *Bell Atlantic Corp.*
*v. Twombly,* 550 U.S. 544 (2007), the Ninth Circuit in *Chavez* held that
plaintiffs' conclusory allegations failed to state a claim against all of the
supervisors but one, a direct participant in the stops (discussed below). *Chavez*,
683 F.3d at 1108-12. The Court noted that "[t]he Court discounts, as it must, the
plaintiffs' wholly conclusory allegations that the supervisory defendants
'personally reviewed and, thus, knowingly ordered, directed, sanctioned or
permitted' the allegedly unconstitutional stops." *Id. at 1110*. Having discounted
these conclusory allegations, the Court held that "the remaining allegations do
not plausibly suggest that these supervisors clearly should have regarded their
conduct as unlawful." *Id.* Thus, the plaintiffs failed to state a claim against,
*inter alia*, the supervisor who had line authority over and direct responsibility
for the activities of the Border Patrol agents who made the stops, as well as the
supervisors who had failed to investigate Plaintiffs' earlier complaints about the
frequent stops. *Id.* at 1110-11.

The Court left standing the claims against just one supervisor, Agent
Hunt. The Court noted that "[i]n contrast to the other supervisory defendants,
Hunt faces liability not only as a supervisor, *but also for his direct participation*
*in the stops*." *Id.* at 1111-12 (emphasis added). The Court focused on the
allegations that Agent Hunt had twice personally stopped the plaintiffs' shuttle

-44-

based solely on their and their passengers' apparent Mexican ancestry, a characteristic that a reasonable officer clearly would have known did not create a reasonable suspicion. *Id*. Accordingly, based on Agent Hunt's personal participation in the underlying conduct, the Court held that the complaint adequately stated a claim against him for Fourth Amendment violations and that qualified immunity did not shield him from liability. *Id*.

Plaintiffs' complaint similarly fails to plead any facts suggesting that Rose took an active role in Monteilh's surveillance activities. Unlike Agent Hunt in *Chavez,* Rose is not accused of personally conducting any of the surveillance complained of in the FAC. Nor is she accused of personally directing any of Monteilh's allegedly unconstitutional behavior. Accordingly, the district court erred when it denied Rose's motion dismiss.

### 2. Qualified Immunity Bars The Free Exercise And RFRA Claims

The central allegation of the FAC is Plaintiffs' claim that Agents Allen and Armstrong discriminated against Plaintiffs on the basis of their religion in conducting their investigation. The FAC does not allege that Defendants Allen or Armstrong had any authority over the broader FBI investigation of Southern California mosques – it alleges only that they mishandled Monteilh. However,

-45-

qualified immunity shields the Agent Defendants from personal liability for all of these claims.[8]

### (a) Plaintiffs Fail To Plead A Substantial Burden On Their Religion

Plaintiffs' Third and Fourth Causes of Action alleges a violation of the Free Exercise Clause of the First Amendment, while the Fifth Cause of Action alleges a violation of the RFRA, which protects the same religious freedoms embodied by the Free Exercise Clause. *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008).

Plaintiffs conceded below that these claims depend on their pleading a "substantial burden," but contended that they satisfied this requirement by alleging that the FBI "'discourage[d]' mosque attendance and religious practice." (ER 107 (Dkt No. 63 at 56:9-58:4).) However, under controlling Supreme Court and Ninth Circuit precedent, Plaintiffs' alleged burdens are nothing more than subjective chilling effects that are not constitutionally cognizable.

---

[8] As explained elsewhere in the brief, these claims fail for a number of other reasons, including the state secrets privilege (Section VI.B), the FTCA judgment bar (Section VI.D), Plaintiffs' failure to plead a conspiracy (Section VI.E), and Plaintiffs' lack of entitlement a *Bivens* remedy (Section VI.G). If the Court affirms the dismissal Plaintiffs' claims on these alternate grounds, it need not reach the qualified immunity question.

-46-

In this Circuit, it is well established that the free exercise of religion can be burdened *only* when "individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (*Sherbert*)[,] or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*)." *Navajo Nation*, 535 F.3d at 1070. For example, in *Navajo Nation*, plaintiffs alleged that the government's use of recycled wastewater on a sacred mountain imposed a substantial burden on their exercise of religion in violation of RFRA.[9] *Id.* at 1062-63. This Court found that the use of the recycled wastewater did not constitute a substantial burden because the plaintiffs were not forced "to choose between following the tenets of their religion and receiving a governmental benefit" and were not coerced "to act contrary to their religion under the threat of civil or criminal sanctions." *Id.* at 1070.

A government investigation does not impose a burden on the free exercise of religion unless it coerces the target of the investigation to do (or not do) something. For instance, in *Gering*, an ordained minister challenged the government's use of a mail cover (*see* 39 C.F.R. § 233.3(c)(1)) to investigate the contributors to a sponsorship program. *United States v. Gering*, 716 F.2d

---

[9] The Ninth Circuit explained that there is no distinction between "burden" or "substantial burden," as the Supreme Court has used the terms interchangeably. *Navajo Nation*, 535 F.3d at 1075 n.17.

615, 618 (9th Cir. 1983). The minister argued that the mail cover amounted to a *per se* violation of his religious rights under the First Amendment, because "the mere potential for abridgement of religious freedom should invalidate the mail cover." *Id.* at 619. This Court rejected this argument, holding that the mere potential for abridgement of First Amendment rights without some showing that "the mail covers were improperly used and burdened his free exercise or associational rights" was insufficient to show a violation. *Id.* at 620.

Similarly, in *Vernon*, a retired Assistant Chief of the Los Angeles Police Department claimed that a government investigation "retarded him in the exercise of his religious beliefs, including worship, consultation with his pastor, participation in Christian fellowship, and giving public testimony to his faith without severe consequences." *Vernon*, at 1390. Vernon further alleged that the investigation into his religious beliefs "caused him to suffer extreme embarrassment, anxiety, and fear in the pursuit of his religious [] affairs." *Id.* The district court found that plaintiff Vernon failed to establish a substantial burden on his free exercise, finding it "inadequate for a plaintiff merely to allege that government action subjectively 'chills' his religious behavior, especially where the government action is neither regulatory, proscriptive, or compulsory in nature." *Id.* at 1394 (quoting the district court's order). On appeal, this Court affirmed, characterizing Vernon's claims as "mere subjective

chilling effects with neither 'a claim of specific present objective harm nor a threat of specific future harm.'" *Id.* at 1395 (quoting *Laird v. Tatum*, 408 U.S. 1, 13 (1972)). The Court noted that such "chilling effects" are not constitutionally cognizable. *Id.* at 1395.

The Plaintiffs' allegations of burden suffer from the same flaw as in *Navajo Nation, Gering* and *Vernon*: they fail to allege that government action forced or coerced them to do something contrary to their religion. Nor could they, because as Plaintiffs concede, they were unaware of the surveillance alleged in the FAC at the time it occurred. (ER 225 (FAC ¶ 160 ("Plaintiffs did not know and could not reasonably have known that Monteilh was working for the FBI as an informant")).) Surveillance that occurred without Plaintiffs' knowledge cannot, by definition, burden their religion, because it cannot require or prohibit conduct that violates their religious beliefs.

At most, Plaintiffs allege some reluctance to engage in religious practices when they learned about Monteilh's role in the investigation *after* that investigation ended. (*See* ER 201, 204, 230, 231, 234 (FAC ¶¶ 64-65, 78, 183, 185, 196-197).) But Plaintiffs' alleged decisions to decrease mosque attendance and to alter their dress, grooming and donations, were not brought about by any threat of civil or criminal sanctions, and therefore do not satisfy the test articulated in *Navajo Nation*. (SER 108-109 (Dkt No. 63 at 57:22-58:4).)

-49-

In short, Plaintiffs fail to allege any action on the part of the Agent Defendants, through the use of the informant or otherwise, that forced them to choose between following the tenets of their religion and receiving a governmental benefit, or that coerced them to act contrary to their religious beliefs by the threat of civil or criminal sanctions. Instead, Plaintiffs allege nothing more than "mere subjective chilling effects," which are insufficient as a matter of law to substantially burden religion. *See Navajo Nation,* 535 F.3d at 1063 ("a government action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion is not" a substantial burden). Without alleging a constitutionally cognizable burden, Plaintiffs cannot state a cause of action for violation of the Free Exercise Clause or RFRA.

**(b)      The Investigation Advanced A Compelling Government Interest**

Even if Plaintiffs had alleged a cognizable burden on their religious rights, the mere existence of that burden is not enough to violate the Free Exercise Clause or RFRA. Instead, Plaintiffs must show that the burden was not "justified by a compelling governmental interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993); *Navajo Nation*, 535 F.3d at 1068. It appears that Plaintiffs contend that because the

investigation targeted them on the basis of their religious beliefs, the government could have had no legitimate purpose. (APB at 42-43.)

As an initial matter, Plaintiffs cannot litigate the government's interest here, because the state secrets privilege protects the targets of surveillance, and the reasons for their surveillance, are protected by the state secrets privilege. But even putting that issue aside, Plaintiffs' own allegations concede a compelling government interest. Specifically, Plaintiffs concede that Monteilh's activities were part of larger counterterrorism investigation. (ER 187-188, 195-196, 214, 217-218 (FAC ¶¶ 24, 25, 26, 43, 117, 132).) Plaintiff's concession on this point is buttressed by the district court's express findings in the State Secrets Order. (*See* ER 55-59 (State Secrets Order at 25-29 ("The Court is convinced that the subject matter of this action, Operation Flex, involves intelligence that, if disclosed, would significantly compromise national security.").) Furthermore, Plaintiffs do not allege that discrimination was the purpose of Operation Flex, but rather that the FBI infringed on their rights in its efforts to investigate terrorism . "It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (internal citations omitted). In other words, Plaintiffs admit that the purpose of the investigation involved a compelling

government interest – not a desire to infringe on Plaintiffs rights – and therefore the Free Exercise and RFRA Claims fail.

### (c) The Investigation Was Narrowly Tailored To Further A Compelling Government Interest

Moreover, Plaintiffs fail to allege that the use of Monteilh as a confidential informant in the alleged investigation was not narrowly tailored, or the least restrictive means, to further the government's interest in preventing terrorism. The Free Exercise Clause requires that government action be narrowly tailored to further a compelling government interest, *Lukumi*, 508 U.S. at 531-32, while RFRA requires that the government employ the least restrictive means to further a compelling government interest. *Navajo Nation*, 535 F.3d at 1068. However, the First Amendment does not "prohibit law enforcement officials from using an indispensable method of criminal investigation appropriate in any other circumstance." *Aguilar*, 883 F.2d at 705. Because the Agent Defendants' use of a confidential informant was permitted by the Fourth Amendment, Plaintiffs have failed to allege that the investigation was not narrowly tailored, nor the least restrictive means, to further the government's interest in investigating potential threats to national security. For this additional reason, the Free Exercise and RFRA Claims fail.

### 3. *Qualified Immunity Bars The Establishment Clause Claims*

Plaintiffs' First and Second Causes of Action allege a violation of the Establishment Clause of the First Amendment, which prohibits any law "respecting an establishment of religion." U.S. CONST. AMEND I. The Supreme Court has interpreted the Establishment Clause to forbid not only the preference but also the hostility towards any religion. *Nurre v. Whitehead*, 580 F.3d 1087, 1095-96 (9th Cir. 2009). The Ninth Circuit applies the traditional test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971) to determine whether the government's actions have offended the Establishment Clause. *Id.* at 1095-96. In order to state a claim under the Establishment Clause, Plaintiffs must allege that government (1) did not have a secular purpose for its conduct, (2) that its principal or primary effect was the advancement or inhibition of religion, and (3) that it fostered an excessive governmental entanglement with religion. *Id.*

#### (a) Plaintiffs Fail To Allege Improper Purpose

The first prong of the *Lemon* test requires Plaintiffs to allege that the "government's actual purpose is to endorse or disapprove of religion." *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993) (*quoting Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (O'Connor, J., concurring).) Government action will survive the purpose prong unless the "government acts with the ostensible and predominant purpose of inhibiting religion." *Nurre*, 580 F.3d at

1096 (internal quotations and citations omitted). "A reviewing court must be reluctant to attribute unconstitutional motives to government actors in the face of a plausible secular purpose." *Kreisner*, 1 F.3d at 782 (internal quotations and citations omitted).

Plaintiffs fail to allege that the Agent Defendants used Monteilh with the purpose of inhibiting religion or even to discriminate among religions. Instead, the FAC admits that the investigation was *covert*, meaning that it was conducted without Plaintiffs' knowledge. (*See e.g.* ER 225 (FAC ¶ 160).) No religious practitioner can plausibly claim that their religious practices were inhibited by an investigation they knew nothing about and were never intended to discover. Because Plaintiffs cannot allege a purpose of inhibiting religion, the Establishment Clause claims fail.

### (b) Plaintiffs Fail To Allege the Sending of A Message

The second prong of the *Lemon* test requires Plaintiffs to plead that the investigation could "be construed as sending primarily a message of… disapproval of religion." *Vernon*, at 1398 (*citing County of Allegheny v. ACLU*, 492 U.S. 573, 592-93 (1989)). Government action has the primary effect of disapproving of religion if it is likely to be perceived by nonadherents of the controlling denominations as a disapproval of their religious choices. *Nurre*, 580 F.3d at 1096. However, "[t]his is an objective test, asking whether a

reasonable observer who is 'informed and familiar with the history of the government practice at issue,' would perceive the action as having a non-secular effect." *Id.* (internal citations and quotations omitted). "[T]he key consideration in this second prong analysis is whether the government action 'primarily' disapproves of religious beliefs." *Vernon,* at 1398.

Again, Plaintiffs cannot allege that the investigation sent a message of disapproval of Islam, because the investigation was covert. (ER 225 (FAC ¶ 160).) A covert investigation, by definition, cannot send a message to targets that are unaware of the investigation. Because the government's admitted purpose was to *conceal* the investigation from Plaintiffs – and from any other potential targets of the investigation – disapproval of religion could not be objectively construed as the primary focus or effect of the investigation. Defendants cannot "send a message" of disapproval through action that neither Plaintiffs nor anyone else knew about.

### (c)    Plaintiffs Failed To Plead Excessive Entanglement

The third and final prong of the *Lemon* test requires a showing that the government action "foster[s] excessive entanglement with religion." *Lemon*, 403 U.S. at 613. Not all entanglements violate the Establishment Clause: only those "that demonstrate that a government program has the impermissible effect of advancing hostility toward religion" are prohibited. *Nurre*, 580 F.3d at 1097.

"The entanglement prong seeks to minimize the interference of religious authorities with secular affairs and secular authorities in religious affairs." *Cammack v. Waihee*, 932 F.2d 765, 780 (9th Cir. 1991). Here, Plaintiffs fail to allege any interference with religious affairs. Nor can they, when the covert nature of the investigation necessarily precludes any entanglement. (ER 225 (FAC ¶ 160).)

### 4. *Qualified Immunity Bars The Equal Protection Claims*

Plaintiffs' Equal Protection claims are subsumed by, and are co-extensive with, Plaintiffs' First Amendment claims, as "[i]t is generally unnecessary to analyze laws which burden the exercise of First Amendment rights by a class of persons under the equal protection guarantee, because the substantive guarantees of the Amendment serve as the strongest protection against the limitation of these rights." *Orin v. Barclay*, 272 F.3d 1207, 1213 (9th Cir. 2001) (*citing* John E. Nowak *et al.*, Handbook on Constitutional Law (1978)).

In *Orin*, a protestor was told by a community college official that he could conduct an anti-abortion protest on campus only if he refrained from, among other things, couching his protest in overtly religious terms. *Id.* at 1211. After his subsequent arrest at the protest, Plaintiff sued the college official, a police officer, and others under 42 U.S.C. §§ 1983 and 1985(3) for, *inter alia*, violation of the Equal Protection Clause and his First Amendment free exercise

-56-

rights. *Id.* The Ninth Circuit, noting that Plaintiff's Equal Protection claim appeared to be "no more than a First Amendment claim dressed in equal protection clothing," held it subsumed by, and co-extensive with, his First Amendment claim, and thus analyzed Plaintiff's free exercise claims directly rather than as a component of his Equal Protection claim. *Id.* Here, Plaintiffs' Equal Protection claims are likewise subsumed by their First Amendment claims. Thus, because the Agent Defendants are entitled to qualified immunity on Plaintiffs' First Amendment claims, they are likewise entitled to qualified immunity on the Equal Protection claims.

### 5. *Qualified Immunity Bars The Search Claim*

Dismissal of Plaintiffs Search Claim should also be affirmed on the alternative grounds that the Agent Defendants are entitled to qualified immunity for the same reasons articulated in the FISA discussion above – Plaintiffs failed to allege a violation of a clearly established right: (a) because Plaintiffs fail to allege that any conduct of Monteilh violated their reasonable expectation of privacy and (b) Plaintiffs failed to allege any investigative conduct not involving Monteilh (such as the placement of "listening devices" by unknown third parties) under *Iqbal*.

**F.** **PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985(3)**

Three of Plaintiffs' Discrimination Claims – the Second, Fourth, and Seventh Causes of Action – allege that the individual capacity defendants conspired among themselves to violate Plaintiffs' First Amendment and Equal Protection rights, in violation of 42 U.S.C. § 1985(3). (ER 243, 244, 245 (FAC ¶¶ 230, 237, 244).) In order to successfully plead a cause of action pursuant to Section 1985(3), Plaintiffs must allege, in a non-conclusory fashion, four elements: (1) a conspiracy (2) for the purpose of depriving Plaintiffs of the equal protection of the laws or of equal privileges and immunities, and (3) an act in furtherance of the conspiracy (4) that causes injury to Plaintiffs. *See United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-829 (1983). Even assuming that any defendant's conduct violated the Constitution, these statutory conspiracy claims fail because Plaintiffs fail to allege either an actionable conspiracy or an intent to violate Plaintiffs' constitutional rights.

**1.** ***Plaintiffs Fail To Allege A Conspiracy Under Section 1985(3)***

Plaintiffs fail to allege (except in the most conclusory language) that the Agent Defendants reached an agreement or "meeting of the minds" to violate Plaintiffs' constitutional rights. *See, e.g., Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). The lack of any factual, non-conclusory

allegation that any defendant entered into such an agreement is fatal to the Section 1985(3) claims.

Nor can Plaintiffs allege such a conspiracy, because an entity cannot conspire with its own employees or agents. "'It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000). (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952)); *see also Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). The Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have extended this "intracorporate conspiracy doctrine" to Section 1985(3) claims, finding that the doctrine's logic applies equally in both contexts. *See Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768-69 (11th Cir. 2000) (listing Circuits); *Hoefer*, 92 F. Supp. 2d at 1059 (same); *Blunt v. County of Sacramento*, No. 2:04-cv-1743, 2006 U.S. Dist. LEXIS 11099 at *36 (E.D. Cal. Mar. 2, 2006) (noting only the First and Third Circuits ruling contrary to the clear majority). Accordingly, where members of the same corporation or governmental body allegedly conspired with each other while acting in the course and scope of their employment, federal courts have held that the intracorporate conspiracy

doctrine bars a Section 1985(3) claim. *See, e.g., Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (rejecting alleged conspiracy among city employees); *Wright v. Ill. Dept. of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir. 1994) (same for employees of department of children & family services); *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985) (same for Tribal Council); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (same for employees of public university).

While this Court has yet to reach the question of whether the intracorporate conspiracy doctrine applies to Section 1985 claims, *see Portman v. County of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993), the vast majority of California district courts to consider the issue have held that the doctrine does apply. *See, e.g., Woldeab v. 7-Eleven, Inc*., No. 03-0615, 2006 U.S. Dist. LEXIS 82191, *9 (S.D. Cal. Nov 8, 2006) ("the modern and majority rule is that the [intracorporate conspiracy doctrine] does bar" a 1985(3) claim); *Hoefer*, 92 F. Supp. 2d at 1059; *see also Rabkin v. Dean,* 856 F. Supp. 543, 551 (N.D. Cal. 1994); *Blunt,* 2006 U.S. Dist. LEXIS at *36; *Mory v. City of Chula Vista*, No. 07CV0462, 2008 U.S. Dist. LEXIS 9911, *19 (S.D. Cal. Feb. 11, 2008). Ninth Circuit district courts outside of California have also applied the doctrine to Section 1985(3) claims. *See, e.g., Schmitz v. Mars, Inc*., 261 F. Supp. 2d 1226, 1235 (D. Or. 2003) ("This Court finds most persuasive the analysis of the

*Hoefer* court and the majority of circuit courts that have held the [] doctrine applies to § 1985 actions."); *Wolde-Giorgis v. Dillard*, No. 06-0289, 2006 U.S. Dist. LEXIS 71356 (D. Ariz. Sept. 22, 2006).

Here, all of the conspirators identified by Plaintiffs are part of a single government entity, the FBI. (ER 184-187 (FAC ¶¶ 15-22).) Because these defendants were all effectively acting as the FBI itself when they entered into their alleged illicit agreement, they could not have engaged in a conspiracy as a matter of law, and Plaintiffs' Section 1985(3) claims fail.[10]

### 2. Plaintiffs Failed To Allege An Unlawful Purpose

A Section 1985(3) conspiracy "for the purpose of depriving … any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," requires an intent to deprive persons of a protected right. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 274 (1993). As the Supreme Court noted in *Bray*, a

> conspiracy is not "for the purpose" of denying equal protection
> simply because it has an effect upon a protected right. The right
> must be "*aimed at*"; its impairment must be a conscious objective
> of the enterprise…. [T]he "intent to deprive of a right" requirement

---

[10] The Agent Defendants also join in Defendants Tidwell and Walls' argument that it was not clearly established at the time of Operation Flex that that Section 1985(3) applies to conspiracies other than those motivated by racial animus.

demands that the defendant do more than merely be aware of a

deprivation of right that he causes, and more than merely accept it;

he must act at least in part for the very purpose of producing it.

*Id.* at 275-76 (citation omitted) (emphasis in original). Plaintiffs alleging an

unlawful conspiracy must plead specific facts in a nonconclusory fashion to

survive a motion to dismiss. *See Gooden v. Howard County*, 954 F.2d 960, 969-

70 (4th Cir. 1992). Simply copying the statute's language to the complaint is

inadequate. *Id.*

The case law is replete with Section 1985(3) claims that fail this

standard. For example, in *Bray*, the Supreme Court reversed an injunction

prohibiting demonstrations at abortion clinics, holding, *inter alia*, that the

abortion clinics had not demonstrated that the constitutionally protected right

alleged to have been violated by the protestors (the right to travel interstate) was

a "conscious objective of the enterprise" as opposed to a right merely

incidentally affected. *Bray*, 506 U.S. at 275. The Court explained that

"Petitioners oppose abortion, and it is irrelevant to their opposition whether the

abortion is performed after interstate travel." *Id.* at 276. The Court also noted

that "a conspiracy to rob an interstate traveler would not, of itself, violate [18

U.S.C.] § 241 [the criminal counterpart to 1985(3)]. But if the *predominant*

*purpose* of the conspiracy is to impede or prevent the exercise of the right of

-62-

interstate travel, or to oppress a person because of his exercise of that right, then . . . the conspiracy becomes a proper object of [Section 241]." *Id.* at 275 (internal quotation marks omitted) (emphasis added).

Courts analyzing Section 1985(3) claims have found conscious interference with the plaintiff's religious liberties when the defendant's conduct was intended to disrupt services. For example, in *Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971), members of a predominantly white Catholic parish sued the Black Liberation Front and an interracial organization to enjoin those groups from disrupting religious services. The defendants allegedly entered the church during services, formed a line in front of the communion rail, blocked the area where services were to be held (resulting in cancellation of the services), and otherwise actively disrupted the congregants' rights of freedom of assembly and worship. *Id.* at 1229-30. The Eighth Circuit held that this purported scheme was cognizable under Section 1985(3), as the purpose of the conspiracy was to interfere with the plaintiffs' First Amendment rights of freedom of assembly and worship. *Id.* Likewise, in *Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984), the purpose of the alleged conspiracy was to disrupt and impede plaintiffs' efforts to associate with others to express opposition to the Vietnam War and other government actions. *Hobson,* 737 F.2d at 9. To accomplish that goal, the FBI allegedly distributed false press releases

tarnishing the reputation of one of the members of the targeted group and encouraged sources to "stimulate dissension" in the group. *Id.* at 12. These deliberate efforts to disrupt the exercise of First Amendment rights were actionable under Section 1985(3).

In contrast to the plaintiffs in *Action* and *Hobson*, here Plaintiffs allege no similar purposeful violation of their First Amendment rights. They allege no deliberate disruption of their religious activities or other actions to dissuade members from attending services. Indeed, the allegedly violative conduct was *covert* – meaning that Plaintiffs *were not supposed to find out about it*. (*See e.g.* ER 225 (FAC ¶ 160).)  A covert investigation cannot be intended to dissuade the investigative target from attending services because, by definition, the target does not know about the investigation. To the extent Plaintiffs' rights of freedom of assembly and worship were allegedly affected, this occurred only *after* Monteilh ceased being an informant and his previous activities were revealed. Plaintiffs' alleged injury was thus *incidental* to the alleged conspiracy to conduct surveillance, not its purpose, as in *Action* and *Hobson*. If it had been the Agent Defendants' conscious objective to deprive Plaintiffs of their rights, then the scheme would undoubtedly have been an overt plan to impede gatherings of Muslims at mosques or to otherwise inhibit their religion, rather than a covert investigation about which Plaintiffs were deliberately kept

ignorant. Thus, Plaintiffs have not sufficiently alleged that the Agent

Defendants acted with the purpose of depriving Plaintiffs of their First or Fifth

Amendment rights.

## G. PLAINTIFFS FAIL TO STATE A CLAIM UNDER *BIVENS*

### 1. *Plaintiffs' Have No Automatic Right to a* Bivens *Remedy*

Three of Plaintiffs' Discrimination Claims – the First, Third and Sixth

Causes of Action – seek monetary damages directly under the First and Fifth

Amendments to the United States Constitution pursuant to *Bivens v. Six*

*Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

(ER 242, 243, 244 (FAC ¶¶ 227, 232, 241).) However, the Supreme Court has

never recognized a *Bivens* action for violations of the Free Exercise,

Establishment or Equal Protection Clauses. *See, e.g., Wilkie v. Robbins*, 551

U.S. 537, 550 (2007) (noting that the Supreme Court has recognized *Bivens*

claims in just three contexts: unreasonable searches in violation of the Fourth

Amendment, employment discrimination in violation of the Due Process

Clause, and prisoner abuse under the Eighth Amendment); *Mirmehdi v. United*

*States*, 689 F.3d 975, 980 (9th Cir. 2012)(same). Accordingly, Plaintiffs have

no "automatic entitlement" to a judicially devised cause of action for money

damages under *Bivens*. *Id.*

-65-

In *Wilkie*, the Supreme Court articulated "a two-step analysis for determining congressional intent as to the appropriateness of a *Bivens* remedy." *Western Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009). "First, the Court determines whether there is 'any alternative, existing process for protecting' the plaintiff's interests." *Id.* "Such an alternative remedy would raise the inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and 'refrain from providing a new and freestanding remedy in damages.'" *Id.* (*citing Wilkie,* 551 U.S. at 550, 554); *see also Mirmehdi*, 689 F.3d at 982.[11]

The Supreme Court has repeatedly found that Congressional action has foreclosed the creation of a *Bivens* remedy for the same types of constitutional injuries alleged here. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 388 (1983) (claim precluded by an "elaborate remedial system" – culminating with the Civil Service Reform Act – for dealing with federal employee claims of First Amendment discrimination); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (Social Security Act precluded Fifth Amendment due process claim). The Ninth

---

[11] The second step involves determining "whether there nevertheless are 'factors counseling hesitation' before devising such an implied right of action." *Id.* at 1120. The Agent Defendants join in Defendants Walls and Tidwell's and Defendants United States of America, FBI, Mueller and Martinez's analysis of this second step. (SER 146-148 (Dkt No 58 at 14-16).) The Agent Defendants also join in Defendants Walls and Tidwell's argument that RFRA and FISA are additional statutory schemes that preclude a *Bivens* remedy here.

Circuit has identified several statutory schemes that preclude *Bivens* claims,

including claims arising under the Fifth and First Amendments. *See, e.g.,*

*Mirmehdi*, 689 F.3d at 982 (immigration procedures and habeas relief precluded

*Bivens* action); *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir. 1989)

(following *Bush*); *Western Radio*, 578 F.3d at 1117 (Administrative Procedures

Act bars First and Fifth Amendment claims); *Adams v. Johnson*, 355 F.3d 1179

(9th Cir. 2004) (Internal Revenue Code bars First and Fifth Amendment

claims); *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003) (customs

laws bar claims presumably brought under Fifth Amendment); *Berry v.*

*Hollander*, 925 F.2d 311, 314 (9th Cir. 1991) (Veterans Administration

regulations bar First and Fifth Amendment regulations).

### 2. *Plaintiffs'* **Biven** *Claim is precluded by the Privacy Act*

In 1974, Congress enacted the Privacy Act in order to set forth "detailed

instructions" governing the government's "collection, maintenance, use, and

dissemination of information" about individuals in agency records. *Doe v.*

*Chao*, 540 U.S. 614, 618 (2004); *see also* 5 U.S.C. § 552a(a)(3). Of particular

relevance here, the Privacy Act explicitly requires federal agencies to "maintain

no record describing how any individual exercises rights guaranteed by the First

Amendment" unless certain exceptions apply. 5 U.S.C. § 552a(e)(7). The term

"maintain" as used in subsection (e)(7) includes "collect." *Id.* § 552(a)(3). Thus,

the Privacy Act limits the government's ability to collect information on a citizen's religious activity.

Congress also crafted a carefully calibrated set of judicial remedies for violations of the Privacy Act, including violations of the religious provisions of subsection (e)(7). A citizen aggrieved by a violation of the Privacy Act may bring a civil suit against the agency, and obtain a minimum $1000 in damages, plus attorneys' fees in all cases where the agency's conduct was willful or intentional. 5 U.S.C. § 552a(g)(1)(D), (g)(4); *see generally F.A.A. v. Cooper*, 132 S.Ct. 1441, 1448-50 (2012).

Courts have recognized that the Privacy Act is a comprehensive remedial scheme that supplants *Bivens* claims. In *Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002), a former informant sued federal officers who allegedly disseminated false information about him in violation of the First Amendment, because he criticized an ongoing investigation. The Sixth Circuit refused to imply a *Bivens* remedy under the First Amendment "because the Privacy Act is a comprehensive legislative scheme that provides a meaningful remedy for the kind of wrong" informant alleged. *Id.* at 696. Because each of the informants' constitutional claims arose out of the "the creation, maintenance, and dissemination of false records," dismissal of the *Bivens* claim was warranted. *Id.*

More recently, in *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008), *cert.*
*denied* 129 S. Ct. 2825 (2009), Valerie Wilson and Joseph Wilson sued, among
others, Vice President Richard Cheney, for disclosing Valerie Wilson's status
as a covert agent for the CIA. "The Wilsons' *Bivens* claims were based on
alleged violations of their Fifth Amendment rights to equal protection of the
laws, of Joseph Wilson's First Amendment right to freedom of speech, and of
Valerie Wilson's Fifth Amendment rights to privacy and property." *Id.* at 703.
As in *Downie*, the *Wilson* court held that the Privacy Act was a
"'comprehensive scheme' that stops us from providing additional remedies
under *Bivens*." *Id.* at 707. Even though the Wilsons "pled in terms of privacy,
property, due process, or the First Amendment," the Court concluded that they
sought damages "from the improper disclosure of information covered by the
Privacy Act," and therefore dismissed the *Bivens* claim. *Id.*

Plaintiffs' *Bivens* claims here allege harm from the improper "collection"
of a "record describing how any individual exercises rights guaranteed by the
First Amendment" – conduct which is expressly prohibited by the Privacy Act.
Throughout the complaint, Plaintiffs allege that the FBI "gathered the
information [about Plaintiffs] simply because the targets were Muslim." (*See,*
*e.g.* ER 181 (FAC ¶ 3).) Indeed, the First, Third and Sixth Causes of Action
under *Bivens* each seek relief for a supposed "scheme to target Plaintiffs for

-69-

surveillance because of Plaintiffs' adherence to and practice of the religion of Islam." (ER 242, 243, 244 (FAC at ¶¶ 227, 232, 241).)

Congress fashioned the Privacy Act to remedy precisely the injury alleged here: that a federal agency would collect information on how Plaintiffs "exercise[] rights guaranteed by the First Amendment." 5 U.S.C. § 552a(e)(7). Indeed, Plaintiffs cannot dispute that their complaint falls within the ambit of the Privacy Act, in light of their Eighth Cause of Action, which asserts a violation of the very subsection (e)(7) of the Privacy Act that precludes their *Bivens* claims. Specifically, the Eighth Cause of Action alleges that the FBI "collected and maintained records describing how Plaintiffs exercise their rights to free speech and free exercise of religion guaranteed by the First Amendment." (ER 245 (FAC ¶ 246).) As Plaintiffs admit in their Eighth Cause of Action, the Privacy Act provides them with a remedy for the constitutional violation alleged in the FAC.

Admittedly, the Privacy Act limits Plaintiffs to recovery of damages from the United States, and not from the Agent Defendants individually. But this does not save Plaintiffs' *Bivens* claims. When "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Western*

*Radio,* 578 F.3d at 1120 (citations omitted). Indeed, the plaintiffs in *Wilson* argued that "the Privacy Act should not be found comprehensive and preclusive of Bivens remedies here because three defendants [including Vice President Cheney] in this case are exempted from its terms." *Wilson,* 535 F.3d at 707. However, the D.C. Circuit rejected this argument, noting that "[t]he failure of the Privacy Act to provide complete relief to the Wilsons, however, does not undermine its status as a 'comprehensive scheme' that stops us from providing additional remedies under *Bivens.*" *Id*, *see also Mirmehdi*, 689 F.3d at 982 (rejecting argument that Ninth Circuit fashion *Bivens* remedy even though the alternative statutory procedures did not provide for monetary damages). Congress need not grant a remedy for every constitutional wrong against every possible defendant in order to supplant the *Bivens* remedy: that Congress has acted is enough to defeat an implied right of action for damages under *Bivens*. Accordingly, the Agent Defendants' motion to dismiss the First, Third and Sixth Causes of Action should be granted.

### 3. *Plaintiffs Fail To Allege An Unlawful Purpose*

Much like Section 1985(3), a discrimination claim under *Bivens* requires that Plaintiffs allege an intentional violation of Plaintiffs' rights. *Iqbal*, 556 U.S. at 675-77. The Court noted that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear

that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id.* at 676. This purpose is "more than 'intent as volition or intent as awareness of consequences.'" *Id.* (*quoting Pers. Admin'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).) "It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* (alterations omitted). In other words, Plaintiffs must show that the policy at issue was adopted "not for a neutral, investigative reason but for the purpose of discriminating on account of … religion." *Id.* at 677. This intent must be supported by factual allegations, not mere conclusions. *Id.* ("pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.")

As described above, Plaintiffs fail to allege that any Defendant acted with the requisite purpose to establish Plaintiffs' First and Fifth claims. Instead, Plaintiffs allege that the Agent Defendants acted with the intent of conducting a counterterrorism investigation, nothing more. Because Plaintiffs cannot allege an intent to discriminate against them, the *Bivens* claims fail.

# VII.

# CONCLUSION

Based on the foregoing, Plaintiffs' claims against the Agent Defendants all fail. First, the district court erred in denying the Agent Defendants' motion to dismiss the FISA Claim. The district court neglected to evaluate whether, individually, the named Plaintiffs were "aggrieved persons" within the meaning of FISA. Properly segregated, the allegations of the FAC fail to state a violation of the well established rights of any Plaintiff. Thus, this Court should reverse the district court and grant the Agent Defendants' motion to dismiss the Tenth Cause of Action.

*Second*, the FTCA's judgment bar requires dismissal of all claims asserted against the Agent Defendants, including the FISA Claim.

*Third*, the district court properly dismissed the Discrimination and Search Claims, finding that the successful assertion of the state secrets privilege prevented a full and fair adjudication of Plaintiffs' Discrimination and Search Claims. In their appeal, Plaintiffs fail to identify any errors in the district court's application of the states secret privilege. Furthermore, this Court may affirm the district court's dismissal of the Discrimination and the Search Claims on the alternative grounds discussed above.

Accordingly, the Agent Defendants respectfully ask this Court to reverse the district court's FISA Order, reverse and remand to the district court with instructions to grant the Agent Defendants' motion to dismiss the FISA Claim, and affirm the district court's dismissal of the Discrimination and the Search Claims.

Dated:  April 29, 2015                    Respectfully submitted,

                              By:    /s/David C. Scheper
                                     DAVID C. SCHEPER
                                     ALEXANDER H. COTE
                                     ANGELA M. MACHALA
                                     AMOS A. LOWDER

                                     Attorneys for Appellants
                                     PAT ROSE, PAUL ALLEN
                                     AND KEVIN ARMSTRONG

## STATEMENT OF RELATED CASES

Counsel for Defendants/Appellees/Cross-Appellants Pat Rose, Paul Allen, and Kevin Armstrong are not aware of any related cases pending in this Court.

By:    /s/David C. Scheper
       DAVID C. SCHEPER
       ALEXANDER H. COTE
       ANGELA M. MACHALA
       AMOS A. LOWDER

       Attorneys for Appellants
       PAT ROSE, PAUL ALLEN
       AND KEVIN ARMSTRONG

**CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 11-17609**

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached answering brief is proportionately spaced, has a typeface of 14 points or more and contains 16,017 words.

Dated: April 29, 2015   Respectfully submitted,

         By: /s/David C. Scheper
            DAVID C. SCHEPER
            ALEXANDER H. COTE
            ANGELA M. MACHALA
            AMOS A. LOWDER

            Attorneys for Appellants
            PAT ROSE, PAUL ALLEN
            AND KEVIN ARMSTRONG

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

I am a citizen of the United States and employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action. My business address is Scheper Kim & Harris LLP, 601 W. Fifth Street, 12th Floor, Los Angeles, California 90071.

I hereby certify that I electronically filed the foregoing **CROSS-APPELLANTS PAT ROSE, PAUL ALLEN AND KEVIN ARMSTRONG'S OPENING/RESPONSIVE BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 29, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed on April 29, 2015 at Los Angeles, California.

/s/June Hibino
June Hibino