Nos. 12-56867, 12-56874, 13-55017

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YASSIR FAZAGA, et al.,
*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Cross-Appellees.*
and

BARBARA WALLS, J. STEPHEN TIDWELL, KEVIN ARMSTRONG,
PAUL ALLEN, AND PAT ROSE
*Defendants-Appellants/Cross-Appellees*,

On Appeal from the United States District Court
for the Central District of California, No. 8:11-cv-00301-CJC-VBK (Carney, J.)

## BRIEF FOR APPELLANTS/CROSS-APPELLEES
## BARBARA WALLS AND J. STEPHEN TIDWELL

KATIE MORAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
(213) 443-5300

HOWARD M. SHAPIRO
CARL J. NICHOLS
DAVID G. BERAKA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
(202) 663-6000

April 29, 2015

ActiveUS 144634427v.5

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................iv

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT ........................................................5

STATEMENT OF ISSUES ....................................................................5

STATEMENT OF THE CASE ................................................................6

    A.    Plaintiffs' Complaint ..............................................................6

        1.    Allegations regarding "Operation Flex" .....................7

        2.    Plaintiffs' allegations regarding Defendants
                  Tidwell and Walls .......................................................11

    B.    The Government's Assertion Of The State Secrets
        Privilege And All Defendants' Motions To Dismiss .........................13

    C.    The District Court's Orders ...................................................17

SUMMARY OF THE ARGUMENT ....................................................21

ARGUMENT ........................................................................................26

I.    THE ATTORNEY GENERAL'S ASSERTION OF THE STATE SECRETS
    PRIVILEGE REQUIRED DISMISSAL OF COUNTS 1-7 AND 9..............................26

II.    THE FEDERAL TORT CLAIMS ACT JUDGMENT BAR PRECLUDES
    PLAINTIFFS' CLAIMS AGAINST TIDWELL AND WALLS ..................................30

III.    THIS COURT SHOULD AFFIRM DISMISSAL OF PLAINTIFFS'
    CONSTITUTIONAL DAMAGES CLAIMS BECAUSE BIVENS SHOULD
    NOT BE EXTENDED TO THIS CONTEXT ............................................31

    A.    No Court Has Extended Bivens To This Context ................................32

    B.    The Creation Of A Bivens Cause Of Action Is
        Inappropriate In This Context ...............................................34

ActiveUS 144634427v.5

1.      National security and the assertion of the state secrets privilege are special factors precluding a *Bivens* remedy .......................................................... 34

2.      Existing remedial statutory schemes preclude the creation of a *Bivens* remedy ....................................... 37

IV.     THIS COURT SHOULD AFFIRM THE DISMISSAL OF COUNTS 1-7 AND 9 BECAUSE TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ................................................................. 42

A.      Qualified Immunity Bars Plaintiffs' Religious Discrimination Claims .......................................................... 43

B.      Tidwell and Walls Are Entitled To Qualified Immunity On Plaintiffs' Conspiracy Claims ..................................... 47

C.      Qualified Immunity Bars Plaintiffs' RFRA Claim ........................... 49

1.      Plaintiffs have not alleged a "substantial burden" on free exercise ......................................... 50

D.      Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim .......................................................................... 52

1.      Plaintiffs fail to allege that Tidwell and Walls were personally involved in the purported searches, or that a sufficient causal connection between their conduct and the alleged violation otherwise existed ............... 53

2.      Plaintiffs fail to allege a reasonable expectation of privacy in the circumstances of the alleged searches ................................................................... 54

V.      TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' FISA CLAIM ......................................................... 57

CONCLUSION .................................................................................... 59

STATEMENT OF RELATED CASES ................................................. 61

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

- iii -

# TABLE OF AUTHORITIES

## CASES

Page(s)

*ACLU v. NSA*, 493 F.3d 644 (6th Cir. 2007) ...................................................25, 58

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130 (9th Cir. 2000) ...................................23

*Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56 (D.D.C. 2014) ..........................................36

*Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007)................................................................................................................26

*Arar v. Ashcroft,* 585 F.3d 559 (2d Cir. 2009)..................................................*passim*

*Arevalo v. Woods*, 811 F.2d 487 (9th Cir. 1987) ....................................................31

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) ...................................................3, 43, 46

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)..............................................................*passim*

*Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994) ...............................................36

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)......................................45, 47

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)................................32

*Black v. United States*, 62 F.3d 1115 (8th Cir. 1995)..............................................37

*Boumediene v. Bush*, 553 U.S. 723 (2008) ..............................................................35

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993).........................49

*Bush v. Lucas*, 462 U.S. 367 (1983) ..................................................3, 33, 35, 41, 42

*Carlson v. Green*, 446 U.S. 14 (1980) .....................................................................33

*Chappell v. Wallace*, 462 U.S. 296 (1983) .......................................................33, 36

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012) ........................................54

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)..............................................................................................27, 28, 44

- iv -

*Cigna Property & Casualty Insurance Co. v. Polaris Pictures Corp.*, 159 F.3d 412 (9th Cir. 1998) ..........................................................32

*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) ....................32, 33, 41

*Davis v. Passman*, 442 U.S. 228 (1979) ....................................................33

*Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002)....................42

*Edgerly v. City & County of San Francisco*, 599 F.3d 946 (9th Cir. 2010) ..........................................................................................53, 56

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007)..................................19, 29

*FDIC v. Meyer*, 510 U.S. 471 (1994) ......................................................33

*Fresno Motors LLC v. Mercedes Benz USA*, 771 F.3d 1119 (9th Cir. 2014) ..............................................................................................32

*Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994).....................................31

*General Dynamics Corp. v. United States*, 131 S. Ct. 1900 (2011) ........................26

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) .........................................48, 49

*Haig v. Agee*, 453 U.S. 280 (1981) ....................................................21, 35

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..............................................43

*Hoffa v. United States*, 385 U.S. 293 (1966) ............................................57

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ...................................35

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006).............................................32

*In re John Doe Trader No. One*, 894 F.2d 240 (7th Cir. 1990)..............................56

*Jean-Pierre v. Bureau of Prisons*, No. 09-266, 2010 WL 3852338 (W.D. Pa. July 30, 2010), *aff'd in part*, 479 F. App'x 164 (3d Cir. 2012)..........................................................................................49

*Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621 (9th Cir. 1988)..........................................................................................47

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1988)..................................................26

*Katz v. United States*, 389 U.S. 347 (1967) .............................................................56

*Kentucky v. Graham*, 473 U.S. 159 (1985)...............................................................49

*Kreines v. United States*, 959 F.2d 834 (9th Cir. 1992)...........................................31

*Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004)............................53

*Lebron v. Rumsfeld*, 764 F. Supp. 2d 787 (D.S.C. 2011), *aff'd*, 670
    F.3d 540 (4th Cir. 2012) ......................................................................24, 51

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988).........................................................53

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ................................................................21, 35

*Lyall v. City of Los Angeles*, No. 09-7353, 2011 WL 61626 (C.D. Cal.
    Jan. 6, 2011)......................................................................................54, 55, 59

*Minneci v. Pollard*, 132 S. Ct. 617 (2012)................................................................2

*Mirmehdi v. United States*, 662 F.3d 1073 (9th Cir. 2011) ............................*passim*

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................................5

*Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir.
    2010) ..............................................................2, 21, 22, 26, 29, 30

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d. 1058 (9th Cir. 2008) ......................50

*Oliver v. United States*, 466 U.S. 170 (1984) ..........................................................56

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ..................................47

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................................47

*Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir.
    1989) ..............................................................................46, 52, 57

*Rakas v. Illinois*, 439 U.S. 128 (1978)....................................................................52

*Saucier v. Katz*, 533 U.S. 194 (2001), *overruled on other grounds by*
    *Pearson v. Callahan*, 555 U.S. 223 (2009) ...................................................47

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ....................................33, 41

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992)....................48

*Smith v. Maryland*, 442 U.S. 735 (1979) ..............................................57

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989)...........4, 24, 54, 55

*United States v. Duggan*, 743 F.2d 59 (2d Cir. 1984) .............................40

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2007)........................57

*United States v. Gonzalez*, 328 F.3d 543 (9th Cir. 2003) ...............4, 55, 59

*United States v. Hinton,* 222 F.3d 664 (9th Cir. 2000)............................57

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984)................24, 56, 59

*United States v. Mayer*, 503 F.3d 740 (9th Cir. 2007)........................54, 55

*United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000)............................54

*United States v. Reynolds*, 345 U.S. 1 (1953)..........................................26

*United States v. Stanley*, 483 U.S. 669 (1987)..............................33, 36, 41

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009)........................39, 40

*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir. 1989) ..........................................................47

*Washington v. Davis*, 426 U.S. 229 (1976) ......................................27, 44

*Webb v. County of Trinity*, 734 F. Supp. 2d 1018 (E.D. Cal. 2010).......49

*Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116 (9th Cir. 2009) ..........................................................33, 34

*Wilkie v. Robbins*, 551 U.S. 537 (2007)......................................32, 33, 40

*Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008)..................36, 38, 41, 42

*Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) ......................................................50

## STATUTES AND RULES

5 U.S.C.
    § 552a ............................................................................................38
    § 2000bb-1 ...................................................................................39

28 U.S.C.
    § 1291 .............................................................................................5
    § 1346 ..........................................................................................30
    § 2676 ......................................................................4, 25, 30, 31

42 U.S.C.
    § 1985 .....................................................................47, 48, 49
    § 2000bb ......................................................................................39
    § 2000bb-1 ............................................................39, 49, 59
    § 2000bb-2 ...................................................................................39
    § 2000bb-3 ...................................................................................39
    § 2000bb-4 ...................................................................................39

50 U.S.C.
    § 1801 ......................................................................25, 40, 58
    § 1810 ..........................................................................................40

Federal Rule of Civil Procedure 54 ............................................5, 20, 30

## PRELIMINARY STATEMENT

Plaintiffs' Complaint is premised on their contention that, during a counterterrorism investigation in Los Angeles, the FBI indiscriminately targeted them not for valid investigative purposes, but because of their religion. Because litigation of this claim would require public disclosure of the persons who were (or who were not) the subjects of the investigation, the reasons for the investigation, and the sources and methods used by the FBI during the investigation, the Attorney General of the United States asserted the state secrets privilege over these categories of information.

Following "careful deliberation" and "months of careful review"—which it conducted with "rigorous judicial scrutiny" and a "skeptical eye"—the district court agreed with the Attorney General that "[f]urther litigation of [Plaintiffs'] claims would" risk disclosure of information "vital to our country's national security." The district court also held "that privileged information provides essential evidence for Defendants' full and effective defense against Plaintiffs' claims—namely, showing that Defendants' purported 'dragnet' investigations were not indiscriminate schemes to target Muslims, but were properly predicated and focused." Accordingly, the court dismissed all but one of Plaintiffs' claims.

1

That decision was plainly correct. Plaintiffs' claims are predicated upon, and would require the adjudication of, Plaintiffs' allegation that Defendants (including Defendants Tidwell and Walls) were aware of and approved unlawful investigative activities and electronic surveillance based solely on Plaintiffs' religion. But litigation of those claims would require public inquiry into, among other issues, whether Plaintiffs were subject to investigation; whether the investigation was conducted in the manner alleged by Plaintiffs; whether the FBI had non-discriminatory, national-security-related reasons for investigating specific individuals; and whether the investigative methods were narrowly tailored to achieve specific, legitimate counterterrorism goals. That is the very same information covered by the state secrets privilege, and because that information is unavailable in the litigation—and thus unavailable to Tidwell and Walls for their own defense—dismissal was required. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082-1083 (9th Cir. 2010) (assertion of state secrets privilege requires dismissal when it precludes defendant from adequately raising and supporting available defenses).

Even if the state secrets privilege did not require dismissal, the judgment should be affirmed on grounds that the district court did not reach. First, several of the counts in Plaintiffs' Complaint seek damages from individual FBI employees

2

for alleged constitutional torts.  It is well established, however, that courts should refrain from creating a *Bivens* damages remedy when "special factors counsel[ ] hesitation in the absence of affirmative action by Congress." *Minneci v. Pollard*, 132 S.Ct. 617, 622 (2012).  Here, special factors strongly counsel against creating a *Bivens* damages remedy:  courts repeatedly have declined to extend *Bivens* to cases presenting national security concerns, *see, e.g.*, *Arar v. Ashcroft,* 585 F.3d 559, 575 (2d Cir. 2009) (en banc), and the government's assertion of the state secrets privilege makes plain that this is such a case.  Further, three comprehensive statutory schemes under which Plaintiffs have also brought claims—the Privacy Act, the Religious Freedom Restoration Act ("RFRA"), and the Foreign Intelligence Surveillance Act ("FISA")—strongly evince Congress' desire not to allow judicially created causes of action for the constitutional torts alleged by Plaintiffs.  *See Bush v. Lucas*, 462 U.S. 367, 380 (1983).

Second, Tidwell and Walls are entitled to qualified immunity.  A government officer is entitled to qualified immunity unless the officer's conduct both violated a statutory or constitutional right *and* the right was so clearly established at the time that "every reasonable official would have understood what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).  As discussed in more detail below, Plaintiffs fail plausibly to allege that Tidwell

3

and Walls violated their statutory or constitutional rights, let alone that the alleged violations would have been apparent to every reasonable officer at the time.

The district court was therefore correct to dismiss Counts 1-7, and 9 against Tidwell and Walls, but erred in failing to dismiss Plaintiffs' FISA claim. To have violated FISA, Tidwell and Walls must have engaged in electronic surveillance in circumstances in which Plaintiffs had a reasonable expectation of privacy. But Plaintiffs allege that the allegedly unlawful surveillance was conducted either in areas open to the public—such as in mosques, at lectures, and at sporting events— or during conversations or in locations where the informant was invited. Plaintiffs could not have had a reasonable expectation of privacy in such communications, *see United States v. Aguilar*, 883 F.2d 662, 703 (9th Cir. 1989) ("persons have no expectation of privacy or confidentiality in their conversations and relations with other persons, no matter how secretive the setting"); *United States v. Gonzalez*, 328 F.3d 543, 547-548 (9th Cir. 2003) (no reasonable expectation of privacy in area open to the public), and at minimum, it would not have been apparent to "every reasonable official" that such recordings would violate FISA.

Finally, pursuant to Section 2676 of the Federal Tort Claims Act (FTCA), "[t]he judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the

4

employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. For the reasons discussed in the government's brief, judgment in the government's favor on Plaintiff's FTCA Claim is warranted, and that judgment bars all of Plaintiffs' claims against Tidwell and Walls.

## JURISDICTIONAL STATEMENT

Plaintiffs assert federal statutory and constitutional claims against the United States and the FBI, as well as Defendants Paul Allen, Kevin Armstrong, Pat Rose, Barbara Walls and J. Stephen Tidwell in their individual capacities. On December 3, 2012, the district court granted partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) for the government and the individual-capacity Defendants on all of Plaintiffs' claims except the FISA claim. Plaintiffs timely appealed that judgment on January 3, 2013. In addition, on August 14, 2012, the district court denied the individual-capacity Defendants' motions to dismiss Plaintiffs' FISA claim on the basis of qualified immunity. ER18-30. Defendants Tidwell and Walls timely appealed that order under 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (order denying qualified immunity may be appealed as a final decision). The Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1.    Whether the district court correctly concluded that the Attorney General's assertion of the state secrets privilege precludes litigation of Plaintiffs'

5

claims that Defendants engaged in improper and discriminatory counterterrorism activities.

2.      Whether, independent of the government's assertion of the state secrets privilege, dismissal of Plaintiffs' constitutional tort claims was appropriate because a *Bivens* damages cause of action should not be recognized in the circumstances presented here.

3.      Whether, independent of the government's assertion of the state secrets privilege, dismissal of all claims against Tidwell and Walls, including Plaintiffs' FISA claim, is appropriate because Tidwell and Walls are entitled to qualified immunity.

4.      Whether the FTCA's judgment bar, 28 U.S.C. § 2676, precludes Plaintiffs' claims against Tidwell and Walls.

## STATEMENT OF THE CASE

### A.      Plaintiffs' Complaint

Plaintiffs Yassir Fazaga, Ali Uddin Malik, and Yasser AbdelRahim allege that, since September 11, 2001, the FBI has "focused much of its counterterrorism efforts on broad investigations into the Muslim communities within the United States." ER187.[1]  According to Plaintiffs, "at some time prior to July 2006," the

---

[1]      Plaintiffs' allegations are drawn from their First Amended Complaint, which was filed on September 13, 2011.  ER179-257.

FBI employed an informant to "infiltrate[]" several Southern California mosques and covertly "gather information" about the Muslim community. ER181, 198. Plaintiffs allege that "[o]ver the course of fourteen months" the FBI directed the informant to "indiscriminately collect personal information on hundreds and perhaps thousands of innocent Muslim Americans in Southern California." ER181.

Plaintiffs claim that the FBI "did not gather [this] information based on suspicion of criminal activity," but instead did so "simply because the targets were Muslim." ER181. Plaintiffs further contend that "Defendants operated under the principles set forth in" the Attorney General's Guidelines for FBI National Security Investigations and Foreign Intelligence Collection (later named the Guidelines for Domestic FBI Operations) ("2008 AG Guidelines") and the FBI's Domestic Intelligence and Operations Guides ("DIOG")—which expressly prohibit investigative activity solely on the basis of religion. ER190-194. Nonetheless, Plaintiffs claim these policies allegedly authorized the FBI to "engage in intrusive investigations of First Amendment protected activity, and specifically religious practices, without any factual basis to believe any criminal violations or threat to the national security existed." ER192.

7

### 1. Allegations regarding "Operation Flex"

Plaintiffs' claims arise from an operation known as "Operation Flex." Plaintiffs allege that Defendants Kevin Armstrong and Paul Allen were FBI special agents assigned to the Orange County area who acted as the informant's handlers. ER185. According to Plaintiffs, "[a]t some time prior to July of 2006," Armstrong and Allen recruited the informant, and thereafter directed him to pose as a Muslim convert and use various techniques to conduct surveillance of, and gather intelligence on, congregants of several Southern California mosques. ER181, 198-199, 210-219. Plaintiffs claim that, during this operation, the informant covertly gathered "hundreds of phone numbers, thousands of email addresses, hundreds of hours of video recordings that captured the interiors of mosques, homes, businesses, and the associations of hundreds of Muslims, thousands of hours of audio recording of conversations … and other Muslim religious and cultural events occurring in mosques," as well as addresses, license plate numbers, brochures, newsletters and bulletins, and lists of attendees at various lectures, courses, and prayer sessions. ER181, 207-208, 211, 214-217, 219, 228-229. Plaintiffs allege that they met the informant while he was acting in this covert capacity. ER199.

Despite Plaintiffs' claim that Operation Flex improperly targeted them "solely due to their religion," ER206, 227, "for the purpose of discriminating against Plaintiffs as Muslims," ER242-243, and "because of Plaintiffs' adherence

8

to and practice of the religion of Islam," ER243-245, they *also* allege that the operation was intended to gather information regarding individuals who may have connections to terrorist organizations, such as the Taliban, Hezbollah, and Hamas, and that agents Allen and Armstrong told the informant that "everyone knows somebody." ER214. Allen and Armstrong also allegedly directed the informant to gather information regarding matters associated with counterterrorism, including: (a) individuals who may be sympathetic to and/or interested in "mujahideen," violent "jihadist" activities, and religious extremism or radicalism (ER209, 212-213, 221, 227-228, 231); (b) Arabic speakers and foreign nationals from Egypt, Pakistan, India, Syria, and Lebanon (ER210-211); (c) individuals' views on politics and violence (ER210-211, 213); (d) charitable giving, fundraising, and financial information (ER211, 218, 222, 230, 237); (e) individuals' planned and actual travel to Yemen, Saudi Arabia, and Egypt (ER211, 213, 230-231, 236-237); (f) telephone, international call, and email information associated with "persons of interest who were believed to be linked to terrorism" (ER217-218); and (g) a suspected cell of the Muslim Brotherhood led by Plaintiff AbdelRahim (ER235-236).

Plaintiffs allege that as part of these efforts, Allen and Armstrong provided the informant with, and directed him to use, recording devices. ER215. According

9

to Plaintiffs, "[a]fter about September 2006," the agents gave the informant "a cell phone and two key fobs" containing audio-recording devices that he allegedly used to record "every moment he worked undercover, regardless of whom he was meeting or what was discussed." ER216.

Plaintiffs further claim that, on certain unspecified occasions, the informant allegedly left recording devices unattended in mosques to record conversations that took place while he was not present, ER216, although the only parties identified as having been recorded in this manner are Plaintiffs Malik and AbdelRahim. ER232-233, 237-238. Plaintiffs do *not* allege that *any* Defendant directed the informant to record conversations in this manner. Rather, they claim only that Allen and Armstrong received notes in which the informant stated he had done so, and that the agents "never told him not to do this." ER232-233.[2]

Plaintiffs also allege that, "[b]eginning in about February 2007," agents outfitted the informant with a shirt button camera that he used "as often as several days per week" to capture video and audio recordings of the "internal layout of

---

[2] Plaintiffs allege in vague and conclusory terms, without more, that "[e]lectronic surveillance equipment was installed in at least eight [Southern California] mosques" by the FBI, ER208, and that "the FBI had electronic listening devices in AbdelRahim's house…car and phone," as well as video surveillance outside his house. ER237. Plaintiffs do not allege which if any individual-capacity Defendants participated in this purported activity, much less whose conversations were captured.

10

mosques, to film basketball or soccer games …, to film guest lectures at mosques …, and to record the interiors of people's houses."   ER216-217.   For example, according to Plaintiffs, the informant was directed to record a lecture at Fazaga's mosque, as well as interior areas and a donation booth within it, none of which are alleged to be non-public areas.   ER228-229.   Plaintiffs also claim that the informant—after being invited in—was directed to record the interior of AbdelRahim's house, which was occupied by five persons whom Allen and Armstrong believed to be part of a Muslim brotherhood cell led by AbdelRahim. ER235-236.

Plaintiffs allege that the informant successfully gathered information deemed relevant to counterterrorism efforts.   Specifically, Plaintiffs claim that: (a) the FBI deemed his information as "particularly valuable" and that it had "proven to be essential" to a federal prosecution; (b) the "information…was followed by people 'at the highest levels'"; (c) "the operation was among the ten most important intelligence investigations going on in the country"; and (d) information regarding individuals' finances, foreign assets, and immigration issues "would be shared with other agencies."   ER221-222, 225-226.

11

### 2. Plaintiffs' allegations regarding Defendants Tidwell and Walls

In a mere nine (of 260) paragraphs, Plaintiffs offer only generalized, conclusory assertions "upon information and belief" about Defendants Tidwell and Walls. *See* ER185-186, 197, 219-220, 223, 227-228. Plaintiffs allege that from August 2005 until December 2007, Tidwell served as the FBI Assistant Director in Charge of the Los Angeles Field Office with supervisory authority over all operations in the Central District of California, and that during an unspecified time period, Walls was the FBI Special Agent in Charge of the Santa Ana branch office, "where she was one of the direct supervisors of Agents Allen, Armstrong, and Rose." ER181-182. Plaintiffs generally allege "[u]pon information and belief" that Tidwell "authorized the search for" and "the selection of" the informant; "authorized the nature and scope of the operation and its targeting of Muslims"; read the informant's "notes of his activities"; and "authorized and actively directed the actions of" Armstrong, Allen, Rose, Walls, and other agents in the handling of the informant. ER185-186, 220. Likewise, Plaintiffs claim generally "[u]pon information and belief" that Walls "was regularly apprised of the information Agents Armstrong and Allen collected through" the informant; "directed the action of [the] agents on various instances based on that information"; and "actively monitored, directed, and authorized the actions of Agents Armstrong and Allen and

12

other agents." ER186. Tidwell and Walls, along with the other individual-capacity Defendants, are alleged to have "maintained extremely close oversight and supervision of" the informant; "because they made extensive use of his surveillance, they knew in great detail the nature and scope of the operation, including the methods of surveillance used and the criteria used to decide his targets, and continually authorized their ongoing use." ER219.

Plaintiffs allege that Walls "[e]ventually" ordered Armstrong and Allen to cease using the informant because she "no longer trusted" him; that there was "significant conflict" between Walls and the agents regarding how to handle the operation; that an audit team examined Walls's "handling of one of the leads from the operation"; and that Walls was present at one of the final meetings with the informant, during which she instructed him "to stay silent about the operation." ER186, 223. Plaintiffs allege no other specific facts regarding Tidwell's or Walls's knowledge of, or involvement in, much less authorization of, the informant's activities.

### B. The Government's Assertion Of The State Secrets Privilege And All Defendants' Motions To Dismiss

1. On November 4, 2011, the government moved to dismiss the Complaint and for summary judgment because the case could not be litigated without evidence protected by the Attorney General's assertion of the state secrets

13

privilege. ER160-178. The government's motion was supported by a public

declaration from the Attorney General, which invoked the state secrets privilege to

protect certain information, the disclosure of which could reasonably be expected

to cause significant harm to national security.[3]

In particular, the Attorney General asserted the state secrets privilege over

three categories of evidence: (1) evidence tending to confirm or deny that a

particular person was (or was not) the subject of the counterterrorism investigation

("subject identification"); (2) the reasons for the counterterrorism investigation and

its results ("reasons and results"); and (3) the methods employed by the

counterterrorism investigation ("sources and methods"). With respect to the first

category, "subject identification," the Attorney General explained that disclosing

the identities of the subjects of FBI counter-terrorism investigations "would alert

those subjects to the FBI's interest in them and cause them to attempt to flee,

destroy evidence, or alter their conduct so as to avoid detection," while also

allowing such "subjects to anticipate the actions of law enforcement and

intelligence officers, possibly leading to counter-surveillance that could place

agents at higher risk." ER285-286. Further, "disclosure that some persons are not

subject to investigation, while the status of others is left unconfirmed, would

---

[3]     The Attorney General originally invoked the state secrets privilege on
August 1, 2011, in connection with Plaintiffs' original Complaint.

14

inherently reveal that FBI concerns remain as to particular persons," while "individuals who desire to commit terrorist acts could be motivated to do so upon discovering that they are not being monitored." ER286.

As to the second category of evidence, the Attorney General stated "that disclosure of the reasons for and substance of a counterterrorism investigation … could also reasonably be expected to cause significant harm to national security," because "such disclosures would reveal to subjects who are involved in or planning to undertake terrorist activities what the FBI knows or does not know about their plans and the threat they pose to national security." ER287-288. The Attorney General explained that this concern applies equally with respect to subjects who intend no harm to the United States because "disclosure of the reasons they came under investigation may reveal sensitive intelligence information about them or their associates, or a particular threat that would harm other investigations." *Id.* And with respect to the third category of evidence, "sources and methods," the Attorney General's privilege assertion concerned "information that would tend to reveal whether court-ordered searches or surveillance, confidential human sources, and other investigative sources and methods were used in a counterterrorism investigation." ER288.

15

The Attorney General's sworn declaration was accompanied by a declaration from the Assistant Director of the FBI's Counterterrorism Division, Mark Giuliano, which was filed *ex parte* and under seal, as well as a public declaration from Mr. Giuliano.[4] ER259-282. In his public declaration, Mr. Giuliano stated that FBI policies and Attorney General Guidelines, including those relied on in Plaintiffs' Complaint, expressly prohibit "the FBI's undertaking investigative activity based solely on First Amendment activities." ER262-264. While Mr. Giuliano stated that the FBI previously acknowledged, during a criminal proceeding, having employed Mr. Monteilh as a confidential human source, Mr. Giuliano further stated that "certain specific information pertinent to the allegations about Operation Flex and Monteilh's activities remains highly sensitive information concerning counterterrorism matters that if disclosed reasonably could be expected to cause significant harm to national security." ER264, 268-269. Like the Attorney General, Mr. Giuliano stated that, in the context of Operation Flex, the disclosure of "subject identification," "reasons and results," and "sources and methods" would harm national security. ER275-280. Based on the Attorney

---

[4]     The government also filed a supplemental classified declaration of Assistant Director Giuliano on November 4, 2011, which provided a status update as to investigatory activity described in the earlier classified Giuliano declaration. ER308.

16

General's assertion of the state secrets privilege, the government argued that all but Counts Nine and Ten of Plaintiffs' Complaint had to be dismissed.

2.      Thereafter, the individual-capacity Defendants moved to dismiss all claims against them.  ER155-159; T&W ER1-43.  In their motion, Tidwell and Walls argued that the government's assertion of the state secrets privilege required dismissal of at least Counts 1-7 because those claims are predicated upon, and would require the adjudication of, Plaintiffs' allegation that Defendants Tidwell and Walls were aware of and approved unlawful investigative activities and electronic surveillance based solely on Plaintiffs' religion.  Tidwell and Walls contended that without information protected by the privilege, they could not contest Plaintiffs' allegations, and could not show that they had non-discriminatory, national-security-related purposes for investigating specific individuals, as well as that their investigative methods were legal and narrowly tailored to achieve legitimate counterterrorism goals.

With respect to Plaintiffs' *Bivens* claims (Counts 1, 3, 6, and 9), Tidwell and Walls further argued that special factors counseled hesitation, and thus the district court should decline to create a *Bivens* remedy.  Finally, Tidwell and Walls argued that they are entitled to qualified immunity on all claims asserted against them.

17

### C.     The District Court's Orders

On August 14, 2012, in two separate orders, the district court dismissed all claims against all Defendants except for Plaintiffs' FISA claim against the individual-capacity Defendants.

1.     In the first order, the district court concluded, following "months of careful review" and "rigorous judicial scrutiny of the Government's assertion of privilege…with a skeptical eye," that it was "convinced that…Operation Flex[] involves intelligence that, if disclosed, would significantly compromise national security." ER55, 66.[5]  The court reached this conclusion with respect to all three categories of information covered by the Attorney Generals' privilege assertion, and after having reviewed the government's classified submissions.  With respect to subject identification, the court found that, among other things, "[d]isclosure of subjects under investigation would undoubtedly jeopardize national security…because persons under investigation would be alerted to the FBI's interest in them and cause them to flee, destroy evidence, or alter their conduct so as to avoid detection, which would seriously impede law enforcement's and intelligence officers' ability to determine their location or gain further intelligence on their activities." ER57.  The court found no less danger with respect to the

---

[5]     The court also found that the government had satisfied the procedural requirements for asserting the state secrets privilege.  ER51.

disclosure of individuals not under investigation "because individuals who desire to commit terrorist acts may then be motivated to do so upon discovering that they are not being monitored." ER57-58.

The court also found that disclosure of the second category of protected information—"the reasons and results of counterterrorism investigations," such as the identities of human sources or the status of an investigation—"would unquestionably compromise national security because it would reveal to those involved in plotting terrorist activities what the FBI knows and does not know about their plans and thereby enable them to evade detection." ER58. And the court found that the disclosure of the third category of information, investigatory sources and methods, "would endanger national security because it could reveal the identities of particular subjects and the steps taken by the FBI in counterterrorism matters, thereby effectively disclosing a road map to adversaries on how the FBI detects and prevents activities." ER59.

Having concluded that such information must be protected from disclosure, the district court held that dismissal was warranted. The district court first concluded that "privileged information provides essential evidence for Defendants' full and effective *defense* against Plaintiffs' claims—namely, showing that Defendants' purported 'dragnet' investigations were not indiscriminate schemes to

19

target Muslims, but were properly predicated and focused." ER 60-61 (citing *El-Masri v. United States*, 479 F.3d 296, 308 (4th Cir. 2007) ("'Subject matter' of an action means 'those facts that are essential to prosecuting the action or *defending* against it.'") (emphasis in original)). As the court explained, because "Plaintiffs' claims are predicated on their core allegation that Defendants engaged in an indiscriminate investigation, surveillance, and collection of information of Plaintiffs…because they were Muslim," Defendants need the privileged information to defend against Plaintiffs' claims—but that information is unavailable to them. ER 49.

The court also concluded "that the privileged and nonprivileged information are inextricably intertwined, such that litigating the instant case to judgment on the merits would present an unacceptable risk of disclosing state secrets." ER63. The court explained that in the "rare circumstances" present in this case, "the risk of disclosure that further litigation would engender cannot be averted through protective orders or restrictions on testimony." ER64. This risk of disclosure, the court explained, extends to Plaintiffs' Fourth Amendment claim because the allegations related to that claim cannot be separated from the factual context of Operation Flex. *Id.*

20

2.     In its second order, the district court declined to dismiss Plaintiffs'
FISA claim against the individual-capacity Defendants, including Tidwell and
Walls.  In so holding, the district court did not address Tidwell and Wall's
arguments that Plaintiffs failed to allege a reasonable expectation of privacy with
respect to recordings made in the presence of the invited informant or in public
areas.  And the district court did not address Tidwell and Wall's argument that
Plaintiffs failed to allege their personal involvement in, or authorization of,
surveillance undertaken outside the presence of the informant.  Instead, without
citation to the Complaint, the court concluded generally that "[t]he [Complaint]
makes clear that the Agents did intentionally engage in such surveillance without
authorization."  ER29.

3.     On October 12, 2012, the individual-capacity Defendants filed notices
of appeal from the denial of qualified immunity on Plaintiffs' FISA claim.  ER315-
316.  Thereafter, on Plaintiffs' motion, the district court issued a final judgment
under Federal Rule of Civil Procedure 54(b) as to the claims that the court had
dismissed.  ER317.  Plaintiffs appealed that dismissal, and their appeal is
consolidated with the individual-capacity Defendants' appeal from the denial of
qualified immunity.  ER1-10.

21

## SUMMARY OF THE ARGUMENT

Plaintiffs seek unprecedented and unjustified remedies against Defendants Tidwell and Walls, two FBI supervisors, based on their alleged knowledge and supervision of a counterterrorism investigation. Courts, however, consistently have rejected efforts to impose liability on government officials in similar circumstances, and for good reason: Determinations regarding sensitive national security matters have long been considered an area in which courts should hesitate to tread. *See Arar v. Ashcroft*, 585 F.3d 559, 575 (2d Cir. 2009) (en banc) (affirming dismissal of action against government officials because determinations relating to national security "fall within 'an area of [exclusive] executive action in which courts have long been hesitant to intrude' absent congressional authorization" (quoting *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993))); *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to…national security are rarely proper subjects for judicial intervention."). As the district court correctly held, such cases also often risk the disclosure of critical national security and counterterrorism information. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1088-1089 (9th Cir. 2010). And the specter of potential damages liability risks chilling the effective conduct of national security and counterterrorism activities. *See Ar*ar, 585 F.3d at 575. This case presents precisely these concerns,

22

and therefore the district court was correct in dismissing all but one of Plaintiffs' claims against Defendants Tidwell and Walls.

1.      As the district court held, the government's assertion of the state secrets privilege prevents Tidwell and Walls from fully and fairly litigating Plaintiffs' claims against them—including by contesting whether Plaintiffs' claims have any factual basis whatsoever, as well as by proving defenses Tidwell and Walls may have.  After all, Tidwell and Walls are foreclosed from relying on privileged information to dispute Plaintiffs' claims that they were subjects of the investigation; to rebut Plaintiffs' assertion that the investigation targeted Plaintiffs because of their religion; to disprove Plaintiffs' claims about how the investigation was conducted; and to otherwise prove defenses to those claims.  Because the Attorney General's invocation of the state secrets privilege prevents Tidwell and Walls from raising and supporting these defenses, dismissal was required.  *See Jeppesen* 614 F.3d at 1082-1083.

2.      Even if the government's assertion of the state secrets privilege did not warrant dismissal, dismissal of Plaintiffs' constitutional damages claims (Counts 1, 3, 6, and 9) was appropriate.  It is well established that, absent affirmative legislative action, "special factors [may] counsel[] hesitation" in extending a *Bivens* damages remedy to new contexts.  National security concerns

23

constitute such a special factor, *see, e.g.*, *Arar*, 585 F.3d at 575, and the district court's finding that further litigation would "require or unjustifiably risk disclosure of secret and classified information regarding the nature and scope of the FBI's counterterrorism investigations, the specific individuals under investigation, and their associates, and the tactics and sources of information used in combatting possible terrorist attacks on the United States and its allies" (ER33) makes plain that this case implicates substantial national security issues. At the same time, the existence of three comprehensive statutory schemes demonstrates Congress' desire not to allow judicially created causes of actions for the constitutional torts alleged here.

3.    Even if the government's assertion of the state secrets privilege did not require dismissal, and even if special factors did not counsel hesitation, Tidwell and Walls are entitled to qualified immunity on all claims against them. With respect to Plaintiffs' discrimination claims (Counts 1-4, 6-7), the Supreme Court has long held that "[g]overnment officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*," *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009), and the Complaint lacks well-pleaded allegations establishing that Tidwell and Walls themselves engaged in conduct that violated clearly established laws. Plaintiffs' conspiracy claims

24

(Counts 4 and 7) similarly fail plausibly to allege that Tidwell and Walls entered into a conspiracy to deprive Plaintiffs of their constitutional rights. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). And Plaintiffs' RFRA claim (Count 5) fails both because the "sophisticated balancing of interests" inherent in RFRA "is the very type of discretionary decision making that prevents a finding of 'clearly established' federal law on the issue," *Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 805 (D.S.C. 2011) (granting qualified immunity on RFRA claim), *aff'd*, 670 F.3d 540, 560 (4th Cir. 2012), and because Plaintiffs' have not plausibly alleged that Tidwell's or Walls' conduct placed a "substantial burden" on the free exercise of their religion.

Plaintiffs' Fourth Amendment claim (Count 9) suffers from these flaws and an additional one: Plaintiffs do not allege (as they must) that the informant's recordings took place under circumstances in which Plaintiffs had a reasonable expectation of privacy. Plaintiffs allege that the informant recorded their conversations in public areas (such as mosques, at lectures, and sporting events), as well as in places or conversations into in which the informant had been invited. But "a person has no expectation of privacy or confidentiality in their conversations and relations with another person, no matter how secretive the setting," *United States v. Aguilar*, 883 F.2d 662, 703 (9th Cir 1989), and the same

25

is true concerning areas open to the public, *see, e.g., United States v. Little*, 753 F.2d 1420, 1435-1436 (9th Cir. 1984) (no reasonable expectation of privacy in reception area when public may enter freely). At a minimum, it would not have been obvious to "every reasonable officer" that such recordings violated the Fourth Amendment.

4. For this reason, the district court erred in not dismissing Plaintiffs' FISA claim, which requires that the allegedly unlawful surveillance have occurred "under circumstances in which [Plaintiffs had] a reasonable expectation of privacy." 50 U.S.C. § 1801(f)(4); *see also ACLU v. NSA*, 493 F.3d 644, 683 (6th Cir. 2007) ("aggrieved person is intended to be *coextensive with, but no broader than, those persons who have standing to raise claims under the Fourth Amendment*") (emphasis added). Because Plaintiffs could not have had a reasonable expectation of privacy in the recordings made by the informant, no reasonable officer (let alone every reasonable officer) would have believed that the alleged conduct violated FISA.

5. The FTCA's judgment bar also precludes all of Plaintiffs' claims against Tidwell and Walls. Plaintiffs' FTCA claim against the United States arises out of the same subject matter as (and is indeed based on the same conduct forming the basis of) Plaintiffs' claims against the individual-capacity defendants. For the

26

reasons discussed in the government's brief (at 39-41), this Court should affirm the judgment in the government's favor on Plaintiffs' FTCA claim, that judgment "constitute[s] a complete bar to any action by [Plaintiffs]" against Tidwell and Walls. 28 U.S.C. § 2676.

## ARGUMENT

### I. THE ATTORNEY GENERAL'S ASSERTION OF THE STATE SECRETS PRIVILEGE REQUIRED DISMISSAL OF COUNTS 1-7 AND 9

It is well established that the state secrets privilege "permits the government to bar the disclosure of information if 'there is a reasonable danger' that disclosure will 'expose …matters which, in the interest of national security, should not be divulged.'" *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007) (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)). When the government invokes the state secrets privilege, "the evidence is completely removed from the case," *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1988), and "is absolutely privileged, irrespective of the plaintiffs' countervailing need for it," *Jeppesen*, 614 F.3d at 1081. If the removal of privileged information precludes a defendant from adequately raising and supporting available defenses, the action must be dismissed. *See id.* at 1083; *Kasza*, 133 F.3d at 1166; *see also General Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1907 (2011) (where state secrets

27

assertion precludes litigation, "traditional course is to leave the parties where they stood when they knocked on the courthouse door").

The district court correctly held that the Attorney General's invocation of the state secrets privilege deprives Tidwell and Walls of information crucial to their defenses. Each of Plaintiffs' discrimination claims is predicated on, and would require the adjudication of, Plaintiffs' allegations that Tidwell and Walls approved and supervised unlawful investigative activities and electronic surveillance based solely on Plaintiffs' religion. Indeed, to prevail on these claims, Plaintiffs "must plead *and prove* that [Tidwell and Walls] acted with discriminatory purpose." *Iqbal*, 556 U.S. at 678 (emphasis added); *see Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540-541 (1993) (First Amendment); *Washington v. Davis*, 426 U.S. 229, 240 (1976) (Fifth Amendment). Defendants Tidwell and Walls, in turn, are entitled to defend themselves by contesting Plaintiffs' claims that they were subject to investigative activity, including surveillance; disproving that Defendants acted with improper purpose; or otherwise demonstrating that the investigation was not conducted in the manner alleged by Plaintiffs. But the Attorney General's invocation of the state secrets privilege prevents Tidwell and Walls from presenting evidence that could establish these very points.

28

In contending that the state secrets assertion did not warrant dismissal, Plaintiffs argue that it is not "at all clear at this stage of the proceeding that *Plaintiffs need to learn* what reasons other than religion were employed by Defendants in their decision to target Plaintiffs," Pls. Br. at 44 (emphasis added), and that "no state secrets likely need to be divulged in order for the Court to determine whether Plaintiffs have established a *prima facie* case of facial discrimination." *Id.* at 41. These arguments, however, reflect a fundamental misconception of the relevant inquiry, and indeed of how litigation proceeds generally. The crux of the allegations against Tidwell and Walls is that they were involved in investigating Plaintiffs because of their religion. *Id*. at 38. Plaintiffs may believe they do not "need to learn" more on this point, but Tidwell and Walls are entitled to test and disprove that contention by showing, for example, that they did not undertake any investigative actions based on religion; that they had non-discriminatory, national security and law enforcement-related reasons for investigating specific individuals; and that any methods they used were narrowly tailored to achieve an important government interest in combatting terrorism. Indeed, even if Plaintiffs could prove what they call a "*prima facie* case of facial discrimination," the factfinder must decide more than just that question, including whether Defendants' actions were narrowly tailored and carried out in furtherance

29

of a compelling government interest. *Church of Lukumi Babalu Aye*, 508 U.S. at 531-532.

Plaintiffs similarly contend that, to warrant dismissal, the state secrets evidence "would have to show not merely why Defendants might have had cause to conduct a counterterrorism investigation, but also *why they had to focus their investigation on a religion, treating the mere fact that someone practices Islam as suspicious in and of itself.*" Pls. Br. at 37 (emphasis added). But this argument simply assumes the truth of Plaintiffs' allegation that Defendants *in fact* acted in this manner. Defendants, of course, are entitled to contest that assertion, but are prevented from doing so by the Attorney General's assertion of the state secrets privilege.[6] *See El-Masri*, 479 F.3d at 309-310 (stating dismissal proper where defendants "could not properly defend themselves without using privileged evidence").

For similar reasons, and as the district court held, Plaintiffs' claims must be dismissed because they are so intertwined with state secrets that "there is no feasible way to litigate [their] liability without creating an unjustifiable risk of

---

[6]    Plaintiffs repeat this error in suggesting that Tidwell and Walls would have to "[t]ak[e] as true the complaint's allegations of pervasive and explicit targeting of Muslims for surveillance." Pls.' Br. 43. Again, in defending against Plaintiffs' claims, Defendants would not have to take Plaintiffs' allegations as true, but would contest and rebut them on all available grounds—which the state secrets assertion now precludes.

divulging state secrets." *Jeppesen*, 614 F.3d at 1087; *see El-Masri*, 479 F.3d at 312. Tidwell's and Walls's alleged roles in the counterterrorism investigation and the propriety of their actions cannot be isolated from the privileged aspects of this case, which relate to the investigation and its targets, predicates, and sources and methods. Where, as here, the "facts underlying plaintiffs' claims are so infused with … secrets" the case must be dismissed because "any plausible effort … to defend against them would create an unjustifiable risk of revealing state secrets, even if plaintiffs could make a prima facie case on one or more claims with non-privileged evidence." *Jeppesen*, 614 F.3d at 1088.[7]

## II. THE FEDERAL TORT CLAIMS ACT JUDGMENT BAR PRECLUDES PLAINTIFFS' CLAIMS AGAINST TIDWELL AND WALLS

Even if dismissal on the basis of the state secrets privilege were not required, the FTCA's judgment bar precludes Plaintiffs' claims against Tidwell and Walls. In September 2011 Plaintiffs amended their complaint to add claims against the United States under the Federal Tort Claims Act (FTCA). ER247-248. *See* 28

---

[7] Dismissal of Plaintiffs' Fourth Amendment claim on this basis was also proper. Plaintiffs argued below that the reasons for the investigation were relevant to their Fourth Amendment claim because "the FBI . . . cannot engage in a fishing expedition targeting an entire religious group without a proper law enforcement purpose." T&W ER72.. But the Attorney General's invocation of the state secrets privilege prevents Defendants Tidwell and Walls from litigating whether they "engage[d] in a fishing expedition targeting an entire religious group," or whether they acted "without a proper law enforcement purpose."

U.S.C. § 1346(b)(1). After the district court found that the Attorney General's assertion of the state secrets privilege warranted dismissal of all of Plaintiffs' claims against the United States, the district court (at Plaintiffs' urging) issued a partial final judgment under Federal Rule of Civil Procedure 54(b) with respect to all of the dismissed claims—including Plaintiffs' FTCA claim. ER11-12. As a result of that final judgment, all of Plaintiffs' claims against Tidwell and Walls fall squarely within the FTCA's judgment bar and must be dismissed. *See* 28 U.S.C. § 2676.

Section 2676 of the FTCA makes clear that "[t]he judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. This provision acts to bar claims against individual employees like Tidwell and Walls whether or not the FTCA judgment results in a recovery for plaintiffs, *Gasho v. United States*, 39 F.3d 1420, 1437 (9th Cir. 1994), and whether or not plaintiffs assert the FTCA claim and the claim against the individual-capacity defendant in the same lawsuit, *Arevalo v. Woods*, 811 F.2d 487, 490 (9th Cir. 1987); *compare Kreines v. United States*, 959 F.2d 834, 836, 838 (9th Cir. 1992) (declining to apply the FTCA judgment bar without a prior Rule 54(b) judgment). Because all of Plaintiffs'

32

claims against Tidwell and Walls share the same underlying factual basis as the FTCA claim, if this Court agrees with the government that the FTCA claim against the United States must be dismissed (Gov. Br. 29-41), then that judgment bars all of Plaintiffs' claims against Tidwell and Walls.

### III. THIS COURT SHOULD AFFIRM DISMISSAL OF PLAINTIFFS' CONSTITUTIONAL DAMAGES CLAIMS BECAUSE *BIVENS* SHOULD NOT BE EXTENDED TO THIS CONTEXT

Even if dismissal on the basis of the state secrets privilege or the FTCA judgment bar were not required, dismissal of Plaintiffs' constitutional tort claims against Tidwell and Walls was appropriate for a separate and independent reason: No court has recognized a *Bivens* damages remedy in this context, and there is good reason to decline Plaintiffs' invitation to do so.[8]

#### A. No Court Has Extended *Bivens* To This Context

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against

---

[8] This Court has jurisdiction on appeal to rule "on any ground supported by the record, regardless of whether the district court relied upon, rejected, or even considered that ground." *Fresno Motors LLC v. Mercedes Benz USA*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citation omitted); *see also Cigna Prop. & Casualty Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998) ("In reviewing decisions of the district court, we may affirm on any ground finding support in the record. If the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong reasoning." (internal citations omitted)).

federal officers alleged to have violated a citizen's constitutional rights."
*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66, (2001). Because "[a]
*Bivens* cause of action is implied without any express congressional authority
whatsoever," *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006), it is "disfavored,"
*Iqbal*, 556 U.S. at 676, and courts have made clear that "[s]uch a cause of action 'is
not an automatic entitlement *no matter what other means there may be* to vindicate
a protected interest.'" *Mirmehdi v. United States*, 662 F.3d 1073, 1078 (9th Cir.
2011) (emphasis added) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

Accordingly, since *Bivens*, the Supreme Court has "extended its holding
only twice," *Malesko*, 534 U.S. at 70, and has only done so with respect to
circumstances not implicated here, *see Davis v. Passman*, 442 U.S. 228 (1979)
(employment discrimination in violation of Fifth Amendment); *Carlson v. Green*,
446 U.S. 14 (1980) (Eight Amendment violation by prison officials). And in the
thirty-four years since *Bivens* was last expanded, the Supreme Court has
"consistently refused to extend *Bivens* liability to *any* new context or new category
of defendants." *Malesko*, 534 U.S. at 68 (emphasis added) (Eighth Amendment
violation by prison officials working for federal contractor).[9]

---

[9]     *See also Wilkie v. Robbins*, 551 U.S. 537 (2007) (extortion by federal
officers in violation of Fifth Amendment); *FDIC v. Meyer*, 510 U.S. 471 (1994)
(deprivation of property in violation of Fifth Amendment); *Schweiker v. Chilicky*,

34

In determining whether a particular case presents a new "context," this Court has reaffirmed that the inquiry does not focus on the constitutional right at issue; rather, the term "context" "reflect[s] a potentially recurring scenario that has similar legal and factual components." *Mirmehdi*, 662 F.3d 1073, 1079 (9th Cir. 2011) (quoting *Arar*, 585 F.3d at 572); *see Western Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) (relevant "context" can be "factual" or "legal"). No court, however, has extended *Bivens* to the context at issue here—to provide damages for alleged religious discrimination or allegedly unlawful searches arising from an informant's surveillance conducted during a counterterrorism investigation. *Cf. Mirmehdi*, 662 F.3d at 1079 (considering "relevant 'environment of fact and law' in which to 'decide whether to recognize a *Bivens* remedy'"). Indeed, the Supreme Court has altogether "declined to extend *Bivens* to a claim sounding in the First Amendment," *Iqbal*, 556 U.S. at 676, and no court has inferred a damages cause of action under the Fourth or Fifth Amendment to remedy alleged injuries in a factual and legal context analogous to this case. *Cf. Arar*, 585 F.3d at 572.

---

487 U.S. 412 (1988) (denial of social Security disability benefits in violation of Fifth Amendment); *United States v. Stanley*, 483 U.S. 669 (1987) (injuries incident to military service); *Bush v. Lucas*, 462 U.S. 367 (1983) (defamation and retaliatory demotion of federal employee in violation of First Amendment); *Chappell v. Wallace*, 462 U.S. 296 (1983) (racial discrimination by military superiors).

### B. The Creation Of A *Bivens* Cause Of Action Is Inappropriate In This Context

It is well established that courts should not extend *Bivens* to new contexts where "there is 'any alternative, existing process for protecting' the plaintiffs' interests," or if there are special "'factors counseling hesitation' before devising such an implied right of action." *Mirmehdi,* 662 F.3d at 1079 (quoting *Western Radio*, 578 F.3d at 1120). The judicial creation of a *Bivens* remedy here would be inappropriate for both reasons.

#### 1. National security and the assertion of the state secrets privilege are special factors precluding a *Bivens* remedy

Whether special factors counsel hesitation in the absence of congressional action "is [a] remarkably low" standard, and courts should refuse to recognize a *Bivens* remedy "whenever thoughtful discretion would pause even to consider." *Arar*, 585 F.3d at 574. Special factors "d[o] not concern the merits of the particular remedy that [i]s sought. Rather, they relate to the question of who should decide whether such a remedy should be provided … [and] whether there are reasons for allowing Congress to prescribe the scope of relief that is made available." *Bush v. Lucas*, 462 U.S. 367, 380 (1983).

The Supreme Court consistently has held that *Bivens* should not be extended in cases involving "determinations relating to national security" because such issues "fall within 'an area of [exclusive] executive action in which courts have

36

long been hesitant to intrude' absent congressional authorization." *Arar*, 585 F.3d at 575 (quoting *Lincoln*, 508 U.S. at 192); *see Haig*, 453 U.S. at 292 ("Matters intimately related to … national security are rarely proper subjects for judicial intervention."). Given the expertise of the executive and legislative branches in "litigation implicating sensitive and weighty interests of national security," the judgment of the political branches "is entitled to deference." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33 (2010); *see Boumediene v. Bush*, 553 U.S. 723, 797 (2008) ("neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people"). Courts have thus repeatedly declined to extend *Bivens* to such suits because they "unavoidably influence[] government policy, probe[] government secrets, invade[] government interests, enmesh[] government lawyers, and thereby elicit[] government funds for settlement." *Arar*, 585 F.3d at 574; *see Mirmehdi*, 662 F.3d at 1079-1080 (*Bivens* remedy inappropriate in immigration context for same reasons); *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 74-75 (D.D.C. 2014); *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008); *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994); *see also United States v. Stanley*, 483 U.S. 669, 682-684 (1987) (*Bivens* remedy inappropriate because "mere process of arriving at correct conclusions would disrupt the military regime"); *Chappell v. Wallace*, 462

U.S. 296, 301 (1983) (no *Bivens* remedy where military and national security issues implicated).

This case necessarily probes into the predicates, subjects, and methods of an FBI counterterrorism investigation. Indeed, Plaintiffs seek to have a factfinder assess whether the purposes and goals of the investigation were necessary and appropriate; who the specific targets and subjects of the investigation were and how and why they were identified; and whether the specific techniques were appropriately tailored to achieve the purposes and goals of the investigation. Not only do Plaintiffs seek compensation for alleged constitutional injuries, but they also challenge the executive branch's counterterrorism-related investigatory policies. *See, e.g.*, ER187-188. But those are precisely the kinds of claims that are inappropriate for resolution through a judicially created damages remedy that could second guess the judgments of executive branch officials involved in counterterrorism activities. *See Arar*, 585 F.3d at 574 ("Our federal system of checks and balances provides means to consider allegedly unconstitutional executive policy … a private action … against individual policymakers is not one of them.").

Moreover, as discussed *supra* Part I, to defend against Plaintiffs' First and Fifth Amendment claims, Defendants would need to show, among other things,

that they had non-discriminatory national-security or law-enforcement reasons for allegedly investigating specific individuals and that the methods they used were narrowly tailored to achieve important government interests. But as the government's assertion of the state secrets privilege demonstrates—and as the district court agreed—Defendants cannot do so without risking the disclosure of sensitive national-security and counterterrorism information. The state secrets assertion thus underscores the need for hesitation before creating a new *Bivens* remedy likely to expose such sensitive information. *See Arar*, 585 F.3d at 575-576 (state secrets assertion additional factor in declining to create *Bivens* remedy); *Black v. United States*, 62 F.3d 1115, 1118 (8th Cir. 1995) (claim dismissed where "protected information precludes [plaintiff] from establishing a prima facie *Bivens* claim and continued litigation carries with it the risk that privileged information might be disclosed").

### 2. Existing remedial statutory schemes preclude the creation of a *Bivens* remedy

In addition, several federal statutory schemes—including the Privacy Act, 5 U.S.C. § 552a; RFRA, 42 U.S.C. §§ 2000bb-2000bb-4; and FISA, 50 U.S.C. §§ 1801 *et seq.*—already exist to remedy the harm that Plaintiffs allege, precluding the judicial creation of an additional remedy. *See Mirmehdi*, 662 F.3d at 1079 (no *Bivens* remedy where "there is '*any* alternative, existing process for protecting' the

39

plaintiffs' interests" (emphasis added)). "If there is such an alternative remedy, [the court's] inquiry stops." *Id.*

Plaintiffs' constitutional damages claims allege that Plaintiffs were subjected to discriminatory, illegal surveillance designed to collect and maintain information related to their First Amendment activity. But the Privacy Act sets out extensive requirements regulating "the collection, maintenance, use, and dissemination of information about individuals by federal agencies." *See Wilson*, 535 F.3d at 707 (internal quotation marks omitted). In particular, the Act expressly forbids the maintenance of any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). The Act also authorizes damages actions against the government for failure to comply with its provisions. *Id.* § 552a(g). Plaintiffs assert a Privacy Act violation in Count 8 of their Complaint. ER245-246.

Plaintiffs' First and Fifth Amendment *Bivens* claims (Counts 1, 3, 6) allege, in turn, that the FBI targeted Plaintiffs because of their religion and burdened their free exercise. But Congress has already legislated extensively in this area through RFRA, which prohibits the "government" from "substantially burden[ing] a

40

person's exercise of religion," unless the burden is shown to be "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." 5 U.S.C. § 2000bb-1(a), (b). RFRA includes a cause of action pursuant to which a person may assert an alleged violation "in a judicial proceeding and obtain appropriate relief against a government." *Id*. § 2000bb-1(c). And again, Plaintiffs assert a RFRA claim against all Defendants in Count 5. ER244.

Finally, Plaintiffs' Fourth Amendment *Bivens* claim (Count 9) alleges that Plaintiffs' rights were violated by "unreasonable searches … including … audio recording Plaintiffs' communications without a warrant …; video recording in homes and other places …; and entering and planting electronic listening devices … without a warrant." ER246. Congress has legislated heavily in this field through FISA, which comprehensively regulates "surveillance for the purpose of gathering foreign intelligence information, which is defined to include 'information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against ... international terrorism.'" *United States v. Stewart*, 590 F.3d 93, 126 (2d Cir. 2009). Indeed, "Congress passed FISA to settle what it believed to be the unresolved question of the applicability of the Fourth Amendment warrant requirement to electronic

41

surveillance for foreign intelligence purposes, *and to 'remove any doubt as to the lawfulness of such surveillance.'"* *United States v. Duggan*, 743 F.2d 59, 73 (2d Cir. 1984) (emphasis added). FISA also creates a damages remedy for "aggrieved person[s] subjected to illegal electronic surveillance" where "the defendant intentionally engaged in that illegal electronic surveillance, or intentionally used or disclosed the information derived therein with knowledge of, or reason to know of, the illegal manner in which it was collected." 50 U.S.C. § 1810. Plaintiffs have asserted such a claim in Count 10 of their Complaint. ER247.

At a minimum, these statutes counsel against the creation of a *Bivens* remedy here because they reflect Congress' intent that it, rather than the judiciary, should decide whether to create a damages remedy in these circumstances. *See Wilkie*, 551 U.S. at 550 ("even in the absence of an alternative, a *Bivens* remedy is a subject of judgment," and in making that judgment, courts must "pay[] particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation"); *Mirmehdi*, 662 F.3d at 1080 (existing statutory causes of action constitute special factors counseling against creation of *Bivens* remedy in addition to constituting alternative, existing process). The relevant inquiry is whether Congress, by legislating in the area, has spoken as to who should determine whether a cause of action exists. *See Bush*, 462 U.S. at 380. If

42

Congress has provided a remedy for a particular harm, judicial supplementation of the remedy through an implied *Bivens* action is unwarranted. *Malesko*, 534 U.S. at 69. If, on the other hand, Congress has legislated in a particular area and declined to provide a damages remedy, courts should infer that Congress believes such a remedy to be inappropriate. *See, e.g.*, *Bush*, 462 U.S. at 367; *Schweiker v. Chilicky*, 487 U.S. 412, 412 (1988). A court therefore should not create a *Bivens* remedy merely because existing statutory remedies do not provide a particular plaintiff complete relief.[10]

To be sure, the Privacy Act does not authorize a damages remedy against *individuals* like Tidwell and Walls, but it does create such a cause of action against the government, and in light of the comprehensive nature of the statutory scheme, Congress' decision not to permit damages against individuals precludes the judicial creation of such a remedy. *See Chilicky*, 487 U.S. at 423; *Wilson*, 535 F.3d 707-708. Similarly, even if RFRA does not allow for damages claims against government officers in their individual capacities, or even if RFRA and FISA do

---

[10]     *See, e.g.*, *Stanley*, 483 U.S. at 683 ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [a plaintiff] an 'adequate' federal remedy for his injuries."); *Chilicky*, 487 U.S. at 421-422 (absence of statutory relief does not imply that courts should award damages); *Malesko*, 534 U.S. at 69 (remedy should not "be implied simply for want of any other means for challenging a constitutional deprivation"); *Mirmehdi*, 662 F.3d at 1080 ("'[s]o long as Congress' failure to provide money damages … has not been inadvertent, courts should defer to its judgment'") (internal citation omitted).

not provide these Plaintiffs complete relief, inferring a *Bivens* cause of action would likewise be inappropriate.  In such a situation, the relevant inquiry "is not what remedy the court should provide for a wrong that would otherwise go unaddressed," but whether a statutory scheme "should be augmented by the creation of a new judicial remedy," a question that "cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff." *Bush*, 462 U.S. at 388; *see id.* at 373 (no *Bivens* action, even assuming "a federal right has been violated and Congress has provided a less than complete remedy for the wrong"); *Wilson*, 535 F.3d at 711 (statute precludes *Bivens* remedy even when it provides no remedy).  Courts have held that the Privacy Act is a special factor counseling against *Bivens* claims in circumstances similar to this case, *see id.* at 706-711; *Downie v. City of Middleburg Heights*, 301 F.3d 688, 697 (6th Cir. 2002), and RFRA and FISA should be treated similarly.

## IV.  THIS COURT SHOULD AFFIRM THE DISMISSAL OF COUNTS 1-7 AND 9 BECAUSE TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if this Court disagrees that the Government's assertion of the state secrets privilege requires dismissal, even if the FTCA's judgment bar did not preclude Plaintiffs' claims against the individual-capacity Defendants, and even if this Court were to recognize a *Bivens* cause of action for some of Plaintiffs' claims,

dismissal of all claims against Defendants Tidwell and Walls is required because they are entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. Qualified immunity permits government officials "to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 2085 (citation omitted).

### A. Qualified Immunity Bars Plaintiffs' Religious Discrimination Claims

Plaintiffs' First and Fifth Amendment claims (Counts 1-4, 6 and 7) are predicated on the contention that "Defendants [have] engaged in a scheme to target Plaintiffs for surveillance because of [their] adherence to and practice of the religion of Islam." ER242-245. Government officials, however, cannot be held liable for constitutional claims on a *respondeat superior* theory. Rather, "a plaintiff must plead that *each* Government-official defendant, through the official's

45

*own* individual actions, has violated the Constitution"; such defendants "may not be held liable for the unconstitutional conduct of their subordinates." *Iqbal*, 556 U.S. at 676 (emphases added).

In addition, where, as here, "the claim is invidious discrimination in contravention of the First and Fifth Amendments," the Supreme Court has made clear "that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676; *see Church of Lukumi Babalu Aye*, 508 U.S. at 540-541 (First Amendment); *Washington v. Davis*, 426 U.S. at 240 (Fifth Amendment). "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'" *Iqbal*, 556 U.S. at 676. Instead, it requires "a decisionmaker's undertaking a course of action because of, not merely in spite of … adverse effects upon an identifiable group." *Id.* at 676-677 (internal quotation marks omitted). Applying that standard in *Iqbal,* the Supreme Court made clear that qualified immunity bars claims of "invidious discrimination in contravention of the First and Fifth Amendments" where defendants only allegedly supervised the implementation of federal counterterrorism policies that discriminated against Muslims. *Id*. at 668, 676.

Here, as in *Iqbal,* the Complaint does not plausibly allege that Tidwell or Walls "adopted and implemented the … policies at issue not for a neutral,

46

investigative reason but for the purpose of discriminating on account of" Plaintiffs'
religion. 556 U.S. at 677. Plaintiffs mention Tidwell and Walls in only nine of the
Complaint's 260 paragraphs, and those paragraphs contain only generic allegations
regarding those Defendants' supervision of the investigation. For example,
Plaintiffs allege that Tidwell "authorized the nature and scope of the operation and
its targeting of Muslims," and "actively" directed the agents "for the purpose of
surveilling Plaintiffs and other[s] … because they were Muslim." ER185-186.
Likewise, the Complaint describes Walls's role as "one of the direct supervisors
of" the agents conducting the investigation at issue. ER186. But these are
precisely the kinds of "labels and conclusions" and "formulaic recitation of the
elements of a cause of action" that the Supreme Court held insufficient in
*Twombly*. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). Such
"[t]hreadbare recitals of the elements of a cause of action, supported by mere
conclusory statements" "do not suffice," nor are they "entitled to the assumption of
truth." *Iqbal*, 556 U.S. at 664; *id.* at 680-681 (allegations insufficient where
Plaintiffs alleged that Attorney General was "principal architect" of "invidious
policy" and that FBI Director was "instrumental" in executing the policy); *id.* at
678 (Rule 8 "demands more than unadorned, the-defendant-unlawfully-harmed-me
accusation").

47

Moreover, the allegation that Tidwell and Walls purposely discriminated against Plaintiffs on the basis of religion is implausible in light of Plaintiffs' other allegations. After all, Plaintiffs allege that Defendants "operated under the principles set forth" in the Attorney General's Guidelines and the DIOG, which explicitly *prohibited* investigative activity based solely on religion and First Amendment activities. *See* ER193-194. Similarly, the Complaint contains numerous allegations that the investigation was related to counterterrorism efforts. *See supra* Background Section. Such allegations offer precisely the kind of "obvious alternative explanation" that this Court should credit as more plausible than Plaintiffs' general and conclusory allegations of "purposeful, invidious discrimination" on the part of Tidwell or Walls. *Iqbal*, 556 U.S. 681-682. As the Supreme Court recognized in *Iqbal*:

> [i]t should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the [September 11] attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims.

*Id.*

Because Plaintiffs fail to allege violations by Tidwell and Walls of the First and Fifth Amendments, it could not have been clearly established at the time that their alleged conduct violated Plaintiffs' rights. *See Presbyterian Church (U.S.A.)*

48

*v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) (undercover electronic surveillance of church services did not violate clearly established First Amendment rights); *see also al-Kidd*, 131 S. Ct. at 2084 ("We have repeatedly told courts … not to define clearly establish law at a high level of generality." (citation omitted)); *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (right clearly established if "'[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right'"), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

## B.   Tidwell And Walls Are Entitled To Qualified Immunity On Plaintiffs' Conspiracy Claims

Plaintiffs also assert (in Counts 2, 4, and 7) conspiracy claims against Tidwell and Walls under 42 U.S.C. § 1985(3).  The existence of a conspiracy, of course, requires an agreement among co-conspirators, and for the purposes of Section 1985(3), Plaintiffs must allege that Defendants had "an agreement or meeting of the minds to violate constitutional rights."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-1541 (9th Cir. 1989) (en banc) (internal quotation marks omitted).  But alleging such an agreement in conclusory terms is insufficient; instead, Plaintiffs must allege facts plausibly suggesting a "further circumstance pointing toward a meeting of the minds."  *Twombly*, 550 U.S. at 557; *see Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th

49

Cir. 1988) ("mere allegation of conspiracy without factual specificity is insufficient"); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("Each government official, his or her title notwithstanding, is only liable for his or her own misconduct." (quoting *Iqbal*, 556 U.S. at 693)). Plaintiffs also must allege facts that make plausible the existence of an agreement. *See Twombly*, 550 U.S. at 557 (a "naked assertion of conspiracy … gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief'"). And Plaintiffs "must demonstrate a deprivation of [equal protection] motivated by 'some … invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Crucially, Plaintiffs' Complaint fails to allege any factual, non-conclusory allegations that anyone, let alone Tidwell or Walls, came to a "meeting of the minds" to violate Plaintiffs' constitutional rights. Indeed, far from alleging the necessary elements of a Section 1985(3) claim with "factual specificity," Plaintiffs allege in only vague and general terms that Tidwell authorized various aspects of the investigation and "actively directed" the actions of "Agents Armstrong, Allen, Rose, Walls, and other agents." ER185-186. They similarly allege, in summary

50

language, that Walls "monitored, directed, and authorized the actions of"

Armstrong, Allen and other agents, both "for the purpose of surveilling Plaintiffs

and other[s]…because they were Muslim." *Id.*  Such conclusory assertions are not

"entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.[11]

## C.    Qualified Immunity Bars Plaintiffs' RFRA Claim

Tidwell and Walls are also entitled to qualified immunity on Plaintiffs'

RFRA claim, both because Plaintiffs fail to allege that Defendants' actions placed

a substantial burden on Plaintiffs' free exercise of religion,[12] and because their

---

[11]     It also is not clearly established—and certainly was not clearly established in 2006 and 2007—that Section 1985(3) applies to conspiracies other than those motivated by racial animus.  The Ninth Circuit has not determined whether a religious group may be a protected class for purposes of Section 1985(3).  *See Webb v. County of Trinity*, 734 F. Supp. 2d 1018, 1033 n.8 (E.D. Cal. 2010). Indeed, the Supreme Court has acknowledged that this issue remains open, noting that it has "addressed and upheld a claim under §1985(3)" only once, and that case involved race discrimination."  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) (citing *Griffin*, 403 U.S. 88).  Therefore, even if Plaintiffs had plausibly alleged a conspiracy, qualified immunity requires dismissal of the section 1985(3) claims.

[12]     Separate from the qualified immunity bar, this court should affirm the dismissal of Plaintiffs' RFRA claim because RFRA does not permit suits for damages against individual-capacity defendants.  RFRA permits "a person whose religious exercise has been burdened" to "assert that violation as a claim or defense in a judicial proceeding" and to "obtain appropriate relief *against a government*." 42 U.S.C. § 2000bb-1(c) (emphasis added).   Individual-capacity Defendants Tidwell and Walls are not "government[s]," however, and therefore this provision does not authorize damages suits against them.  *See Jean-Pierre v. Bureau of Prisons*, No. 09-266, 2010 WL 3852338, at *6 n.4 (W.D. Pa. July 30, 2010), *aff'd in part*, 479 F. App'x 164 (3d Cir. 2012).  RFRA's definition of "government"—a

RFRA claim presents precisely the kind of balancing of interests for which qualified immunity is particularly appropriate.

### 1. Plaintiffs have not alleged a "substantial burden" on free exercise

Plaintiffs fail to allege, as they must, facts sufficient to plead that Tidwell's or Walls's activities placed a "substantial burden" on Plaintiffs' exercise of religion. To state a claim under RFRA, Plaintiffs must allege a substantial interference with the right of free exercise. *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1120 (9th Cir. 2000). But the government substantially burdens the right of free exercise only when it "has coerced the Plaintiffs to act contrary to their religious beliefs under threat of sanctions, or conditioned a governmental benefit upon conduct that would violate the plaintiffs' religious beliefs." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008).

---

branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, a State, or subdivision of a State." 42 U.S.C. § 2000bb-2(1)—reaffirms this reading. The term "official" is most naturally read to authorize official-capacity suits, which, consistent with the text, would seek "relief against [the] government." *Id.* § 2000bb-1(c); *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent'").

Plaintiffs, however, do not make a plausible claim that Defendants Tidwell or Walls either "coerced" them to act contrary to their religious beliefs "under threat of sanctions," or "conditioned a governmental benefit upon conduct that would violate the plaintiffs' religious beliefs." *Id.* at 1063. Rather, Plaintiffs complain that the alleged surveillance—once they learned of it[13]—ultimately had a chilling effect on their mosque attendance. It is well established, however, that an "action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion is not what Congress has labeled a 'substantial burden' … on the free exercise of religion." *Id.*

For the same reasons, Tidwell and Walls could not have reasonably believed at the time that their alleged conduct violated RFRA. Qualified immunity protects government officials who do not have fair warning about the legality of their actions, and therefore courts have made clear that the "sophisticated balancing of interest" inherent in RFRA "is the very type of discretionary decision making that

---

[13]    Plaintiffs allege that they did not know of the informant's activities until *after* the surveillance ended, and only then did Malik and AbdelRahim decrease their mosque attendance. ER204, 239. Plaintiffs do not allege that their religious exercise was substantially burdened by the informant's activities while ongoing, and any subsequent change in their mosque attendance is motivated only by speculative, after-the-fact concerns, not the informant's alleged conduct. Fazaga also alleges that the informant caused damage to the "trust within and cohesion of his congregation," which "directly undermined the Islamic practice of *jama'ah*, or worship in a congregation" ER201. These claims do not go to Fazaga's religious exercise.

53

prevents a finding of 'clearly established' federal law on the issue." *Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 805 (D.S.C. 2011) (granting qualified immunity on RFRA claim), *aff'd*, 670 F.3d 540, 560 (4th Cir. 2012) ("At the very least, the defendants transgressed no clearly established law in this area, and to hold them personally liable in the absence of clear notice that such a prospect was even possible would run counter to the reasons that the immunity exists."). Indeed, qualified immunity is particularly appropriate in this case because RFRA *permits* a substantial burden on religion where the government can demonstrate that its actions were "in furtherance of a compelling state interest" and it used "the last restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb-1(b)(2).

### D. Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim

Plaintiffs' Fourth Amendment claim against Tidwell and Walls (Count 9) alleges that the informant, at the FBI's direction, conducted unlawful video and audio recording of Plaintiffs in mosques, in homes, and at sporting events. Plaintiffs again seek to improperly hold Tidwell and Walls accountable for conduct of the informant and their subordinates, while failing to allege that either Tidwell or Walls had any personal involvement in or directed the allegedly unlawful

searches.[14] Moreover, covert surveillance of a religious community does not, without more, violate Fourth Amendment rights, *see Presbyterian Church*, 870 F.2d at 527, and the Complaint lacks any specific allegations that the informant's conduct occurred in circumstances in which Plaintiffs had a reasonable expectation of privacy.

> ### 1. Plaintiffs fail to allege that Tidwell and Walls were personally involved in the purported searches, or that a sufficient causal connection between their conduct and the alleged violation otherwise existed

Plaintiffs can state a Fourth Amendment claim against supervisors such as Tidwell or Walls only by plausibly alleging that they were "personally involved" in the allegedly unlawful search or that "a sufficient causal connection exists" between their alleged conduct and the violation. *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010); *see Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (when evaluating constitutional deprivations, "[t]he inquiry into causation must be individualized and focused on the duties and responsibilities of each individual defendant"). To satisfy this requirement, Plaintiffs must allege, at a minimum, that Tidwell and Walls "set[] in motion a series of acts by others

---

[14] Tidwell and Walls address only the Fourth Amendment claims specific to Plaintiffs, and not those alleged with respect to unnamed individuals, as Fourth Amendment rights "are personal rights" that may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 138 (1978).

which [they knew] or reasonably should [have known] would cause others to inflict the constitutional injury." *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004).

The Complaint fails to satisfy these requirements. Plaintiffs do not allege that Tidwell or Walls was "personally involved" in the purported searches, nor do they offer any facts—much less specific ones—showing that a "sufficient causal connection exists" between the actions of Tidwell and Walls and the alleged Fourth Amendment violations, such as personally directing the agents or the informant to engage in activities that could plausibly constitute an unlawful search. At most, Plaintiffs allege in general terms that Tidwell and Walls oversaw the overall investigation. But such generalized allegations are insufficient to state a Fourth Amendment claim. *See Lyall v. City of L.A.*, No. 09-7353, 2011 WL 61626, at *13 (C.D. Cal. Jan. 6, 2011) ("[A]bsent evidence of culpable inaction that caused or set in motion the alleged constitutional violations … Plaintiffs cannot establish supervisory liability."); *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) ("The Court discounts, as it must, the plaintiffs' wholly conclusory allegation that the supervisory defendants 'personally reviewed and thus knowingly ordered, directed, sanctioned, or permitted' the allegedly unconstitutional stops.")

56

**2.     Plaintiffs fail to allege a reasonable expectation of privacy in the circumstances of the alleged searches**

Even if Plaintiffs had adequately alleged that Tidwell and Walls had personally ordered the recordings, Plaintiffs fail to allege that the recordings actually violated the Fourth Amendment.  *See United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000).

It is well established that recordings made during conversations with so-called "invited informers" do not violate the Fourth Amendment.  *United States v. Mayer*, 503 F.3d 740, 750 (9th Cir. 2007) (citing *Aguilar*, 883 F.2d at 701). Indeed, "[t]he Supreme Court [has] unmistakably declared that persons have no expectation of privacy or confidentiality in their conversations and relations with other persons, no matter how secretive the setting."  *Aguilar*, 883 F.2d at 703. Accordingly, all of Plaintiffs' Fourth Amendment claims based on recordings made in the presence of Mr. Monteilh fail as a matter of law.  *See Mayer*, 503 F.3d at 751.  At the very least, it would not have been obvious to "every reasonable officer" that recordings made in the presence of the informant might trigger liability under the Fourth Amendment.

To the extent that Plaintiffs allege that the informant was directed to leave behind recording devices in mosques, at lectures, and sporting events, Plaintiffs do not allege that these places were closed to the public when the recordings occurred.

57

Accordingly, Plaintiffs have not sufficiently alleged that they had a reasonable

expectation of privacy in those conversations.  *See, e.g., Lyall*, 2011 WL 61626, at

*5 (no reasonable expectation of privacy at warehouse that "was not used for

residential purposes," was used to host a public event, and over which plaintiffs

possessed no possessory interest); *United States v. Gonzalez*, 328 F.3d 543, 547-

548 (9th Cir. 2003) (video surveillance of mail room did not violate Fourth

Amendment because no reasonable expectation of privacy in room whose doors

remain open through the business day and that receives "heavy foot traffic during

business hours"); *Little*, 753 F.2d at 1435-1436 (no reasonable expectation of

privacy in reception area when public may enter freely).[15]

　　To buttress their contention that they had a reasonable expectation of privacy

in these public places, Plaintiffs allege that they relied on purported rules and

subjective expectations regarding appropriate conduct within a mosque.  *See*

ER233.  But the Supreme Court has made clear that an individual's subjective

---

[15]　Plaintiffs allege, based upon "information and belief," that agents Allen and
Armstrong "caused…electronic surveillance equipment to be installed" at Plaintiff
Fazaga's mosque and monitored his conversations in non-public areas of the
mosque, including his office.  *See* ER208-029.  This barebones claim is the only
place in the Complaint in which Plaintiffs attempt to link any individual-capacity
Defendant to the monitoring of a Plaintiff's conversations in a non-public area into
which the informant had not been invited.  But this is precisely the type of
generalized allegation that is insufficient under *Iqbal*, 556 U.S. at 678-679, and in
any event, it does not plausibly allege the personal involvement of Defendants
Tidwell and Walls, as it must.  *See Edgerly*, 599 F.3d at 961.

expectation of privacy is insufficient to state a Fourth Amendment claim; instead, the expectation of privacy must also "be one that *society* is prepared to recognize as 'reasonable.'" *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (emphasis added); *see also Oliver v. United States*, 466 U.S. 170, 176 (1984) ("The [Fourth] Amendment does not protect the merely subjective expectation of privacy" in similar situations, notwithstanding rules against recording devices and other security measures.). *See, e.g.*, *In re John Doe Trader No. One*, 894 F.2d 240, 243 (7th Cir. 1990) (no reasonable expectation of privacy in conversations on exchange trading floor although subject to security, membership required to enter, and rule against recording devices). In such public places, as with an invited informant, "[t]he risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identify of one with whom one deals is probably inherent in the conditions of human society." *Id.* (citing *Hoffa v. United States*, 385 U.S. 293, 303 (1966)). Thus, if Plaintiffs "really did believe" that mosque rules protected their conversations from being recorded, this "belief was naïve rather than reasonable." *See id.* at 244. At a minimum, it would not have been obvious to every reasonable officer that recordings made in such public places would violate the Fourth Amendment. *See*

59

*also Presbyterian Church*, 870 F.2d at 527 (covert surveillance of a religious community does not, without more, violate Fourth Amendment rights).[16]

## V. TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' FISA CLAIM

For the same reason that Tidwell and Walls are entitled to qualified immunity on their Fourth Amendment claim, they are also entitled to qualified immunity on Plaintiffs' FISA claim (Count 10), and the district court's failure to dismiss that claim was error. Plaintiffs' FISA claim requires that Tidwell and Walls have intentionally engaged in electronic surveillance under circumstances in which Plaintiffs had a reasonable expectation of privacy. *See* 50 U.S.C. §1801(k) (defining an aggrieved person as "a person who is the target of electronic surveillance"); *see also id*. §1801(f)(4) (defining electronic surveillance as the use of an electronic device "for monitoring to acquire information…*under circumstances in which a person has a reasonable expectation of privacy*" (emphasis added)); *see also ACLU v. NSA*, 493 F.3d at 683 ("[A]ggrieved person is

---

[16]    Plaintiffs allege that the informant gathered license plate numbers, addresses, telephone numbers, email addresses, and attendee lists, but do not allege any facts showing the informant gathered this information from non-public sources or otherwise using unlawful means. To the extent others provided this information to the informant, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-744 (1979) (telephone numbers); *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007) (to/from addresses of email messages); *United States v. Hinton*, 222 F.3d 664, 675 (9th Cir. 2000) (addresses affixed to envelope).

intended to be coextensive with, but not broader than, those persons who have standing to raise claims under the Fourth Amendment with respect to electronic surveillance."). For all of the reasons discussed above, Plaintiffs could not have had a reasonable expectation of privacy in the communications that were allegedly recorded.

Nevertheless, the district court held that, by alleging that the electronic surveillance "often took place *outside* the presence of the informant and . . . without a warrant," Plaintiffs had pleaded facts sufficient to state a FISA claim. ER27 (emphasis added). On even this theory, the district court should have dismissed the FISA claims based on recordings made *in* the presence of the informant.

But even as to recordings that were allegedly made *outside* the presence of the informant, Plaintiffs cannot establish a reasonable expectation of privacy. As discussed above, the various locations at which plaintiffs allege recordings were made—in the mosque, at lectures, and at sporting events—are public, and no person could have a reasonable expectation of privacy in such locations. *See supra* Part III(D)(1); *Lyall*, 2011 WL 61626, at *5 (stating no reasonable expectation of privacy at warehouse that "was not used for residential purposes," was used to host a public event, and over which plaintiffs possessed no possessory interest);

61

*Gonzalez*, 328 F.3d at 547-548 (stating video surveillance of mail room did not violate Fourth Amendment because no reasonable expectation of privacy in room whose doors remain open through the business day and that receives "heavy foot traffic during business hours"); *Little*, 753 F.2d at 1435-1436 (noting no reasonable expectation of privacy in reception area when public may enter freely). Again, at the very minimum, it would not have been obvious to every reasonable officer that recordings made in such public places would violate FISA.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment issued under Rule 54(b) and should reverse the district court's refusal to dismiss Plaintiffs' FISA Claim against Tidwell and Walls.

Respectfully submitted,

/s/ Carl J. Nichols

KATIE MORAN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
(213) 443-5300

HOWARD M. SHAPIRO
CARL J. NICHOLS
DAVID G. BERAKA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
(202) 663-6000

April 29, 2015

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, I state that I am not aware of any cases related to this appeal.

/s/  Carl Nichols

63

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies

that this brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B)(i).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R.

App. P. 32(a)(7)(B), the brief contains 13,713 words.

2.     The brief has been prepared in proportionally spaced typeface using

Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed.

R. App. P. 32(a)(7)(B), the undersigned has relied upon the word count feature of

this word processing system in preparing this certificate.


/s/  Carl Nichols


April 29, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Carl Nichols