**Nos. 12-56867, 12-56874, 13-55017**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

YASSIR FAZAGA, et al.,
*Plaintiffs-Appellees/Cross-Appellants,*

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Cross-Appellees.*

and

BARBARA WALLS, J. STEPHEN TIDWELL, KEVIN ARMSTRONG, PAUL ALLEN, AND PAT ROSE
*Defendants-Appellants/Cross-Appellees,*

On Appeal from the United States District Court
for the Central District of California, No. 8:11-cv-00301-CJC-VBK (Carney, J.)

**DEFENDANTS-APPELLANTS/CROSS-APPELLEES J. STEPHEN TIDWELL AND BARBARA WALLS' EXCERPTS OF RECORD**

KATIE MORAN
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
(213) 443-5300

HOWARD M. SHAPIRO
CARL. J. NICHOLS
DAVID G. BERAKA
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
(202) 663-6000

April 29, 2015

# TABLE OF CONTENTS

Page

Notice of Motion and Motion of Individual-Capacity Defendants J. Stephen Tidwell and Barbara Walls to Dismiss First Amended Complaint, filed January 30, 2012 (Dkt. 58) ................. T&W ER 1

Reply Memorandum of Law of Individual-Capacity Defendants J. Stephen Tidwell and Barbara Walls in Support of Motion to Dismiss First Amended Complaint, filed February 10, 2012 (Dkt. 71) ........................................................................... T&W ER 44

Excerpts of  Plaintiffs' Combined Opposition to Individual Capacity Defendants' Motion to Dismiss First Amended Compalint, filed December 23, 2011) (Dkt. 63) ........................................................................... T&W ER 71

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/  Carl. J. Nichols
CARL J. NICHOLS

WILMER CUTLER PICKERING
HALE AND DORR LLP
Brian R. Michael (SBN: 240560)
brian.michael@wilmerhale.com
P. Patty Li (SBN: 266937)
Patty.li@wilmerhale.com
katie Moran (SBN: 272041)
Katie.moran@wilmerhale.com
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

WILMER CUTLER PICKERING
HALE AND DORR LLP
Howard M. Shapiro (admitted *pro hac vice*)
howard.shapiro@wilmerhale.com
Carl J. Nichols (admitted *pro hac vice*)
carl.nichols@wilmerhale.com
Annie Owens (admitted *pro hac vice*)
annie.owens@wilmerhale.com
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Attorneys for Defendants J. Stephen Tidwell and Barbara Walls

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

YASSIR FAZAGA *et al.*,

Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION *et al.*,

Defendants.

Case No. SA CV 11-00301-CJC (VBKx)

**NOTICE OF MOTION AND MOTION OF INDIVIDUAL-CAPACITY DEFENDANTS J. STEPHEN TIDWELL AND BARBARA WALLS TO DISMISS FIRST AMENDED COMPLAINT**

Date: January 30, 2012
Time: 1:30 p.m.
Judge: Hon. Cormac J. Carney
Crtrm: Courtroom 9B

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

PLEASE TAKE NOTICE that individual-capacity defendants J. Stephen Tidwell and Barbara Walls ("Defendants") will bring the following Motion to Dismiss the First Amended Complaint before the Honorable Cormac J. Carney, United States District Judge, in his courtroom, U.S. Courthouse, 411 West Fourth Street, Santa Ana, California, on January 30, 2012 at 1:30 p.m., or at such time as the Court may direct that matter be heard.

Defendants move to dismiss Counts 1-7, 9, and 10 against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The grounds for this motion are based on the accompanying memorandum of law, any argument offered at a hearing on this motion, and the files and records of this case.

Pursuant to Local Rule 7-3, the parties conferred in connection with the relief sought in this motion on November 1, 2011. Plaintiffs oppose this motion.

DATED: November 11, 2011

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: /s/ Brian R. Michael

Brian R. Michael
P. Patty Li
Katie Moran
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

Howard M. Shapiro
Carl J. Nichols
Annie L. Owens
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants J. Stephen Tidwell and Barbara Walls*

WILMER CUTLER PICKERING
HALE AND DORR LLP
Brian R. Michael (SBN: 240560)
brian.michael@wilmerhale.com
P. Patty Li (SBN: 266937)
patty.li@wilmerhale.com
Katie Moran (SBN: 272041)
katie.moran@wilmerhale.com
350 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

WILMER CUTLER PICKERING
HALE AND DORR LLP
Howard M. Shapiro (admitted *pro hac vice*)
howard.shapiro@wilmerhale.com
Carl J. Nichols (admitted *pro hac vice*)
carl.nichols@wilmerhale.com
Annie L. Owens (admitted *pro hac vice*)
annie.owens@wilmerhale.com
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Attorneys for Defendants J. Stephen Tidwell and Barbara Walls

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

YASSIR FAZAGA *et al.*,

Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION *et al.*,

Defendants.

No. SA CV 11-00301-CJC (VBKx)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF INDIVIDUAL-CAPACITY DEFENDANTS J. STEPHEN TIDWELL AND BARBARA WALLS TO DISMISS FIRST AMENDED COMPLAINT**

Date: January 30, 2012
Time: 1:30 p.m.
Judge: Hon. Cormac J. Carney
Crtrm: Courtroom 9B

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 4

A. Allegations Regarding "Operation Flex" .......... 5

B. Allegations Regarding Defendants Tidwell And Walls .......... 8

ARGUMENT .......... 9

I. THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS PRIVILEGE MANDATES DISMISSAL OF COUNTS 1-7 .......... 9

II. THIS COURT SHOULD DECLINE TO EXTEND *BIVENS* .......... 12

A. No Court Has Extended *Bivens* To This Context .......... 12

B. The Creation Of A *Bivens* Cause Of Action Is Inappropriate Here .......... 14

1. National Security Issues And Assertion Of State-Secrets Privilege Are Special Factors Precluding A *Bivens* Remedy .......... 14

2. Existing Remedial Statutory Schemes Preclude The Creation Of A *Bivens* Remedy .......... 16

III. PLAINTIFFS FAIL TO STATE VALID FIRST AND FIFTH AMENDMENT CLAIMS UNDER 42 U.S.C. § 1985(3) .......... 20

IV. TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFFS' CLAIMS .......... 22

A. Qualified Immunity Bars The First And Fifth Amendment Claims .......... 23

B. Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim .......... 26

1. Plaintiffs Fail To Allege That Tidwell Or Walls Was Personally Involved In The Purported Searches, Or That A Sufficient Causal Connection Between Their Conduct And The Alleged Violation Otherwise Existed .......... 27

2. Plaintiffs Fail To Allege A Reasonable Expectation Of Privacy In The Circumstances Of The Alleged Searches .......... 28

C. Qualified Immunity Bars Plaintiffs' RFRA Claim .......... 31

1. RFRA Does Not Permit Suits For Damages Against Individual-Capacity Defendants .......... 31

2. Plaintiffs Have Not Alleged A "Substantial Burden" On Free Exercise .......... 32

D. Qualified Immunity Bars Plaintiffs' FISA Claim .......... 33

CONCLUSION .......... 35

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

# TABLE OF AUTHORITIES

## CASES

Page(s)

*ACLU v. NSA*, 493 F.3d 644 (6th Cir. 2007) .......... 34

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130 (9th Cir. 2000) .......... 20

*Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007) .......... 10

*Amnesty International v. Clapper*, 638 F.3d 118 (2d Cir. 2011) .......... 18

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) .......... *passim*

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) .......... 3, 22, 23, 26, 32

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... *passim*

*Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994) .......... 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 20, 21, 25

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) .......... *passim*

*Black v. United States*, 62 F.3d 1115 (8th Cir. 1995) .......... 16

*Boumediene v. Bush*, 553 U.S. 723, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008) .......... 15

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) .......... 23

*Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983) .......... *passim*

*Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) .......... 13, 20

*Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) .......... 13, 15

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) .......... 10, 24

*Community House, Inc. v. City of Boise*, 623 F.3d 945 (9th Cir. 2010) .......... 22

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) .......... 12, 13, 19

*Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) .......... 13, 20

*Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002) .......... 20

*Edgerly v. City & County of San Francisco*, 599 F.3d 946 (9th Cir. 2010) .......... 4, 27, 29

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007) .......... 10, 11

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

*FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) .................. 13

*Fitzgerald v. Penthouse International, Ltd.*, 776 F.2d 1236 (4th Cir. 1985) ................ 12

*General Dynamics Corp. v. United States*, 131 S. Ct. 1900, 179 L. Ed. 2d 957 (2011) .................................................................................. 10, 12

*Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971) ...... 21, 23

*Haig v. Agee*, 453 U.S. 280, 101 S. Ct. 2766, 69 L. Ed. 2d 640 (1981) .................. 1, 15

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ........... 22

*Hoffa v. United States*, 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966) ........... 30

*Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) ........................................................................................ 15

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006) ........................................................ 13

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ........... 3, 22

*In re John Doe Trader Number One*, 894 F.2d 240 (7th Cir. 1990) ........................... 30

*In re NSA Telecommunications Records Litigation*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008) ........................................................................... 34

*In re NSA Telecommunications Records Litigation*, 595 F. Supp. 2d 1077 (N.D. Cal. 2009) ........................................................................... 34

*Jean-Pierre v. Bureau of Prisons*, 2010 WL 3852338 (W.D. Pa. July 30, 2010) .... 31, 32

*Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621 (9th Cir. 1988) ......... 21

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) .................................................. 10

*Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 576 (1967) .................. 30

*Keen v. Noble*, 2007 WL 2789561 (E.D. Cal. Sept. 20, 2007) ................................... 32

*Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) .......... 32

*Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004) ................................ 27

*Lacey v. Maricopa County*, 2011 WL 2276198 (9th Cir. June 9, 2011) ...................... 27

*Lebron v. Rumsfeld*, 764 F. Supp. 2d 787 (D.S.C. 2011) ..................................... 11, 33

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ........................................................ 27

*Lepp v. Gonzales*, 2005 WL 1867723 (N.D. Cal. Aug. 2, 2005) ................................ 32

*Lincoln v. Vigil*, 508 U.S. 182, 113 S. Ct. 2024, 124 L. Ed. 2d 101 (1993) ........... 1, 15

*Lyall v. City of Los Angeles*, 2011 WL 61626 (C.D. Cal. Jan. 6, 2011) ................ 28, 29

**Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071**

*Mirmehdi v. United States*, 2011 WL 5222884 (9th Cir. Nov. 3, 2011) .............. *passim*

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) .............. 22

*Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) ................ *passim*

*Navajo Nation v. United States Forest Service*, 535 F.3d 1058 (9th Cir. 2008) .............. 32, 33, 34

*Oliver v. United States*, 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 214, (1984) ....... 4, 30

*Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) .......... 22

*Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989) ........... 26

*Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) ..................... 26

*Safford Unified School District No. 1 v. Redding*, 129 S. Ct. 2633, 174 L. Ed. 2d 354 (2009) .............. 22

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ................. 26

*Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed. 370 (1988) ........ 13, 19

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) .............. 21

*Smith v. Maryland*, 442 U.S. 735, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979) ................ 30

*United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) .............. 20

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989) .............. 28

*United States v. Duggan*, 743 F.2d 59 (2d Cir. 1984) .............. 18

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2007) .............. 31

*United States v. Gonzalez*, 328 F.3d 543 (9th Cir. 2003) .............. 29

*United States v. Hinton*, 222 F.3d 664 (9th Cir. 2000) .............. 31

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) .............. 29

*United States v. Mayer*, 503 F.3d 740 (9th Cir. 2007) .............. 4, 28, 29

*United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000) .............. 28

*United States v. Reynolds, Inc.*, 345 U.S. 1, 73 S. Ct. 528, 97 L. Ed. 2d 727 (1953) .............. 10

*United States v. Stanley*, 483 U.S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987) .............. 13, 15, 19

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) .............. 18

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir. 1989) .......... 20, 21

*Washington v. Davis*, 426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976) .......... 11, 24

*Webb v. County of Trinity*, 734 F. Supp. 2d 1018 (E.D. Cal. 2010) .......... 23

*Western Radio Services Co. v. United States Forest Service*, 578 F.3d 1116 (9th Cir. 2009) .......... 14

*Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007) .......... 13, 18

*Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) .......... 32

*Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008) .......... 15, 17, 19, 20

*Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) .......... 32

**STATUTES AND LEGISLATIVE MATERIALS**

42 U.S.C.
§ 1985(3) .......... 20, 21, 22, 23
§§ 2000bb—2000bb-4 .......... 16
§ 2000bb-1 .......... 11, 17, 31, 32, 33
§ 2000bb-2 .......... 31

50 U.S.C.
§ 552a .......... 16, 17
§§ 1801, *et seq.* .......... 16
§ 1801 .......... 34
§ 1809 .......... 34
§ 1810 .......... 18, 33

H.R. Rep. No. 95-1283 (1978) .......... 34

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Defendants J. Stephen Tidwell and Barbara Walls respectfully submit this Memorandum in Support of their Motion to Dismiss the First Amended Complaint.

**INTRODUCTION**

Plaintiffs ask this Court to create unprecedented and unjustified remedies against two Federal Bureau of Investigation ("FBI") supervisors based on their alleged knowledge and supervision of a counterterrorism investigation undertaken following the terrorist attacks of September 11, 2001. Courts, however, consistently have rejected efforts to impose liability on government officials in similar circumstances, and for good reason: Determinations regarding sensitive national security matters have long been considered an area in which courts should hesitate to tread. *See Arar v. Ashcroft*, 585 F.3d 559, 575 (2d Cir. 2009) (en banc) (affirming dismissal of action against government officials because determinations relating to national security "fall within 'an area of [exclusive] executive action in which courts have long been hesitant to intrude' absent congressional authorization" (quoting *Lincoln v. Vigil*, 508 U.S. 182, 192, 113 S. Ct. 2024, 2031, 124 L. Ed. 2d 101, 112 (1993))); *Haig v. Agee*, 453 U.S. 280, 292, 101 S. Ct. 2766, 2774, 69 L. Ed. 2d 640, 652 (1981) ("Matters intimately related to … national security are rarely proper subjects for judicial intervention."). Such cases also often risk the disclosure of critical national security and counterterrorism information. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1088-89 (9th Cir. 2010). And the specter of potential damages liability risks chilling the effective conduct of national security and counterterrorism activities. *See Arar*, 585 F.3d at 574.

This case presents precisely these concerns, and Plaintiffs' First Amended Complaint ("Compl.") must be dismissed as to Defendants Tidwell and Walls for four separate and independent reasons. *First*, the government's assertion of the state-secrets privilege requires dismissal of Counts 1-7. Each of those claims is predicated upon, and would require the adjudication of, Plaintiffs' contention that Defendants Tidwell and Walls were aware of and approved unlawful investigative activities and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

electronic surveillance based *solely* on Plaintiffs' religion. To defend themselves fully and effectively, Tidwell and Walls would seek to show that they had non-discriminatory, national-security-related reasons for investigating specific individuals, and that the investigative methods used were narrowly tailored to achieve specific, legitimate counterterrorism goals. But that is the very same information over which the government has asserted the state-secrets privilege. *See* Gov't Br. 2, 6-7, 43-52;[1] *infra* Part I. Because the privilege renders this information unavailable to Tidwell and Walls for their defense, these causes of action against them must be dismissed. *Jeppesen*, 614 F.3d at 1082-83 (assertion of state-secrets privilege requires dismissal when it precludes defendant from adequately raising and supporting available defenses).

Second, as to Counts 1, 3, 6, and 9, this Court should decline Plaintiffs' invitation to create an unprecedented *Bivens* damages remedy against FBI officials arising from an informant's allegedly discriminatory activities conducted during a counterterrorism investigation. It is well established that courts should refrain from creating damages remedies when "special factors counsel[] hesitation in the absence of affirmative action by Congress," *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396, 91 S. Ct. 1999, 2005, 29 L. Ed. 2d 619, 626 (1971), and special factors strongly counsel against extending *Bivens* in this context. Courts have long recognized that national security concerns constitute just such a special factor, *see, e.g.*, *Arar*, 585 F.3d at 575, and the government's assertion of the state-secrets privilege makes plain that this case implicates substantial national security issues. Further, three comprehensive statutory schemes under which Plaintiffs have also brought claims—the Privacy Act, the Religious Freedom Restoration Act ("RFRA"), and the Foreign Intelligence Surveillance Act ("FISA")—strongly evince Congress' desire not to allow judicially created causes of action for the alleged constitutional torts. That is true even where (as here) Plaintiffs cannot

[1] "Gov't Br." refers to the government's memorandum in support of its motion to dismiss the First Amended Complaint.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

prevail on their statutory claims: The question is not whether complete relief is available, but whether Congress has already spoken as to who should decide if a cause of action should exist. *See Bush v. Lucas*, 462 U.S. 367, 380, 103 S. Ct. 2404, 2412, 76 L. Ed. 2d 648, 659 (1983).

*Third*, as to Counts 2, 4, and 7, even though they have had the opportunity to amend their initial complaint, Plaintiffs fail to allege facts plausibly showing the existence of a conspiracy to violate Plaintiffs' civil rights, much less that Tidwell or Walls—both of whom are alleged to have acted solely in a supervisory capacity—personally acted with the purpose of depriving Plaintiffs of equal protection, or were motivated by class-based animus.

*Finally*, Tidwell and Walls are entitled to qualified immunity on all claims against them. Qualified immunity shields government officers from suits for damages based on their exercise of discretionary duties, and courts must "resolv[e] [such] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589, 595 (1991). Officers are entitled to such immunity unless Plaintiffs can show *both* that their conduct violated a statutory or constitutional right *and* that the right was so clearly established at the time that "*every* 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149, 1159 (2011) (emphasis added). Here, Tidwell and Walls are entitled to qualified immunity and dismissal of all claims asserted against them because:

- Plaintiffs' First and Fifth Amendment claims (Counts 1-4, 6-7) fail plausibly to allege, as they must, that Tidwell and Walls "acted with discriminatory purpose." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868, 882-83 (2009). At most, Plaintiffs allege that Tidwell and Walls are liable for the actions of the informant and their subordinates, but it is long established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id*. It therefore follows that it was not clearly established at the time that Tidwell and Walls could be held liable in these circumstances.

- Plaintiffs' Fourth Amendment claim (Count 9) fails plausibly to allege that either Tidwell or Walls was "personally involved" in an unlawful search or that a "'sufficient causal connection exists'" between a search and their alleged

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

conduct. *Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 961 (9th Cir. 2010). Plaintiffs also fail to allege that an unlawful search occurred. Other than one speculative allegation, the alleged recordings were conducted in places where Plaintiffs had no reasonable expectation of privacy, such as mosques open to the public or homes into which Plaintiffs allege the informant had been invited. The Fourth Amendment does not protect subjective expectations arising from self-imposed restrictions on activity that purportedly existed at mosques, *Oliver v. U.S.*, 466 U.S. 170, 171, 104 S. Ct. 1735, 1738, 80 L. Ed. 214 (1984), and undercover operations in which the agent is an "invited informer" are not "searches" under the Fourth Amendment, *see U.S. v. Mayer*, 503 F.3d 740, 750 (9th Cir. 2007). It therefore also follows that it was not clearly established at the time that Tidwell and Walls could be held liable in such circumstances.

- Plaintiffs' RFRA claim (Count 5) must be dismissed both because RFRA does not create a damages cause of action against individual defendants and because Plaintiffs have not adequately pleaded that Tidwell or Walls placed a "substantial burden" on their religion. Liability under such circumstances thus necessarily could not have been clearly established at the time.

- Plaintiffs' FISA claim (Count 10) fails to allege that Plaintiffs are "aggrieved persons" with standing to sue—defined as persons with a reasonable expectation of privacy—because they do not plausibly allege that they had such an expectation. Therefore, it also could not have been clearly established at the time that Tidwell and Walls could be held liable in such circumstances.

For these reasons, discussed more fully below, Plaintiffs' claims against Defendants Tidwell and Walls must be dismissed.

## BACKGROUND

Plaintiffs Yassir Fazaga, Ali Uddin Malik, and Yasser AbdelRahim allege in their First Amended Complaint that, since September 11, 2001, the FBI has "focused much of its counterterrorism efforts on broad investigations in the Muslim communities of the United States." Compl. ¶ 24.[2] Their allegations arise from an investigation known as "Operation Flex." *Id.* ¶ 88; *see also* Gov't Br. 1-2, 7. According to Plaintiffs, "at some time prior to July 2006," the FBI employed an informant to "infiltrate[]" several Southern California mosques and covertly "gather information" about the Muslim community. Compl. ¶¶ 1, 2, 48.

Plaintiffs allege that "[o]ver the course of fourteen months" the FBI directed the informant to "indiscriminately collect personal information on hundreds and perhaps

[2] Defendants do not admit the veracity or relevance of these facts, which are restated as alleged in the First Amended Complaint solely for the purpose of this motion.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

thousands of innocent Muslim Americans in Southern California." *Id.* ¶ 2. Plaintiffs claim in a conclusory manner that this investigation "did not result in even a single conviction related to counterterrorism … because the FBI did not gather the information based on suspicion of criminal activity," but instead did so "simply because the targets were Muslim." *Id.* ¶ 3. Plaintiffs contend that in carrying out this investigation, "Defendants operated under the principles set forth in" the Attorney General's Guidelines for FBI National Security Investigations and Foreign Intelligence Collection (later named the Guidelines for Domestic FBI Operations) ("2008 AG Guidelines") and the FBI's Domestic Intelligence and Operations Guides ("DIOG")—which expressly prohibit investigative activity solely on the basis of religion. *Id.* ¶¶ 32-34, 36-37; *see also* Gov't Br. 8-9.[3] Nonetheless, Plaintiffs claim these policies authorized the FBI to "engage in intrusive investigations of First Amendment protected activity, and specifically religious practices, without any factual basis to believe any criminal violations or threat to the national security existed." Compl. ¶ 35.

**A. Allegations Regarding "Operation Flex"**

Plaintiffs allege that Defendants Kevin Armstrong and Paul Allen were FBI special agents assigned to the Orange County area who acted as the informant's handlers. *Id.* ¶¶ 18-19. According to Plaintiffs, "[a]t some time prior to July 2006," Armstrong and Allen recruited the informant, and thereafter directed him to pose as a Muslim convert and use various techniques to conduct surveillance of, and gather intelligence on, congregants of several Southern California mosques. *Id.* ¶¶ 2, 48-51, 99-137. Plaintiffs claim that, during this operation, the informant gathered covertly

[3] These binding guidelines require that investigative activity be undertaken only for a "valid purpose" and provide that they "do not authorize investigating or collecting or maintaining information on United States persons solely for the purpose of monitoring activities protected by the First Amendment." Gov't Br. 9; *see also* Giuliano Decl., Dkt. No. 33, ¶ 4, Tab 2 at 13. Similarly, the DIOG requires that "investigative activity [be] conducted" for "an authorized purpose" and provides that such purpose may not be solely to monitor the "exercise of other rights secured by the Constitution." Indeed, FBI investigative activity may not be based solely on "race, ethnicity, national origin or religion." Gov't Br. 9; *see also* Giuliano Decl. ¶ 5, Tab 3 at 21.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

"hundreds of phone numbers, thousands of email addresses, hundreds of hours of video recordings that captured the interiors of mosques, homes, businesses, and the associations of hundreds of Muslims, thousands of hours of audio recording of conversations … and other Muslim religious and cultural events occurring in mosques," as well as addresses, license plate numbers, brochures, newsletters and bulletins, and lists of attendees at various lectures, courses, and prayer sessions. *Id.* ¶¶ 2, 91, 104-06, 119, 126-29, 131, 137, 172-73. Plaintiffs allege that they met the informant while he was acting in this covert capacity.[4] *Id.* ¶ 54.

Despite Plaintiffs' claim that the investigation improperly targeted them "solely due to their religion," *id.* ¶¶ 86, 167, "for the purpose of discriminating against Plaintiffs as Muslims," *id.* ¶ 229, and "because of Plaintiffs' adherence to and practice of the religion of Islam," *id.* ¶ 232, 235, 237, 241, 243-44, they *also* allege that the operation was intended to gather information regarding individuals who may have connections to terrorist organizations, such as the Taliban, Hezbollah, and Hamas, and that agents Allen and Armstrong told the informant that "everyone knows somebody." *Id.* ¶ 117. The agents also allegedly directed the informant to gather information regarding matters associated with counterterrorism, including: (a) individuals who may be sympathetic to and/or interested in "mujahideen," violent "jihadist" activities, and religious extremism or radicalism (*id.* ¶¶ 96, 111-13, 143, 169, 171, 187); (b) Arabic speakers and foreign nationals from Egypt, Pakistan, India, Syria, and Lebanon (*id.* ¶ 103); (c) individuals' views on politics and violence (*id.* ¶¶ 103, 113); (d) charitable giving, fundraising, and financial information (*id.* ¶¶ 105-06, 133, 146, 182, 210); (e) individuals' planned and actual travel to Yemen, Saudi Arabia, and Egypt (*id.* ¶¶ 107, 114, 184, 205, 207); (f) telephone, international call, and email information associated with "persons of interest who were believed to be linked to

[4] Plaintiffs allege that until February 2009, they did not know, and "could not reasonably have known," that the informant was working for the FBI, or that they had been surveilled. *Id.* ¶ 160. Plaintiffs allegedly altered their religious practices only after the informant ceased his activities. *Id.* ¶¶ 64-65, 183-85, 197-99, 216-17.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

terrorism" (*id.* ¶ 132); and (g) a suspected cell of the Muslim Brotherhood led by Plaintiff AbdelRahim (*id.* ¶¶ 200-01).

Plaintiffs allege that as part of these efforts, Allen and Armstrong provided the informant with, and directed him to use, recording devices. *Id.* ¶ 122. According to Plaintiffs, "[a]fter about September 2006," the agents gave the informant "a cell phone and two key fobs" containing audio-recording devices that he allegedly used to record "every moment he worked undercover, regardless of whom he was meeting or what was discussed." *Id.* ¶ 124. Plaintiffs further claim that, on unspecified occasions, the informant allegedly left recording devices unattended in mosques to record conversations that took place while he was not present, *id.* ¶¶ 124-27, although the only parties identified as having been recorded in this manner are Plaintiffs Malik and AbdelRahim.[5] *Id.* ¶¶ 192, 211. With regard to Plaintiff Fazaga, the First Amended Complaint conclusorily alleges "[u]pon information and belief," that Allen and Armstrong "caused … electronic surveillance equipment to be installed" in Fazaga's mosque and monitored his conversations "in parts of the mosque not open to the public," including "Fazaga's office." *Id.* ¶ 95.[6]

Plaintiffs also allege that, "[b]eginning in about February 2007," agents outfitted the informant with a "shirt button" camera that he used "as often as several days per week" to capture video and audio recordings of the "internal layout of mosques, to film basketball or soccer games …, to film guest lectures at mosques …, and to record the interiors of people's houses." *Id.* ¶¶ 128-29. For example, according to Plaintiffs, the informant was directed to record a lecture at Fazaga's

---

[5] Plaintiffs do not allege that any Defendant directed the informant to record conversations in this manner. Rather, they claim only that agents Armstrong and Allen received notes in which the informant stated he had done so, and that the agents "never told him not to do this." *Id.* ¶ 192.

[6] Plaintiffs also allege in vague and conclusory terms, without more, that "[e]lectronic surveillance equipment was installed in at least eight [Southern California] mosques" by the FBI, *id.* ¶ 94, and that "the FBI had electronic listening devices in AbdelRahim's house … car and phone," as well as video surveillance outside his house. *Id.* ¶ 209. Plaintiffs do not allege which if any individual-capacity Defendants participated in this purported activity, much less whose conversations were captured.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

mosque, as well as interior areas and a donation booth within it, none of which are alleged to be non-public areas. *Id*. ¶¶ 172-75. Plaintiffs also claim that the informant—after being invited in—was directed to record the interior of AbdelRahim's house, which was "shared by five young, unmarried Muslim Egyptian men with different skills and backgrounds—including a computer analyst, a pharmacist, an accountant, and one who handled logistics," whom the FBI suspected of being a Muslim Brotherhood cell led by AbdelRahim. *Id*. ¶¶ 200-01.

Plaintiffs also allege that the informant successfully gathered information deemed relevant to counterterrorism efforts. Specifically, Plaintiffs claim that: (a) the FBI deemed his information as "particularly valuable" and that it had "proven to be essential" to a federal prosecution; (b) the "information … was followed by people 'at the highest levels'"; (c) "the operation was among the ten most important intelligence investigations going on in the country"; and (d) information regarding individuals' finances, foreign assets, and immigration issues "would be shared with other agencies." *Id*. ¶¶ 144-46, 163.

**B. Allegations Regarding Defendants Tidwell And Walls**

In a mere nine of its 260 paragraphs, the First Amended Complaint offers only generalized, conclusory assertions "upon information and belief" regarding Defendants Tidwell and Walls, arising solely from their supervisory roles. *See id*. ¶¶ 20-21, 47, 138, 141, 145, 151, 153, 169. Plaintiffs allege that from August 2005 until December 2007, Tidwell served as the FBI Assistant Director in Charge of the Los Angeles Field Office with supervisory authority over all operations in the Central District of California, and that during an unspecified time period, Walls was the FBI Special Agent in Charge of the Santa Ana branch office, "where she was one of the direct supervisors of Agents Allen, Armstrong, and Rose." *Id*. ¶¶ 20-21. Plaintiffs allege "[u]pon information and belief" that Tidwell "authorized the search for" and "the selection of" the informant, "authorized the nature and scope of the operation and its targeting of Muslims," read the informant's "notes of his activities," and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

"authorized and actively directed the actions of" Armstrong, Allen, Rose, Walls, and other agents in the handling of the informant, "for the purpose of surveilling Plaintiffs and other[s] … because they were Muslim." *Id.* ¶¶ 20, 141. Likewise, Plaintiffs claim "[u]pon information and belief" that Walls "was regularly apprised of the information Agents Armstrong and Allen collected through" the informant, "directed the action of [the] agents on various instances based on that information," and "actively monitored, directed, and authorized the actions of Agents Armstrong and Allen and other agents … for the purpose of surveilling Plaintiffs and other[s] … because they were Muslim." *Id.* ¶ 21.

Similarly, Plaintiffs claim that Tidwell and Walls, along with agents Armstrong, Allen, and supervisor Pat Rose, "maintained extremely close oversight and supervision of" the informant, and "because they made extensive use of the results of his surveillance, they knew in great detail the nature and scope of the operation, including the methods of surveillance used and the criteria used to decide his targets, and continually authorized their ongoing use." *Id.* ¶ 138. Plaintiffs also allege that Walls "[e]ventually" ordered Armstrong and Allen to cease using the informant because "she no longer trusted him"; that there was "significant conflict" between Walls and the agents regarding how to handle the operation; that an audit team was examining Walls's "handling of one of the leads from the operation"; and that Walls was present at one of the final meetings with the informant, during which she instructed him "to stay silent about the operation." *Id.* ¶¶ 21, 151, 153. Plaintiffs make no other specific allegations regarding Tidwell's or Walls's knowledge of or involvement in, much less authorization of, the informant's activities.

## ARGUMENT

### I. THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS PRIVILEGE MANDATES DISMISSAL OF COUNTS 1-7

The government has asserted the state-secrets privilege over certain key investigative information, and Counts 1-7 against Tidwell and Walls must be

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

dismissed in light of that assertion.[7] *See* Gov't Br. Part II. It is well established that the state-secrets privilege "permits the government to bar the disclosure of information if 'there is a reasonable danger' that disclosure will 'expose … matters which, in the interest of national security, should not be divulged.'" *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007) (quoting *U.S. v. Reynolds, Inc.*, 345 U.S. 1, 10, 73 S. Ct. 528, 534, 97 L. Ed. 2d 727, 727 (1953)).[8] When the government invokes the state-secrets privilege, "the evidence is completely removed from the case," *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998), and "is absolutely privileged, irrespective of the plaintiffs' countervailing need for it," *Jeppesen*, 614 F.3d at 1082. If the removal of privileged information precludes a defendant from adequately raising and supporting available defenses, the action must be dismissed. *See id*. at 1083; *Kasza*, 133 F.3d at 1166; *see also Gen. Dynamics Corp. v. U.S.*, 131 S. Ct. 1900, 1907, 179 L. Ed. 2d 957, 965 (2011) (where state-secrets assertion precludes litigation, "traditional course is to leave the parties where they stood when they knocked on the courthouse door").

Here, the Attorney General's invocation of the state-secrets privilege deprives Tidwell and Walls of information crucial to their ability to defend against Counts 1-7, making the full and fair litigation of those claims impossible. Each of those counts is predicated on, and would require the adjudication of, Plaintiffs' allegations that Tidwell and Walls approved and supervised unlawful investigative activities and electronic surveillance based solely on Plaintiffs' religion. Indeed, to prevail on their claims, Plaintiffs "must plead and prove that [Tidwell and Walls] acted with discriminatory purpose." *Iqbal*, 129 S. Ct. at 1948; *see Church of Lukumi Babalu Aye, Inc. v. City of*

[7] Although the government has not argued that its state-secrets assertion mandates immediate dismissal of the Fourth Amendment and FISA claims (Counts 9 and 10), Gov't Br. 4-5, Defendants Tidwell and Walls reserve the right to seek dismissal of these claims on such grounds following a review of the evidence the government intends to produce.

[8] The government may, as here, invoke the privilege "at the pleading stage, rather than waiting for an evidentiary dispute to arise during discovery or trial." *Jeppesen*, 614 F.3d at 1081; *see El-Masri v. U.S.*, 479 F.3d 296, 308 (4th Cir. 2007) (state-secrets assertion and dismissal of case proper at pleading stage).

*Hialeah*, 508 U.S. 520, 540-41, 113 S. Ct. 2217, 2230-31, 124 L. Ed. 2d 472, 494-95 (1993) (First Amendment); *Washington v. Davis*, 426 U.S. 229, 240, 96 S. Ct. 2040, 2048, 48 L. Ed. 2d 597, 607-08 (1976) (Fifth Amendment). In their defense, Tidwell and Walls would seek to show that they had non-discriminatory, national-security and law-enforcement-related reasons for investigating specific individuals, and that the methods they used were narrowly tailored to achieve an important government interest in combating terrorism. But the state-secrets assertion precludes them from mounting such defenses because the privilege removes from the case precisely the information needed to make those showings: (1) "[s]ubject [i]dentification" information, including evidence tending to confirm or deny that a particular person was the subject of an FBI counterterrorism investigation; (2) the "[r]easons for [c]ounterterrorism [i]nvestigation and [r]esults," including evidence that "could tend to reveal the predicate for an FBI counterterrorism investigation"; and (3) the "[s]ources and [m]ethods" used in the counterterrorism investigation at issue here.[9] *See* Gov't Br. 27-28. Accordingly, the Attorney General's assertion of the state-secrets privilege precludes Tidwell and Walls from defending fully and adequately against Plaintiffs' claims. *See El-Masri v. U.S.*, 479 F.3d 296, 309-10 (4th Cir. 2007).

For similar reasons, Counts 1-7 must be dismissed because they are so intertwined with state secrets that "there is no feasible way to litigate [their] liability without creating an unjustifiable risk of divulging state secrets." *Jeppesen*, 614 F.3d at 1087; *see El-Masri*, 479 F.3d at 312. Tidwell's and Walls's alleged roles in the counterterrorism investigation and the propriety of their actions cannot be isolated from the privileged aspects of this case related to the investigation and its targets, predicates, sources, and methods. Where the "facts underlying plaintiffs' claims are so infused with … secrets," the case must be dismissed because "any plausible effort

[9] Likewise, with respect to the RFRA claim (Count 5), the state-secrets assertion deprives Tidwell and Walls of the ability to fully litigate a key defense: that the investigation was "in furtherance of a compelling governmental interest"—or, indeed, that it was in furtherance of any governmental interest at all. 42 U.S.C. § 2000bb-1(b)(1); *see Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 804 (D.S.C. 2011).

… to defend against them would create an unjustifiable risk of revealing state secrets, even if plaintiffs could make a prima facie case on one or more claims with nonprivileged evidence." *Jeppesen*, 614 F.3d at 1088. Particularly where, as here, the witnesses likely to be called at trial have personal knowledge of the state secrets relevant to the claims, "the parties would have every incentive to probe dangerously close to the state secrets themselves. In these circumstances, state secrets could be compromised even without direct disclosure by a witness." *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1243 (4th Cir. 1985); *see Gen. Dynamics*, 131 S. Ct. at 1907 (dismissal required where "[e]very document request or question to a witness would risk further disclosure, since both sides have an incentive to probe up to the boundaries of state secrets").

## II.     THIS COURT SHOULD DECLINE TO EXTEND *BIVENS*

Plaintiffs urge this Court to create an unprecedented *Bivens* damages remedy against FBI officials arising from an informant's allegedly discriminatory activities conducted during a counterterrorism investigation undertaken in the wake of September 11, 2001. No court has recognized a *Bivens* damages remedy in this context, and there is good reason to decline Plaintiffs' invitation to do so now: (1) this case implicates substantial national security issues, and courts have long held that national security concerns constitute a special factor counseling against the creation of a *Bivens* damages remedy, *see Arar*, 585 F.3d at 575; and (2) the Privacy Act, RFRA, and FISA are existing alternative remedial schemes that strongly evince Congress' desire *not* to allow judicially created causes of action for the alleged constitutional torts, *see Bush*, 462 U.S. at 373 (power to infer *Bivens* remedy "is to be exercised in the light of relevant policy determinations made by the Congress").

### A.     No Court Has Extended *Bivens* To This Context

In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S. Ct. 515,

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

519, 151 L. Ed. 2d 456, 462 (2001); *see Bivens*, 403 U.S. 388 (recognizing Fourth Amendment cause of action for unlawful search of residence). Because "[a] *Bivens* cause of action is implied without any express congressional authority whatsoever," *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006), however, it is "disfavored," *Iqbal*, 129 S. Ct. at 1948, and courts have made clear that "[s]uch a cause of action 'is not an automatic entitlement *no matter what other means there may be* to vindicate a protected interest.'" *Mirmehdi v. United State*s, 2011 WL 5222884, at *2 (9th Cir. 2011) (emphasis added) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550, 127 S. Ct. 2588, 2597, 168 L. Ed. 2d 389, 401 (2007)).

Accordingly, since *Bivens*, the Supreme Court has "extended its holding only twice," *Malesko*, 534 U.S. at 70, to circumstances not implicated here, *see Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) (employment discrimination in violation of Fifth Amendment); *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) (Eighth Amendment violation by prison officials). And for the last thirty-one years, the Court has "consistently refused to extend *Bivens* liability to *any* new context or new category of defendants." *Malesko*, 534 U.S. at 68 (emphasis added) (Eighth Amendment violation by prison officials working for federal contractor); *see also Wilkie*, 551 U.S. 537 (extortion by federal officers in violation of Fifth Amendment); *FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (deprivation of property in violation of Fifth Amendment); *Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed. 370 (1988) (denial of Social Security disability benefits in violation of Fifth Amendment); *U.S. v. Stanley*, 483 U.S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987) (injuries incident to military service); *Bush*, 462 U.S. 367 (defamation and retaliatory demotion of federal employee in violation of First Amendment); *Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) (racial discrimination by military superiors).

In determining whether a particular case presents a new "context," the Ninth Circuit recently reaffirmed that the inquiry does not focus on the constitutional right at

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

issue; rather, the term "context" "reflect[s] a potentially recurring scenario that has similar legal and factual components." *Mirmehdi*, 2011 WL 5222884, at *3 (quoting *Arar*, 585 F.3d at 572); *see W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) (relevant "context" can be "factual" or "legal"). No court has extended *Bivens* to the context at issue in this case—to provide a remedy for alleged religious discrimination or an allegedly unlawful search arising from an informant's surveillance conducted during a counterterrorism investigation. *Cf. Mirmehdi*, 2011 WL 5222884, at *3 (considering "relevant 'environment of fact and law' in which to 'decide whether to recognize a *Bivens* remedy'"). Indeed, the Supreme Court has altogether "declined to extend *Bivens* to a claim sounding in the First Amendment," *Iqbal*, 129 S. Ct. at 1948, and no court has inferred a damages cause of action under the Fourth or Fifth Amendment to remedy alleged injuries in a factual and legal context analogous to this case. *Cf. Arar*, 585 F.3d at 572.

### B. The Creation Of A *Bivens* Cause Of Action Is Inappropriate Here

Courts should not extend *Bivens* to new contexts where "there is 'any alternative, existing process for protecting' the plaintiffs' interests," or, even if there is not, there are special "'factors counseling hesitation' before devising such an implied right of action." *Mirmehdi*, 2011 WL 5222884, at *3 (quoting *W. Radio*, 578 F.3d at 1120). The judicial creation of a *Bivens* cause of action in this unprecedented context is inappropriate for both reasons.

#### 1. National Security Issues And Assertion Of State-Secrets Privilege Are Special Factors Precluding A *Bivens* Remedy

Whether special factors counsel hesitation in the absence of congressional action "is [a] remarkably low" standard, and courts should refuse to recognize a *Bivens* remedy "whenever thoughtful discretion would pause even to consider." *Arar*, 585 F.3d at 574. Special factors "d[o] not concern the merits of the particular remedy that [i]s sought. Rather, they relate to the question of who should decide whether such a remedy should be provided … [and] whether there are reasons for allowing

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Congress to prescribe the scope of relief that is made available." *Bush*, 462 U.S. at 380.

The Supreme Court consistently has held that *Bivens* should not be extended in cases involving "determinations relating to national security" because such issues "fall within 'an area of [exclusive] executive action in which courts have long been hesitant to intrude' absent congressional authorization." *Arar*, 585 F.3d at 575 (quoting *Lincoln*, 508 U.S. at 192); *see Haig*, 453 U.S. at 292 ("Matters intimately related to … national security are rarely proper subjects for judicial intervention."). Given the expertise of the executive and legislative branches in "litigation implicat[ing] sensitive and weighty interests of national security," the judgment of the political branches "is entitled to deference." *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2727, 177 L. Ed. 2d 355, 386 (2010); *see Boumediene v. Bush*, 553 U.S. 723, 797, 128 S. Ct. 2229, 2276-77, 171 L. Ed. 2d 41, 96-97 (2008) ("neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people"). Courts have thus repeatedly declined to extend *Bivens* to such suits because they "unavoidably influence[] government policy, probe[] government secrets, invade[] government interests, enmesh[] government lawyers, and thereby elicit[] government funds for settlement." *Arar*, 585 F.3d at 574; *see Mirmehdi*, 2011 WL 5222884, at *4 (*Bivens* remedy inappropriate in immigration context for same reasons); *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008); *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994); *see also Stanley*, 483 U.S. at 682-84 (*Bivens* remedy inappropriate because "mere process of arriving at correct conclusions would disrupt the military regime"); *Chappell*, 462 U.S. at 301 (no *Bivens* remedy where military and national security issues implicated).

This case necessarily probes into the predicates, subjects, and methods of an FBI counterterrorism investigation. Plaintiffs ask the Court to assess whether the purposes and goals of the investigation were necessary and appropriate; who the specific targets and subjects of the investigation were and how and why they were identified; and whether the specific techniques were appropriately tailored to achieve

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

the purposes and goals of the investigation. Indeed, the First Amended Complaint makes clear that in addition to seeking compensation for alleged constitutional injuries, Plaintiffs are challenging the executive branch's counterterrorism-related investigatory policies. *See, e.g.*, Compl. ¶¶ 24-27, 28-37. But those are precisely the kinds of claims that are inappropriate for resolution through a judicially created damages remedy that second guesses the judgments of executive branch officials involved in counterterrorism activities. *See Arar*, 585 F.3d at 574 ("Our federal system of checks and balances provides means to consider allegedly unconstitutional executive policy, … a private action … against individual policymakers is not one of them.").

Moreover, as discussed *supra* Part I, to defend against Plaintiffs' First and Fifth Amendment claims, Defendants would need to show, among other things, that they had non-discriminatory national-security or law-enforcement reasons for allegedly investigating specific individuals and that the methods they used were narrowly tailored to achieve important government interests. But as the government's assertion of the state-secrets privilege demonstrates, Defendants cannot do so without risking the disclosure of sensitive national-security and counterterrorism information. The state-secrets assertion thus underscores the need for hesitation before creating a new *Bivens* remedy that could expose such sensitive information. *See Arar*, 585 F.3d at 575-76 (state-secrets assertion additional factor in declining to create *Bivens* remedy); *Black v. U.S.*, 62 F.3d 1115, 1118 (8th Cir. 1995) (claim dismissed where "protected information precludes [plaintiff] from establishing a prima facie *Bivens* claim and … continued litigation carries with it the risk that privileged information might be disclosed").

### 2. Existing Remedial Statutory Schemes Preclude The Creation Of A *Bivens* Remedy

In addition, several federal statutory schemes—including the Privacy Act, 5 U.S.C. § 552a; RFRA, 42 U.S.C. §§ 2000bb–2000bb-4; and FISA, 50 U.S.C. §§ 1801, *et seq.*—already exist to remedy the harm that Plaintiffs allege, precluding the judicial creation of an additional remedy. *See Mirmehdi*, 2011 WL 5222884, at *3 (no *Bivens*

remedy where "there is 'any alternative, existing process for protecting' the plaintiffs' interests").

Plaintiffs' constitutional claims (Counts 1, 3, 6, 9) are variations on a theme: Plaintiffs allege discriminatory, illegal surveillance designed to collect and maintain information related to their First Amendment activity. The Privacy Act, however, sets out extensive requirements regulating "the collection, maintenance, use, and dissemination of information about individuals by federal agencies." *See Wilson*, 535 F.3d at 707 (internal quotation marks omitted). In particular, the Act expressly forbids the maintenance of any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). The Act authorizes damages actions against the government for failure to comply with its provisions, *id*. § 552a(g), and Plaintiffs assert such a claim in Count 8.

Plaintiffs' First and Fifth Amendment *Bivens* claims (Counts 1, 3, 6) allege that the FBI targeted Plaintiffs because of their religion and burdened their free exercise. But Congress has already legislated extensively in this area through RFRA, which prohibits the "government" from "substantially burden[ing] a person's exercise of religion," unless the burden is shown to be "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." *Id*. § 2000bb-1(a), (b). RFRA includes a cause of action pursuant to which a person may assert an alleged violation "in a judicial proceeding and obtain appropriate relief against a government." *Id*. § 2000bb-1(c). Plaintiffs have asserted a RFRA claim against all Defendants in Count 5.

Finally, Plaintiffs' Fourth Amendment *Bivens* claim (Count 9) alleges that Plaintiffs' rights were violated by "unreasonable searches … including … audio recording Plaintiffs' communications without a warrant …; video recording in homes and other places …; and entering and planting electronic listening devices … without

**Wilmer Cutler Pickering Hale and Dorr LLP**
**350 South Grand Avenue, Suite 2100**
**Los Angeles, California 90071**

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

a warrant." Compl. ¶ 251. Again, however, Congress has legislated heavily in this field through FISA, which prescribes "procedures under which federal officials … obtain authorization to conduct electronic surveillance for foreign intelligence purposes." *Amnesty Int'l v. Clapper*, 638 F.3d 118, 122 (2d Cir. 2011). FISA comprehensively regulates "surveillance for the purpose of gathering foreign intelligence information, which is defined to include 'information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against … international terrorism.'" *U.S. v. Stewart*, 590 F.3d 93, 126 (2d Cir. 2009). Indeed, "Congress passed FISA to settle what it believed to be the unresolved question of the applicability of the Fourth Amendment warrant requirement to electronic surveillance for foreign intelligence purposes, *and to 'remove any doubt as to the lawfulness of such surveillance*.'" *U.S. v. Duggan*, 743 F.2d 59, 73 (2d Cir. 1984) (emphasis added). FISA also creates a damages remedy for "aggrieved person[s] subjected to illegal electronic surveillance" where "the defendant intentionally engaged in that illegal electronic surveillance, or intentionally used or disclosed the information derived therein with knowledge of, or reason to know of, the illegal manner in which it was collected." 50 U.S.C. § 1810. Plaintiffs have asserted such a claim in Count 10.

At a minimum, these statutes counsel against the creation of a *Bivens* remedy in this context because they reflect Congress' intent that it, rather than the judiciary, should decide whether to create a damages remedy in these circumstances. *See Wilkie*, 551 U.S. at 550 ("even in the absence of an alternative, a *Bivens* remedy is a subject of judgment," and in making that judgment, courts must "pay[] particular heed … to any special factors counseling hesitation before authorizing a new kind of federal litigation"); *Mirmehdi*, 2011 WL 5222884, at *4 (existing statutory causes of action special factors counseling against creation of *Bivens* remedy in addition to constituting alternative, existing process). The relevant inquiry is whether Congress, by legislating in the area, has spoken as to who should determine whether a cause of

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

action exists. *See Bush*, 462 U.S. at 380. If Congress has provided a remedy for a particular harm, judicial supplementation of the remedy through an implied *Bivens* action is unwarranted. *Malesko*, 534 U.S. at 69. If, on the other hand, Congress has legislated in a particular area and declined to provide a damages remedy, courts should infer that Congress believes such a remedy to be inappropriate. *See, e.g.*, *Bush*, 462 U.S. 367; *Chilicky*, 487 U.S. 412. A court therefore should not create a *Bivens* remedy merely because existing statutory remedies do not provide a particular plaintiff complete relief. *See, e.g.*, *Stanley*, 483 U.S. at 683 ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [a plaintiff] an 'adequate' federal remedy for his injuries."); *Chilicky*, 487 U.S. at 421-22 (absence of statutory relief does not imply that courts should award damages); *Malesko*, 534 U.S. at 69 (remedy should not "be implied simply for want of any other means for challenging a constitutional deprivation"); *Mirmehdi*, 2011 WL 5222884, at *4 ("'[s]o long as Congress' failure to provide money damages … has not been inadvertent, courts should defer to its judgment'").

To be sure, the Privacy Act does not authorize a damages remedy against *individuals* like Tidwell and Walls, but it does create such a cause of action against the government, and in light of the comprehensive nature of the statutory scheme, Congress' decision not to permit damages against individuals precludes the judicial creation of such a remedy. *See Chilicky*, 487 U.S. at 423; *Wilson*, 535 F.3d 707-08. Similarly, even if RFRA or FISA does not allow for damages claims against government officers in their individual capacities or does not provide these Plaintiffs complete relief, *see infra* Part IV, inferring a *Bivens* cause of action would likewise be inappropriate. In such a situation, the relevant inquiry "is not what remedy the court should provide for a wrong that would otherwise go unaddressed," but whether a statutory scheme "should be augmented by the creation of a new remedy," a question that "cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff." *Bush*, 462 U.S. at 388; *see id*. at 373 (no *Bivens*

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

action, even assuming "a federal right has been violated and Congress has provided a less than complete remedy for the wrong"); *Wilson*, 535 F.3d at 711 (statute precludes *Bivens* remedy even when it provides no remedy). Courts have held that the Privacy Act is a special factor counseling against *Bivens* claims in circumstances similar to this case, *see id*. at 706-11; *Downie v. City of Middleburg Heights*, 301 F.3d 688, 697 (6th Cir. 2002), and RFRA and FISA should be treated similarly.[10]

## III. PLAINTIFFS FAIL TO STATE VALID FIRST AND FIFTH AMENDMENT CLAIMS UNDER 42 U.S.C. § 1985(3)

Plaintiffs also assert First and Fifth Amendment claims under 42 U.S.C. § 1985(3) (Counts 2, 4, 7), but those claims fail as a matter of law. To state such a claim, Plaintiffs both must adequately allege a constitutional violation—which they do not, *see infra* Part IV—and *also* must allege: "(1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy[;] and (3) a resulting injury." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000); *see United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3354, 3356-57, 77 L. Ed. 2d 1049, 1054-55 (1983).

The existence of a conspiracy requires an agreement among co-conspirators, and for the purposes of Section 1985(3) Plaintiffs must allege that Defendants had "an agreement or meeting of the minds to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (internal quotation marks omitted). But alleging such an agreement in conclusory terms is insufficient; instead, Plaintiffs must allege facts plausibly suggesting a "further circumstance pointing toward a meeting of the minds." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929, 941 (2007).

---

[10] Plaintiffs also assert a Federal Tort Claims Act claim against the government (Count 11) for the same alleged acts underlying their *Bivens* (and statutory) claims. Although such a claim alone is not a special factor, *see Carlson*, 446 U.S. at 19-23, the creation of a *Bivens* remedy here is particularly inappropriate where Plaintiffs have several available statutory causes of action. *Cf. Davis*, 442 U.S. at 247 (inferring *Bivens* remedy where it was a judicially created damages remedy "or nothing").

Moreover, Plaintiffs "must demonstrate a deprivation of [equal protection] motivated by 'some … invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338, 348 (1971)).

On even the most lenient reading of the First Amended Complaint, and despite Plaintiffs' attempt to bolster their initial complaint, Plaintiffs have failed properly to allege the existence of a conspiracy. The First Amended Complaint lacks any factual, non-conclusory allegation that anyone, let alone Tidwell or Walls, came to a "meeting of the minds" with anyone else to violate Plaintiffs' constitutional rights. *See United Steelworkers*, 865 F.2d at 1540. Although Plaintiffs do attempt to recite the elements of Section 1985(3) in Counts 2, 4, and 7, it has long been established that "[a] mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Moreover, under *Twombly*, Plaintiffs must allege additional facts that make plausible the existence of an agreement. *See* 550 U.S. at 557 (a "naked assertion of conspiracy … gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief'").

Indeed, far from alleging the necessary elements of a Section 1985(3) claim with "factual specificity," the First Amended Complaint alleges in vague and general terms that Tidwell "authorized" various aspects of the investigation and "actively directed" the actions of "Agents Armstrong, Allen, Rose, Walls, and other agents," and that Walls "monitored, directed, and authorized the actions of" Armstrong, Allen, and other agents, both "for the purpose of surveilling Plaintiffs and other[s] … because they were Muslim." Compl. ¶¶ 20-21. Such conclusory assertions simply are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951.[11] As the Supreme Court has made clear, "[t]hreadbare recitals of the elements of a cause of action,

[11] For the reasons discussed in the memorandum in support of the other individual-capacity defendants' motion to dismiss, Plaintiffs' Section 1985(3) claims also fails under the intracorporate conspiracy doctrine.

supported by mere conclusory statements, do not suffice." *Id*. at 1949.

**IV. TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFFS' CLAIMS**

Even if the government's assertion of the state-secrets privilege did not require dismissal of Counts 1-7; even if the Court were to recognize a *Bivens* cause of action for some of Plaintiffs' claims; and even if the Court were to hold that Plaintiffs had adequately alleged the existence of a conspiracy under Section 1985(3), dismissal of all claims against Defendants Tidwell and Walls would still be required because they are entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982)). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. Qualified immunity permits government officials "to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. at 2085.

Qualified immunity is "*an immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526-27, 105 S. Ct. 2806, 2815-16, 86 L. Ed. 2d 411, 425 (1985). Accordingly, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Hunter*, 502 U.S. at 227; *see Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010), and frequently has upheld the early dismissal of claims on such grounds. *See, e.g., al-Kidd*, 131 S. Ct. at 2083-85; *Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2643-44, 174 L. Ed. 2d 354, 365-66 (2009); *Pearson v. Callahan*, 555 U.S. 223, 243-45, 129 S. Ct. 808, 822, 172 L. Ed. 2d 565, 580-81 (2009).

Notwithstanding Plaintiffs' amendment of their initial complaint, Tidwell and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Walls remain entitled to qualified immunity on all claims asserted against them (Counts 1-7, 9, and 10) for two related reasons. First, Plaintiffs fail to state any claim that Tidwell or Walls engaged in conduct that violated their rights. Second, even if Plaintiffs had plausibly alleged such claims, they do not allege violations of clearly established rights such that it would have been clear at the time to "every reasonable official" that the alleged conduct was unlawful. *al-Kidd*, 131 S. Ct. at 2083.

**A. Qualified Immunity Bars The First And Fifth Amendment Claims**

Tidwell and Walls are entitled to qualified immunity on Plaintiffs' First and Fifth Amendment claims (Counts 1-4, 6, and 7), which allege that "Defendants [have] engaged in a scheme to target Plaintiffs for surveillance because of [their] adherence to and practice of the religion of Islam." Compl. ¶¶ 227, 229, 232, 235, 241, 243. Government officials cannot be held liable for constitutional claims on a *respondeat superior* theory, and the First Amended Complaint lacks any well-pleaded factual allegations "that allow[] the court to draw the reasonable inference that [Tidwell and Walls are] liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Because the First Amended Complaint does not allege a constitutional violation, it follows that it was not clearly established at the time that Tidwell and Walls could be held liable in these circumstances.[12]

Courts have long recognized that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and that such defendants "may not be held liable for the

[12] Qualified immunity is also appropriate with respect to the Section 1985(3) claims alleged in Counts 2, 4, and 7 because it is not clearly established—and was certainly not in 2006 and 2007—that this provision applies to conspiracies other than those motivated by racial animus. The Ninth Circuit has not determined whether a religious group may be a protected class for purposes of Section 1985(3). *See Webb v. Cnty. of Trinity*, 734 F. Supp. 2d 1018, 1033 n.8 (E.D. Cal. 2010). Indeed, the Supreme Court has acknowledged that this issue remains open, noting that it has "addressed and upheld a claim under § 1985(3)" only once, "and that case involved race discrimination." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S. Ct. 753, 759, 122 L. Ed. 2d 34, 46 (1993) (citing *Griffin*, 403 U.S. 88). Therefore, even if Plaintiffs had plausibly alleged a conspiracy, qualified immunity requires dismissal of the Section 1985(3) claims given the unsettled nature of the law.

unconstitutional conduct of their subordinates." *Id*. at 1948. Plaintiffs, however, seek compensatory, liquidated, and punitive damages against Tidwell and Walls for the alleged actions of the informant and their subordinates. Such *respondeat superior* liability is plainly foreclosed by binding precedent. *See id*.

In addition, where, as here, "the claim is invidious discrimination in contravention of the First and Fifth Amendments," the Supreme Court has made clear "that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id*.; *see Lukumi Babalu Aye*, 508 U.S. at 540-41 (First Amendment); *Washington v. Davis*, 426 U.S. at 240 (Fifth Amendment). "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'" *Iqbal*, 129 S. Ct. at 1948. It requires "a decisionmaker's undertaking a course of action because of, not merely in spite of … adverse effects upon an identifiable group." *Id*. (internal quotation marks omitted). Applying that standard in *Iqbal*, the Supreme Court made clear that qualified immunity barred claims of "invidious discrimination in contravention of the First and Fifth Amendments" where defendants only allegedly supervised the implementation of federal counterterrorism policies that discriminated against Muslims. *Id*. at 1944, 1948.

As in *Iqbal*, the First Amended Complaint does not plausibly allege that Tidwell or Walls "adopted and implemented the … policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of" Plaintiffs' religion. *Id*. at 1948-49. As discussed above, Plaintiffs' description of Tidwell's and Walls' authorization and supervision of an investigation conducted pursuant to FBI counterterrorism policies (Compl. ¶¶ 20-21) cannot "plausibly suggest an entitlement to relief." *See Iqbal*, 129 S. Ct. at 1951 (allegations that Attorney General was "principal architect" of "invidious policy" and FBI Director was "instrumental" in executing it insufficient).

In amending their initial complaint, Plaintiffs have merely added more generic allegations regarding Tidwell's and Walls's supervision of the investigation. For

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

example, Plaintiffs now allege that Tidwell "authorized the nature and scope of the operation and its targeting of Muslims," and "actively" directed the agents "for the purpose of surveilling Plaintiffs and other[s] … because they were Muslim." Compl. ¶ 20. But these are precisely the kinds of "labels and conclusions" and "formulaic recitation of the elements of a cause of action" that the Supreme Court held insufficient in *Twombly*, 550 U.S. at 555. And the only new allegation regarding Walls's role is that "she was one of the direct supervisors of" the agents conducting the investigation at issue. *Id*. Plaintiffs have simply failed to provide *any specific factual averments* in support of their claims regarding Tidwell's and Walls' alleged conduct, and their new assertions are just more "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal* 129 S. Ct. at 1949. Such allegations "do not suffice," nor are they "entitled to the assumption of truth." *Id*. at 1950; *see id*. at 1949 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Twombly*, 550 U.S. at 555.

Moreover, any allegation that Tidwell and Walls purposefully discriminated against Plaintiffs on the basis of religion would be implausible in light of Plaintiffs' other allegations. After all, Plaintiffs allege that Defendants "operated under the principles set forth" in the Attorney General's Guidelines and the DIOG, which explicitly *prohibited* investigative activity based solely on religion and First Amendment activities. *See* Compl. ¶ 37. Similarly, the First Amended Complaint contains numerous allegations that the investigation was related to counterterrorism efforts. *See supra* Background, Part A. Such allegations offer precisely the kind of "obvious alternative explanation" that this Court should credit as more plausible than Plaintiffs' general and conclusory allegations of "purposeful, invidious discrimination" on the part of Tidwell or Walls. *Iqbal*, 129 S. Ct. at 1951. Indeed, as the Supreme Court recognized in *Iqbal*,

> [i]t should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the [September 11] attacks would produce a disparate, incidental impact on

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims. *Id.*

Because Plaintiffs fail to allege a violation of the First and Fifth Amendments, it could not have been clearly established at the time that Tidwell's and Walls's alleged conduct violated Plaintiffs' rights. *See Presbyterian Church (U.S.A.) v. U.S.*, 870 F.2d 518, 527 (9th Cir. 1989) (undercover electronic surveillance of church services did not violate clearly established First Amendment rights); *see also al-Kidd*, 131 S. Ct. at 2084 ("We have repeatedly told courts … not to define clearly established law at a high level of generality." (citation omitted)); *Saucier v. Katz*, 533 U.S. 194, 206, 121 S. Ct. 2151, 2158-59, 150 L. Ed. 2d 272, 284 (2001) (right clearly established if "'[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right'"), *overruled on other grounds by Pearson*, 555 U.S. 223.

**B. Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim**

For similar reasons, qualified immunity bars Plaintiffs' Fourth Amendment claim against Tidwell and Walls (Count 9), which alleges that the informant, at the FBI's direction, conducted unlawful video and audio recording of Plaintiffs in mosques, in homes, and at sporting events. As an initial matter, Plaintiffs again seek improperly to hold Tidwell and Walls accountable for the conduct of the informant and their subordinates, while failing to allege that either Tidwell or Walls had any personal involvement in or directed the allegedly unlawful searches.[13] Moreover, covert surveillance of a religious community does not, without more, violate Fourth Amendment rights, *see Presbyterian Church*, 870 F.2d at 527, and the First Amended Complaint lacks any specific allegations that the informant's conduct occurred in circumstances in which Plaintiffs had a reasonable expectation of privacy. Because

[13] Defendants address only the Fourth Amendment claims specific to Plaintiffs, and not those alleged with respect to unnamed individuals, as Fourth Amendment rights "are personal rights" that may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 138, 99 S. Ct. 421, 427-28, 58 L. Ed. 2d 387, 397-98 (1978).

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

the facts pleaded lack the requisite specificity and do not constitute a violation, it necessarily follows that it could not have been clearly established at the time that Tidwell's and Walls's alleged conduct violated the Fourth Amendment.[14]

**1. Plaintiffs Fail To Allege That Tidwell Or Walls Was Personally Involved In The Purported Searches, Or That A Sufficient Causal Connection Between Their Conduct And The Alleged Violation Otherwise Existed**

Plaintiffs can state a Fourth Amendment claim against supervisors such as Tidwell or Walls only by plausibly alleging that they were "personally involved" in the allegedly unlawful search or that a "'sufficient causal connection exists'" between their alleged conduct and the violation. *Edgerly*, 599 F.3d at 961; *Lacey v. Maricopa Cnty.*, 2011 WL 2276198, at *13 (9th Cir. June 9, 2011) (same); *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (when evaluating constitutional deprivations, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant"). To satisfy this requirement, Plaintiffs must allege, at a minimum, that Tidwell and Walls "'set[] in motion a series of acts by others which [they knew] or reasonably should [have known] would cause others to inflict the constitutional injury.'" *Kwai Fun Wong v. U.S.*, 373 F.3d 952, 966 (9th Cir. 2004).

Plaintiffs fail to satisfy these requirements. They do not allege that Tidwell or Walls was "personally involved" in the purported searches, nor do they offer any facts—much less specific ones—showing that "a sufficient causal connection exists" between their actions and the alleged Fourth Amendment violations, such as personally directing the agents or the informant to engage in activities that could plausibly constitute an unlawful search. At most, Plaintiffs allege in general terms that Tidwell and Walls oversaw the overall investigation. But such generalized

[14] Plaintiffs also assert vague claims that the FBI installed electronic surveillance equipment in mosques, in AbdelRahim's house, car, and phone, and outside his home, *see* Compl. ¶¶ 94-95, 209, but fail to allege who participated in this purported activity and whose conversations were captured. The Court should reject such nonspecific claims that wholly lack factual support. *See Iqbal*, 129 S. Ct. at 1949.

allegations are insufficient to state a Fourth Amendment Claim. *See Lyall v. City of L.A.*, 2011 WL 61626, at *13 (C.D. Cal. 2011) ("[A]bsent evidence of culpable inaction that caused or set in motion the alleged constitutional violations … Plaintiffs cannot establish supervisory liability."). And because Plaintiffs have failed to allege that Tidwell or Walls had the requisite personal involvement, it certainly follows that it was not clearly established at the time that they could be held liable for an alleged Fourth Amendment violation based on the conduct alleged.

**2. Plaintiffs Fail To Allege A Reasonable Expectation Of Privacy In The Circumstances Of The Alleged Searches**

Even if Plaintiffs had adequately alleged the personal involvement of Tidwell and Walls in the purported searches to invoke the Fourth Amendment, Plaintiffs must also plausibly allege that the alleged conduct infringed on a legitimate privacy right. *See U.S. v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). But Plaintiffs do not offer any specific allegations that any of the alleged recordings infringed on a reasonable expectation of privacy. To the extent that Plaintiffs have attempted to amend their initial complaint to offer such allegations, they have added nothing more than a single conclusory claim pertaining only to Plaintiff Fazaga, coupled with generalized claims regarding self-imposed rules and subjective expectations regarding mosques, none of which gives rise to a Fourth Amendment claim.

Plaintiffs allege that the informant was directed by the case agents to conduct recordings in Plaintiff AbdelRahim's home, but they also allege that the informant did so only *after having been invited in*. *See* Compl. ¶¶ 200-01. Operations in which the agent is a so-called "invited informer" are not "searches" under the Fourth Amendment. *Mayer*, 503 F.3d at 750 (citing *U.S. v. Aguilar*, 883 F.2d 662, 701 (9th Cir. 1989)). Indeed, "[t]he Supreme Court [has] unmistakably declared that persons have no expectation of privacy or confidentiality in their conversations and relations with other persons, no matter how secretive the setting." *Aguilar*, 883 F.2d at 703. Therefore, pursuant to the "invited informer" doctrine, such claims are insufficient

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

because AbdelRahim lacked any expectation of privacy with regard to the informant's alleged recording in his home as a matter of law. *See Mayer*, 503 F.3d at 751 ("no probable cause [is] required under the invited informer doctrine").

In addition, Plaintiffs allege that the informant was directed to conduct recordings in mosques, at lectures, and at sporting events; however, they do not allege (except for one vague claim regarding Fazaga, discussed below) that these places were closed to the public when the recordings occurred. Accordingly, Plaintiffs have not sufficiently alleged that they had a reasonable expectation of privacy in those conversations. *See Lyall*, 2011 WL 61626, at *5 (no reasonable expectation of privacy at warehouse that "was not used for residential purposes," was used to host a public event, and over which plaintiffs possessed no possessory interest); *U.S. v. Gonzalez*, 328 F.3d 543, 547-48 (9th Cir. 2003) (video surveillance of mail room did not violate Fourth Amendment because no reasonable expectation of privacy in room whose doors remain open throughout business day and that receives "heavy foot traffic during business hours"); *U.S. v. Little*, 753 F.2d 1420, 1435-36 (9th Cir. 1984) (no reasonable expectation of privacy in reception area when public may enter freely).

Plaintiffs do allege, based upon "information and belief," that agents Allen and Armstrong "caused … electronic surveillance equipment to be installed" at Fazaga's mosque and monitored his conversations in non-public areas of the mosque, including his office. *See* Compl. ¶ 95. This barebones claim, added only after Defendants sought dismissal of the initial complaint, is the *first and only* allegation that any individual-capacity Defendant participated in monitoring of a Plaintiff's conversations in a non-public area (or into which the informant had not been invited). But this is precisely the type of generalized allegation that is insufficient under *Iqbal*. 129 S. Ct. at 1949-50. In any event, it does not plausibly allege the personal involvement of Defendants Tidwell and Walls, as it must. *See Edgerly*, 599 F.3d at 961.

Plaintiffs have also amended their initial complaint to allege that they relied on purported rules and subjective expectations regarding appropriate conduct within a

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

mosque and that the alleged violation of those rules violated their expectation of privacy. *See* Compl. ¶ 193. But the Supreme Court has made clear that the alleged violation of an individual's subjective expectation of privacy is insufficient to state a Fourth Amendment claim—rather, the expectation also must "be one that *society* is prepared to recognize as 'reasonable.'" *See Katz v. U.S.*, 389 U.S. 347, 361, 88 S. Ct. 507, 516, 19 L. Ed. 576 (1967) (Harlan, J., concurring) (emphasis added); *see also Oliver v. U.S.*, 466 U.S. 170, 171, 104 S. Ct. 1735, 1737-38, 80 L. Ed. 214, (1984) ("The Amendment does not protect the merely subjective expectation of privacy, but only those expectation[s] that society is prepared to recognize as reasonable."). Indeed, courts have refused to recognize a reasonable expectation of privacy in similar situations, notwithstanding rules against recording devices and other security measures. *See, e.g., In re John Doe Trader No. One*, 894 F.2d 240, 243 (7th Cir. 1990) (no reasonable expectation of privacy in conversations on exchange trading floor although subject to security, membership required to enter, and rule against recording devices). In such places, as with the invited informer scenario, "[t]he risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society." *Id.* (citing *Hoffa v. U.S.*, 385 U.S. 293, 303, 87 S. Ct. 408, 414, 17 L. Ed. 2d 374 (1966)). Thus, if Plaintiffs "really did believe" that mosque rules protected them from their conversations being recorded, this "belief was naïve rather than reasonable." *See id.* at 244.

Likewise, Plaintiffs' allegations that the informant gathered license plate numbers, addresses, telephone numbers, email addresses, and attendee lists are insufficient to state a Fourth Amendment claim. The First Amended Complaint does not allege any facts showing the informant gathered this information from non-public sources or otherwise using unlawful means. And to the extent others provided this information to the informant, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S.

735, 743-44, 99 S. Ct. 2577, 2582, 61 L. Ed. 2d 220, 229 (1979) (telephone numbers); *see also U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007) (to/from addresses of email messages); *U.S. v. Hinton*, 222 F.3d 664, 675 (9th Cir. 2000) (address affixed to envelope).

Because Plaintiffs have not alleged with the requisite specificity that any of the alleged surveillance occurred in circumstances in which they had a reasonable expectation of privacy, they have therefore also failed plausibly to allege that such surveillance at the time was clearly established to violate the Fourth Amendment.

### C. Qualified Immunity Bars Plaintiffs' RFRA Claim

Defendants Tidwell and Walls are also entitled to qualified immunity on Plaintiffs' RFRA claim (Count 5) because RFRA does not provide a damages cause of action against individuals and, even if it did, Plaintiffs fail to allege that Tidwell's or Walls's actions have placed a substantial burden on Plaintiffs' free exercise of religion. Moreover, Plaintiffs' RFRA claim presents precisely the kind of balancing of interests for which qualified immunity is particularly appropriate.

#### 1. RFRA Does Not Permit Suits For Damages Against Individual-Capacity Defendants

As a threshold matter, RFRA permits "a person whose religious exercise has been burdened" to "assert that violation as a claim or defense in a judicial proceeding" and to "obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). The individual-capacity defendants like Tidwell and Walls are not "government[s]," however, and therefore this provision does not authorize damages suits against them. *See Jean-Pierre v. BOP*, 2010 WL 3852338, at *6 n.4 (W.D. Pa. July 30, 2010). RFRA's definition of "government," considered in context, reaffirms this reading. The statute defines "government" to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, a State, or subdivision of a State." 42 U.S.C. § 2000bb-2(1). The term "official" is most naturally read to authorize official-capacity suits, which, consistent

with the text, would seek "relief against [the] government." *Id.* § 2000bb-1(c); *see Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3104-05, 87 L. Ed. 2d 114, 121 (1985) (official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent'").

Even if this Court were to hold that RFRA permits damages actions against government officials in their individual capacities, this principle is far from clearly established today, and certainly was not at the time of the investigation in this case. Indeed, at least one court recently has concluded that RFRA *does not* "support damage claims against government officials in their individual capacity." *Jean-Pierre*, 2010 WL 3852338, at *6 n.4. And although other courts have permitted such actions, those decisions did not engage in a textual analysis of RFRA, and in any event were district court decisions that would be insufficient to create a clearly established right. *See al-Kidd*, 131 S. Ct. at 2084 (district court decision "is not 'controlling authority' in any jurisdiction, much less in the entire United States," as "controlling authority" requires "a robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S. Ct. 1692, 1700, 143 L. Ed. 2d 818, 832 (1999)); *see, e.g.*, *Lepp v. Gonzales*, 2005 WL 1867723, at *8 (N.D. Cal. Aug. 2, 2005); *Keen v. Noble*, 2007 WL 2789561, at *9 (E.D. Cal. Sept. 20, 2007).

### 2. Plaintiffs Have Not Alleged A "Substantial Burden" On Free Exercise

Plaintiffs also fail to allege, as they must, facts sufficient to plead that Tidwell's or Walls's activities placed a "substantial burden" on Plaintiffs' exercise of religion. To state a claim under RFRA, Plaintiffs must allege a substantial interference with the right of free exercise. *See Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1120 (9th Cir. 2000). A "substantial burden" on free exercise exists only when the government "has coerced the Plaintiffs to act contrary to their religious beliefs under threat of sanctions, or condition a governmental benefit upon conduct that would violate the Plaintiffs' religious beliefs." *Navajo Nation*, 535 F.3d at 1063.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Plaintiffs, however, do not make a plausible claim that Defendants Tidwell or Walls did either; rather, they complain that the alleged surveillance ultimately had a chilling effect on mosque attendance.[15] But an "action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion is not what Congress has labeled a 'substantial burden' … on the free exercise of religion." *Id*. The allegations in the First Amended Complaint cannot be plausibly read to suggest coercion of any kind or the conditioning of any governmental benefit.[16]

For the same reasons, Tidwell and Walls could not have been expected reasonably to believe at the time that the alleged conduct violated RFRA. Qualified immunity protects government officials who do not have fair warning about the legality of their actions, and therefore courts have made clear that the "'sophisticated balancing of interests'" inherent in RFRA "is the very type of discretionary decision making that prevents a finding of 'clearly established' federal law on the issue." *Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 805 (D.S.C. 2011) (granting qualified immunity on RFRA claim). Indeed, qualified immunity is particularly appropriate in this case because RFRA *permits* a substantial burden on religion where the government can demonstrate that its actions were "in furtherance of a compelling state interest" and it used "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(2).

**D. Qualified Immunity Bars Plaintiffs' FISA Claim**

Finally, qualified immunity bars Plaintiffs' FISA claim under 50 U.S.C. § 1810

[15] Plaintiffs allege that they did not know of the informant's activities until *after* the surveillance ended, and only then did Malik and AbdelRahim claim to have decreased their mosque attendance. Compl. ¶¶ 78, 217. They do not allege that their religious exercise was substantially burdened by the informant's activities while ongoing, and any subsequent change in their mosque attendance is motivated only by speculative, after-the-fact concerns, not the informant's alleged conduct. Fazaga also alleges that the informant caused damage to the "trust within and cohesion of his congregation," which "directly undermined the Islamic practice of *jama'ah*, or worship in a congregation." *Id*. ¶ 65. These claims do not go to Fazaga's religious exercise.

[16] Because "substantial burden" refers to constitutional Free Exercise standards, *see Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008) (en banc), the First Amended Complaint has also failed to state a claim for violation of the Free Exercise Clause (Counts 3 and 4).

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

(Count 10). As an initial matter, Plaintiffs fail to allege facts demonstrating that they are "aggrieved person[s]" who may bring such a claim. Section 1810 of FISA authorizes suits only by an "aggrieved person," which is defined as "the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k). "Electronic surveillance," in turn, is defined as the use of an electronic device "for monitoring to acquire information … under circumstances in which a person has *a reasonable expectation of privacy*." *Id.* § 1801(f)(4) (emphasis added). As discussed *supra* Part IV.B.2, however, Plaintiffs had no reasonable expectation of privacy in the circumstances alleged here, and for that same reason, they have failed to allege that they were aggrieved by electronic surveillance. *See ACLU v. NSA*, 493 F.3d 644, 683 (6th Cir. 2007) ("[A]ggrieved person is intended to be coextensive with, but no broader than, those persons who have standing to raise claims under the Fourth Amendment with respect to electronic surveillance.") (citation omitted); *In re NSA Telecomms. Records Litig.*, 595 F. Supp. 2d 1077, 1084 (N.D. Cal. 2009) (requiring "particularized and specific" allegations to state a claim under Section 1810).

Plaintiffs' FISA claim also fails because the First Amended Complaint lacks allegations that Defendants Tidwell or Walls acted with the requisite intent. Under 50 U.S.C. § 1809—the "violation of which forms the basis for liability under section 1810," *In re NSA Telecomms. Records Litig.*, 564 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008)—liability attaches only if a defendant has "'*intentionally* engag[ed] in electronic surveillance under color of law except as authorized by statute,'" *id.* (emphasis added); *see also* H.R. Rep. No. 95-1283, at 97 (1978) (statute should be interpreted as requiring "intentional violation of an order or one of the specified provisions, not just intentional conduct"). But Plaintiffs fail to allege sufficiently that either Tidwell or Walls personally conducted or authorized any specific surveillance activity with the intent to violate the law, and this claim must fail on that ground as well.

For the same reasons—particularly in light of the dearth of judicial guidance in this area, *see NSA Telecomms. Records Litig.*, 564 F. Supp. 2d at 1137 (noting "lack of precedents under section 1810")—it was not clearly established at the time that Tidwell and Walls could be held liable under FISA in the circumstances alleged.

**CONCLUSION**

For the foregoing reasons, Defendants Tidwell and Walls's Motion to Dismiss should be granted in its entirety.

Dated: November 11, 2011

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: /s/ Brian R. Michael

Brian R. Michael
P. Patty Li
Katie Moran
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

Howard M. Shapiro
Carl J. Nichols
Annie L. Owens
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants J. Stephen Tidwell and Barbara Walls*

**Wilmer Cutler Pickering Hale and Dorr LLP**
**350 South Grand Avenue, Suite 2100**
**Los Angeles, California 90071**

WILMER CUTLER PICKERING HALE AND DORR LLP
Brian R. Michael (SBN: 240560)
brian.michael@wilmerhale.com
P. Patty Li (SBN: 266937)
patty.li@wilmerhale.com
Katie Moran (SBN: 272041)
katie.moran@wilmerhale.com
350 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

WILMER CUTLER PICKERING HALE AND DORR LLP
Howard M. Shapiro (admitted *pro hac vice*)
howard.shapiro@wilmerhale.com
Carl J. Nichols (admitted *pro hac vice*)
carl.nichols@wilmerhale.com
Annie L. Owens (admitted *pro hac vice*)
annie.owens@wilmerhale.com
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Attorneys for Defendants J. Stephen Tidwell and Barbara Walls

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

YASSIR FAZAGA *et al.*,

Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION *et al.*,

Defendants.

No. SA CV 11-00301-CJC (VBKx)

**REPLY MEMORANDUM OF LAW OF INDIVIDUAL-CAPACITY DEFENDANTS J. STEPHEN TIDWELL AND BARBARA WALLS IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: February 10, 2012
Time: 10:00 a.m.
Judge: Hon. Cormac J. Carney
Crtrm: Courtroom 9B

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS PRIVILEGE RENDERS DEFENDANTS UNABLE FULLY TO LITIGATE THEIR DEFENSES ..... 3

II. THE COURT SHOULD DECLINE TO RECOGNIZE A *BIVENS* ACTION ..... 6

III. PLAINTIFFS HAVE NOT ALLEGED A CONSPIRACY UNDER SECTION 1985(3) ..... 13

IV. DEFENDANTS TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFFS' CLAIMS ..... 14

A. Qualified Immunity Bars Plaintiffs' Religious Discrimination Claims ..... 14

B. Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim ..... 18

C. Qualified Immunity Bars Plaintiffs' RFRA Claim ..... 20

D. Qualified Immunity Bars Plaintiffs' FISA Claim ..... 21

CONCLUSION ..... 21

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

## TABLE OF AUTHORITIES

## CASES

Page(s)

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) .......... 21

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .... 7, 16, 17, 18

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) .......... 6, 8, 9, 10

*Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994) .......... 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 929 (2007) .......... 13

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) .......... *passim*

*Bond v. United States*, 529 U.S. 334, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000) .......... 20

*Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000) .......... 15

*Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983) .......... 11, 12

*Carlson v. Green*, 446 U.S.14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) ..... 7, 11, 12, 13

*Chappell v. Wallace*, 462 U.S. 296, S. Ct. 2362, 76 L. Ed. 2d 586 (1983) .......... 8, 11

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) .......... 7, 8, 9, 12

*Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) .......... 7, 11

*Downie v. Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002) .......... 12

*Employment Division v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) .......... 13

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) .......... 13

*Gratz v. Bollinger*, 539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) ...... 15, 16

*In re John Doe Trader Number One*, 894 F.2d 240 (7th Cir. 1990) .......... 20

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) .......... 3

*Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 576 (1967) .......... 20

*Lyall v. City of Los Angeles*, 2011 WL 61626 (C.D. Cal. Jan. 6, 2011) .......... 20

*Minneci v. Pollard*, 2012 WL 43511 (U.S. Jan. 10, 2012) .......... 7

*Mirmehdi v. United States*, 662 F.3d 1073 (9th Cir. 2011) .......... 2, 6, 8,10, 11

Case: 12-56867 04/29/2015 ID: 9519750 DktEntry: 62-2 Page: 50 of 76

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)......... 9, 13

*Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) ...................... 2, 3

*Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009) ............................... 15

*Moss v. United States Secret Service*, 572 F.3d 962 (9th Cir. 2009) .......................... 17

*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977) ................................................................ 16

*Navajo Nation v. United States Forest Service*, 535 F.3d 1058 (9th Cir. 2008).......... 20

*O'Connor v. Ortega*, 480 U.S. 709, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987)........... 20

*Presbyterian Church v. United States*, 870 F.2d 518 (9th Cir. 1989) ...................... 3, 14

*Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct. 2460, 2468, 101 L. Ed. 2d 370 (1988)............................................................................................ 11, 12

*Totten v. United States*, 92 U.S. 105, 23 L. Ed. 605 (1876) ....................................... 10

*Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094 (C.D. Cal. 2006) ........................... 20

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989).......................................... 3, 14

*United States v. Gonzalez*, 328 F.3d 543 (9th Cir. 2003).......................................... 20

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) ............................................... 20

*United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000)......................................... 19, 20

*United States v. Stanley*, 483 U.S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987)................................................................................................ 8, 11

*United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991) ............................................... 20

*United States v. Turner*, 104 F.3d 1180 (9th Cir. 1997)............................................. 15

*Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994) ............................. 1, 2, 14

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977) ........................................... 16

*Western Radio Services Co. v. United States Forest Service*, 578 F.3d 1116 (9th Cir. 2009)................................................................................................... 6

*Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)... 16, 19

*Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007) ......... 7, 11

*Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008).............................................. 8, 10, 12

*Yendes v. McCulloch*, 2010 WL 3339505 (S.D. Cal. Aug. 23, 2010)......................... 20

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
Case No. SA CV 11-00301-CJC (VBKx)

-iii-

**T&W ER 47**

Case: 12-56867, 04/29/2015, ID: 9519750, DktEntry: 62-2, Page 51 of 76

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

**STATUTES**

50 U.S.C. § 1810 .......... 21
42 U.S.C. § 1985 .......... 2, 13, 14

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
Case No. SA CV 11-00301-CJC (VBKx)
-iv-
**T&W ER 48**

Defendants J. Stephen Tidwell and Barbara Walls respectfully submit this Reply Memorandum in support of their Motion to Dismiss Plaintiffs' First Amended Complaint.

**INTRODUCTION**

Plaintiffs seek to use this case to litigate whether, following the terrorist attacks of September 11, 2001, the United States can ever consider religion as a factor in a counterterrorism investigation. Plaintiffs' extraordinary contention that the government can *never* do so presents novel constitutional and statutory questions, and is inconsistent with decisions rejecting precisely that position. *See, e.g.*, *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396, 1401 (9th Cir. 1994) (investigation of impact of police officer's religious beliefs on his official duties did not violate Free Exercise or Establishment Clauses). More fundamentally, Plaintiffs' challenge is nothing more than a broadside attack on Executive Branch policies, which cannot and should not be resolved through damages claims against individual government employees. Instead, as Defendants Tidwell and Walls demonstrated in their Motion to Dismiss, Plaintiffs' claims against them must be dismissed for at least four separate reasons.

*First*, the Attorney General's assertion of the state-secrets privilege requires dismissal of Counts 1-7 against Defendants Tidwell and Walls. Those Counts are predicated entirely on Plaintiffs' untested allegation that they were investigated because of their religion. But Tidwell and Walls have a right to contest that claim by showing that, for example, Plaintiffs were *not* investigated because of their religion; that Defendants had non-discriminatory, national-security-related reasons for investigating Plaintiffs; that the investigative methods used were properly tailored to achieve specific, legitimate counterterrorism goals; or even that Plaintiffs were not the subjects of the investigation. Tidwell and Walls also are entitled to contest the First Amended Complaint's non-specific allegations about their personal involvement in, and purposes and intentions for, the alleged investigative activities. But the government's invocation of the state-secrets privilege absolutely disables Tidwell and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Walls from seeking discovery and presenting evidence regarding precisely these issues in order to fully defend themselves. Dismissal of Counts 1-7 is therefore warranted. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1083 (9th Cir. 2010) (dismissal is warranted where assertion of state-secrets privilege prevents a defendant from adequately raising and supporting available defenses).

*Second*, this Court should not countenance Plaintiffs' effort to extend *Bivens* liability to the unique circumstances of this case. Plaintiffs have pointed to no case, and Defendants Tidwell and Walls are aware of none, in which a court has inferred a *Bivens* damages remedy for alleged religious discrimination or allegedly unlawful searches arising from surveillance conducted by an informant during a counterterrorism investigation. Plaintiffs are therefore simply wrong to contend that this case would not extend *Bivens* to a new context. It does, and their arguments to the contrary—which rest on the general proposition that *Bivens* remedies have been recognized for alleged violations of certain constitutional rights—entirely ignore courts' repeated admonitions that a case presents a new context if it does not have "similar legal *and factual* components" to prior cases inferring a *Bivens* remedy. *Mirmehdi v. United States*, 662 F.3d 1073, 1078-79 (9th Cir. 2011). In addition, existing statutory remedial schemes and the national security implications of this case strongly counsel hesitation in creating a *Bivens* remedy in this new context.

*Third*, Plaintiffs have failed to allege specific facts plausibly suggesting that Defendants Tidwell and Walls reached a meeting of the minds to target and discriminate against Plaintiffs on the basis of religion, as required to state a conspiracy claim under 42 U.S.C. § 1985.

*Fourth*, Defendants Tidwell and Walls are entitled to qualified immunity on all of Plaintiffs' claims. No court has held that the United States is precluded entirely from using religion as a factor in a counterterrorism investigation, and indeed several Ninth Circuit cases have rejected Plaintiffs' argument that religion can *never* be a factor in a law enforcement investigation. *See Vernon*, 27 F.3d at 1396; *see also*

*United States v. Aguilar*, 883 F.2d 662, 705 (9th Cir. 1989); *Presbyterian Church v. United States*, 870 F.2d 518, 527 (9th Cir. 1989). In these circumstances, it was not (and could not have been) clearly established at the time that the alleged investigation was unconstitutional. And because Plaintiffs have failed plausibly to allege that, as supervisors, Tidwell and Walls acted with discriminatory purpose or intent, or that they took specific actions that violated Plaintiffs' constitutional or statutory rights, qualified immunity is particularly warranted here.

## ARGUMENT

### I. THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS PRIVILEGE RENDERS DEFENDANTS UNABLE FULLY TO LITIGATE THEIR DEFENSES

In their opening briefs Tidwell and Walls (Br. at 9-12)[1] and the United States (at 37-52) established that the Attorney General's assertion of the state-secrets privilege mandates the dismissal of Counts 1-7 of the First Amended Complaint because it will render Defendants unable fully to litigate their defenses against Plaintiffs' claims of religious discrimination. In particular, the government has invoked the state-secrets privilege over (1) evidence tending to confirm or deny that a particular person was (or was not) the subject of the counterterrorism investigation; (2) the reasons for the counterterrorism investigation and its results; and (3) the methods employed by the counterterrorism investigation. As a result of the government's invocation of the privilege, Defendants Tidwell and Walls are precluded entirely from divulging any information they may have concerning these subjects; from presenting evidence concerning these issues; from seeking discovery concerning them; or from otherwise litigating the facts and circumstances concerning Plaintiffs' claims. Accordingly, as Tidwell and Walls established, they are precluded from mounting a complete defense to Plaintiffs' allegations, and Counts 1-7 of the First Amended Complaint must therefore be dismissed. *See Jeppesen Dataplan*, 614 F.3d at 1083; *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).

[1] "Br." refers to Tidwell and Walls's brief filed in support of their motion to dismiss.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Plaintiffs concede, as they must, that dismissal is appropriate when a state-secrets assertion precludes a defendant from presenting a full defense. Opp. to Gov't at 22-23.[2] Plaintiffs argue instead that specific details of the alleged investigation are irrelevant to Defendants' potential defenses because Plaintiffs have alleged they were targeted on the basis of their religion and that "*any* use of religion as part of the basis for an investigation constitutes a facially discriminatory classification." *Id.* at 36.

This argument fundamentally misunderstands the nature of litigation and fails to recognize that Defendants have a right to fully defend themselves against Plaintiffs' claims. At present, Plaintiffs have made untested allegations about the reasons for the investigation that are nothing more than that—mere allegations. Here, as in any case, Defendants are permitted to test those allegations by seeking to demonstrate that, for example, Plaintiffs were investigated for reasons unrelated to their religion; that Defendants had non-discriminatory, national-security-related reasons for investigating certain individuals; that the investigative methods involved were properly tailored to achieve specific and legitimate counterterrorism goals; or even that some or all of the Plaintiffs actually were not the subjects of the investigation. Defendants Tidwell and Walls also are entitled to contest Plaintiffs' non-specific allegations about their personal involvement in, and intentions regarding, the alleged investigative activities. But the invocation of the state-secrets privilege precludes Tidwell and Walls from seeking discovery and presenting evidence regarding precisely these issues in order to defend themselves.

Indeed, Plaintiffs' position, if adopted, would effect a remarkable and unfair asymmetry between the parties. On the one hand, they contend that "the only reason [for the alleged investigation] the Court need inquire into" is whether "*being Muslim* was a reason to trigger an investigation by the FBI." Opp. to Gov't at 36. On the

[2] "Opp. to Gov't" refers to Plaintiffs' brief filed in opposition to the government's motion to dismiss; "Opp." refers to Plaintiffs' brief filed in opposition to the Individual-Capacity Defendants' motion to dismiss.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

other hand, Plaintiffs argue that this case can proceed even though the state-secrets privilege precludes Defendants from contesting their assertion that "*being Muslim*" motivated the alleged investigations and that national security considerations predominated. Plaintiffs' position is all the more dubious in light of their argument (Opp. at 32, 42-47) that Defendants' actions fail to satisfy strict scrutiny because of insufficient factual support justifying the investigation when it is precisely the facts covered by the state-secrets privilege that are relevant to that inquiry.

There is likewise no merit to Plaintiffs' assertion that because some facts concerning the investigation have already been disclosed in limited fashion, Defendants will not need to rely on privileged information in their defense. Opp. to Gov't at 32, 39-40. Plaintiffs do not, and could not, argue that the information in the public domain constitutes all relevant evidence concerning the investigation. But the non-public evidence is precisely what, absent the assertion of the state-secrets privilege, Defendants would be entitled to seek through discovery and present at trial, in order to show that the investigation was justified and sufficiently tailored to address legitimate counterterrorism and law enforcement interests.

Simply put, Plaintiffs cannot have it both ways, claiming that there is insufficient evidence to justify the investigation, while also claiming that Tidwell and Walls do not require access to the very evidence that is necessary for them to defend themselves. Because Defendants Tidwell and Walls cannot defend themselves in light of the government's invocation of the state-secrets privilege, Counts 1-7 of the First Amended Complaint must be dismissed.[3]

[3] Indeed, Plaintiffs contend (Opp. at 65) that the reasons for the alleged investigation are relevant to their Fourth Amendment claim (Count 9), on the theory that "the FBI … cannot engage in a fishing expedition targeting an entire religious group without a proper law enforcement purpose." To the extent that theory is correct, the government's invocation of the state-secrets privilege would also require dismissal of Count 9, since it prevents Tidwell and Walls from litigating whether they "engage[d] in a fishing expedition targeting an entire religious group" or whether they acted "without a proper law enforcement purpose."

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

## II. THE COURT SHOULD DECLINE TO RECOGNIZE A *BIVENS* ACTION

Even if the government's assertion of the state-secrets privilege did not warrant dismissal, Tidwell and Walls demonstrated in their opening brief (Br. at 12-20) that Plaintiffs' constitutional claims should be dismissed for a separate and independent reason: No court has ever held that a *Bivens* remedy is available for alleged religious discrimination or allegedly unlawful searches conducted by an informant during a counterterrorism investigation, and this Court should not extend *Bivens* to this context in light of existing statutory remedial schemes and special factors counseling hesitation. Plaintiffs' arguments to the contrary are not persuasive.

*First*, contrary to Plaintiffs' suggestions (Opp. at 8-13, 20-21), no court has extended *Bivens* to the context presented by this action. Although Plaintiffs claim (*id.* at 8) that this case falls within "the heartland of *Bivens*," they fail to cite a single First, Fourth, or Fifth Amendment case—and Tidwell and Walls are unaware of any—in which a court has inferred a *Bivens* remedy for alleged religious discrimination or an allegedly unlawful search arising from an informant's surveillance conducted during a counterterrorism investigation.

Instead, Plaintiffs attempt to rely (Opp. at 8-11) on cases in which *Bivens* actions have been permitted for alleged violations of the First, Fourth, and Fifth Amendments. But courts have roundly rejected the position that once a *Bivens* remedy has been recognized for one kind of constitutional claim, *Bivens* is therefore available for any other violation of the same constitutional provision. Rather, as the Ninth Circuit has explained, the term "context" "reflect[s] a potentially recurring scenario that has similar legal *and factual* components." *Mirmehdi*, 662 F.3d at 1079 (emphasis added) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) (en banc)); *see W. Radio Servs. Co. v. United States Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009). Accordingly, even though the Supreme Court recognized *Bivens* remedies more than three decades ago for alleged Fifth and Eighth Amendment

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

violations in two cases, *see Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980), it has since repeatedly rejected *Bivens* remedies for alleged violations *of the very same amendments* in other cases involving different factual scenarios, *see Minneci v. Pollard*, 2012 WL 43511 (Jan. 10, 2012), *Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007), *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). Indeed, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), where the plaintiff alleged that he had been detained "on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution," the Supreme Court acknowledged that creating a *Bivens* remedy for religious discrimination would extend *Bivens* to a new context, explaining that although it had "allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment" in *Davis*, it has "*not* found an implied damages remedy under the Free Exercise Clause." *Id.* at 1948 (emphasis added).

Plaintiffs' argument also ignores the indisputable fact that, in the last three decades, courts have been increasingly reluctant to extend *Bivens* to new contexts. Indeed, just last week, the Supreme Court rejected another attempt to extend *Bivens*, again noting that the creation of remedies for alleged constitutional violations is an area in which courts should tread with extreme caution:

> Since *Carlson*, the Court has had to decide in several different instances whether to imply a *Bivens* action. *And in each instance it has decided against the existence of such an action.*

*Minneci*, 2012 WL 43511 at *5 (emphasis added); *see also Malesko*, 534 U.S. at 68 (same). Plaintiffs are thus wrong to suggest (Opp. at 20) that courts should not hesitate before inferring causes of action for alleged constitutional (as opposed to statutory) injuries. *See Wilkie*, 551 U.S. at 550 (*Bivens* remedy "is not an automatic

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

entitlement …, and in most instances we have found a *Bivens* remedy unjustified”); *Mirmehdi*, 662 F.3d at 1079 (“[T]he Court has instructed the federal courts to ‘respond [] cautiously to suggestions that *Bivens* remedies be extended to new contexts.”).

In sum, there can be no question that it would be an extension of *Bivens* to permit Plaintiffs to pursue damages claims for constitutional violations in this case.

*Second*, as Tidwell and Walls previously established (Br. at 14-16), special factors strongly counsel against recognizing a *Bivens* remedy here. Plaintiffs seek to test whether and under what circumstances the government may consider religion in conducting a counterterrorism investigation, but that claim plainly raises important and novel constitutional and national security questions. Contrary to Plaintiffs’ contentions (Opp. at 21-25), “[a]mong the ‘special factors’ that have ‘counsel[ed] hesitation’ and thereby foreclosed a *Bivens* remedy are … national security concerns,” *Arar*, 585 F.3d at 573 (citing *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994)). It is well established that determinations relating “to national security … fall within ‘an area of [exclusive] executive action in which courts have long been hesitant to intrude’ absent congressional authorization.” *Arar*, 585 F.3d at 575 (citation omitted). And because of the separation-of-powers concerns in the national security area, courts have declined to recognize a *Bivens* remedy in a variety of different national security contexts. *See, e.g.*, *United States v. Stanley*, 483 U.S. 669, 681-82, 107 S. Ct. 3054, 3063, 97 L. Ed. 2d 550, 565-66 (1987) (military affairs); *Chappell v. Wallace*, 462 U.S. 296, 300-01, S. Ct. 2362, 2367, 76 L. Ed. 2d 586, 593 (1983) (military affairs); *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008) (disclosure of identity of CIA operatives); *Arar*, 585 F.3d 559 (terrorism); *Beattie*, 43 F.3d at 564-65 (security clearances). The same separation-of-powers concerns are at play here, where Plaintiffs seek to use a judicially created cause of action to second guess the national security policy judgments of the Executive Branch.[4] (Plaintiffs ignore

[4] A *Bivens* action—which seeks monetary damages from *individuals* operating under

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

entirely Defendants' argument on this score.)

Plaintiffs also accuse Defendants (Opp. at 11-12, 21-22) of ignoring *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985), but their reliance on that case is wholly misplaced. *Mitchell* involved an executive official's assertion of absolute immunity and included absolutely no discussion or consideration of whether creating a *Bivens* remedy was appropriate. *See id.* at 513 ("Th[is] case presents three issues: whether the Attorney General is absolutely immune from suit for actions undertaken in the interest of national security; if not, whether the District Court's finding that petitioner is not immune from suit … under the qualified immunity standard … is appealable; and, if so, whether the District Court's ruling on qualified immunity was correct."). The fact that the Court did not *sua sponte* address the availability of a *Bivens* remedy when it was not at issue lends no support to Plaintiffs' argument that the Supreme Court has therefore endorsed the creation of *Bivens* remedies in all cases implicating national security issues.[5] Indeed, Plaintiffs' supposition runs flatly counter to more than three decades of jurisprudence evincing a clear intent to limit *Bivens* claims in such cases.

The government's assertion of the state-secrets privilege only underscores the

---

that policy—is an inappropriate vehicle to vindicate such claims. As Plaintiffs acknowledge, a primary purpose of the *Bivens* remedy is "the deterrence of individual officers who commit unconstitutional acts," Opp. at 13 (quoting *Malesko*, 534 U.S. at 71), while "deterring the conduct of a policy-making entity" is *not* a rationale behind *Bivens*, *Malesko*, 534 U.S. at 71. Accordingly, the Supreme Court has made clear that, because such an action seeks damages from individuals rather than the government, "'the purpose of *Bivens* is to deter *the officer*,' not the agency." *Id.* at 69. Therefore, allowing Plaintiffs to seek damages against government employees adhering to FBI policy would play no deterrent role for the agency, and would stretch *Bivens* far beyond its intended purpose. *See Arar*, 585 F.3d at 574 ("Our federal system of checks and balances provides means to consider allegedly unconstitutional executive policy, but a private action for money damages against individual policymakers is not one of them.").

[5] To the extent Plaintiffs suggest that a finding that national security issues present a special factor in this case is the equivalent of granting officials absolute immunity from all *Bivens* claims implicating national security issues, that suggestion is obviously incorrect given that the analysis regarding whether to extend *Bivens* in a particular case is highly contextual. *See supra* at 6-7. Tidwell and Walls do not take the position that a *Bivens* remedy can never be available in national security cases.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

delicate national security and separation-of-powers issues present in this case, and further counsels hesitation given the risk of disclosure of sensitive national security information that the Executive Branch has determined should remain classified. Plaintiffs' argument (Opp. at 26) that invocation of state secrets actually weighs *in favor* of a *Bivens* remedy is incoherent at best, and Plaintiffs cite no case law to support their position that the assertion of the state-secrets privilege is irrelevant to the special-factors inquiry. Indeed, in *Wilson*, the D.C. Circuit declined to create a *Bivens* remedy in part because "the litigation of the allegations … would inevitably require judicial intrusion into matters of national security and sensitive intelligence information," making clear that state-secrets concerns are pertinent to a *Bivens* analysis even when those concerns do not bar the suit. *Wilson*, 535 F.3d at 710 ("[A]lthough *Totten*[*v. United States*, 92 U.S. 105, 23 L. Ed. 605 (1876)] does not bar the suit, the concerns justifying the *Totten* doctrine provide further support for our decision that a *Bivens* cause of action is not warranted."). And in *Arar*, 585 F.3d at 576, 579, the Second Circuit cited the risk that classified information could be disclosed as a special factor precluding a *Bivens* suit, notwithstanding the government's invocation of the state-secrets privilege.

*Third*, against the backdrop of these national security and separation-of-powers issues that weigh heavily against creating a *constitutional* damages remedy, existing *statutory* remedial schemes provide alternative processes and recourse to Plaintiffs, and further counsel hesitation. As Tidwell and Walls demonstrated in their opening brief (Br. at 16-20), Plaintiffs are pursuing claims under the Privacy Act, RFRA, and FISA, and these causes of action constitute "'alternative, existing process for protecting' the [P]laintiffs' interests." *Mirmehdi*, 662 F.3d at 1079. Although Plaintiffs respond (Opp. at 13-14) that none of these statutes provides a complete remedy for the injuries they allege, that argument is certainly not dispositive. In *Mirmehdi*, the Ninth Circuit recently refused to create a *Bivens* remedy on the ground that existing process for protecting plaintiffs' rights was available, even though neither

"provide[d] monetary compensation for" the injuries alleged. 662 F.3d at 1080. Moreover, courts have made clear that existing remedies should be considered together, not one by one, to determine whether a plaintiff has adequate recourse for his injuries. *See Wilkie*, 551 U.S. at 550-54 (considering available causes of action cumulatively); *Mirmehdi*, 662 F.3d at 1079-80 (no *Bivens* action available where statutory causes of action under "two different remedial systems" existed).

Together, the Privacy Act, RFRA, and FISA provide Plaintiffs with substantial process for protecting their interests, even if they ultimately do not give rise to viable causes of action against Tidwell and Walls in their individual capacities. *See* Br. 16-20. Plaintiffs are thus unlike the plaintiffs in *Davis*, 442 U.S. at 245; *Carlson*, 446 U.S. at 23; and *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388, 410, 91 S. Ct. 1999, 2012, 29 L. Ed. 2d 619 (1971), where the only recourse was a *Bivens* remedy "or nothing," *Davis*, 442 U.S. at 245. They are also unlike the plaintiff in *Wilkie*, 551 U.S. at 555—a case in which, contrary to Plaintiffs' suggestions (Opp. at 15 & n.12), the Supreme Court ultimately *denied* a *Bivens* remedy—where the available statutory remedies ultimately were inadequate because the government's particular pattern of behavior in that case led to "death by a thousand cuts." [6]

[6] As Plaintiffs concede (Opp. at 14), the existence of alternative statutory remedies can be a special factor counseling hesitation, even if it is not dispositive at "step one" of the *Bivens* inquiry. The Supreme Court has made clear that the existence of such remedies should be treated as a special factor if it suggests that Congress, rather than the courts, "should decide whether such a remedy should be provided." *Bush v. Lucas*, 462 U.S. 367, 380, 103 S. Ct. 2404, 2413, 76 L. Ed. 2d 648, 659 (1983). And, contrary to Plaintiffs' suggestion (Opp. at 14-15), this is so even if Congress has provided less than a complete remedy; it is well established that "it is irrelevant to a 'special factors' analysis whether the laws currently on the books [provide a plaintiff] an 'adequate' federal remedy for his injuries." *Stanley*, 483 U.S. at 683; *see Schweiker v. Chilicky*, 487 U.S. 412, 425, 108 S. Ct. 2460, 2468, 101 L. Ed. 2d 370, 382 (1988) (statutory remedy a special factor even where "Congress has failed to provide for 'complete relief'"); *Bush*, 462 U.S. at 373, 388 (assuming "a federal right has been violated and Congress has provided a less than complete remedy for the wrong," but holding that existing statutory remedial scheme was special factor); *Chappell*, 462 U.S. 296 (citing as special factor that Congress "has not provided a damages remedy").

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Here, as Tidwell and Walls demonstrated in their opening brief (Br. at 16-20), the availability of remedies under the Privacy Act, RFRA, and FISA evinces a determination that Congress, rather than the courts, should decide whether a cause of action to remedy Plaintiffs' alleged injuries is appropriate. In light of the well-established principle that an existing statutory scheme need not provide complete relief to constitute a special factor counseling hesitation, Plaintiffs' assertion (Opp. at 14-19) that none of these statutory schemes fully addresses their alleged injuries is beside the point. *See Malesko*, 534 U.S. at 69 ("So long as the plaintiff ha[s] an avenue for *some* redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability.") (emphasis added). Moreover, Plaintiffs have brought additional claims under each of these statutes; they cannot now claim that Congress has failed to provide any remedy for their alleged injuries.

Plaintiffs' remaining arguments (Opp. at 15-19) likewise fall flat. With respect to the Privacy Act, Plaintiffs argue that this Court should follow the reasoning in *Carlson*, 446 U.S. at 21, in which the Supreme Court held that the FTCA was not a special factor precluding the creation of a *Bivens* remedy in part because the FTCA provides an action against the government but not individuals. That argument is meritless not only because the law has evolved since *Carlson*, *see supra* at 7, but also because *Carlson* relied heavily on legislative history that "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." 446 U.S. at 20. No such legislative history exists here, and indeed, at least two courts of appeals have held that the Privacy Act *is* a special factor counseling hesitation, expressly rejecting the argument Plaintiffs advance here. *See Wilson*, 535 F.3d at 709 ("The special factors analysis does not turn on whether the statute provides a remedy to the particular plaintiff for the particular claim he or she wishes to pursue."); *Downie v. Middleburg Heights*, 301 F.3d 688, 697 (6th Cir. 2002) ("the *Bush* and *Schweiker* test for 'special factors'" does not require statutory scheme "be an exclusive remedy").

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Plaintiffs' arguments (Opp. at 17-18) concerning RFRA are also unpersuasive. Although Plaintiffs cite legislative history indicating that Congress enacted RFRA to abrogate the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990), nothing in that legislative history suggests that by establishing a statutory remedy, Congress also intended to leave courts free to create additional remedies under *Bivens* for Establishment Clause violations. Moreover, in the FTCA context, Congress has shown that when it wants to preserve a *Bivens* remedy, it is capable of doing so. *See Carlson*, 446 U.S. at 20-21.

Finally, with respect to FISA, Plaintiffs cite *Mitchell*, 472 U.S. at 513, and *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986), for the proposition that "courts have addressed *Bivens* claims for electronic surveillance regularly in the past thirty years." Opp. at 19. But neither case involved a special factors analysis—indeed, *Mitchell* did not even involve the question of whether a *Bivens* remedy was appropriate, *see supra* at 9—much less a discussion of FISA. The mere pendency of a *Bivens* claim, of course, is not equivalent to a holding that a *Bivens* remedy is appropriate.

## III. PLAINTIFFS HAVE NOT ALLEGED A CONSPIRACY UNDER SECTION 1985(3)

As Tidwell and Walls established in their opening brief (Br. at 20-22), bare allegations of a conspiracy are insufficient to state a claim under Section 1985(3); rather, Plaintiffs must allege facts plausibly suggesting a "further circumstance pointing toward a meeting of the minds." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 929, 941 (2007). But the First Amended Complaint lacks any factual allegation that anyone—let alone Tidwell or Walls in their supervisory roles—came to a meeting of the minds to target and discriminate against Plaintiffs on the basis of their religion, and Plaintiffs' submission only reaffirms that such allegations are nonexistent. Beyond the conclusory statement (Opp. at 60) that they "have pled detailed, nonconclusory facts about the nature and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

importance of the investigation, these supervisors' specific roles and actions, and the climate at the FBI," Plaintiffs make no effort to respond to this argument or to point to any specific allegations in their First Amended Complaint, because there are none. Mere repetition of the same deficient allegations simply does not suffice. Accordingly, Counts 2, 4, and 7 must be dismissed.[7]

## IV. DEFENDANTS TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFFS' CLAIMS

### A. Qualified Immunity Bars Plaintiffs' Religious Discrimination Claims

As Defendants Tidwell and Walls demonstrated in their opening brief (Br. at 23-26), they are entitled to qualified immunity on Plaintiffs' religious discrimination claims because Plaintiffs fail plausibly to allege that Tidwell and Walls acted with the required discriminatory purpose, and because it was not clearly established that they could be held liable on a *respondeat superior* theory. Plaintiffs' efforts to resuscitate those claims only underscore that qualified immunity is appropriate here.

*First*, Plaintiffs contend (Opp. at 30, 42-47) that religion can *never* be a legitimate basis for a government classification, even if it is one of several considerations, and thus their allegations of religious discrimination are sufficient. But Plaintiffs point to no case—let alone a case decided before the investigation here—holding that the government is precluded entirely from using religion as a factor in counterterrorism investigations. Indeed, the case law is to the contrary.

In *Vernon*, 27 F.3d 1385, discussed in more detail in the reply brief of Defendants Rose, Armstrong, and Allen, the Ninth Circuit rejected the claim that an investigation into the impact of an individual's religious beliefs on the performance of his official duties violated the Free Exercise and Establishment Clauses of the First Amendment. *See also Aguilar*, 883 F.2d at 705 (undercover investigation of religious community complied with relevant First Amendment limitations); *Presbyterian*

---

[7] As established in their opening brief (Br. at 23 n.12), Tidwell and Walls are also entitled to qualified immunity on Plaintiffs' claims under Section 1985(3).

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

*Church*, 870 F.2d at 527 (surveillance of church services did not violate clearly established Free Exercise Clause rights). Courts have reached the same conclusion in connection with investigations that were alleged to take into account other constitutionally protected classifications. *See Monroe v. City of Charlottesville*, 579 F.3d 380, 389 (4th Cir. 2009) (no classification in violation of equal protection when African-American suspect was approached based on a match with rape victims' physical description); *Brown v. City of Oneonta*, 221 F.3d 329, 337-38 (2d Cir. 2000) ("In acting on the description provided by the victim of the assault—a description that included race as one of several elements—defendants did not engage in a suspect racial classification that would draw strict scrutiny."); *see also United States v. Turner*, 104 F.3d 1180, 1185 (9th Cir. 1997) (rejecting "thesis of the appellees … that selection of a particular community for a particular enforcement operation constitutes racial discrimination if it is foreseeable that because of the ethnic composition of the community one race will necessarily provide most of the government's targets"). Accordingly it surely was not clearly established in 2006 and 2007, when Tidwell and Walls allegedly engaged in the conduct that Plaintiffs challenge here, that the Constitution forbids all consideration of religion in a counterterrorism investigation.

The *only* support Plaintiffs offer for the novel view that protected classifications can never be considered in a counterterrorism investigation is *Gratz v. Bollinger*, 539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003), which Plaintiffs mistakenly claim (Opp. at 30) establishes the broad principle that "*any* use of religion as a facial classification is subject to strict scrutiny." Plaintiffs' reliance on *Gratz* is misplaced for several reasons. *Gratz* involved race-based college admissions policies, 539 U.S. at 255, not a law enforcement counterterrorism investigation allegedly conducted within a Muslim community, and thus did not address (let alone overturn) cases holding that law enforcement officials may use a protected classification during an investigation,[8] and that investigations may seek information within a religious

[8] Nor is it the case, as Plaintiffs maintain (Opp. at 43), that Defendants must

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

community or about religious beliefs. More fundamentally, *Gratz* simply did not clearly establish, for qualified immunity purposes, that religion can never be considered in a counterterrorism investigation. Whatever merit Plaintiffs' position may have, it is not properly adjudicated through damages claims against individual government employees.

*Second*, Plaintiffs contend that Tidwell and Walls are liable for constitutional violations arising from the case agents' and informant's alleged conduct simply because Tidwell and Walls supervised the investigation, during which they allegedly read the informant's notes (the specific contents of which Plaintiffs have failed to describe). But Plaintiffs' vague and conclusory allegations are insufficient to plead plausibly that Tidwell or Walls personally engaged in specific conduct with respect to any of the challenged conduct. Because "a plaintiff must plead that each Government-official defendant, through *the official's own individual actions*, has violated the Constitution," *Iqbal*, 129 S. Ct. at 1948 (emphasis added), Plaintiffs' theory of *respondeat superior* liability is insufficient as to Tidwell and Walls.

Indeed, the First Amended Complaint contains no specific factual averments connecting any actual conduct by Tidwell or Walls to any activity that purportedly violated Plaintiffs' constitutional rights. Plaintiffs are instead left to contend (Opp. at 66-67) that the allegations against Tidwell and Walls are "plausible in light of other,

---

"demonstrate that Plaintiffs would have been targeted even without consideration of religion." The cases cited by Plaintiffs apply this analysis in the context of decisions by legislative or administrative bodies, and predate the cases addressing law enforcement investigations by several decades. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471, 483-84 (1977) (hiring decision by school board); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 271, 97 S. Ct. 555, 566, 50 L. Ed. 2d 450, 468 (1977) (zoning decision by village). *United States v. Montero-Camargo* is similarly inapposite, as its fact-specific discussion of the appropriateness of considering "ethnic appearance" when determining the existence of "particularized or individualized suspicion" for an investigatory stop under the Fourth Amendment is not relevant to claims for unconstitutional discrimination. *See Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 98 (1996) ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.").

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

detailed allegations" regarding the case agents' purported efforts to target Plaintiffs, and that the allegations that case agents had instructed the informant to gather information about Plaintiff AbdelRahim and had knowledge about the surveillance could "easily render plausible the claim that Defendants were responsible." Such conclusory arguments and claims are plainly insufficient under *Iqbal* and other decisions. *See* 129 S. Ct. at 1951 (rejecting "bare assertions" as "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim"); *Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) ("bald allegation of impermissible motive … standing alone, is conclusory and is therefore not entitled to an assumption of truth"). Moreover, Plaintiffs' view (Opp. at 31, 50-51, 54) that Tidwell and Walls must have known of the discriminatory nature of the investigation because of their supervisory roles and because they purportedly read the informant's notes are the very types of allegations that were rejected in *Iqbal*, and that should be rejected here. *See* 129 S. Ct. at 1949 (rejecting claim that "supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").

Plaintiffs attempt (Opp. at 32) to distinguish *Iqbal*—and assert that they need not plead that Defendants Tidwell and Walls acted with discriminatory intent in this case—because the plaintiffs there alleged "that a facially neutral policy was motivated by discrimination and had a discriminatory effect," whereas Plaintiffs here claim to allege direct discrimination. Plaintiffs, however, cite no language that supports their reading of *Iqbal*, which conflicts with the Court's actual description of the challenged policy: "The complaint contends that petitioners designated respondent a person of high interest *on account of* his race, religion, or national origin," *Iqbal*, 129 S. Ct. at 1944 (emphasis added). And even to the extent Plaintiffs' distinction is valid, it has no bearing on the well-established principle, as discussed above and in Tidwell and Walls's opening brief, that supervisors cannot be held liable for constitutional torts on a *respondeat superior* theory. At a minimum, because no case has held that

supervisors of a counterterrorism investigation can be held liable in the circumstances alleged here, Tidwell and Walls are entitled to qualified immunity.

Finally, the actual allegations in the First Amended Complaint belie Plaintiffs' claim that Tidwell or Walls acted with discriminatory purpose or intent in supervising the investigation. As Tidwell and Walls demonstrated (Br. at 6-8), the First Amended Complaint contains numerous allegations regarding the legitimate law enforcement and counterterrorism reasons for the investigation. These allegations present an "obvious alternative explanation" to outright discrimination, *Iqbal*, 129 S. Ct. at 1951, and support qualified immunity.[9]

**B. Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim**

Defendants are also entitled to qualified immunity on Plaintiffs' Fourth Amendment claim because, as discussed above, Plaintiffs fail to identify any specific factual allegations in the First Amended Complaint plausibly suggesting that Tidwell or Walls was personally involved in the purportedly unlawful searches. Further, as established in Tidwell and Walls's opening brief (Br. at 29-30), Plaintiffs have failed plausibly to allege that Plaintiffs had a reasonable expectation of privacy in each of the circumstances described in the First Amended Complaint, and their efforts to address those deficiencies in their opposition brief fall short.

For example, Plaintiffs improperly seek to further amend and bolster their

[9] Plaintiffs' shifting characterization of their allegations depending on the argument to which they are responding further demonstrates that they have not plausibly alleged facts supporting a claim for religious discrimination. Plaintiffs' briefs primarily argue that religion was merely "a" factor in the mix of considerations behind the investigation, *see, e.g.*, Opp. to Gov't at 21, 36; Opp. at 2, 30, while at other times, they appear to contend that Defendants targeted Plaintiffs "solely" because of their religion, *see, e.g.*, Compl. ¶ 86 ("Plaintiffs and numerous other people were surveilled *solely* due to their religion") (emphasis added); ¶ 167 (the informant "conducted surveillance and other information-gathering on a wide variety of individuals and organizations in the Muslim community, *solely* because they were Muslim") (emphasis added). Plaintiffs' claims fail under *either* of these theories. As discussed above, consideration of religion as a factor in a counterterrorism investigation is not a clearly established violation of constitutional rights. And as shown by their own contradictory allegations, Plaintiffs have also failed plausibly to allege that religion was the sole factor behind the investigation.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

allegations by asserting for the first time in their brief (Opp. at 67) that "the informant left recording devices in the mosque so as to record communications during *halaqas*, or intimate religious discussion groups, while he went elsewhere." But the First Amended Complaint makes no mention of recordings being conducted of "*halaqas*" or "intimate religious discussion groups" when discussing unattended recordings allegedly made in public mosque areas. *Compare* Compl. ¶¶ 127, 137, 192, 211 (describing alleged recording activity), *with id.* ¶ 193 (describing *halaqas*). This new spin on Plaintiffs' allegations does not alter the public nature of the spaces at issue, and more importantly, no court has held (such that it would have been clearly established for Tidwell and Walls) that it would violate the Fourth Amendment to supervise an investigation in which recordings were made in publicly accessible mosque spaces.

Plaintiffs also do not seriously challenge that the informant was entitled to conduct recordings at places where he was invited,[10] but instead claim (Opp. at 71-72) that the invited informant doctrine does not apply to recordings of conversations to which the informant was a party because the investigation was allegedly conducted in "bad faith" with the purpose of abridging Plaintiffs' rights. As discussed more fully in the reply brief of Defendants Rose, Armstrong, and Allen, however, subjective intent is not relevant to the analysis of Fourth Amendment claims, *Whren*, 517 U.S. at 813, and it certainly was not clearly established that Fourth Amendment liability could be based on subjective intent at the time of the alleged conduct.

Plaintiffs similarly seek (Opp. at 69) to distinguish the cases relied on by

[10] Plaintiffs unsuccessfully argue that the informant was not entitled to videotape after being invited into Plaintiff AbdelRahim's home by relying on a footnote in *United States v. Nerber*, in which the court reflected on, without deciding, the legality of warrantless *installation* of a hidden video camera in a suspect's home. 222 F.3d 597, 604 n.5 (9th Cir. 2000). That is not the conduct alleged here, nor is dicta regarding the limits of what "an informant's presence and consent" can justify sufficient to clearly establish that the conduct alleged here would violate constitutional rights. *See id*. *Nerber* demonstrates at a minimum that the law was *not* clearly established at the time of the investigation and, in any event, the court held that video taken by the informant was justified under the invited informer doctrine. *Id*. at 604.

Defendants by noting "the purely commercial nature of the locations involved" in those cases; but none of the courts' decisions relied on the "commercial nature" of the location as the determinative factor in finding that there was no reasonable expectation of privacy in publicly accessible spaces. *See Lyall v. City of Los Angeles*, 2011 WL 61626, at *4-7 (C.D. Cal. Jan. 6, 2011); *United States v. Gonzalez*, 328 F.3d 543, 547 (9th Cir. 2003); *United States v. Little*, 753 F.2d 1420, 1436 (9th Cir. 1984); *In re John Doe Trader Number One*, 894 F.2d 240, 243-45 (7th Cir. 2003). Indeed, it is the cases on which Plaintiffs rely that are inapposite because they addressed restrictive spaces with limited public access. *See, e.g., Bond v. United States*, 529 U.S. 334, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000) (closed bag in overhead bin of bus); *O'Connor v. Ortega*, 480 U.S. 709, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987) (desk and file cabinets in private office); *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 576 (1967) (phone booth); *United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000) (hotel room); *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991) (government employee's office); *Yendes v. McCulloch*, 2010 WL 3339505 (S.D. Cal. Aug. 23, 2010) (hotel conference room); *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094 (C.D. Cal. 2006) (single-sex locker room).

### C. Qualified Immunity Bars Plaintiffs' RFRA Claim

Defendants are also entitled to qualified immunity on Plaintiffs RFRA claim. Plaintiffs' opposition is notably devoid of any case holding clearly that it would violate RFRA to conduct a counterterrorism investigation of the kind alleged here. Plaintiffs' brief also fails to show how, as required by *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008), the investigation somehow coerced Plaintiffs or conditioned the receipt of government benefits on some conduct.[11]

Plaintiffs also do not contest (Opp. at 55-56) that RFRA's plain language does

[11] Tidwell and Walls adopt the arguments of the government and Defendants Rose, Armstrong, and Allen with respect to the appropriate analysis for Plaintiffs' Free Exercise Claim (Count Three), insofar as the Court determines that claim to be distinct from Plaintiffs' claims of discrimination on the basis of religion.

not provide for a cause of action against a defendant in his or her individual capacity, and the inconsistent jurisprudence on this issue demonstrates that it was not clearly established that individual government officials can be held liable for money damages under RFRA. *See* Br. at 32.

**D. Qualified Immunity Bars Plaintiffs' FISA Claim**

Finally, the lack of decisions addressing a claim under 50 U.S.C. § 1810 makes clear that Defendants are entitled to qualified immunity on Plaintiffs' FISA claim, as well. The law regarding Plaintiffs' FISA claim is wholly undeveloped, as established in Tidwell and Walls's opening brief (Br. at 35) and by Plaintiffs' acknowledgement (Opp. at 73) that there is no case law regarding the intent required for a FISA violation. A statutory right cannot be clearly established unless "existing precedent" has "placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149, 1159 (2011), and that is plainly not the case here.

**CONCLUSION**

For the foregoing reasons, Defendants Tidwell and Walls's Motion to Dismiss should be granted in its entirety.

Dated: January 20, 2012

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: /s/ Brian R. Michael

Brian R. Michael
P. Patty Li
Katie Moran
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300

Facsimile: (213) 443-5400

Howard M. Shapiro
Carl J. Nichols
Annie L. Owens
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants J. Stephen Tidwell and Barbara Walls*

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Peter Bibring (SBN 223981)
*pbibring@aclu-sc.org*
Ahilan T. Arulanantham (SBN 237841)
*aarulanantham@aclu-sc.org*
Jennifer L. Pasquarella (SBN 263241)
Mohammad Tajsar (SBN 280152)
Laura Moran (bar admission pending)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

Attorneys for Plaintiffs

(Additional Counsel listed on next page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

YASSIR FAZAGA, *et al.*,

Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION *et al.*,

Defendants.

CASE NO.: SA CV 11-00301 CJC (VBKx)

**PLAINTIFFS' COMBINED OPPOSITION TO INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: January 30, 2012
Time: 1:30 p.m.
Judge: Hon. Cormac J. Carney

Defendants are wrong. Established law clearly holds that the FBI cannot go around dropping listening devices in places of worship or private homes without a warrant or suspicion of illegal activity, cannot videotape the interiors of a person's home without consent or a warrant, and cannot engage in a fishing expedition targeting an entire religious group without a proper law enforcement purpose.

The Fourth Amendment protects against unreasonable searches and seizures. In the absence of a warrant, a court must assess whether any particular action by the government invades an individual's reasonable expectation of privacy by considering both whether the individual exhibited an actual expectation of privacy, and whether the individual's expectation is one society "is prepared to recognize as reasonable." *Bond v. United States*, 529 U.S. 334, 338 (2000). Courts have been hesitant to create bright line rules governing expectations of privacy in any particular places – rather, a careful Fourth Amendment analysis must take into account the specific circumstances of the communications at issue. *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007); *see also Lonegan v. Hasty*, 436 F. Supp. 2d 419, 434 (E.D.N.Y. 2006) ("the question of whether society is prepared to accept as reasonable plaintiffs' expectation of privacy . . . requires an analysis that considers not only where the conversations occurred, but, also, the nature of the conversations, the specific circumstances in which they occurred, and the relationships of the participants.").

1. ***Warrantless Audio Recording Outside Informant's Presence***

The most obvious Fourth Amendment (and FISA) violation alleged in the FAC arises from the informant's warrantless recording of conversations to which he was *not* a party. Although Defendants argue that the informants' surveillance was reasonable under the invited informer doctrine, the FAC alleges Defendants conducted audio surveillance of Plaintiffs *outside the presence of the informant* in at least three ways: (1) by installing warrantless audio surveillance in Fazaga's office, FAC ¶ 95; (2) by installing warrantless audio surveillance in AbdelRahim's

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of April, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Carl. J. Nichols
CARL J. NICHOLS