**Nos. 12-56867, 12-56874, 13-55017**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

YASSIR FAZAGA, et al.,

Plaintiffs-Appellants,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

Defendants-Appellees.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

———————————

**SUPERSEDING BRIEF FOR THE FEDERAL APPELLEES**
———————————

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney*
  *General*

STEPHANIE YONEKURA
  *Acting United States Attorney*

DOUGLAS N. LETTER
MARK B. STERN
DANIEL TENNY
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ......................................................4

STATEMENT OF THE ISSUES ..........................................................4

STATEMENT OF THE CASE ..............................................................5

     A.    Plaintiffs' Complaint ..........................................................5

     B.    Government's Response .....................................................10

     C.    District Court Rulings ......................................................16

SUMMARY OF ARGUMENT ............................................................21

STANDARD OF REVIEW ..................................................................24

ARGUMENT .......................................................................................24

I.     No injunctive relief against the government is available
     in this case .......................................................................................24

     A.    The Privacy Act does not provide for
           injunctive relief in these circumstances ........................24

     B.    No injunctive relief is available under the
           district court's inherent equitable authority
           or under the Constitution .................................................27

II.    Plaintiffs' FTCA claims fail to state a claim under
     California law and are barred by the discretionary
     function exception ..........................................................................30

A.   Plaintiffs' FTCA claims fail on state-law grounds......................30

  1.   Plaintiffs fail to state a claim for invasion
       of privacy.................................................................30

  2.   Plaintiffs have not stated a claim under
       California Civil Code § 52.1...................................34

  3.   Plaintiffs have not stated a cognizable claim for
       intentional infliction of emotional distress ........................35

B.   The FBI's actions in overseeing a confidential
     informant are subject to the discretionary function
     exception............................................................36

C.   The FTCA judgment bar precludes plaintiffs'
     claims against the individual-capacity defendants....................40

III.  The state secrets privilege precludes litigation of plaintiffs'
      allegations of indiscriminate surveillance .............................42

A.   Litigation of plaintiffs' discrimination claims would
     require the use of privileged evidence or present
     an unacceptable risk of disclosing state secrets..........................42

  1.   The government properly invoked the
       state secrets privilege to protect national
       security information .............................................43

  2.   The state secrets privilege forecloses plaintiffs'
       discrimination arguments.....................................48

B.   FISA does not supersede the state secrets privilege ..................55

C.    The district court properly held that it was necessary to dismiss claims that could not be tried without jeopardizing evidence protected by the state secrets privilege ............................................................................61

CONCLUSION ......................................................................................66

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

CERTIFICATE OF SERVICE

STATEMENT OF RELATED CASES

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** <u>Page</u>

*Alfrey v. United States,*
276 F.3d 557 (9th Cir. 2002)...............................................................37

*Al-Haramain Islamic Found. v. Obama,*
705 F.3d 845 (9th Cir. 2012)........................................................ 17, 63

*Al-Haramain Islamic Found., Inc. v. Bush,*
451 F. Supp. 2d 1215 (D. Or. 2006),
*rev'd,* 507 F.3d 1190 (9th Cir. 2007) ...................................................63

*Al-Haramain Islamic Foundation v. Bush,*
507 F.3d 1190 (9th Cir. 2007)................................................. 20, 62, 63

*Arevalo v. Woods,*
811 F.2d 487 (9th Cir. 1987)...............................................................40

*Armstrong v. Bush,*
924 F.2d 282 (D.C. Cir. 1991) ............................................................55

*Bassiouni v. FBI,*
436 F.3d 712 (7th Cir. 2006)...............................................................26

*Berkovitz v. United States,*
486 U.S. 531 (1988) ...........................................................................38

*Bogard v. Employers Cas. Co.,*
210 Cal. Rptr. 578 (Cal. Ct. App. 1985) .............................................36

*Brazil v. U.S. Dep't of the Navy,*
66 F.3d 193 (9th Cir. 1995).................................................................49

*Bush v. Lucas,*
462 U.S. 367 (1983) ...........................................................................28

*Cell Assocs., Inc. v. National Insts. of Health,*
  *Dep't of Health, Educ. & Welfare,*
  579 F.2d 1155 (9th Cir. 1978)....................................................... 25, 27

*Center for Nat'l Sec. Studies v. U.S. Dep't of Justice,*
  331 F.3d 918 (D.C. Cir. 2003) ...................................................28

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ...................................................................18

*City of Emeryville v. Robinson,*
  621 F.3d 1251 (9th Cir. 2010)....................................................44

*City of Milwaukee v. Illinois & Michigan,*
  451 U.S. 304 (1981) ...................................................................28

*Doe v. FBI,*
  936 F.2d 1346 (D.C. Cir. 1991) ................................................26

*El-Masri v. United States,*
  479 F.3d 296 (4th Cir. 2007)................................................ 55, 64

*Fendler v. U.S. Parole Comm'n,*
  774 F.2d 975 (9th Cir. 1985)......................................................29

*Gasho v. United States,*
  39 F.3d 1420 (9th Cir. 1994)................................................. 41, 42

*General Dynamics Corp. v. United States,*
  131 S. Ct. 1900 (2011) ...............................................................52

*Halpern v. United States,*
  258 F.2d 36 (2d Cir. 1958).........................................................65

*Hoffa v. United States,*
  385 U.S. 293 (1966) ...................................................................39

*Hughes v. Pair*,
  209 P.3d 963 (Cal. 2009) ................................................... 36

*In re National Security Agency Telecommunications
  Records Litigation*,
  564 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................. 60

*In re Sealed Case*,
  494 F.3d 139 (D.C. Cir. 2007) .................................... 48, 53

*Jabara v. Webster*,
  691 F.2d 272 (6th Cir. 1982) ............................................ 64

*Jewel v. NSA*,
  965 F. Supp. 2d 1090 (N.D. Cal. 2013) ............................. 60

*Kasza v. Browner*,
  133 F.3d 1159 (9th Cir. 1998) ........................... 44, 48, 52, 55

*Kreines v. United States*,
  959 F.2d 834 (9th Cir. 1992) ............................................ 41

*Miller v. United States*,
  163 F.3d 591 (9th Cir. 1998) ............................................ 37

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) ............................. 2, 11, 24, 42, 43, 48,
                                                               52, 53, 62, 64

*Morgan v. United States*,
  304 U.S. 1 (1938) ............................................................ 44

*Pennsylvania Bd. of Probation & Parole v. Scott*,
  524 U.S. 357 (1998) ........................................................ 30

vi

*People v. Windham*,
   51 Cal. Rptr. 3d 884 (Cal. Ct. App. 2006) ...................................................... 32

*Pitman v. City of Oakland*,
   243 Cal. Rptr. 306 (Cal. Ct. App. 1988) ......................................................... 36

*Sabow v. United States*,
   93 F.3d 1445 (9th Cir. 1996) .......................................................................... 38

*Shoyoye v. County of L.A.*,
   137 Cal. Rptr. 3d 839 (Cal. Ct. App. 2012) .................................................... 35

*Slagle v. United States*,
   612 F.2d 1157 (9th Cir. 1980) ........................................................................ 31

*Sterling v. Tenet*,
   416 F.3d 338 (4th Cir. 2005) .......................................................................... 64

*Tekle v. United States*,
   511 F.3d 839 (9th Cir. 2007) .......................................................................... 33

*Tenenbaum v. Simonini*,
   372 F.3d 776 (6th Cir. 2004) .......................................................................... 52

*Tenet v. Doe*,
   544 U.S. 1 (2005) ........................................................................................... 62

*Totten v. United States*,
   92 U.S. 105 (1876) .................................................................................... 53, 54

*United States v. Aguilar*,
   883 F.2d 662 (9th Cir. 1989) .......................................................................... 39

*United States v. Belfield*,
   692 F.2d 141 (D.C. Cir. 1982) ........................................................................ 60

*United States v. Leon*,
  468 U.S. 897 (1984) ...................................................................61

*United States v. Mayer*,
  503 F.3d 740 (9th Cir. 2007)....................................................39

*United States v. Nerber*,
  222 F.3d 597 (9th Cir. 2000).....................................................39

*United States v. Reynolds*,
  345 U.S. 1 (1953) .................................................... 42, 52, 53, 54, 55, 64

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense*
  *(Varig Airlines)*,
  467 U.S. 797 (1984) ...................................................................22

*United States v. Sumner*,
  226 F.3d 1005 (9th Cir. 2000)...................................................29

*Venegas v. County of L.A.*,
  87 P.3d 1 (Cal. 2004)...................................................... 34, 35

*Weinberger v. Catholic Action of Haw./Peace Educ. Project*,
  454 U.S. 139 (1981) ...................................................................54

**Statutes:**

5 U.S.C. § 552a(e)(7) ...................................................................27

5 U.S.C. § 552a(g)(1)(A) ....................................................... 25, 27

5 U.S.C. § 552a(g)(1)(B)........................................................ 25, 27

5 U.S.C. § 552a(g)(1)(D) ...............................................................27

5 U.S.C. § 552a(g)(2)(A) ...............................................................25

5 U.S.C. § 552a(g)(3)(A) ...................................................................25

5 U.S.C. § 552a(g)(4) .......................................................................27

5 U.S.C. § 552a(j)(2) ........................................................................26

5 U.S.C. § 552a(k)(2) .......................................................................26

18 U.S.C. § 2511(2)(c) ......................................................................32

28 U.S.C. § 1291 .................................................................................4

28 U.S.C. § 1331 .................................................................................4

28 U.S.C. § 1346(b) .........................................................................4, 9

28 U.S.C. §§ 2671-2680 ......................................................................9

28 U.S.C. § 2674 .................................................................................9

28 U.S.C. § 2676 ...............................................................................40

28 U.S.C. § 2680 .................................................................................6

28 U.S.C. § 2680(a) ........................................................ 10, 16, 37, 38

50 U.S.C. § 1801(f) ...........................................................................58

50 U.S.C. § 1801(k) ..........................................................................56

50 U.S.C. § 1806 .........................................................................56, 59

50 U.S.C. § 1806(a) ..........................................................................56

50 U.S.C. § 1806(c)-(d) .....................................................................56

50 U.S.C. § 1806(e) ....................................................................................57

50 U.S.C. § 1806(f) ......................................................................... 57, 59, 61

50 U.S.C. § 1806(g) ...................................................................................57

Cal. Civ. Code § 52.1 .................................................................................34

Cal. Civ. Code § 52.1(a) .............................................................................34

Cal. Civ. Code § 52.1(j) ..............................................................................34

Cal. Penal Code § 632 ................................................................................32

Cal. Penal Code § 633 ........................................................................... 32, 33

Cal. Penal Code § 637.2 .............................................................................32

**Regulations:**

28 C.F.R. § 16.96(a)(1) ..............................................................................26

28 C.F.R. § 16.96(c)(1) ...............................................................................26

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ...........................................................................4

Fed. R. Civ. P. 54(b) ............................................................................ 4, 21, 41

**Other Authorities:**

H.R. Rep. 95-1283 (1978)..........................................................................59

Restatement (Second) of Torts § 46 ...................................................36

S. Rep. No. 95-701 (1978) ..............................................................59, 60

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Nos. 12-56867, 12-56874, 13-55017

YASSIR FAZAGA, et al.,

Plaintiffs-Appellants,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

SUPERSEDING BRIEF FOR THE FEDERAL APPELLEES

## INTRODUCTION

Plaintiffs assert that they were subjected to investigative activity

because of their religion during FBI counterterrorism investigations in Los

Angeles, and that an FBI informant recorded their conversations in

violation of the Fourth Amendment and related statutes.  After

"thoroughly and skeptically" reviewing public and classified declarations

submitted by the United States, the district court dismissed the

constitutional and statutory claims against the federal government because they could not be tried without jeopardizing state secrets.

As this Court has explained, a valid assertion of the state secrets privilege "does not automatically require dismissal of the case," but "[i]n some instances" the privilege "will require dismissal because it will become apparent . . . that the case cannot proceed without privileged evidence, or that litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1079 (9th Cir. 2010) (en banc).

On appeal, as in the district court, the government seeks to address as much of the case as possible on grounds other than the state secrets privilege. The remedy sought by plaintiffs for the asserted violations—access to and expungement of records—is governed by the Privacy Act, which authorizes the FBI to exclude law enforcement records of the type at issue here from the statute's access and amendment procedures. Although plaintiffs urge the Court to disregard Congress's decision not to require agencies to expunge law enforcement records, it is inappropriate to create a judicial remedy that Congress has abjured in enacting comprehensive legislation that governs the subject matter at issue. Because the district

2

court cannot order the requested relief, plaintiffs' constitutional and Privacy Act claims should be dismissed on that alternative ground, without the need to consider application of the state secrets privilege.

In addition to injunctive relief, plaintiffs seek damages under the Federal Tort Claims Act. Plaintiffs' allegations focus on the actions of confidential informant Craig Monteilh. They correctly do not claim that Monteilh was an employee for purposes of the FTCA, and the only actions that the government allegedly instructed him to undertake—the recording of consensual conversations—do not give rise to tort liability under California law. Instructions of this kind, in the context of a sensitive anti-terrorism investigation, also fall within the scope of the statute's discretionary function exception.

As the government urged in district court, plaintiffs' claims of religious discrimination cannot be tried without jeopardizing state secrets. If this Court concludes that plaintiffs' discrimination claims are not otherwise precluded, it should affirm the district court's dismissal on state secrets grounds. Similarly, the state secrets privilege precludes plaintiffs' efforts to rely on such claims to defeat the application of the discretionary function exception.

3

## JURISDICTIONAL STATEMENT

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331 for claims for injunctive relief, and under 28 U.S.C. § 1346(b) for damages claims under the Federal Tort Claims Act. The district court granted partial final judgment for the government under Federal Rule of Civil Procedure 54(b) on December 3, 2012. [ER 11]. Plaintiffs timely appealed on January 3, 2013. [ER 1]; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether plaintiffs' constitutional and statutory claims for injunctive relief were properly dismissed because the district court could not, consistent with the Privacy Act, have ordered access to or expungement of plaintiffs' records.

2. Whether plaintiffs have stated a cognizable claim under the Federal Tort Claims Act based on FBI agents' directions to a confidential informant to record his own conversations, and whether the FBI's actions are shielded by the discretionary function exception.

3. Whether the district court in any event correctly concluded that the state secrets privilege precludes litigation of plaintiffs' allegations that

the FBI engaged in particular investigative activities for improper and discriminatory purposes.

## STATEMENT OF THE CASE

### A. Plaintiffs' Complaint

1. Plaintiffs are three Muslim individuals who participate in religious services in Southern California. Am. Compl. ¶¶ 12-14 [ER 183-84]. The defendants are the United States; the FBI; the FBI Director and the Assistant Director in charge of the FBI's Los Angeles field office in their official capacities; five current and former FBI agents in their individual capacities; and 20 "John Doe" defendants. *Id.* ¶¶ 15-23 [ER 184-87]. The Department of Justice represents the United States, the FBI, and the official-capacity defendants, and this brief is filed on their behalf only.

This case centers on the conduct of a former FBI informant, Craig Monteilh. *See* Am. Compl. ¶ 48 [ER 198]. In the operative (first amended) complaint, plaintiffs allege that Monteilh interacted with congregants at mosques in Southern California and secretly recorded his own conversations. *Id.* ¶ 123 [ER 215]. Plaintiffs also allege that, at the direction of the FBI, Monteilh gathered other information about individuals in the Muslim community for use by the FBI. *See, e.g.*, *id.* ¶¶ 99-121 [ER 210-15].

Plaintiffs assert that Monteilh was instructed to "gather as much information on as many people in the Muslim community as possible," because the FBI was seeking "to build files on as many individuals as possible." Am. Compl. ¶ 90 [ER 207]. Plaintiffs urge that guidelines issued by the Attorney General "authorize[d] the FBI to engage in intrusive investigations of First Amendment protected activity, and specifically religious practices, without any factual basis to believe any criminal violations or threat to the national security existed." *Id.* ¶ 35 [ER 192]. The cited Department of Justice guidelines state, however, that they "do not authorize investigating or collecting or maintaining information on United States persons solely for the purpose of monitoring activities protected by the First Amendment." Public Giuliano Decl. ¶ 4 [ER 262-63]; *id.* Ex. 2, at 13 [SER 27]. The DOJ guidelines likewise prohibit investigative activities solely based on religion, *id.* Ex. 3, at 21 [SER 31], while recognizing that investigations may be appropriate if religious practitioners are involved in (or their facilities are used for) activities that are the proper subject of FBI-authorized investigations, *id.* at 27 [SER 37].

Although plaintiffs allege that the government indiscriminately targeted Muslims, their amended complaint also describes several reasons

6

that the FBI allegedly targeted them individually.  Plaintiffs allege that the FBI believed that plaintiff Yassir Fazaga was suspect because he was "a radical" and because the mosque at which he was the imam had "radical" guest speakers, Am. Compl. ¶¶ 169, 171 [ER 227-28]; that the FBI was suspicious of plaintiff Ali Uddin Malik because, among other things, he "had travelled to Yemen to attend a religious school," *id.* ¶ 186 [ER 231]; and that the FBI believed that plaintiff Yasser AbdelRahim might be the leader of a terrorist cell, *id.* ¶¶ 200-01 [ER 235].

The amended complaint alleges that FBI officials instructed Monteilh to record his own conversations and provided him audio and video recording devices for this purpose.  Am. Compl. ¶¶ 124, 128 [ER 216]. Plaintiffs also allege that Monteilh sometimes left audio recording devices in offices or other parts of mosques in order to record conversations for which he was not present.  *Id.* ¶¶ 125-127 [ER 216].  Although plaintiffs allege that Monteilh informed his FBI handlers that he did this and they "never instructed him to stop," plaintiffs do not allege that the FBI instructed him to use this tactic.  *Id.* ¶ 127 [ER 216].

Much of the information about the counterterrorism investigations in which Monteilh was involved remains classified, and the government has

not publicly confirmed or denied many of the allegations in plaintiffs' complaint. The FBI has acknowledged, however, that Monteilh was a confidential informant, and, in a criminal proceeding, the government disclosed some audio and video recordings of Monteilh's conversations with the criminal defendant and other individuals. Public Giuliano Decl. ¶ 6, 11-12 [ER 264, 268-69]. (None of these individuals are plaintiffs here.)

2. The amended complaint contains eleven counts, most of which fall into one of two categories. One set of claims (referred to as the "discrimination claims," Pls.' Br. 14) is premised on plaintiffs' allegation that the government engaged in a "pattern of dragnet surveillance" in order to "gather information on Muslims in general" in an "indiscriminate manner." Am. Compl. ¶ 86 [ER 206]. Based on these allegations, the amended complaint asserts that defendants violated the First Amendment (counts 1-4), the Religious Freedom Restoration Act (count 5), the Fifth Amendment (counts 6-7), and the Privacy Act (count 8). *Id.* ¶¶ 226-47 [ER 242-45].

The second set of claims (the "search claims," Pls.' Br. 14) alleges that plaintiffs were improperly subjected to searches, based substantially on the allegations that Monteilh made audio and video recordings of plaintiffs.

8

The amended complaint asserts that defendants violated the Fourth Amendment (count 9) and the Foreign Intelligence Surveillance Act (FISA) (count 10).  Am. Compl. ¶¶ 250-53 [ER 246-47].

Plaintiffs' Privacy Act claim also includes an allegation that the government impermissibly refused to expunge records or disclose them to plaintiffs.  Am. Compl. ¶¶ 248-49 [ER 245-46].  On that ground, and based on the constitutional and statutory claims discussed above, plaintiffs seek an order requiring the government to "destroy or return any information gathered through the unlawful surveillance program . . . and any information derived from that unlawfully obtained information, as well as to comply with their obligations under the Privacy Act."  Am. Compl., Prayer for Relief ¶ b [ER 248-49].  Plaintiffs have not sought declaratory relief or injunctive relief other than expungement of records.

Plaintiffs also allege that the United States is liable for damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680. That statute contains a limited waiver of sovereign immunity and creates a cause of action against the United States, subject to certain exceptions, in cases where a private party in like circumstances would be subject to tort liability under state law.  *Id.* §§ 1346(b), 2674.  Under the FTCA's

discretionary function exception, the government may not be held liable "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . , whether or not the discretion involved be abused."  *Id.* § 2680(a).

Plaintiffs do not allege that Monteilh was an FBI employee whose actions can be attributed to the United States for purposes of the FTCA; they base their claim on the assertedly tortious conduct of the agents who oversaw the investigations.  Am. Compl. ¶ 255 [ER 247].  Plaintiffs allege that under California law, the agents' conduct violates a common-law right of privacy, and a right of privacy under the California constitution; that the agents' conduct violates California Civil Code § 52.1; and that the agents' conduct constitutes intentional infliction of emotional distress.  Am. Compl. ¶¶ 256-59 [ER 247-48].[1]

## B.  Government's Response

1.  The government moved to dismiss plaintiffs' complaint on various grounds (and, in the alternative, sought summary judgment for plaintiffs' Privacy Act claims).  The government filed a declaration from the Attorney

---

[1] Pertinent portions of the Privacy Act, the FTCA, and FISA are reproduced in the addendum to this brief.

General invoking the state secrets privilege to protect certain evidence whose disclosure could reasonably be expected to cause significant harm to national security. *See generally* Holder Decl. [ER 283-94].[2]

The Attorney General stated that after personal consideration of the matter he had concluded that public disclosure of three categories of information "could reasonably be expected to cause significant harm to the national security." Holder Decl. ¶ 3 [ER 284]. The three categories are (1) "[i]nformation that could tend to confirm or deny whether a particular individual was or was not the subject of an FBI counterterrorism investigation"; (2) "[i]nformation that could tend to reveal the initial reasons . . . for an FBI counterterrorism investigation of a particular person . . . , any information obtained during the course of such an investigation, and the status and results of the investigation"; and (3) "[i]nformation that could tend to reveal whether particular sources and

---

[2] Before the Attorney General asserted the state secrets privilege here, the Department of Justice engaged in the special process established for such privilege claims. *See* Holder Decl. ¶ 12 [ER 288-89]; *id.* Ex. 1 [ER 291-94] (State Secrets Policy); *see also Jeppesen*, 614 F.3d at 1090 (discussing policy).

methods were used in a counterterrorism investigation of a particular subject." *Id.* ¶ 4 [ER 285].

The Attorney General's declaration was accompanied by, and specifically cross-referenced, a more detailed classified declaration from the Assistant Director of the FBI's Counterterrorism Division, Mark Giuliano, which was filed *ex parte* and under seal. Holder Decl. ¶ 3 [ER 284]. One paragraph of that declaration has been declassified since the district court's decision. That paragraph reveals that Monteilh specifically agreed in writing with the FBI *not* to leave the recording device unattended while it was turned on. Classified Giuliano Decl. ¶ 22 [Classified ER 23-24]. On November 17, 2006, Monteilh signed a statement that he "must be a party to any conversation in order to record that conversation." *Id.* ¶ 22 [Classified ER 24]. Other aspects of the classified declaration, which remain classified, are described in the government's classified brief in this Court, which is being separately filed *ex parte* and under seal.

Assistant Director Giuliano also submitted a public, unclassified declaration. The declaration explained that terrorist groups are "putting more emphasis on finding recruits or trainees from the West." Public Giuliano Decl. ¶ 7 [ER 228]. In addition, as evidenced by several incidents

including the FBI's successful disruption of a terrorist plot in West Los Angeles, terrorist attacks may be carried out by "homegrown extremists" with no official connection to foreign terrorist groups. *Id.* ¶ 10 [ER 231].

The public declaration confirmed that Monteilh had been used in FBI counterterrorism investigations known as "Operation Flex." Public Giuliano Decl. ¶ 11 [ER 268]. "Operation Flex focused on fewer than 25 individuals and was directed at detecting and preventing possible terrorist attacks" by "determin[ing] whether particular individuals were involved in the recruitment and training of individuals . . . for possible terrorist activity." *Id.* The declaration explained that, although "Monteilh has provided numerous statements to the media discussing his purported activities on behalf of the FBI," the "FBI has not confirmed or denied any of Monteilh's public allegations," and "his allegations do not constitute a disclosure or confirmation by the FBI of any information concerning his activities as an informant." *Id.* ¶ 14 [ER 269-70].

2. The government's motion explained that litigation of some of plaintiffs' claims would implicate the information described in the state secrets declarations and, therefore, could not proceed. The government stressed, however, that "the Attorney General's privilege assertion [was]

limited in nature, and the Government's request for dismissal [was] narrowly tailored." Mem. in Supp. of Gov't Mot. to Dismiss Am. Compl. (Mem. in Supp.) 3 [SER 13].[3]

The government thus sought to address plaintiffs' claims on grounds other than state secrets where possible. The government urged, in particular, that the sole injunctive remedy sought by plaintiffs "is not authorized or available under the Privacy Act or other law." Mem. in Supp. 4 [SER 14]. The government also argued that Congress had not waived sovereign immunity for claims under FISA, and that FISA claims against the government must be dismissed on that basis. *Id.*

The government urged, in the alternative, that plaintiffs' discrimination claims should be dismissed because they cannot be litigated without compromising state secrets. Rebutting the discrimination claims "would risk or require disclosure of whom and what the FBI was investigating under Operation Flex and why," which is "precisely the kind

---

[3] Because this brief cites portions of the government's motion to dismiss that are not included in plaintiffs' excerpts of record, we have reproduced all relevant portions in our supplemental excerpts of record. Pages 160 to 178 of plaintiffs' excerpts of record refer to the same document referenced herein.

of sensitive investigative information that cannot be disclosed without risking significant harm to national security." Mem. in Supp. 5-6 [SER 15-16].

The government did not, at this stage, seek dismissal on state secrets grounds of plaintiffs' search claims. Mem. in Supp. 4 [SER 14]. The government stated that "sufficient non-privileged evidence may be available to litigate these claims should they otherwise survive motions to dismiss on non-privilege grounds." *Id.* The government cautioned, however, that "it remains possible that the need to protect properly privileged national security information might still foreclose litigation of these claims," depending upon how the litigation proceeded and upon the outcome of an ongoing process of determining whether additional information related to Monteilh could be used in connection with further proceedings. *Id.*; *see also id.* at 6-7 [SER 16-17] (urging court to address nonprivilege defenses and to dismiss discrimination claims "before addressing whether any remaining claims against the Government Defendants should also be dismissed on privilege grounds").

The government also presented threshold legal challenges to plaintiffs' FTCA claims. The government argued that relevant state law

15

authorized the recording of Monteilh's own conversations in which he was directed to engage. *See* Mem. in Supp. 4 [SER 14]. The government also argued that the FTCA claims might be barred by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), but noted that litigation of that exception could require disclosure of state secrets. *See* Mem. in Supp. 4 [SER 14].

The government also stated that litigation of some of the claims against the individual-capacity defendants might threaten disclosure of information protected by the state secrets privilege. It urged that if the plaintiffs' discrimination claims against the individuals were not otherwise barred, the court should dismiss those claims at the outset. Mem. in Supp. 6 [SER 16].

## C.    District Court Rulings

The district court ruled on the motions to dismiss in two orders, issued on the same day. One order addressed only plaintiffs' claims under FISA. The district court dismissed the FISA claims against the FBI because Congress has not waived sovereign immunity for damages actions under that statute. Order Granting in Part Mots. to Dismiss FISA Claim (FISA

Order) 6-7 [ER 23-24] (citing *Al-Haramain Islamic Found. v. Obama*, 705 F.3d 845 (9th Cir. 2012)).  Plaintiffs have not challenged that ruling on appeal.

The district court allowed plaintiffs' FISA claims against the individual-capacity defendants to proceed, rejecting those defendants' argument that they were entitled to qualified immunity.  FISA Order 7-12 [ER 24-29].  That determination is the subject of the individual defendants' appeals in this Court.

In the second order, the court concluded that the remaining claims in the lawsuit, other than the FISA claims, must be dismissed based on the state secrets privilege.  Order Granting Mots. to Dismiss Based on State Secrets Privilege ("State Secrets Order") 36 [ER 66].

The court explained that it had "thoroughly and skeptically examined the Government's public and classified submissions," and was "convinced that the subject matter of this action, Operation Flex, involves intelligence that, if disclosed, would significantly compromise national security."  State Secrets Order 25 [ER 55].  The court emphasized that disclosing which individuals have been subject to investigation, the reasons for those investigations, and the sources and methods used in those

17

investigations would provide valuable intelligence to terrorist groups. *See id.* at 27-28 [ER 57-58].

The court concluded that the privileged evidence required dismissal "because the privileged information gives Defendants a valid defense." State Secrets Order 30 [ER 60]. To defend plaintiffs' claims of "indiscriminate investigation, surveillance, and collection of information" on the basis of religion, defendants would need to "summon privileged evidence related to Operation Flex, including the subjects who may or may not have been under investigation, the reasons and results of those investigations, and their methods and sources." *Id.* at 31-32 [ER 61-62]. Even if plaintiffs could prove that there was a substantial burden on their exercise of religion, the "analysis of whether the Government had a 'compelling state interest' and its actions were 'narrowly tailored' to achieve that interest" would involve "fact-intensive questions that necessitate a detailed inquiry into the nature, scope, and reasons for the investigations under Operation Flex." *Id.* at 32 [ER 62] (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). Similarly, the government's discretionary function defense to the FTCA

18

claims would involve "facts that fall within the three privileged categories of information related to Operation Flex." *Id.*

The district court further concluded that "the privileged and nonprivileged information are inextricably intertwined, such that litigating the instant case to judgment on the merits would present an unacceptable risk of disclosing state secrets." State Secrets Order 33 [ER 63]. Because the relevant counterterrorism investigations "predate and go beyond Monteilh's source work," any "effort to separate privileged from nonprivileged information—even with the protective procedures available to the Court—presents an unjustifiable risk of disclosing state secrets." *Id.* at 34 [ER 64]. The district court concluded on this basis that dismissal was also required for plaintiffs' Fourth Amendment claim "because it is impossible to excise the facts directly related to this claim from the factual context of Operation Flex as a whole, and that context forms an important background for a finder of fact to consider in her analysis." *Id.*

The district court held that plaintiffs' contention that FISA preempts the application of the state secrets privilege was without legal basis. State Secrets Order 17-18 [ER 47-48]. The court also observed that while FISA focuses on electronic surveillance, this case concerns "counterterrorism

19

investigations that extend well beyond the purview of electronic surveillance," and "litigating [plaintiffs'] non-FISA claims will require information, including privileged evidence, beyond that contemplated by FISA." *Id.* at 18 [ER 48].

The court rejected plaintiffs' contention "that the Constitution prohibits dismissal of this case on state secret grounds because they seek injunctive relief from on-going constitutional violations." State Secrets Order 18 [ER 48]. "This argument, likewise, is unsupported by any authority, let alone Ninth Circuit or Supreme Court precedent. The principles of the state secrets doctrine make clear that it is analyzed and applied to cases irrespective of the types of claims or relief sought." *Id.*

The district court noted that in *Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190 (9th Cir. 2007), this Court found the state secrets privilege applicable to claims in which "the plaintiffs sought the same injunctive relief as Plaintiffs here do—disclosure and/or destruction of information and records acquired from allegedly unlawful surveillance—and also similarly alleged violations under the First and Fourth Amendments." State Secrets Order 18-19 [ER 48-49].

20

On plaintiffs' motion, the district court issued a final judgment pursuant to Federal Rule of Civil Procedure 54(b) as to the claims that were dismissed.  *See* Order Granting Mot. for Partial Final J. [ER 13]; Partial Final J. [ER 11].  Plaintiffs appealed, and their appeal is consolidated with the individual-capacity defendants' appeal from the denial of qualified immunity.

## SUMMARY OF ARGUMENT

As we urged in the district court, this case should be resolved to the extent possible on grounds other than the state secrets privilege. Consistent with that principle, plaintiffs' constitutional and Privacy Act claims should be dismissed because the relief they seek—disclosure and expungement of their records—is not recognized by the Privacy Act, which authorizes the FBI to exclude from the statute's amendment and access procedures the type of law enforcement records at issue here.  Although plaintiffs urge that the courts have inherent authority to order such relief, a court will not imply a remedy that Congress does not recognize when Congress provides for specific types of relief in comprehensive legislation.

Plaintiffs' claims under the Federal Tort Claims Act likewise fail. Plaintiffs' claims are premised on the activity of informant Craig Monteilh.

21

They properly do not, however, claim that Monteilh was an "employee" within the meaning of the FTCA. The only acts that the government allegedly instructed Monteilh to undertake—Monteilh's recordings of his own conversations—do not give rise to a cause of action under California law.

In addition, plaintiffs' challenge to the oversight of government counterterrorism investigations is barred by the FTCA's discretionary function exception, which "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). This Court has recognized that investigatory activities involve the type of discretionary decisions for which the government may not be held liable in tort, and decisions regarding the handling of a confidential informant in a counterterrorism investigation plainly fall into that category. Insofar as plaintiffs claim that the government exceeded the bounds of permissible discretion by acting improperly on the basis of religion, the district court correctly held that litigation of plaintiffs' FTCA claim, like the

litigation of their First Amendment claim, would be precluded by the state secrets privilege.

The government properly invoked the state secrets privilege through public and *in camera* declarations explaining that disclosure of three categories of information could reasonably be expected to cause significant harm to national security. The declarations set out the harm that would result from disclosing which individuals were subject to investigation, the reasons particular individuals were investigated, and the sources and methods involved in the investigation. As the district court recognized, litigation of plaintiffs' claims regarding the reasons for and nature of the investigative activities would plainly involve disclosure of such information, which cannot be permitted. Plaintiffs' contention that the state secrets privilege is inapplicable when a litigant alleges an ongoing constitutional violation is, as the district court recognized, without foundation, as is their assertion that FISA procedures have supplanted the privilege and precluded its assertion.

## STANDARD OF REVIEW

This court reviews "de novo the interpretation and application of the state secrets doctrine and review[s] for clear error the district court's underlying factual findings." *Jeppesen*, 614 F.3d at 1077.

## ARGUMENT

Point I of our argument explains why the claims for injunctive relief against the government should be dismissed because the Privacy Act does not recognize the remedy plaintiffs seek. Point II demonstrates that plaintiffs' Federal Tort Claims Act claims fail to state a claim on which relief can be granted and are subject to the FTCA's discretionary function exception. Point III analyzes the application of the state secrets privilege, which is relevant to plaintiffs' efforts to defeat the discretionary function exception and to any other claims that have not been dismissed on other grounds.

## I. No injunctive relief against the government is available in this case.

### A. The Privacy Act does not provide for injunctive relief in these circumstances.

The sole injunctive relief sought by plaintiffs is an order requiring expungement or disclosure of records created in connection with Operation

Flex. *See* Am. Compl., Prayer for Relief ¶ b [ER 248-49]. The Privacy Act provides no such remedy, and plaintiffs cannot evade that legislative determination by relying on the district court's inherent authority.

"The 'Civil remedies' section of the Privacy Act . . . links particular violations of the Act to particular remedies in a specific and detailed manner. It lists four types of agency misconduct that give rise to civil remedies and it then states the civil remedies applicable to each." *Cell Assocs., Inc. v. National Insts. of Health, Dep't of Health, Educ. & Welfare*, 579 F.2d 1155, 1157-58 (9th Cir. 1978). As this Court has noted, "[i]n two instances, [Congress] provided for injunctive types of relief. In the other two instances, it provided for damages, but not for injunctive relief." *Id.* at 1159 (citation omitted).

Injunctive relief is available under the Privacy Act only when an agency improperly denies requests to amend or disclose records. *See* 5 U.S.C. § 552a(g)(2)(A) (remedy for refusal to amend under subsection (g)(1)(A)); *id.* § 552a(g)(3)(A) (remedy for denial of access under subsection (g)(1)(B)). But in the Privacy Act, Congress expressly authorized agencies to exempt those records that are maintained by law enforcement agencies for the purpose of criminal investigations and are associated with

25

identifiable individuals from the provisions authorizing requests for amendment or access. *See* 5 U.S.C. § 552a(j)(2); *see also id.* § 552a(k)(2) (authorizing exemption from access and amendment requirements of "investigatory material compiled for law enforcement purposes" that is not covered by subsection (j)(2)). The FBI has promulgated regulations exercising that authority for materials contained in the two systems where the records at issue here would be found (the Central Records System and the Electronic Surveillance indices). 28 C.F.R. § 16.96(a)(1), (c)(1); *see* Morin Decl. ¶ 9 [SER 22].

"[A] determination that a civil claim for expungement may be foreclosed by an agency's exemption rule is not only consistent with, but necessary to effectuate, Congress' intent that certain records systems may truly be sheltered from the Act's amendment procedures; an agency exemption . . . would serve little purpose, after all, if the agency were still fully answerable in court for not complying with the demands of that subsection." *Doe v. FBI*, 936 F.2d 1346, 1352 (D.C. Cir. 1991); *see also Bassiouni v. FBI*, 436 F.3d 712, 723 (7th Cir. 2006) ("Because the FBI's Central Records System is not subject to the . . . amendment process, the FBI cannot be held liable . . . for failure to comply with that process."). Plaintiffs thus

26

cannot maintain a claim for injunctive relief under subsections (g)(1)(A) or

(g)(1)(B) of the Privacy Act.[4]

## B. No injunctive relief is available under the district court's inherent equitable authority or under the Constitution.

Stymied by the Privacy Act, plaintiffs ask this Court to allow them to

outflank Congress's judgment by asserting "inherent" equitable authority

to order release or expungement of records. They offer no sound basis for

the contention that the Court should disregard Congress's carefully

reticulated remedial scheme governing access to and amendment of federal

records.

Congress has expressly authorized law enforcement agencies to

exempt records of criminal investigations from access or amendment.

Even assuming that the courts would otherwise properly imply an

expungement remedy, such a determination must give way in the face of

---

[4] The FBI's regulations would not bar a claim under subsection (g)(1)(C) or (g)(1)(D) based on the assertion that the government improperly maintained records relating to First Amendment activity, *see* 5 U.S.C. § 552a(e)(7). But the statute makes clear that damages are the sole remedy for such claims. *See id.* § 552a(g)(4); *Cell Assocs.*, 579 F.2d at 1159 (claim under subsection (g)(1)(D) "does not provide for an injunction"). Plaintiffs have not sought damages under the Privacy Act in this litigation. *See* Am. Compl. ¶ 15 [ER 184] ("The FBI is sued for injunctive relief only.").

Congressional action. The Supreme Court has emphasized that "when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 314 (1981); *see also id.* at 316 ("[W]e start with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." (internal quotation marks omitted)); *Bush v. Lucas*, 462 U.S. 367, 387 (1983) (Court would not imply remedy for First Amendment violation in area addressed by Congress even if the statutory scheme did not provide complete relief for the alleged violation).

Applying this principle in the analogous context of the Freedom of Information Act, the D.C. Circuit rejected an attempt to assert a common law right of access to records otherwise exempt from disclosure under that statute. The court explained that "[i]t would make no sense for Congress to have enacted the balanced scheme of disclosure and exemption, and for the court to carefully apply that statutory scheme, and then to turn and determine that the statute had no effect on a preexisting common law right of access." *Center for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918,

28

937 (D.C. Cir. 2003). That reasoning applies with full force to plaintiffs' attempt to circumvent the limits of the Privacy Act's comprehensive regulation of federal records.

Plaintiffs' contention would fail, moreover, even if it did not require the Court to disregard the limitations established by Congress. This Court has rejected the proposition "that federal courts have the inherent power, under equitable principles, to order expungement of criminal records." *United States v. Sumner*, 226 F.3d 1005, 1010 (9th Cir. 2000) (internal quotation marks omitted).

Expungement may nevertheless be available as a remedy under a statute providing such authority or under the Constitution. *Sumner*, 226 F.3d at 1012; *see also Fendler v. U.S. Parole Comm'n*, 774 F.2d 975, 979 (9th Cir. 1985) (stating that "[f]ederal courts have the equitable power to order the expungement of Government records where *necessary* to vindicate rights secured by the Constitution or by statute," and rejecting a claim for expungement where it was "not necessary to vindicate [the plaintiff's] rights" (emphasis in original) (internal quotation marks omitted)). Here, though, the relevant statute makes clear that expungement is unavailable, and, in any event, plaintiffs advance no plausible claim of an ongoing

constitutional violation. Inasmuch as "the government's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution" (even if it may be prohibited in some circumstances under the exclusionary rule), *Pennsylvania Board of Probation & Parole v. Scott*, 524 U.S. 357, 362 (1998), it follows that mere retention of the records does not violate the Constitution.

## II. Plaintiffs' FTCA claims fail to state a claim under California law and are barred by the discretionary function exception.

### A. Plaintiffs' FTCA claims fail on state-law grounds.

The district court dismissed plaintiffs' FTCA claims on the ground that the applicability of the discretionary function exception could not be litigated without evidence protected by the state secrets privilege. We discuss at point B below the application of the discretionary function exception. But the Court need not reach that issue because plaintiffs' claims fail as a matter of state law.

#### 1. Plaintiffs fail to state a claim for invasion of privacy.

Plaintiffs' FTCA claims are premised on their assertion that the United States is liable for "conducting audio and video surveillance of Plaintiffs, through Monteilh and Operation Flex, in situations in which

Plaintiffs[] had a reasonable expectation of privacy." Am. Compl. ¶ 256 [ER 247]. Plaintiffs have not alleged that Monteilh was himself a government employee whose conduct can be attributed to the United States for purposes of the FTCA, presumably in recognition of case law holding that informants do not satisfy the FTCA's definition of "employee." *See id.* ¶ 255 [ER 247] (claiming only that the FBI agent defendants were U.S. employees acting within the scope of their employment); *Slagle v. United States*, 612 F.2d 1157, 1159-61 (9th Cir. 1980) (holding that informant was not employee for FTCA purposes). Therefore, plaintiffs must establish on what basis the United States would be liable for Monteilh's conduct.

Plaintiffs can attribute Monteilh's recording of his own conversations to the government because they allege that the FBI specifically directed Monteilh to record his conversations. Am. Compl. ¶ 124 [ER 216]. Although plaintiffs allege that Monteilh also recorded conversations to which he was not a party, plaintiffs do not allege that the government instructed him to do so. Plaintiffs merely allege that FBI officials "received the notes where Monteilh said he did this but never instructed him to stop." *Id.* ¶ 127 [ER 216]. The precise phrasing of this allegation tellingly

31

contrasts with the other assertions in plaintiffs' complaint alleging that the government specifically instructed Monteilh to take particular actions. *See also id.* ¶¶ 99-112 [ER 210-13] (other specific instructions).

Under both federal and California law, recording for law enforcement purposes is generally permissible as long as one party to the conversation consents. Federal law permits recording of oral communications under color of law by "a party to the communication." 18 U.S.C. § 2511(2)(c). Similarly, California case law has recognized that parties acting at the direction of law enforcement may lawfully record their own conversations. *See People v. Windham*, 51 Cal. Rptr. 3d 884, 889-90 (Cal. Ct. App. 2006). Although California has by statute prohibited recording without the consent of all parties, Cal. Penal Code § 632, it explicitly preserves the right of those "acting pursuant to the direction of [a] law enforcement officer[] acting within the scope of his or her authority" to "record[] any communication that they could lawfully overhear or record prior to" the enactment of the prohibition, *id.* § 633. *See also* Cal. Penal Code § 637.2 (providing right of action for persons injured by unlawful recording).

In district court, plaintiffs noted that the FTCA makes the United States liable to the same extent as a private person in similar circumstances, and argued that private persons, unlike law enforcement officers, may not record conversations without the consent of all parties to the conversation. *See* Pls.' Opp. to Gov't Mot. to Dismiss 13-14 (Dkt. 64).  But the FTCA should not be construed to bring about the "absurd result" that "federal officers acting lawfully may nonetheless be held civilly liable if they do not conform their conduct to what is required of private citizens." *Tekle v. United States*, 511 F.3d 839, 858 (9th Cir. 2007) (Fisher, J., concurring in part and concurring in judgment).

In any event, the California statute, by its terms, extends not only to law enforcement officers themselves but also to "any person acting pursuant to the direction of [a] law enforcement officer[] acting within the scope of his or her authority."  Cal. Penal Code § 633.  Because a private person (such as the informant in this case) is not subject to liability for recording conversations to which he is a party in connection with law

enforcement activity, the United States cannot be held liable for directing that conduct.[5]

### 2. Plaintiffs have not stated a claim under California Civil Code § 52.1.

Plaintiffs' invocation of California Civil Code § 52.1 likewise fails to state a claim under state law. That provision applies when a person "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion," with state or federal rights. Cal. Civ. Code § 52.1(a). A claim may not be premised on "[s]peech alone . . . except upon a showing that the speech itself threatens violence against a specific person or group of persons." *Id.* § 52.1(j).

As the California Supreme Court has explained, "Civil Code section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas v. County of L.A.*, 87 P.3d 1, 14

---

[5] Plaintiffs also argued in district court that their invasion of privacy claim must be allowed to proceed because they alleged that they were improperly selected for surveillance. *See* Pls.' Opp. to Gov't Mot. to Dismiss 13 (Dkt. 64). Even if those arguments would have any bearing on the state-law inquiry, they are precluded by the state secrets privilege. *See infra* point III.

(Cal. 2004). In a case involving allegations of an unlawful search and seizure, the California Supreme Court thus concluded that plaintiffs could state a claim only "so long as those acts were accompanied by the requisite threats, intimidation, or coercion." *Id.*

Plaintiffs do not allege that the United States engaged in "threat, intimidation, or coercion." They alleged, on the contrary, that the government engaged in *covert* surveillance. *See Shoyoye v. County of L.A.*, 137 Cal. Rptr. 3d 839, 850 (Cal. Ct. App. 2012) (rejecting claim under Civil Code § 52.1 because of absence of coercion "carried out in order to effect a knowing interference with [the plaintiff's] constitutional rights").

### 3. Plaintiffs have not stated a cognizable claim for intentional infliction of emotional distress.

Plaintiffs likewise fail to state a cognizable claim for intentional infliction of emotional distress. Their amended complaint alleges that each plaintiff suffered "severe and ongoing anxiety and emotional distress." Am. Compl. ¶ 185 [ER 231] (Fazaga); *id.* ¶ 197 [ER 234] (Malik); *id.* ¶ 216 [ER 239] (AbdelRahim). These are precisely the types of conclusory assertions that have been rejected as insufficient by California courts, which have recognized that "the mere allegation that the plaintiffs suffered

severe emotional distress, without facts indicating the nature or extent of any mental suffering incurred as a result of the defendant's alleged outrageous conduct, failed to state a cause of action for intentional infliction of emotional distress." *Pitman v. City of Oakland*, 243 Cal. Rptr. 306, 311 (Cal. Ct. App. 1988).

California courts have also emphasized the extreme nature of the emotional distress that is required to give rise to a claim. A claim exists "only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Bogard v. Employers Cas. Co.*, 210 Cal. Rptr. 578, 588 (Cal. Ct. App. 1985) (quoting Restatement (Second) of Torts § 46, cmt. j (1965)). The California Supreme Court thus rejected as insufficient assertions that a plaintiff "has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation." *Hughes v. Pair*, 209 P.3d 963, 976-77 (Cal. 2009). Plaintiffs' comparable allegations here are thus insufficient as a matter of law.

## B. The FBI's actions in overseeing a confidential informant are subject to the discretionary function exception.

The FTCA's discretionary function exception provides that the United States may not be liable "based upon the exercise or performance or

the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Plaintiffs correctly note that the "exception will shield liability" when the challenged conduct involves "social, economic, or political policy considerations," and that "the challenged decision 'need not be *actually* grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'" Pls.' Br. 34-35 (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998) (plaintiffs' emphasis)).

Plaintiffs' claims concern the FBI's use and management of confidential informants in connection with counterterrorism investigations, and implicate policy determinations at every level. Deciding whether and how to investigate suspected terrorists involves consideration of numerous factors including the magnitude and nature of the threat, whether and how to obtain cooperation of informants, operational security, safety concerns, the privacy rights of individuals, and constraints on government resources. *See Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002) ("[T]he discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the

37

agency does not violate a mandatory directive.") (emphasis and internal quotation marks omitted). Because the discretionary function applies "whether or not the discretion involved be abused," 28 U.S.C. § 2680(a), it bars suit even when a plaintiff can plausibly allege "alarming instances of poor judgment and a general disregard for sound investigative procedure," *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996).

The discretionary function exception thus applies to the government's management of an investigation unless the government's actions were prohibited by a mandatory directive that "specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Plaintiffs' contention in this regard appears to be that the FBI's conduct violated a constitutional directive. *See* Pls.' Br. 34.

Litigation of plaintiffs' FTCA claims is thus intertwined with the litigation of their constitutional claims. As discussed below at Point III, litigation of the constitutional claims that are premised on the assertion that the government selected subjects for investigation based on their religion cannot be litigated without jeopardizing state secrets. The state secrets

privilege precludes litigation of whether these assertions overcome the discretionary function exception.

Apart from any state secrets concerns that might arise from the litigation of plaintiffs' search claims, it is evident that plaintiffs have identified no specific, mandatory directive violated by FBI agents in directing the confidential informant to record consensual communications. As the Supreme Court and this Court have recognized, conducting and recording such conversations does *not* violate the Fourth Amendment.  *See Hoffa v. United States*, 385 U.S. 293 (1966); *United States v. Aguilar*, 883 F.2d 662, 697-98 (9th Cir. 1989); *see also United States v. Nerber*, 222 F.3d 597, 603-04 (9th Cir. 2000) (warrantless video surveillance of hotel room does not violate the Fourth Amendment as to actions taken in the consensual presence of a confidential informant).

Plaintiffs suggest that there is an exception to the "invited informer" doctrine because the government's investigation impermissibly targeted Muslims and was not conducted in "good faith."  *But see United States v. Mayer*, 503 F.3d 740, 750 (9th Cir. 2007) ("The speculative threat to First Amendment rights, absent some showing of an actual First Amendment violation, did not create a carve-out to the invited informer doctrine in

39

*Aguilar*.").  Plaintiffs would thus collapse their discrimination and search claims.  *See* Pls.' Br. 63 (arguing that their argument for an exception to the invited informer doctrine will require the district court to resolve "the same exact question at issue in the discrimination claims").  But that theory cuts *against* review of plaintiffs' claims.  To the extent that plaintiffs conflate the questions at issue in their search and discrimination claims, litigation of the search claims, like litigation of the discrimination claims, is precluded by the valid assertion of the state secrets privilege.

### C.   The FTCA judgment bar precludes plaintiffs' claims against the individual-capacity defendants.

The entry of judgment under the FTCA has ramifications for the claims against the individual defendants (who are represented by private counsel).  Under the FTCA, "[t]he judgment in an [FTCA action] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."  28 U.S.C. § 2676.  This bar applies even when the FTCA claims and claims against individual defendants are pursued in the same action, *see Arevalo v. Woods*, 811 F.2d 487, 490 (9th Cir. 1987), and applies regardless of whether the claim is dismissed based on an

exception to the FTCA or on the merits, *see Gasho v. United States*, 39 F.3d 1420, 1437-38 & n.17 (9th Cir. 1994).

This Court has held that the judgment bar did not preclude a judgment against individual defendants that was obtained before an FTCA judgment in favor of the United States. *Kreines v. United States*, 959 F.2d 834, 836, 838 (9th Cir. 1992). But this Court subsequently characterized that decision as "limited by its facts," and in particular as limited to cases "when the judgments are 'contemporaneous' and part of the same action." *Gasho*, 39 F.3d at 1437 (quoting *Kreines*, 959 F.2d at 838). That narrow exception has no application here, as plaintiffs have not obtained a favorable judgment against individual defendants before or together with the FTCA judgment, but instead seek a judgment in the future on remand.

The judgment bar was not applicable before the district court's entry of judgment on the FTCA claims under Federal Rule of Civil Procedure 54(b). *See* Partial Final J. [ER 11]. But that judgment now precludes all claims against the individual defendants because the FTCA claims here—based on oversight of Monteilh's investigative activities—arise out of the same subject matter as the claims against the individuals. The judgment bar thus provides an alternate ground for affirmance of the judgment in

41

favor of the individual defendants on the claims on which they prevailed in

district court, and a basis for entering judgment for the individual

defendants on the FISA claim as well.[6]

## III.  The state secrets privilege precludes litigation of plaintiffs' allegations of indiscriminate surveillance.

### A.  Litigation of plaintiffs' discrimination claims would require the use of privileged evidence or present an unacceptable risk of disclosing state secrets.

The state secrets privilege prevents parties to civil litigation from

obtaining evidence when "there is a reasonable danger that compulsion of

the evidence will expose . . . matters which, in the interest of national

security, should not be divulged."  *United States v. Reynolds*, 345 U.S. 1, 10

(1953).  "If this standard is met, the evidence is absolutely privileged,

irrespective of the plaintiffs' countervailing need for it."  *Mohamed v.*

*Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1081 (9th Cir. 2010) (en banc).   As this

Court has explained, "a valid claim of privilege . . . does not automatically

require dismissal of the case," but "[i]n some circumstances . . . the

---

[6] Even if plaintiffs were to obtain reversal of a portion of the FTCA judgment, they could proceed against the individual defendants only with regard to claims that have been allowed to go forward under the FTCA. *See Gasho*, 39 F.3d at 1438 (judgment bar applies to portion of FTCA judgment that was affirmed).

assertion of privilege will require dismissal because it will become apparent . . . that the case cannot proceed without privileged evidence, or that litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Id.* at 1079.

Here, the state secrets privilege precludes litigation of plaintiffs' contention that they were targeted based on their religion. The district court thus properly dismissed plaintiffs' First Amendment and related claims. The privilege also precludes plaintiffs' effort to rely on their religious discrimination argument to overcome the discretionary function exception to the FTCA, or to buttress their search claims.

### 1. The government properly invoked the state secrets privilege to protect national security information.

The state secrets privilege must be invoked by the head of the relevant agency "after actual personal consideration by that officer." *Jeppesen*, 614 F.3d at 1080. In this case, pursuant to the Justice Department's special procedure governing invocation of the privilege, the Attorney General personally asserted the state secrets privilege in a public declaration "[a]fter careful and actual personal consideration of the matter." Holder Decl. ¶ 3 [ER 284]. The government also supported the

claim of privilege with public and classified declarations from the Assistant Director for the Counterterrorism Division of the FBI. *See* Public Giuliano Decl. ¶¶ 1-2 & n.1 [ER 260-61 & n.1]; *see also* Classified Brief for the Federal Appellees (discussing classified declaration).[7]

The district court "thoroughly and skeptically examined the Government's public and classified submissions," State Secrets Order 25 [ER 55], and we invite the judges of this Court to do the same. Those declarations supported the government's claim of privilege over three categories of information: (1) information that might confirm or deny which individuals were the subject of an FBI counterterrorism investigation; (2) information that might reveal the reasons a particular

---

[7] Plaintiffs suggest, in a footnote, that the government's invocation of the privilege "may . . . suffer from a procedural defect" because the Attorney General may have reviewed only the declarations and not "the evidence that the Government alleges to be secret." Pls.' Br. 29 n.7. This footnote does not properly preserve any argument. *See City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010). In any event, the Attorney General made clear that he personally considered the relevant information. *See also Kasza v. Browner*, 133 F.3d 1159, 1168-69 (9th Cir. 1998) (upholding invocation of state secrets privilege despite argument that classified declaration "cover[ed] information the Secretary had never personally reviewed"); *Morgan v. United States*, 304 U.S. 1, 18 (1938) ("[T]here is no occasion to discuss the extent to which the Secretary examined the evidence, and . . . it was not the function of the court to probe the mental processes of the Secretary in reaching his conclusions.").

individual was the subject of an investigation; and (3) information regulating the sources and methods used in the counterterrorism investigation of a particular person. State Secrets Order 23 [ER 53]; Holder Decl. ¶ 4 [ER 285]; Public Giuliano Decl. ¶ 15 [ER 270-71].

"Disclosure of subjects under investigation would undoubtedly jeopardize national security" because those subjects could "flee, destroy evidence, or alter their conduct so as to avoid detection." State Secrets Order 27 [ER 57]; *see also* Public Giuliano Decl. ¶ 23 [ER 275]. "Disclosure of those *not* under investigation by the FBI is, likewise, dangerous because individuals who desire to commit terrorist acts may then be motivated to do so upon discovering that they are not being monitored." State Secrets Order 27-28 [ER 57-58]; *see also* Public Giuliano Decl. ¶ 24 [ER 276]. "Information about who is being investigated while the status of others are unconfirmed may be manipulated by individuals and terrorist groups to discover whether they or any of their members are being investigated." State Secrets Order 28 [ER 58]; *see also* Public Giuliano Decl. ¶ 24 [ER 276].

The passage of time does not erode the need to protect this information. Even after investigations have been closed, "[d]isclosure that an individual had been, but is no longer, under investigation might induce

45

that subject to evaluate previous conduct and interactions to determine what information the Government may have obtained about them." Public Giuliano Decl. ¶ 25 [ER 276]. To the extent that cases are closed because "terrorism-related intentions were not previously detected," information about closed cases could give rise to the same concerns as information about individuals who are not under investigation at all. *Id.* ¶ 25 [ER 276-77]. And "even if the FBI has closed an investigation on one subject, it may have open investigations on the associates of that subject who are engaged in or still suspected of ties to terrorist activity." *Id.* ¶ 26 [ER 277].

Revelation of the second category of information, the reasons that particular individuals were targeted for investigation, could reveal "the identities of human sources, such as confidential informants or undercover agents and officers (other than Monteilh)" as well as other information about the FBI's knowledge of terrorist organizations. State Secrets Order 28 [ER 58]; *see also* Public Giuliano Decl. ¶ 30 [ER 280]. "Even if a person is not intent on committing terrorist acts, the reasons they came under suspicion may involve sensitive intelligence information about them, their associates, or a particular threat, the disclosure of which could harm other pending or future investigations." Public Giuliano Decl. ¶ 29 [ER 278-79].

46

Disclosure of the third category of information, sources and methods, "could reveal the identities of particular subjects and the steps taken by the FBI in counterterrorism matters, thereby effectively disclosing a road map to adversaries on how the FBI detects and prevents terrorist activities." State Secrets Order 28 [ER 58].

Even though Monteilh has made numerous public statements and has filed a declaration, his "allegations do not constitute a disclosure or confirmation by the FBI of any information concerning his activities as an informant." Public Giuliano Decl. ¶ 14 [ER 270]. And although the FBI has publicly confirmed that Monteilh acted as an informant and has disclosed some materials related to his time as an informant, certain specific national security information related to the counterterrorism investigations put at issue by the allegations of this case remains properly privileged. *See* Public Giuliano Decl. ¶¶ 12-13 [ER 268-69]; *see also* Classified Brief for the Federal Appellees (discussing classified materials).

Moreover, the evidence relevant to plaintiffs' discrimination claims extends well beyond Monteilh's own actions to the underlying justifications for the overall investigation, and thus for the instructions that Monteilh was given. The specific subjects of counterterrorism

47

investigations remain confidential, as do the reasons that particular individuals were selected for investigation. *See* Public Giuliano Decl. ¶ 13 [ER 269].

### 2. The state secrets privilege forecloses plaintiffs' discrimination arguments.

The central theme of plaintiffs' discrimination claims is that the government "target[ed] them for surveillance because of their religion." Pls.' Br. 38. Litigation of those claims would require exploration of the reasons that the government directed Monteilh to engage in investigative activities and of the precise nature of the government's investigations. As this Court explained in *Jeppesen*, "'[i]f the district court determines that the subject matter of a case is so sensitive that there is no way it can be litigated without risking national secrets, then the case must be dismissed.'" 614 F.3d at 1083 (quoting *In re Sealed Case*, 494 F.3d 139, 153 (D.C. Cir. 2007)); *see also Kasza v. Browner*, 133 F.3d 1159, 1170 (9th Cir. 1998) (state secrets privilege requires dismissal where "the disclosure of any further information or a trial . . . risks significant harm to the national security").

Plaintiffs nevertheless urge that their discrimination claims could be litigated on the theory that there would be no reason for plaintiffs "to learn

what reasons *other than religion* were employed by Defendants in their decision to target Plaintiffs." Pls.' Br. 44 (plaintiffs' emphasis). The precise meaning of this assertion is unclear. If this case proceeded to discovery and trial, the government would need to present evidence to demonstrate that its counterterrorism activities were premised on legitimate considerations. Those legitimate considerations could not be explained without disclosing which individuals were under investigation, why they were targeted for investigation, and how the government structures its investigations—the very matters that the state secrets privilege protects.

Even assuming for purposes of argument that plaintiffs could present a prima facie case of impermissible religious discrimination, it would then be necessary to evaluate the actual reasons for the governmental action. *See Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 196-97 (9th Cir. 1995). "Even when the court faces independent evidence of a discriminatory motive, it is still necessary to weigh the validity of the defendant's proffered reasons when deciding if they are pretextual." *Id.* at 197. If a court cannot weigh the validity of those reasons, it cannot adjudicate the case. *See id.* (similar determination in context of security-clearance determination). Plaintiffs are thus mistaken to assert that "none of the evidence about whether and

how Defendants used religion in their investigation would necessarily touch on any *other* reasons for Defendants' investigation—reasons over which the Government could potentially assert the *Reynolds* privilege." Pls.' Br. 41 (plaintiffs' emphasis).

It should be beyond question that the government's conduct would not trigger strict scrutiny if it were based upon information that a group or institution may be involved in terrorist activity even if the group or institution consisted of persons of the same religion or race. Thus, even if plaintiffs are correct that certain investigations focused upon the Muslim community (an issue whose resolution itself would require resort to privileged evidence), it would be necessary to determine whether the government's investigation was based on "reasons *other than religion*." Pls.' Br. 44.[8]

Plaintiffs' opposition in the district court to the individual defendants' motion to dismiss illustrates the inevitability of a dispute over

_____

[8] Even if strict scrutiny were thought to apply, moreover, the government would have an opportunity to demonstrate that its reliance on religion was narrowly tailored to serve a compelling interest. That inquiry, too, would obviously turn on the reasons the government used religious criteria. *See* State Secrets Op. 33 n.11 [ER 63 n.11].

matters protected by the state secrets privilege. Plaintiffs argued that "the dragnet surveillance of all Muslims—without other basis to believe them involved in criminal or terrorist activity—cannot be said to be closely fitted to further the government's interest in preventing terrorism." Pls.' Opp. to Individual Capacity Defs.' Mot. to Dismiss 47 [SER 9] (internal quotation marks omitted). If this case were to proceed to summary judgment or to trial, the district court or trier of fact would have to determine whether Muslims were targeted in this investigation "without other basis to believe them involved in criminal or terrorist activity"—an inquiry that would necessarily require disclosure of the subjects of investigation, the reasons for the investigations, and the way those investigations were carried out.

Plaintiffs underscore the error of their own analysis by suggesting that the government's defense would need to "[t]ak[e] as true the complaint's allegations of pervasive and explicit targeting of Muslims for surveillance." Pls.' Br. 43. In defending against plaintiffs' claims, the government would not need to take the complaint's allegations as true, but could contest them with admissible evidence. The problem here is that the evidence that would be used to contest the complaint's allegations, or to

put them in appropriate context, cannot be disclosed without creating an

unacceptable risk of significant harm to national security.

Taking a different tack, amicus, the Electronic Frontier Foundation

(EFF), mistakenly contends that the district court erroneously presumed

that the government would have a valid defense without requiring the

government to proffer evidence in support of that defense. EFF Br. 23. But

the relevant point here is that the government provided ample evidence to

demonstrate that the privilege was properly invoked and that further

litigation "would present an unacceptable risk of disclosing state secrets."

*Jeppesen*, 614 F.3d at 1079; *see also Kasza*, 133 F.3d at 1170; *Tenenbaum v.*

*Simonini*, 372 F.3d 776, 777 (6th Cir. 2004) (dismissal warranted where

"Defendants cannot defend their conduct . . . without revealing the

privileged information"). A district court is not required to "jeopardize the

security which the privilege is meant to protect by insisting upon an

examination of the evidence, even by the judge alone, in chambers,"

*Reynolds*, 345 U.S. at 10, in order to ascertain whether the government

would prevail on the merits.

As the Supreme Court explained in *General Dynamics Corp. v. United*

*States*, 131 S. Ct. 1900, 1907 (2011), on which EFF heavily relies, "[w]here

52

liability depends upon the validity of a plausible superior-knowledge defense, and when full litigation of that defense 'would inevitably lead to the disclosure of' state secrets, [*Totten v. United States*, 92 U.S. 105, 107 (1876)], neither party can obtain judicial relief."  Similarly, this Court held in *Jeppesen* that dismissal is warranted where "the case cannot proceed without privileged evidence, or . . . litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Jeppesen*, 614 F.3d at 1079.  Even the D.C. Circuit's *In re Sealed Case* decision, on which EFF also relies, acknowledged that if "the subject matter of the case is so sensitive that there is no way it can be litigated without risking national secrets, then the case must be dismissed."  494 F.3d at 614.

The determination whether the risk to national security requires dismissal (as in *General Dynamics*, *Jeppesen*, *Kasza* and this case) or the case can proceed without privileged evidence (as in *Reynolds*) depends on whether the case can be litigated without jeopardizing national security. *Reynolds* involved an accident involving an airplane "testing secret electronic equipment."  *Reynolds*, 345 U.S. at 3.  Because there was "nothing to suggest that the electronic equipment . . . had any causal connection with the accident," the case could be tried "without resort to material touching

53

upon military secrets." *Id.* at 11. Where, as here, the privileged evidence goes to the heart of a claim, that claim cannot be litigated, and dismissal is compelled. *See Weinberger v. Catholic Action of Haw./Peace Educ. Project*, 454 U.S. 139, 146-47 (1981) ( "[W]e have held that 'public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential . . . .'" (quoting *Totten*, 92 U.S. at 107, and citing *Reynolds*).

The district court thus properly dismissed plaintiffs' discrimination claims. While the government did not seek to dismiss the search claims on state secrets grounds at the pleading stage, the government did recognize that, depending on how those claims were litigated, they too might be precluded by the privilege. *See* Mem. in Supp. 4 [SER 14]. Plaintiffs themselves have heightened this concern as they continue to assert that in connection with the search claims they intend to raise "the same exact question at issue in the discrimination claims." Pls.' Br. 63. That question can no more be resolved in connection with plaintiffs' search claims than it could in connection with their other claims.

### B.     FISA does not supersede the state secrets privilege.

Plaintiffs incorrectly suggest that a provision of the Foreign Intelligence Surveillance Act supersedes the state secrets privilege. Because "[t]he state secrets privilege has long been 'well established in the law of evidence,'" Congress would need to speak clearly in a statutory provision in order to supersede it. *Kasza*, 133 F.3d at 1168 (quoting *Reynolds*, 345 U.S. at 6-7). Moreover, unless Congress clearly acted to override the state secrets privilege, principles of constitutional avoidance would require rejection of an interpretation of FISA that would infringe on the Executive Branch's constitutional authority to exercise control over information whose disclosure would jeopardize national security. *See El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007) ("Although the state secrets privilege was developed at common law, it performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affairs responsibilities."); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) (applying "'clear statement' rule . . . to statutes that significantly alter the balance between Congress and the President").

FISA contains no abrogation of the state secrets privilege, much less a clear one. To the contrary, the FISA provisions on which plaintiffs rely concern circumstances in which the government seeks to use information obtained or derived from electronic surveillance, while the state secrets privilege concerns circumstances in which the government seeks to prevent evidence from being used in litigation. The FISA provisions also operate to protect national security information from disclosure, a purpose that is at odds with plaintiffs' attempt to vitiate the state secrets privilege.

Plaintiffs rely on 50 U.S.C. § 1806, which is entitled "Use of information," and describes procedures that govern the government's use or disclosure at a trial or other proceeding of "[i]nformation acquired from an electronic surveillance conducted pursuant to [FISA]." 50 U.S.C. § 1806(a). If the federal government or a State intends to use information obtained or derived from FISA-authorized electronic surveillance against an aggrieved person (*i.e.*, the target of the electronic surveillance or another person whose communications or activities were subject to the electronic surveillance, *see id.* § 1801(k)), the government must notify the aggrieved person and the court prior to using the evidence. *Id.* § 1806(c)-(d). The purpose of this notice is to allow the aggrieved person to move to suppress

evidence obtained or derived from electronic surveillance "on the grounds that . . . (1) the information was unlawfully acquired; or (2) the surveillance was not made in conformity with an order of authorization or approval." *Id.* § 1806(e).

When a district court receives notice of the intended use of information obtained or derived from electronic surveillance, or is considering a motion to suppress evidence obtained or derived from electronic surveillance or any motion seeking to obtain information relating to electronic surveillance, the court must, "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte" the materials "necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f). If the court concludes, after such review, "that the surveillance was not lawfully authorized or conducted, it shall . . . suppress the evidence which was unlawfully obtained or derived from electronic surveillance . . . or otherwise grant the motion of the aggrieved person." *Id.* § 1806(g).

57

The district court correctly determined that these provisions of FISA do not govern this case. State Secrets Order 17-18. The government is not here seeking to use evidence obtained or derived from FISA-authorized electronic surveillance to support a judgment in its favor on the merits, and plaintiffs are not seeking to suppress any such evidence.

In addition, as the district court explained, here "the central subject matter is Operation Flex, a group of counterterrorism investigations that extend well beyond the purview of electronic surveillance." State Secrets Order 18 [ER 48]. The government seeks through the state secrets privilege to remove from this litigation national security information relating to the FBI's counterterrorism operations and its selection of subjects for investigation. *See, e.g.*, Public Giuliano Decl. ¶ 30 [ER 280] ("court-ordered searches" and "confidential human sources"). Moreover, FISA defines "electronic surveillance," as relevant here, to include the acquisition of conversations in circumstances in which "a warrant would be required for law enforcement purposes," a definition that does not extend to recordings of conversations by a participant. 50 U.S.C. § 1801(f).

As discussed above, the FISA provision on which plaintiffs rely sets out procedures for the use in judicial proceedings of information obtained

or derived from electronic surveillance. On its face, such a provision does not impede the government's ability to assert the state secrets privilege in this case. FISA's legislative history confirms that 50 U.S.C. § 1806 was intended, as its text and title suggests, to "set forth the procedures under which information acquired by means of electronic surveillance may be received in evidence or otherwise used or disclosed in any trial, hearing or other Federal or State proceeding." H.R. Rep. No. 95-1283, at 89 (1978). Far from contemplating that the government would lose its ability to prevent privileged evidence from being used in judicial proceedings, Congress recognized that the government would retain the option to "forgo the use of the surveillance-based evidence" if the statutory procedures "would damage the national security." S. Rep. No. 95-701, at 65 (1978).

Plaintiffs misunderstand the portion of 50 U.S.C. § 1806(f) that clarifies that FISA procedures apply "notwithstanding any other law" when an aggrieved person files a motion "pursuant to any other statute or rule." This language ensures that parties cannot, by challenging the legality of FISA-authorized electronic surveillance by means other than through a suppression motion under FISA, circumvent the requirement that suppression matters be adjudicated *ex parte* and *in camera*. *See* H.R.

59

Rep. No. 95-1283, at 91 (stressing intention to "make very clear that procedures [set out in section 1806(f)] apply whatever the underlying rule or statute referred to in the motion," in order "to prevent these carefully drawn procedures from being bypassed by the inventive litigant using a new statute, rule, or judicial construction"); S. Rep. No. 95-701, at 63 (1978) (same).  It also recognizes that the legality of FISA-authorized surveillance may arise in contexts other than suppression motions, such as when defendants seek discovery to prevent the government from using the fruits of unlawful surveillance against them.  *See* S. Rep. No. 95-701, at 65 (once unlawful surveillance is established, defendant may have right to discovery on question of "taint"); *United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982) ("victim of an illegal surveillance" may "seek discovery of the logs of the overhears to ensure that no fruits thereof are being used against him").  It has no application in this case, which does not involve a challenge to the government's ability to use information obtained or derived from FISA-authorized electronic surveillance.

Plaintiffs' reliance on *In re National Security Agency Telecommunications Records Litigation*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008), and *Jewel v. NSA*, 965 F. Supp. 2d 1090 (N.D. Cal. 2013), is misplaced.  The

district courts in those cases misconstrued 50 U.S.C. § 1806(f) for the

reasons discussed above.  And in any event, those courts held only that the

state secrets privilege is preempted for claims based on FISA.  As the

district court in this case observed, "Plaintiffs cite no authority for the

proposition that FISA also preempts non-FISA claims."  State Secrets Order

17 [ER 47].

> **C.    The district court properly held that it was necessary to dismiss claims that could not be tried without jeopardizing evidence protected by the state secrets privilege.**

1.  Plaintiffs argue that "the continued maintenance of files of

information obtained in violation of the Constitution" constitutes "an

ongoing violation of their constitutional rights," Pl. Br. 70, and that

dismissal of their claims on state secrets grounds is improper for that

reason.

Plaintiffs provide no support for this contention.  Even if the

government's past conduct violated the Constitution, the continued

maintenance of records neither constitutes an unlawful search or seizure

nor an interference with plaintiffs' free exercise of religion.  *See United

States v. Leon*, 468 U.S. 897, 906 (1984) ("use of fruits of a past unlawful

search or seizure works no new Fourth Amendment wrong" (internal

quotation marks and brackets omitted)).

Plaintiffs are in any event incorrect insofar as they suggest that the

state secrets privilege may be overcome by an allegation of an ongoing

constitutional violation. They cite no authority for this contention, which

cannot be squared with courts' repeated recognition that, when the

privilege applies, "the evidence is absolutely privileged, irrespective of the

plaintiffs' countervailing need for it." *Jeppesen*, 614 F.3d at 1080. Indeed,

they acknowledge that in *Tenet v. Doe*, 544 U.S. 1 (2005), the Supreme Court

dismissed a claim for injunctive relief against a claimed ongoing

constitutional violation because litigation would compromise national

security. Pls.' Br. 82-83. Although plaintiffs assert that the precise reasons

that litigation could not proceed in *Tenet* are different from the reasons

litigation cannot proceed here, they provide no authority or explanation for

why those distinctions should be given controlling significance.

Plaintiffs' argument is also at odds with *Al-Haramain Islamic*

*Foundation v. Bush*, 507 F.3d 1190 (9th Cir. 2007), in which this Court's state

secrets analysis made no reference to the plaintiffs' claim that relief was

62

needed to remedy an ongoing constitutional violation.[9] Plaintiffs mistakenly state that the plaintiffs in *Al-Haramain* sought only declaratory relief rather than injunctive relief. *See Al-Haramain Islamic Found., Inc. v. Bush*, 451 F. Supp. 2d 1215, 1218 (D. Or. 2006) ("Plaintiffs . . . seek to enjoin warrantless surveillance of plaintiffs . . . ."), *rev'd*, 507 F.3d 1190. In any event, declaratory relief would be available only if it would redress plaintiffs' claimed injury of an ongoing constitutional violation, and plaintiffs offer no basis for a distinction of constitutional significance between a claim for declaratory relief and an effort to remedy the same injury through an injunction.

2. Citing statutory procedures governing the use of classified information in criminal proceedings, plaintiffs mistakenly suggest that the district court should devise procedures to address the privileged evidence in this civil case. *See* Pls.' Br. 66-69. "Such procedures, whatever they might be, still entail considerable risk. Inadvertent disclosure during the

---

[9] This Court concluded that Al-Haramain's "claims must be dismissed" under the state secrets privilege "unless FISA preempts the state secrets privilege," and remanded for consideration of that question. *Al-Haramain*, 507 F.3d at 1205. In a subsequent appeal, this Court disposed of the case without resolving the issue. *See* 705 F.3d 845.

course of a trial—or even in camera—is precisely the sort of risk that *Reynolds* attempts to avoid." *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005).

As the Supreme Court explained in *Reynolds*, the "rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *United States v. Reynolds*, 345 U.S. 1, 12 (1953); *see also Jeppesen*, 614 F.3d at 1077 (stating that "[w]ere this a *criminal* case, the state secrets privilege would apply more narrowly" and noting that the "Executive's authority to protect [state secrets] is much broader in civil matters than in criminal prosecutions'" (quoting *El-Masri*, 479 F.3d at 313 n.7)).

3. Plaintiffs do not advance their argument by relying on *Jabara v. Webster*, 691 F.2d 272 (6th Cir. 1982), in which the government asserted the state secrets privilege to protect "the facts surrounding the acquisition by [the National Security Agency] of overseas telegraphic communications," which would have been relevant to a claim that the NSA's activities violated the Fourth Amendment. *Id.* at 275. The plaintiff "d[id] not even

contend on . . . appeal that the interception by the NSA violated his fourth amendment rights," *id.*, and the court therefore had no need to address whether litigation of that issue would have been barred by the state secrets privilege.

In *Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958), on which plaintiffs also rely, the Second Circuit concluded that an *in camera* trial was contemplated by a statute that authorized inventors to obtain compensation when national security required inventions with military applications to be kept secret and thus precluded the issuance of patents. The court distinguished *Reynolds* and *Totten* because "[n]either of these cases involved a specific enabling statute contemplating the trial of actions that by their very nature concern security information," and because the plaintiff in *Halpern* (the inventor of the secret invention) was "not seeking to obtain secret information which he does not possess." *Id.* at 44. Unlike *Halpern,* this case does not involve an enabling statute permitting an *in camera* trial involving classified information, and plaintiffs' claims here require the consideration of secret information that plaintiffs do not possess.

65

## CONCLUSION

For the foregoing reasons, the district court's judgment issued under

Rule 54(b) should be affirmed.

Respectfully submitted,

BENJAMIN C. MIZER
   *Principal Deputy Assistant*
    *Attorney General*

STEPHANIE YONEKURA
   *Acting United States Attorney*


 s/ Daniel Tenny
DOUGLAS N. LETTER
MARK B. STERN
DANIEL TENNY
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7215*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., N.W.*
   *Washington, D.C.  20530*
   *(202) 514-1838*

JUNE 2015

**CERTIFICATE OF COMPLIANCE WITH**
**FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)**

I certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B). This brief contains 12,847 words. The

government's superseding classified brief, to be filed *ex parte* and under

seal, contains 1,106 words.

 s/ Daniel Tenny
Daniel Tenny

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2015, I electronically filed the foregoing brief with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

 s/ Daniel Tenny
Daniel Tenny

## STATEMENT OF RELATED CASES

Counsel for the United States is not aware of any related cases, as defined in Ninth Circuit Rule 28-2.6.

s/ Daniel Tenny
Daniel Tenny

**ADDENDUM**

# TABLE OF CONTENTS

**Page**

Privacy Act

   5 U.S.C. § 552a (excerpts) ..............................................................A1

Federal Tort Claims Act

   28 U.S.C. § 1346(b)(1) .......................................................A5

   28 U.S.C. § 2674 .................................................................A5

   28 U.S.C. § 2680(a) ............................................................A6

Foreign Intelligence Surveillance Act

   50 U.S.C. § 1806 ................................................................A7

**Privacy Act**

5 U.S.C. § 552a provides, in pertinent part:

(g) (1) Civil remedies.--Whenever any agency

    (A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

    (B) refuses to comply with an individual request under subsection (d)(1) of this section;

    (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

    (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

(2) (A) In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct.  In such a case the court shall determine the matter de novo.

    (B) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.

A1

(3) (A) In any suit brought under the provisions of subsection (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him.  In such a case the court shall determine the matter de novo, and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action.

(B) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.

(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--

(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

(B) the costs of the action together with reasonable attorney fees as determined by the court.

*   *   *

(j) General exemptions.--The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is—

*   *   *

A2

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

(k) Specific exemptions.--The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (f) of this section if the system of records is—

\*   \*   \*

(2) investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: *Provided, however*, That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or,

prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

*   *   *

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

**Federal Tort Claims Act**

28 U.S.C. § 1346(b)(1) provides:

(b)(1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 2674 provides:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

With respect to any claim to which this section applies, the Tennessee Valley Authority shall be entitled to assert any defense which otherwise

would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter.

28 U.S.C. § 2680 provides, in pertinent part:

The provisions of this chapter and section 1346(b) of this title shall not apply to--

   (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

**Foreign Intelligence Surveillance Act**

50 U.S.C. § 1806 provides:

§ 1806.  Use of information

(a) Compliance with minimization procedures; privileged communications; lawful purposes

Information acquired from an electronic surveillance conducted pursuant to this subchapter concerning any United States person may be used and disclosed by Federal officers and employees without the consent of the United States person only in accordance with the minimization procedures required by this subchapter.  No otherwise privileged communication obtained in accordance with, or in violation of, the provisions of this subchapter shall lose its privileged character.  No information acquired from an electronic surveillance pursuant to this subchapter may be used or disclosed by Federal officers or employees except for lawful purposes.

(b) Statement for disclosure

No information acquired pursuant to this subchapter shall be disclosed for law enforcement purposes unless such disclosure is accompanied by a statement that such information, or any information derived therefrom, may only be used in a criminal proceeding with the advance authorization of the Attorney General.

(c) Notification by United States

Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information

A7

is to be disclosed or used that the Government intends to so disclose or so use such information.

(d) Notification by States or political subdivisions

Whenever any State or political subdivision thereof intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of a State or a political subdivision thereof, against an aggrieved person any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the State or political subdivision thereof shall notify the aggrieved person, the court or other authority in which the information is to be disclosed or used, and the Attorney General that the State or political subdivision thereof intends to so disclose or so use such information.

(e) Motion to suppress

Any person against whom evidence obtained or derived from an electronic surveillance to which he is an aggrieved person is to be, or has been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the evidence obtained or derived from such electronic surveillance on the grounds that--

    (1) the information was unlawfully acquired; or

    (2) the surveillance was not made in conformity with an order of authorization or approval.

Such a motion shall be made before the trial, hearing, or other proceeding unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion.

(f) In camera and ex parte review by district court

Whenever a court or other authority is notified pursuant to subsection (c) or (d) of this section, or whenever a motion is made pursuant to subsection (e) of this section, or whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States or any State before any court or other authority of the United States or any State to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this chapter, the United States district court or, where the motion is made before another authority, the United States district court in the same district as the authority, shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted. In making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

(g) Suppression of evidence; denial of motion

If the United States district court pursuant to subsection (f) of this section determines that the surveillance was not lawfully authorized or conducted, it shall, in accordance with the requirements of law, suppress the evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion of the aggrieved person. If the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.

A9

(h) Finality of orders

Orders granting motions or requests under subsection (g) of this section, decisions under this section that electronic surveillance was not lawfully authorized or conducted, and orders of the United States district court requiring review or granting disclosure of applications, orders, or other materials relating to a surveillance shall be final orders and binding upon all courts of the United States and the several States except a United States court of appeals and the Supreme Court.

(i) Destruction of unintentionally acquired information

In circumstances involving the unintentional acquisition by an electronic, mechanical, or other surveillance device of the contents of any communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, and if both the sender and all intended recipients are located within the United States, such contents shall be destroyed upon recognition, unless the Attorney General determines that the contents indicate a threat of death or serious bodily harm to any person.

(j) Notification of emergency employment of electronic surveillance; contents; postponement, suspension or elimination

If an emergency employment of electronic surveillance is authorized under section 1805(e) of this title and a subsequent order approving the surveillance is not obtained, the judge shall cause to be served on any United States person named in the application and on such other United States persons subject to electronic surveillance as the judge may determine in his discretion it is in the interest of justice to serve, notice of--

(1) the fact of the application;

(2) the period of the surveillance; and

(3) the fact that during the period information was or was not obtained.

On an ex parte showing of good cause to the judge the serving of the notice required by this subsection may be postponed or suspended for a period not to exceed ninety days. Thereafter, on a further ex parte showing of good cause, the court shall forego ordering the serving of the notice required under this subsection.

(k) Consultation with Federal law enforcement officer

(1) Federal officers who conduct electronic surveillance to acquire foreign intelligence information under this title may consult with Federal law enforcement officers or law enforcement personnel of a State or political subdivision of a State (including the chief executive officer of that State or political subdivision who has the authority to appoint or direct the chief law enforcement officer of that State or political subdivision) to coordinate efforts to investigate or protect against

(A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

(B) sabotage, international terrorism, or the international proliferation of weapons of mass destruction by a foreign power or an agent of a foreign power; or

(C) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power.

(2) Coordination authorized under paragraph (1) shall not preclude the certification required by section 1804(a)(7)(B) of this title or the entry of an order under section 1805 of this title.

A11