Consolidated Case Nos. 13-55017, 12-56867, 12-56874
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

Yassir Fazaga, *et al.*,

Plaintiffs,

v.

Federal Bureau of Investigation; *et al.*

Defendants.
_____

On Appeal from the United States District Court, Central District of California
No. CV 11-301-CJC (VBK)
_____

## PLAINTIFFS-APPELLANTS' FURTHER EXCERPTS OF RECORD
_____

PETER BIBRING
pbibring@aclusocal.org
AHILAN T. ARULANANTHAM
aarulanantham@aclusocal.org
CATHERINE A. WAGNER
cwagner@aclusocal.org
ACLU Foundation
  of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

FATIMA DADABHOY
fdadabhoy@cair.com
Council on American-Islamic
Relations, California
2180 W. Crescent Avenue, Suite F
Anaheim, CA 92801
Telephone: (714) 776-1847
Facsimile: (714) 776-8340

DAN STORMER
dstormer@hadsellstormer.com
MOHAMMAD TAJSAR
mtajsar@hadsellstormer.com
Hadsell Stormer & Renick, LLP
128 N. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079

## PLAINTIFFS-APPELLANTS FURTHER EXCERPTS OF RECORD

## INDEX

| Document | Docket No. | File Date | Page(s) |
|---|---|---|---|
| Plaintiffs' Opposition to Government Defendants' Motion to Dismiss First Amended Complaint and for Summary Judgment | 64 | 12/23/11 | FER - 1 |
| Memorandum of Points and Authorities in Support of Government Defendants' Motion to Dismiss and for Summary Judgment | 32 | 8/1/11 | FER 2-3 |

1  or in violation of their reasonable expectations of privacy.  They seek that relief

2  directly under the Constitution.  *See, e.g.*, FAC ¶ 86 (Defendants "instructed

3  Monteilh to gather information on Muslims in general, and instructed him to adopt

4  strategies of information-gathering and surveillance that ensured that he would

5  obtain that information in an indiscriminate manner, such that Plaintiffs and

6  numerous other people were surveilled solely due to their religion."); Exhs. 1, 2.[1]

7        Contrary to Defendants' claims, there can be no serious dispute that both

8  sets of claims are cognizable.  The Ninth Circuit has held that individuals alleging

9  that the government maintains records of their First Amendment activity may seek

10  expungement under the Privacy Act.  And the Ninth Circuit has made equally clear

11  that courts retain inherent power under the Constitution to order expungement

12  when a federal agency maintains records in violation of the Constitution.[2]

13

14

_____

15  [1] Plaintiffs seek expungement of records describing their First Amendment

16  activities under Section 552a(e)(7) of the Privacy Act because it expressly bars the
government from maintaining such records.  The Privacy Act contains no

17  comparable provision expressly barring the maintenance of records gathered in
violation of other constitutional provisions (such as the anti-discrimination

18  protections of the Establishment Clause).  Therefore, Plaintiffs seek expungement

19  of those records under the Constitution itself.  To the extent that the Court
concludes that the Privacy Act itself permits an action to expunge records obtained

20  in violation of any constitutional provision beyond that permitted by Section (e)(7),
Plaintiffs request leave to amend their pleadings accordingly.

21  [2] To the extent that the liability of particular Defendants is relevant for purposes of

22  injunctive relief, Plaintiffs here clarify that they bring their expungement claims
under Section 552a(e)(7) against the FBI, and bring their expungement claims

23  under the Constitution against both the official capacity Defendants and against the
United States.  *See Demery v. Kupperman,* 735 F.2d 1139, 1146 (9th Cir. 1984) ("a

24  suit against a state official seeking injunctive relief from unconstitutional state
action is not a suit against the state") (citing *Ex Parte Young*, 209 U.S. 123

25  (1908)); *Presbyterian Church v. U.S.*, 870 F. 2d 518 (9th Cir. 1989) (holding that

26  Congress waived the United States' sovereign immunity for claims seeking

27  injunctive relief for both statutory and constitutional violations in 5 U.S.C. 702).

28

PLAINTIFFS' OPPOSITION TO GOV'T DEFENDANTS' MTN. TO DISMISS

FER - 1

1   exempted from the amendment and access provisions of the Privacy Act.  *See*

2   Morin Decl. ¶ 7; *see also* 28 C.F.R. § 16.96(d)(2).

3         Because the records at issue in this case are exempt from the amendment

4   provisions of the Privacy Act, it follows that plaintiff cannot obtain the remedy of

5   expungement, which is nothing more than an extreme form of amendment.  *See*

6   *Doe v. FBI*, 936 F.2d 1346, 1352 (D.C. Cir. 1991) ("[A] determination that a civil

7   claim for expungement may be foreclosed by any agency's exemption rule is not

8   only consistent with, but necessary to effectuate, Congress' intent that certain

9   records systems may truly be sheltered from the Act's amendment procedures.").

10  Again, plaintiffs' claim that the FBI violated subsection (e)(7) of the Act does not

11  affect this conclusion.  The FBI does not contend that the records at issue are

12  exempt from (e)(7), but rather that they are exempt from amendment and, thus,

13  expungement.  *See Bassiouni v. FBI*, 436 F.3d 712, 723 (7th Cir. 2006) (because

14  CRS "is not subject to the subsection (d) amendment process, the FBI cannot be

15  held liable under (g)(1)(A) for failure to comply with the process" and plaintiff

16  thus had "no avenue for relief under § 552a(g)(1)(A)" for his (e)(7) claim).  The

17  Court is therefore proscribed from ordering expungement of these records.

18        Moreover, even if the records at issue here were not expressly exempt from

19  the Privacy Act's amendment provisions, they should not be expunged because

20  their destruction could significantly impair the FBI's ability to conduct any

21  ongoing or future investigations.  First, when the FBI receives new information

22  that may relate to a prior investigation, it examines and seeks to verify that

23  information in the context of information it has already received.  Thus, if the

24  FBI's existing records regarding plaintiffs were expunged, and further information

25  relating to the investigative matter at issue were later brought to the FBI's

26  attention, the investigating agent would not have the complete context in which to

27  evaluate the newly received information and properly assess the matter.  Morin

28  Decl. ¶ 9.  Further, the maintenance of investigative records permits the FBI to

1    assess the reliability of source of information it receives over time.  The

2    destruction of files would severely hinder the FBI's ability to evaluate the

3    accuracy and credibility of information received from the source.  *Id*. ¶ 10.  In

4    addition, the FBI maintains investigative records for historic and accountability

5    purposes.  The destruction of records relating to investigative activity would

6    impede any future inquiry into how the FBI responded to information it received.

7    This consideration is especially crucial where counterterrorism investigations are

8    at issue.  *Id.* ¶ 11.  For these reasons, an order that the records at issue be destroyed

9    would plainly conflict with the FBI's statutorily-based exemption of these records

10   from the amendment provisions of the Privacy Act.

11
              **E.       Because Plaintiffs Are Foreclosed From Obtaining Expungement
12                       Under the Privacy Act, They Cannot Obtain Expungement for
                         Any of Their Causes of Action.**
13
              Finally, to the extent that plaintiffs seek expungement as a remedy for their
14
     other claims against the Government Defendants, they are foreclosed from doing
15
     so because the Privacy Act speaks directly to that issue: injunctive relief is
16
     unavailable for a (g)(1)(D) claim, and the FBI should not be compelled to amend
17
     records that it has exempted pursuant to subsections (j) and (k) of the Act.  The
18
     Complaint fails to identify any other law that clearly overrides or makes exception
19
     to that rule.  Plaintiffs may claim a common law right to the remedy of
20
     expungement based on the court's general equitable powers.  *See Fendler v.*
21
     *United States Parole Comm'n,* 774 F.2d 975, 979 (9th Cir. 1985).  However,
22
     federal common law is "subject to the paramount authority of Congress," such that
23
     "when Congress addresses a question previously governed by a decision rested on
24
     federal common law the need for such an unusual exercise of lawmaking by
25
     federal courts disappears."  *City of Milwaukee v. Illinois*, 451 U.S. 304, 313-14,
26
     101 S. Ct. 1784, 68 L. Ed. 2d 114 (1981).
27
              The Privacy Act clearly reflects Congress' intent to limit equitable relief to
28