Consolidated Case Nos.: 12-56867, 12-56874, 13-55017

U.S.D.C. Case No. 8:11-cv-00301-CJC-VBK

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

YASSIR FAZAGA, et al.

Plaintiff/Appellants/Cross-Appellees,

v.

FBI, et al.,

Defendants/Appellees/Cross-Appellants.

_____

On Appeal From The United States District Court
For The Central District of California
_____

## CROSS-APPELLANTS PAT ROSE, PAUL ALLEN AND KEVIN
## ARMSTRONG'S REPLY BRIEF

_____

DAVID C. SCHEPER (SBN 120174)
ALEXANDER H. COTE (SBN 211558)
ANGELA M. MACHALA (SBN 224496)
AMOS A. LOWDER (SBN 269362)
SCHEPER KIM & HARRIS LLP
601 WEST FIFTH STREET, 12TH FLOOR
LOS ANGELES, CALIFORNIA 90071-2025
TELEPHONE: (213) 613-4655
FACSIMILE: (213) 613-4656
*Attorneys for Pat Rose, Paul Allen and Kevin Armstrong*

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................1

II. THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED
IMMUNITY ON THE FISA CLAIM ...........................................3

    A.    The Elements of Qualified Immunity And FISA..................................3

    B.    Recording Of Conversations Conducted In Monteilh's
Presence Did Not Violate Any Plaintiff's Reasonable
Expectation Of Privacy ....................................................4

        1.    Plaintiffs Cannot Import Into FISA Mayer's Good
Faith Limitation on "Investigations Under The Fifth
Amendment And Searches Under The Fourth
Amendment" ......................................................5

        2.    Decades of Jurisprudence Hold That an Officer's
Subjective Intent Is Irrelevant Under the Fourth
Amendment ......................................................8

    C.    Unattended Recordings In The Prayer Hall Did Not Violate
Any Plaintiff's Reasonable Expectation Of Privacy...........................10

    D.    Plaintiffs' Conclusory Allegations Of Surveillance Devices
Installed In An Office, House, Car And Phone Do Not State
A Claim Under FISA .......................................................12

    E.    The FISA Claim Against Defendant Rose Fails Under *Iqbal* ............14

III. THE FEDERAL TORT CLAIMS ACT JUDGMENT BAR
REQUIRES DISMISSAL OF THE FISA CLAIM.......................................15

IV. CONCLUSION ..............................................................16

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Ashcroft v. al-Kidd,*
   131 S.Ct. 2074 (2011) ...............................................................*passim*

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................2, 14

*Chavez v. United States,*
   683 F.3d 1102 (9th Cir. 2012)...................................................15

*City of Indianapolis v. Edmond,*
   531 U.S. 32 (2000) .........................................................................9

*Estate of Trentadue ex rel Aguilar v. U.S.,*
   397 F.3d 840 (10th Cir. 2005)...................................................16

*Gasho v. United States,*
   39 F.3d 1420 (9th Cir. 1994)...............................................15, 16

*Kee v. City of Rowlett, Tex.,*
   247 F.3d 206 (5th Cir. 2001) .....................................................10

*Kreines v. United States,*
   959 F.2d 834 (9th Cir. 1992) .....................................................15

*Mockaitis v. Harcleroad,*
   104 F.3d 1522 (9th Cir. 1997) ...................................................11

*Mullenix v. Luna,*
   577 U.S. __, 2015 WL 6829329 at *3 (Nov. 9, 2015) ...............3

*Nunez v. Duncan,*
   591 F.3d 1217 (9th Cir. 2010)......................................................8

*Presbyterian Church v. United States,*
   870 F.2d 518 (9th Cir. 1989) .....................................................10

*Smith v. Maryland,*
   442 U.S. 735 (1979) ....................................................................10

*Trujillo v. City of Ontario,*
   428 F.Supp. 2d 1094 (C.D. Cal. 2006).......................................11

*United States v. Aguilar,*
   883 F.2d 662 (9th Cir. 1989) ..................................................6, 10

*United States v. Mayer,*
   503 F.3d 740 (9th Cir. 2007).........................................5, 6, 7, 10

*United States v. Nerber,*
  222 F.3d 597 (9th Cir. 2000) .......................................................................11
*United States v. Taketa,*
  923 F.2d 665 (9th Cir. 1991) .......................................................................11
*United States v. Wahchumwah,*
  710 F.3d 862 (9th Cir. 2013) .........................................................................4
*Whren v. United States,*
  517 U.S. 806 (1996) ......................................................................................9

## Federal Statutes

50 U.S.C. § 1801(f)(4) ...............................................................................3, 6
50 U.S.C. § 1809 ...........................................................................................4
50 U.S.C. § 1810 ........................................................................................4, 6

# I.

# INTRODUCTION

Defendants Pat Rose, Paul Allen, and Kevin Armstrong (collectively the "Agent Defendants") are entitled to qualified immunity on Plaintiffs' Tenth Cause of Action (the "FISA Claim"), because that claim fails to allege any electronic surveillance that violated clearly established rights under FISA.

*First*, Plaintiffs allege that confidential informant Craig Monteilh recorded them with a video or audio camera he carried on his person – but Plaintiffs admit that they had no expectation of privacy in the information they voluntarily disclosed to Monteilh, which is fatal to the FISA Claim. Nor can Plaintiffs evade this result by alleging that the Agent Defendants acted without "good faith," because they also admit that "an officer's subjective intent is generally irrelevant under the Fourth Amendment (and FISA)" – an admission which is supported by decades of authority. (Docket No. 79-2 ("ARB") at 100.) Plaintiffs' inability to cite any contrary authority reveals that their alleged right to be free from investigations not conducted in "good faith" was not "clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011).

*Second*, Plaintiffs Malik and AbdelRahim allege that Monteilh recorded them with an unattended recording device left in a prayer hall – but they fail to

allege that they had a reasonable expectation of privacy in that public location. Plaintiffs' brief notably offers *no* authority suggesting that it was "beyond debate" that an unattended recording in such a location violated their reasonable expectations of privacy. *Id.* at 2083. Nor do Plaintiffs allege that the Agent Defendants *intended* these unattended recordings to occur. Both failures defeat the FISA Claim.

*Third*, Plaintiffs Fazaga and AbdelRahim allege that someone other than Monteilh placed unspecified surveillance devices in an office, home, car and phone – but these allegations are not relevant to the FISA Claim, which, by its own terms, is limited to Monteilh's conduct. Moreover, because Plaintiffs do not allege who is responsible for installing these alleged surveillance devices, these conclusory allegations fail to state a claim against the Agent Defendants under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, the FISA Claim against Defendant Pat Rose depends entirely on a theory of supervisory liability, which is also impermissible under *Iqbal*. And the claim is similarly barred against all the Agent Defendants by the Federal Tort Claims Act's judgment bar.

In short, Plaintiffs cannot demonstrate a right, under FISA, to be free from the surveillance discussed above. Because no "existing precedent [has] placed the statutory or constitutional question beyond debate," *id.* at 2083, the

Agent Defendants are entitled to qualified immunity on the FISA Claim, and the district court erred by denying the Agent Defendants' motion to dismiss it.

## II.

## THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE FISA CLAIM

### A.     The Elements of Qualified Immunity And FISA

To overcome qualified immunity, Plaintiffs bear the burden of pleading facts showing "that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S.Ct. at 2080. To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. __, 2015 WL 6829329 at *3 (Nov. 9, 2015) (*quoting al-Kidd,* 131 S. Ct. at 2083). It is well-settled that courts are "not to define clearly established law at a high level of generality." *Id.* at 3 (*quoting al-Kidd*, 131 S. Ct. at 2084). Thus, in the context of qualified immunity, the general rule that "an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 131 S. Ct. at 2084.

To state a claim under FISA, each Plaintiff must establish that he "has been subjected to an electronic surveillance" under circumstances in which he "has a reasonable expectation of privacy." *See* 50 U.S.C. §§ 1801(f)(4), 1810.

The parties agree that the "reasonable expectation of privacy" articulated in

FISA is the same legal standard that controls under the Fourth Amendment.

(ARB at 67.) Actionable violations of FISA must also be intentional. *See* 50

U.S.C. §§ 1809 and 1810 ("a person is guilty of an offense if he *intentionally* …

engages in electronic surveillance under color of law except as authorized by"

statute) (emphasis added).

**B.**     **Recording Of Conversations Conducted In Monteilh's Presence Did Not Violate Any Plaintiff's Reasonable Expectation Of Privacy**

Plaintiffs allege that Monteilh recorded them with audio and video

devices he wore on his person, and that this recording violated FISA. (ARB at

71-73.) But elsewhere in their Reply/Cross-Appellee Brief, Plaintiffs admit that

audio and video surveillance personally conducted by a confidential informant

does not violate an individual's reasonable expectation of privacy. (*See* ARB at

66 n. 32 (*citing United States v. Wahchumwah*, 710 F.3d 862 (9th Cir. 2013).)

Indeed, as this Court recently held, no Plaintiff can "reasonably argue that [an

audio and video] recording violates his legitimate privacy interests when it

reveals no more than what was already visible to the agent." *Wahchumwah*, 710

F.3d at 867. Because a violation of Plaintiffs' reasonable expectations of

privacy is a necessary element of the FISA Claim, this admission ends the

discussion.

1. ***Plaintiffs Cannot Import Into FISA Mayer's Good Faith Limitation on "Investigations Under The Fifth Amendment And Searches Under The Fourth Amendment"***

Nevertheless, Plaintiffs attempt to engraft a new theory of liability onto FISA: that Monteilh's personal recording violated FISA because it was not conducted in "good faith." (ARB at 71.) In support of this novel theory, Plaintiffs rely on the following sentence taken out of context from *United States v. Mayer*, 503 F.3d 740, 751 (9th Cir. 2007): "[g]ood faith has been an implicit requirement for investigations under the Fifth Amendment and searches under the Fourth Amendment." This sentence reveals that *Mayer* discusses two kinds of good faith: the good faith required for "investigations under the Fifth Amendment" and the good faith required for "searches under the Fourth Amendment." *Id.* at 751; *see also id.* at 754 ("*Aguilar* articulates a Fifth Amendment requirement of good faith and a Fourth Amendment warrant requirement.") But neither offers any support for the FISA Claim.

*First*, as *Mayer* itself makes clear, "[u]ndercover operations, in which the agent is a so-called invited informer, *are not 'searches'* under the Fourth Amendment" and do not require a warrant. *Mayer*, 503 F.3d at 750-51 (emphasis added). This is because "[e]ven though a conversation between an agent and a target may occur in an otherwise private environment, 'a person has

no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" *Id.* at 750 (*citing United States v. Aguilar*, 883 F.2d 662, 699 (9th Cir. 1989); *see also id.* ("the fourth amendment does not even characterize the government's use of undercover informers as a 'search' because it does not intrude upon a legitimate expectation of privacy"). Therefore, because Monteilh's recordings were not "searches," Mayer's discussion of the "good faith" required for "searches under the Fourth Amendment" is simply beside the point.[1]

> *Second*, *Mayer's* requirement of "good faith" for "investigations under the Fifth Amendment" is equally inapplicable, because FISA is not concerned with regulating the motives behind government investigations. To the contrary, a civil action lies under FISA *only* to the extent the plaintiff has been subject to electronic surveillance that violates his reasonable expectation of privacy. *See* 50 U.S.C. §§ 1801(f)(4), 1810. Nothing in FISA's text supports a right to be free from bad faith surveillance that does not violate the plaintiff's privacy. Indeed, the statute does not even mention "good faith" or "bad faith" in the

---

[1] In a footnote, Plaintiffs' brief accuses the Agent Defendants of "a blatant misrepresentation to this Court," because they omitted the phrase "searches under the Fourth Amendment" from the discussion of *Mayer* in their opening brief. (ARB at 72 n. 34.) This accusation betrays Plaintiffs' failure to recognize that a confidential informant's personal recording is not a "search", and therefore *Mayer's* good faith requirement for "searches under the Fourth Amendment" is simply irrelevant.

context of civil liability. Nor does any case hold that FISA provides such a right. Certainly Plaintiffs cannot contend that *Mayer*, which does not even mention FISA, so firmly established this right that it was "beyond debate." *al-Kidd,* 131 S. Ct. at 2083.

*Third*, even if FISA provided a right to be free from investigations conducted without good faith, Plaintiffs' claim would still fail. Plaintiffs contend that they have pled bad faith by pointing to "defendants' explicit use of religion to target Muslims in Southern California." (ARB at 73.) But no authority clearly establishes that this subjective intent is inconsistent with good faith under *Mayer*, and therefore "existing precedent" does not place this "statutory … question beyond debate." *al-Kidd,* 131 S. Ct. at 2083.

To the contrary, as Plaintiffs admit, *Mayer's* good faith requirement for investigations under the Fifth Amendment requires that "law enforcement 'must not investigate for the purpose of violating First Amendment rights,' and must act consistent with a 'legitimate law enforcement purpose.'" (ARB at 73 (*citing Mayer* , 503 F.3d at 752).) But here, Plaintiffs concede that the Agent Defendants had a legitimate law enforcement purpose for the surveillance: a counterterrorism investigation. (ER 187-188, 195-196, 214, 217-218 (FAC ¶¶ 24, 25, 26, 43, 117, 132).) Furthermore, Plaintiffs allege that the Agent Defendants intended the surveillance to remain covert – meaning that Plaintiffs

should not have uncovered it – and therefore the investigation could not have been intended to abridge or interfere with First Amendment freedoms. (ER 225 (FAC at ¶ 160, *see also* Docket No. 57-1 at 22 fn 4).) In light of these admissions, and in light of Plaintiffs' utter failure to offer any authority suggesting that the use of religion in an investigation violates either FISA or the Fourth Amendment, the Agent Defendants' alleged conduct did not violate a "clearly established" right. *See al-Kidd*, 131 S.Ct. at 2080.

Moreover, the district court correctly ruled that an inquiry into the Agent Defendants' motives for investigating the Plaintiffs would impermissibly tread on the government's assertion of state secrets. (ER 53-54 (government's assertion that "the initial reasons (*i.e.*, predicate) for an FBI counterterrorism investigation of a particular person" are privileged).) For this additional reason, Plaintiffs' invocation of "good faith" cannot save the FISA Claim.

> **2.** **Decades of Jurisprudence Hold That an Officer's Subjective Intent Is Irrelevant Under the Fourth Amendment**

Plaintiffs' effort to inject a "good faith" requirement into the FISA Claim fails for another reason: "an officer's subjective intent is generally irrelevant under the Fourth Amendment (and FISA)," as Plaintiffs admit elsewhere in their Reply/Cross-Appellee Brief. (ARB at 100 (*citing Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010).) Indeed, Plaintiffs' use of "generally" here

undersells the point: the Supreme Court has "almost uniformly rejected invitations to probe subjective intent" when examining the constitutionality of an alleged search. *al-Kidd*, 131 S. Ct. at 2077; *see also id.* at 2080 ("the Fourth Amendment regulates conduct rather than thoughts"). Nor is this a new development in the law. As the Supreme Court held in *Whren v. United States* nearly twenty years ago: "[n]ot only have we never held, outside the context of inventory search or administrative inspection (discussed above), that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Whren v. United States*, 517 U.S. 806, 812 (1996).

Plaintiffs ignore *al-Kidd,* and attempt to distinguish *Whren* by citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 45-46 (2000) for the proposition that "motive plays into [the] Fourth Amendment analysis." (*See* ARB at 72.) But *Edmond* explicitly *rejected* Plaintiffs' argument that individual officer intent matters under the Fourth Amendment: "we caution that the purpose inquiry in this context is to be conducted *only* at the programmatic level and is not an invitation to probe the minds of individual officers acting at the scene." *Edmond*, 531 U.S. at 48 (emphasis added). Indeed, *Edmond* cites *Whren* for the foregoing proposition – undercutting Plaintiffs' suggestion that *Edmond* somehow contradicts or limits *Whren.*

In short, Plaintiffs cannot point to any existing precedent that supports the notion that subjective intent can transform otherwise lawful surveillance into a FISA violation. To the contrary, decades of Supreme Court decisions hold exactly the opposite, and therefore the Court should reject Plaintiffs' new theory of FISA liability – or at the very least, find that the theory is not clearly established – and reverse the district court.

## C.  Unattended Recordings In The Prayer Hall Did Not Violate Any Plaintiff's Reasonable Expectation Of Privacy

Plaintiffs Malik and AbdelRahim also allege that the Agent Defendants violated FISA because Monteilh recorded them with an unattended recording device that he left in the mosque prayer hall. (ARB at 68-71.) However, Plaintiffs cannot plead a reasonable expectation of privacy merely by alleging that they were recorded in a religious place. *Mayer*, 503 F.3d at 750-51; *see also Aguilar*, 883 F.2d at 696-703; *Presbyterian Church v. United States*, 870 F.2d 518, 527 (9th Cir. 1989).

Instead, they must allege facts showing that they sought to preserve their conversations in the prayer hall as private. *See Smith v. Maryland*, 442 U.S. 735, 740-41 (1979); *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 213 (5th Cir. 2001). In their Reply/Cross-Appellee Brief, Plaintiffs identify a single fact in support of that expectation: that the mosque had a policy forbidding audio and

video recording. (*See* ARB at 70 (citing ER 233 (FAC ¶ 193)).) But this allegation fails to establish what steps, if any, *Plaintiffs themselves* took to preserve their conversations as private in the prayer hall. That failing is fatal to the FISA Claim.

Nor do Plaintiffs' proffered authorities suggest that they had a reasonable expectation of privacy in the prayer hall, because none of the cited cases involve a public space. In *Mockaitis v. Harcleroad*, 104 F.3d 1522 (9th Cir. 1997), the plaintiff was recorded during the Catholic rite of confession, which was not only privileged under state law but also uniformly considered as *private*. *Id.* at 1531-32. In *United States v. Taketa*, 923 F.2d 665, 672-73 (9th Cir. 1991), the defendant was recorded in an office only accessible by two other people. In *United States v. Nerber*, 222 F.3d 597, 604 (9th Cir. 2000), the defendants were recorded when they were alone in a hotel room. Lastly, in *Trujillo v. City of Ontario*, 428 F.Supp. 2d 1094, 1102 (C.D. Cal. 2006), the plaintiffs were recorded in a locker room, and "took measures that significantly limited the number of people who could observe their private activities." Here, however, Plaintiffs allege no facts showing that access to the prayer hall was limited to a small group of people like the confessional, office, hotel room and locker room discussed in the foregoing cases. Accordingly, Plaintiffs had no

clearly established expectation of privacy in the prayer hall, and therefore the FISA Claim fails on qualified immunity grounds.

Finally, Plaintiffs do not even attempt to address FISA's requirement that the Agent Defendants must have *intended* Monteilh to leave his recording device unattended in order to state a cause of action under FISA – even though the Agent Defendants raised this argument in their brief. (Docket No. 57-1 at 23.) Nor can they, in light of Monteilh's specific agreement "in writing with the FBI not to leave the recording device unattended while it was turned on" and that "he must be a party to any conversation in order to record that conversation." (Docket No. 73 at 12.) Plaintiffs' failure to even address FISA's intent requirement is reason alone to reject this aspect of the FISA Claim.

## D. Plaintiffs' Conclusory Allegations Of Surveillance Devices Installed In An Office, House, Car And Phone Do Not State A Claim Under FISA

Plaintiffs Fazaga and AbdelRahim allege that the Agent Defendants "caused … to be installed" or "had" electronic listening devices in a variety of places, including Fazaga's office and AbdelRahim's house, car and phone. (*See* ER 208-209, 237 (FAC ¶¶ 95, 209).) But these conclusory allegations fail to state a claim under FISA for at least three reasons.

*First*, Plaintiffs' Tenth Cause of Action is limited to Monteilh's conduct, not the conduct of other parties. (ER 247 (FAC ¶ 253 ("Defendants, under color of law, *acting through Monteilh*, used electronic, mechanical, and/or other surveillance devices, without a warrant")(emphasis added)).) But the Plaintiffs' complaint does not allege that Monteilh had any role in the installation of the alleged listening devices, and therefore these allegations do not support the FISA Claim. Although the Agent Defendants highlighted this failure in their brief, Plaintiffs utterly failed to respond to the point. (*See* Docket No. 57-1 at 27.)

*Second*, these allegations are entirely conclusory, as the phrase "information and belief" and extensive use of passive voice reveal. Nowhere do Plaintiffs allege when the alleged listening devices were found, where they were found, who found them, or any other detail to support the conclusion that the Agent Defendants "caused" electronic surveillance equipment to be installed at the mosque. (ER 208-209 (FAC ¶ 95).) The allegations regarding Plaintiff AbdelRahim are similarly devoid of facts, as Plaintiffs fail to plead any of the who, what, when, where or how to support the conclusion that the Agent Defendants "had audio surveillance in the home." (*See* ER 237 (FAC ¶ 209).) Most critically, these conclusory allegations fail to allege that the Agent Defendants had anything to do with installing these surveillance devices.

Accordingly, Plaintiffs fail to state facts from which a court could "draw the reasonable inference that the [Agent Defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Third*, because Monteilh had no role in the alleged installation of these surveillance devices, the government's assertion of the state secrets privilege bars litigation of these claims. (*See* Docket No. 49-1 at 43-47; ER 53-59 (asserting the state secrets privilege over all investigation methods other than use of Monteilh).) Thus, if this Court affirms the district court's ruling on the state secrets privilege, the parties will not be able to litigate whether anyone in fact installed listening devices in Plaintiff Fazaga's office and Plaintiff AbdelRahim's home, car and phone.

## E.    The FISA Claim Against Defendant Rose Fails Under *Iqbal*

Plaintiffs argue, without citing to specific factual allegations in the complaint, that Defendant Rose, admittedly a supervisor, is liable for knowingly acquiescing in these alleged unlawful searches. (ARB at 68 (referring to ARB at 100-101).) Specifically, Plaintiffs claim that Rose knew Monteilh recorded conversations when he was not present because Rose read Monteilh's daily notes, which allegedly described this conduct. (*Id.*) Plaintiffs attempt to support this proposition with cites to their First Amended Complaint, but the cited paragraphs say nothing about Rose at all, let alone allege that Rose read

Monteilh's daily notes. (*See* ER 218, 232, 233.) Thus, Plaintiffs have no basis to assert that Rose had personal knowledge of Monteilh's alleged unattended recordings.

Even if Plaintiffs *had* alleged that Rose reviewed Monteilh's daily notes, that would still be insufficient to impose liability on her. In *Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012), this Court discounted "the plaintiffs' wholly conclusory allegations that the supervisory defendants 'personally reviewed and thus, knowingly ordered, directed, sanctioned or permitted' the allegedly unconstitutional stops." *Id. at* 1110. Plaintiffs' suggestion that Rose read Monteilh's notes is indistinguishable from the same argument this Court rejected in *Chavez*. Thus, Plaintiffs fail to state a valid claim against Defendant Rose for violations of FISA.

## III.

## THE FEDERAL TORT CLAIMS ACT JUDGMENT BAR REQUIRES DISMISSAL OF THE FISA CLAIM

Finally, the Federal Tort Claims Act judgment bar also precludes the FISA Claim, as explained in the Agent Defendants' brief. (Docket No. 57-1 at 23 at 39-40.) Plaintiffs respond that the judgment bar applies only when a plaintiff wins his case against the government, *citing Kreines v. United States*, 959 F.2d 834 (9th Cir. 1992). But in *Gasho v. United States*, 39 F.3d 1420 (9th

Cir. 1994), which the Agent Defendants cited in their opening brief, this Court held "that *any* FTCA judgment, *regardless of its outcome*, bars a subsequent *Bivens* action on the same conduct that was at issue in the prior judgment." *Id.* at 1437 (emphasis in original); *see also Estate of Trentadue ex rel Aguilar v. U.S.*, 397 F.3d 840, 858 (10th Cir. 2005) (holding that the FTCA judgment bar applies "regardless of whether the final FTCA judgment is rendered in favor of a plaintiff or the government"). Accordingly, the Court should reject Plaintiffs' argument that the bar applies only when Plaintiffs prevail against the government, and order the district court to dismiss the FISA Claim.

## IV.

## CONCLUSION

In short, none of the surveillance pled by Plaintiffs violated their clearly established expectations of privacy, and therefore they cannot overcome the Agent Defendants' qualified immunity to the FISA Claim. Nor can Plaintiffs demonstrate a clearly established right, under FISA, to be free from surveillance conducted without good faith – when that surveillance *does not* infringe on their reasonable expectations of privacy. To the contrary, the law is clear (and Plaintiffs admit) that an officer's subjective intent is simply irrelevant to the FISA analysis. Accordingly, the district court erred in denying the Agent Defendants' motion to dismiss, and should be reversed.

-16-

Dated:  November 13, 2015      Respectfully submitted,


By:    /s/Alexander H. Cote
       DAVID C. SCHEPER
       ALEXANDER H. COTE
       ANGELA M. MACHALA
       AMOS A. LOWDER

       Attorneys for Appellants
       PAT ROSE, PAUL ALLEN
       AND KEVIN ARMSTRONG

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 11-17609</u>

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached reply brief is proportionately spaced, has a typeface of 14 points or more and contains 4,226 words.

Dated:  November 13, 2015          Respectfully submitted,


By:    /s/Alexander H. Cote
       DAVID C. SCHEPER
       ALEXANDER H. COTE
       ANGELA M. MACHALA
       AMOS A. LOWDER

       Attorneys for Appellants
       PAT ROSE, PAUL ALLEN
       AND KEVIN ARMSTRONG

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

I am a citizen of the United States and employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action. My business address is Scheper Kim & Harris LLP, 601 W. Fifth Street, 12th Floor, Los Angeles, California 90071.

I hereby certify that I electronically filed the foregoing CROSS-APPELLANTS PAT ROSE, PAUL ALLEN AND KEVIN ARMSTRONG'S REPLY BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 13, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed on November 13, 2015 at Los Angeles, California.

/s/June Hibino

June Hibino