Consolidated Case Nos.  12-56867, 12-56874, & 13-55017
————————————————————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
————————————————————————————

Yassir Fazaga, *et al.*,

Plaintiffs-Appellants,

v.

Federal Bureau of Investigation; *et al.*

Defendants- Appellees.
————————————————————————————

On Appeal from the United States District Court, Central District of California
No. CV 11-301-CJC (VBK)
————————————————————————————

## PLAINTIFFS-APPELLANTS' OPPOSITION TO PETITIONS FOR
## REHEARING OR REHEARING EN BANC
————————————————————————————

PETER BIBRING
pbibring@aclusocal.org
AHILAN T. ARULANANTHAM
aarulanantham@aclusocal.org
MOHAMMAD TAJSAR
mtajsar@aclusocal.org
ACLU Foundation
  of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Telephone:  (213) 977-9500
Facsimile:  (213) 977-5297

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................7

I.  The Panel's Opinion rigorously protects national security information ........7

II. The Panel's holding that FISA governs Plaintiffs' claims does not warrant rehearing and is entirely correct .................................................11

    A.  The Panel applies established precedent holding that Congress displaces the common law *Reynolds* privilege when it "speaks directly" to it...............................................................11

    B.  The Panel's conclusion that the Government sought to "use" electronic surveillance information was correct and does not warrant rehearing .....................................................14

    C.  The Panel correctly holds that Section 1806(f) applies to the remainder of Plaintiffs' claims......................................20

III. The Panel correctly rejects the individual Defendants' constitutional challenges to the use of Section 1806(f) procedures....................................21

IV. Defendants Armstrong, Allen, and Rose's separate arguments do not warrant rehearing .......................................................................30

    A.  The Panel's treatment of Plaintiffs' religious discrimination creates no conflict with *Vernon*..............................................30

    B.  The Panel appropriately holds these agents responsible based on express and plausible allegations that they were personally involved in the unlawful placement of surveillance devices ........33

CONCLUSION ..................................................................................35

i

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Bush*,
    924 F.2d 282 (D.C. Cir. 1991)................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................34

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
    501 U.S. 104 (1991)..........................................................................12

*Boumediene v. Bush*,
    553 U.S. 723 (2008)............................................................................8

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993)..........................................................................30

*Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*,
    483 U.S. 327 (1987)..........................................................................32

*Dep't of Navy v. Egan*,
    484 U.S. 518 (1988)..........................................................................13

*El-Masri v. United States*,
    479 F.3d 296 (4th Cir. 2007) ............................................................13

*Fidelity & Deposit Co. of Maryland v. United States*,
    187 U.S. 315 (1902)..........................................................................28

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)..........................................................................13

*Funk v. United States*,
    290 U.S. 371 (1933)..........................................................................21

*Galloway v. United States*,
    319 U.S. 372 (1943)....................................................................26, 28

*General Dynamics Corp. v. United States*,
563 U.S. 478 (2011) ..................................................................................*passim*

*In re Guantanamo Bay Detainee Litigation*,
577 F. Supp. 2d 143 (D.D.C. 2008) .................................................................8

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) .......................................................................33

*Kasza v. Browner*,
133 F.3d 1159 (9th Cir. 1998). Op. .................................................11, 12, 13

*Matter of Kevork*,
788 F.2d 566 (9th Cir. 1986) .........................................................................18

*Larson v. Valente*,
456 U.S. 228 (1982) ........................................................................30, 32, 33

*Lemon v. Kurtzman*,
403 U.S. 602 (1971) ...............................................................................32, 33

*Mohamed v. Jeppesen Dataplan*,
614 F.3d 1070 (9th Cir. 2010) ..............................................................9, 28, 29

*Public Citizen v. U.S. Dep't of Justice*,
491 U.S. 440 (1989) ...............................................................................13, 15

*Taglianetti v. United States*,
394 U.S. 316 (1969) ......................................................................................26

*In re Terrorist Bombings of U.S. Embassies in E. Africa*,
552 F.3d 93 (2d Cir. 2008) .......................................................................8, 26

*United States v. Abu-Jihaad*,
531 F. Supp. 2d 299 (D. Conn. 2008) ............................................................24

*United States v. Abu-Jihaad*,
630 F.3d 102 (2d Cir. 2010) .....................................................................8, 24

*United States v. Abu-Jihaad*,
No. 3:07CR57 (MRK), 2008 WL 346121 (D. Conn. Feb. 4, 2008) .................25

*United States v. Amawi*,
   695 F.3d 457 (6th Cir. 2012) ...................................................................8

*United States v. Belfield*,
   692 F.2d 141 (D.C. Cir. 1982)................................................................25

*United States v. Damrah*,
   412 F.3d 618 (6th Cir. 2005) ..................................................................25

*United States v. El-Mezain*,
   664 F.3d 467 (5th Cir. 2011) ....................................................................8

*United States v. Falvey*,
   540 F. Supp. 1306 (E.D.N.Y. 1982) ......................................................25

*United States v. Hanna*,
   661 F.3d 271 (6th Cir. 2011) ..................................................................25

*United States v. Hashmi*,
   621 F. Supp. 2d 76 (S.D.N.Y. 2008) .....................................................23

*United States v. Mahamud*,
   838 F. Supp. 2d 881 (D. Minn. 2012)....................................................25

*United States v. Mohamud*,
   No. 3:10-CR-00475-KI, 2012 WL 12952303 (D. Or. May 7, 2012) ...............23

*United States v. Moussaui*,
   382 F.3d 453 (4th Cir. 2004) .............................................................26, 29

*United States v. Nixon*,
   418 U.S. 683 (1974)................................................................................13

*United States v. Ott*,
   827 F.2d 473 (9th Cir. 1987) .............................................................23, 24

*United States v. Reynolds*,
   345 U.S. 1 (1953)............................................................................*passim*

*United States v. Texas*,
   507 U.S. 529 (1993)................................................................................11

iv

*United States v. United States District Court (Keith)*,
    407 U.S. 297 (1972)..................................................................................7

*United States v. Warsame*,
    547 F. Supp. 2d 982 (D. Minn. 2008)..................................................25

*United States v. Yunis*,
    924 F.2d 1086 (D.C. Cir. 1991)............................................................26

*Vernon v. City of Los Angeles*,
    27 F.3d 1385 (9th Cir. 1994)....................................................*passim*

## Statutes

50 U.S.C. § 1806...............................................................................*passim*

Administrative Procedures Act ...........................................................13

Classified Information Procedures Act, 18 U.S.C. App. III ...........*passim*

Foreign Intelligence Surveillance Act ............................................*passim*

## Other Authorities

Permanent Select Committee on Intelligence, Foreign Intelligence
    Surveillance Act of 1978, H.R. Rep. 95-1283, Pt. I, 95th Cong., 2d
    Sess. 21 (1978)..............................................................................18, 19

**INTRODUCTION**

This case concerns a 13-year old investigation into Americans who worshipped at mosques in Orange County. Plaintiffs allege, *inter alia*, that the FBI used an informant to conduct indiscriminate electronic surveillance on these law-abiding citizens, in violation of the prohibitions on unreasonable search and seizure, discrimination based on religion, and other laws.

The district court dismissed most of Plaintiffs' claims under the state secrets privilege. The Panel reversed that holding, and permitted certain claims to proceed (while dismissing others) using procedures Congress created for protecting national security information under the Foreign Intelligence Surveillance Act ("FISA").

The Government's petition for rehearing en banc does not contend the Panel's opinion conflicts with existing circuit or Supreme Court authority. The Government asserts instead that the opinion involves a question of exceptional importance because it will inhibit the Government's ability to protect national security information. This assertion strains credulity. The Panel's ruling merely requires the district court to use the procedures Congress established for protecting sensitive information in national security cases under FISA. For the last forty years, courts have repeatedly utilized those same procedures in highly sensitive national security cases. Their use here does not undermine national security.

1

Indeed, in this case (and most others involving electronic surveillance) the use of FISA's procedures likely would not even require significantly more disclosure than would occur under the state secrets privilege, because district courts must carefully scrutinize the Government's privilege assertion to determine that the evidence at issue is properly designated as secret and that the case cannot be litigated without an undue risk of disclosure. The material difference between the use of FISA's procedures and the application of state secrets in this context is that the former greatly increases the Government's potential exposure to *liability* for unlawful electronic surveillance. Under FISA, the district court must determine if the surveillance at issue is *lawful*, not just whether the Government properly designated the underlying information as secret. Because the Panel merely requires the use of Congressionally-mandated, time-tested procedures for protecting sensitive information, it presents no issue of exceptional importance. *Infra* Section I.

The Government also seeks rehearing because the Panel allegedly errs in holding that FISA preempts the state secrets privilege in cases involving electronic surveillance, and that its provisions for protecting secret information apply here. Both claims are meritless, for three basic reasons.

*First*, the Government conflates two very different applications of "modern state secrets doctrine … the *Totten* bar and the *Reynolds* privilege." Op. at 47. The

*Totten* bar effectively limits courts' subject matter jurisdiction, while the *Reynolds* privilege "is an evidentiary privilege rooted in federal common law." *Id*. Because the Government conflates the two, it erroneously assumes the constitutional considerations at issue in *Totten* are relevant to this case. They are not. The Government conceded in the district court that the subject matter of this case is *not* a state secret, and therefore did not invoke the *Totten* bar. Op. at 47. As the Supreme Court recognized in its most recent state secrets case (which the Government never cites), *Reynolds* "decided a purely evidentiary dispute by applying evidentiary rules" developed at common law. *General Dynamics Corp. v. United States*, 563 U.S. 478, 485 (2011). The Panel merely applies governing law in treating the *Reynolds* privilege as common law, which Congress had ample authority to displace. *Infra* Section II.A.

*Second*, the Panel correctly rejects the Government's assertion that FISA's information procedures provision, 50 U.S.C. 1806(f), does not apply here. The Government contends FISA does not apply because the Government merely wants to remove (rather than "use") certain evidence through its privilege assertion. In fact, however, the Government seeks not only to remove the purportedly secret evidence from this case, but to obtain *dismissal of Plaintiffs' claims* because, it asserts, it cannot defend itself without relying on that evidence. The Panel rightly concludes that, in this posture, the Government's invocation involves a request to

3

"use" information obtained through electronic surveillance. Op. at 63 ("It is precisely because the Government would like to use this information to defend itself that it has asserted the state secrets privilege").[1]

The Government's interpretation of FISA suffers from another flaw as well: it cannot make sense of Section 1810. Both in its summary of FISA and more generally, the Government completely ignores that provision, despite its importance to understanding the Panel's decision and the statute as a whole. Section 1810 creates a cause of action permitting individuals subject to electronic surveillance to sue for damages. Plaintiffs have sued under it, the district court did not dismiss that claim, and the Panel finds it survives qualified immunity (in part). Op. at 42–43. The Panel then holds, unsurprisingly, that FISA requires courts to use its procedures for handling sensitive information (Section 1806(f)) when adjudicating affirmative suits, such as those brought under its damages provision (Section 1810). Op. at 67. The Government's assertion to the contrary is at war not only with the statute's unambiguous text, but also its structure and purpose. FISA

---

[1]Defendants Walls and Tidwell also seek to "use" the evidence to defend themselves, insofar as they have requested an opportunity to be heard and defend themselves on the same evidence. In contrast, Plaintiffs are prepared to go forward without the disputed evidence, as they have repeatedly stated throughout this litigation. *See, e.g.*, Pls.' Br., ECF 32-2 at 37–41; Pls.' Reply Br., ECF 85-2 at 13. Plaintiffs have already filed detailed declarations from the informant who engaged in the unlawful conduct alleged in the complaint. ER 85–138. Plaintiffs need no discovery to establish Defendants' liability at this stage.

strikes a *balance* by protecting national security information while also protecting the rights of victims of unlawful surveillance to hold federal officials accountable for their illegal conduct. The Panel's construction is the only plausible reading of FISA, and it certainly does not warrant rehearing. *Infra* Section II.B.

The Government also takes issue with the Panel for requiring the district court to apply FISA's procedures to non-FISA evidence. But the Panel faithfully applies Section 1806(f), which authorizes *in camera* review of "other materials *relating* to the surveillance" in order to determine its legality, *id*. at 99 (emphasis in original), even if that evidence is not itself the product of electronic surveillance. And if there is any evidence that does not come within even that broad definition, the Panel appropriately determines that it would constitute "empty formalism" to reject FISA's procedures for that material, even if it falls outside FISA's definition. *Id*. at 100. Moreover, the Panel notes that if its prediction proves inaccurate, the district court may permit the Government to renew its state secrets assertion. *Id*. at 101. The Panel's treatment of this issue is faithful to the common law status of the state secrets privilege, which, like other common law doctrines, must be applied flexibly to suit its purposes. It neither compromises national security information nor creates any conflict with other authority. *Infra* Section II.C.

The individual Defendants' petitions for rehearing en banc make three

additional arguments, all of which are meritless.[2] They first argue the Panel's ruling violates their Due Process Clause and Seventh Amendment jury trial rights because it may lead to their not receiving a jury trial on some of their claims. But nothing in the ruling bars Defendants from receiving a jury trial if the Seventh Amendment so requires (assuming the relevant claims even survive to that stage). The Panel does require the district court to apply FISA, which in turn requires district courts to rule on the *legality* of electronic surveillance using its *ex parte in camera* procedures. But the legality of surveillance (like other legal questions) is generally for judges rather than juries to decide, which is why courts have uniformly upheld the use of FISA's procedures to determine the legality of surveillance in the criminal context, despite the right to jury trial. Moreover, Defendants' argument is grossly premature. If the relevant claims survive to trial and the district court erroneously denies Defendants' jury trial request, Defendants can appeal. Their hypothetical objection to a constitutional violation that has not occurred obviously does not warrant rehearing. *Infra* Section III.

Finally, Defendants Armstrong, Allen, and Rose make two separate arguments for rehearing en banc; both also lack merit. The Panel's decision is

---

[2] This brief refers to the Government's Petition for Rehearing En Banc as "Gov't PFR"; to Defendants Tidwell and Walls' petition as "TW PFR"; and to Defendants Armstrong, Allen, and Rose's petition as "AAR PFR."

consistent with *Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994), because *Vernon* involved an allegedly impermissible burden on religion created by a neutral rule, not intentional religious discrimination. And the Panel correctly holds these Defendants subject to suit based on specific, plausible allegations of their personal involvement in the surveillance scheme Plaintiffs challenge. *Infra* Section IV.

## ARGUMENT

## I.    The Panel's decision rigorously protects national security information.

The Court should reject the Government's attempt to cry wolf over national security. The Panel merely orders the district court to apply FISA. Its procedures (and the parallel disclosure provisions in the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III), more than suffice to protect national security information, while also providing some mechanism for individuals to challenge unlawful electronic surveillance. *See generally United States v. U.S. Dist. Court for E. Dist. Of Mich., S. Division (Keith)*, 407 U.S. 297, 320 (1972) (holding that domestic electronic surveillance required authorization by warrant, because "we cannot accept the Government's argument that internal security matters are too subtle and complex for judicial evaluation").

In the *forty years* since Congress enacted FISA (and CIPA shortly thereafter), district courts have used their procedures in a variety of cases involving

the most sensitive national security topics litigated in our courts. *See, e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010) (utilizing FISA procedures for criminal prosecution of individual convicted of illegally sharing secret national defense information); *United States v. El-Mezain*, 664 F.3d 467, 564 (5th Cir. 2011) (upholding use of FISA procedures in criminal prosecution for material support of terrorism); *United States v. Amawi*, 695 F.3d 457, 468–75 (upholding use of CIPA and FISA procedures in criminal prosecution for conspiracy to kill people outside the United States, including U.S. armed forces in Iraq). In some of these cases courts have ordered limited disclosures to cleared counsel, but always subject to procedures sufficient to safeguard national security. *In re Guantanamo Bay Detainee Litigation*, 577 F. Supp. 2d 143, 157 (D.D.C. 2008) (ordering disclosure of classified information to cleared habeas counsel under FISA-like procedures); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 122 (2d Cir. 2008) (holding defense counsel who "obtain[ed] a security clearance" could access alleged national security material "consistent with CIPA's imposition on the district courts of a mandatory duty to prevent the unauthorized disclosure of classified information"); *cf. Boumediene v. Bush*, 553 U.S. 723, 783–84 (2008) (finding Combatant Status Review Tribunals were an inadequate substitute for habeas corpus in part because they failed to provide detainees with sufficient access to classified information); *id*. at 769 ("The Government presents

no credible arguments that the military mission at Guantanamo would be compromised if habeas corpus courts had jurisdiction to hear the detainees' claims"). As the Panel rightly recognizes, FISA's procedures are, "not surprisingly, extremely protective of government secrecy." Op. at 45.

The Government's position also overstates the degree of protection available to sensitive information via the state secrets privilege. As with FISA's procedures, review of a state secrets assertion requires the district court to consider the government's invocation of the privilege with a "very careful, indeed a skeptical, eye," including through potential review of the secret evidence itself. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (en banc). Thus, the district court can review secret evidence under either approach. The primary difference between the two sets of procedures is not that one automatically results in greater risk of disclosure than the other. Rather, the difference is substantive: under the state secrets privilege, if the district court confirms the information is properly designated as secret, it then must determine whether "litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets," Op. at 48, 101 (citing *Jeppesen*). If the answer is "yes," then the case is dismissed. In contrast, under FISA the district court reviews to determine "whether the surveillance of the aggrieved person was lawfully authorized and conducted," after which it issues an order ruling on the legality of the surveillance. Op. at 56

9

(quoting Section 1806(f)).[3] Thus, under FISA the district court reviews the information not just to determine whether it is appropriately categorized as *secret*, but also to determine whether the underlying electronic surveillance was *lawful*.

As this analysis shows, while the Government claims it seeks to protect *information*, Gov't PFR at 1, the primary harm it suffers from the Panel's ruling is exposure to *liability*. Under the state secrets privilege it can obtain dismissal without any adjudication of the legality of its conduct, whereas under FISA the district court must determine, using *ex parte, in camera* procedures, whether the surveillance was unlawful.[4]

If FISA's procedures and those like them were sufficient to protect national security for the last forty years in cases involving the war in Iraq, Guantanamo Bay, and various other sensitive contexts, they will suffice here, in a case involving a 13-year old investigation by the FBI into Americans living in Orange County,

---

[3] The state secrets privilege also permits the district court to dismiss if its review of the secret evidence discloses that defendants have a "valid defense." Op. at 101 (citing *In re Sealed Case*, 494 F.3d 139 (D.C. Cir. 2007)). That standard appears functionally equivalent to the standard in FISA, which requires review to determine the legality of the surveillance.

[4] FISA also permits the district court to disclose sensitive information to the targets of surveillance "under appropriate security procedures and protective orders … where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. 1806(f). Were the district court to order such disclosure here, the Government could appeal any order it believed to be erroneous.

none of whom were ever convicted of a crime. The Panel's ruling that FISA applies to this case does not present a question of exceptional importance.

## II.   The Panel's holding that FISA governs Plaintiffs' claims does not warrant rehearing and is entirely correct.

The Panel's holding—that the state secrets privilege does not apply because FISA's detailed scheme regulating electronic surveillance preempts it—follows from this Court's decision in *Kasza*, the Supreme Court's decision in *General Dynamics*, and long-established common law preemption rules. It conflicts with no law in this or any other Circuit, and raises no issues of exceptional importance.[5]

### A.   The Panel applies established precedent holding that Congress displaces the *Reynolds* privilege when it "speaks directly" to it.

The Panel correctly applies hornbook preemption law, under which no clear statement is required for Congress to regulate an area previously subject to common law rulemaking. Op. 52–54. A statute "abrogate[s] a common-law principle" if it merely "'speak[s] directly' to the question addressed by the common law," *United States v. Texas*, 507 U.S. 529, 534 (1993), and indicates "a

---

[5] In its Petition, the government asks for additional briefing to explain the need for rehearing of the Panel's FISA ruling, implying that the claim was not thoroughly addressed before the Panel. Gov't PFR at 9. The parties dedicated a substantial portion of their extensive briefing below to addressing FISA's interaction with the state secrets privilege. *See* Pls.' Br., ECF 32-2 at 50–69; Rose, Allen, Armstrong Br., ECF 63-1 at 35–40; Gov't Br., ECF 73 at 55–61; Pls.' Reply Br., ECF 85-2 at 4–23. The Panel dedicates 29 pages to that question. Op. at 43–72.

statutory purpose" not to apply the common law, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). The Panel correctly follows this law in holding that the *Reynolds* privilege is, at bottom, a common law evidentiary rule, Op. at 47, and that FISA's evidentiary procedures "speak directly" to the privilege, Op. at 53.

In support, the Panel relies on the Supreme Court's most recent state secrets decision, *General Dynamics Corp. v. United States*, 563 U.S. 478 (2011), and *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998). Op. at 54–55. *Kasza* held that because "the state secrets privilege is an evidentiary privilege rooted in federal common law … the relevant inquiry … is whether the statute speaks directly to the question otherwise answered by federal common law." *Id.* at 53 (quoting *Kasza*). *General Dynamics*, which the Government fails to cite, reiterated that *Reynolds* "decided a purely evidentiary dispute by applying evidentiary rules" developed at common law. 563 U.S. at 485.

The Government's contention that the *Reynolds* privilege is instead a constitutional rule that Congress cannot abrogate without a clear statement, Gov't PFR at 9–12, ignores the distinction between the *Totten* bar's limit on the courts' subject matter jurisdiction and the *Reynolds* "evidentiary privilege rooted in federal common law." Op. at 47. As *General Dynamics* makes clear, the state secrets evidentiary privilege is merely a common law rule, and in that respect

12

fundamentally differs from *Totten*'s subject matter bar.

The Government relies on several pre-*General Dynamics* cases, Gov't PFR at 9–11, but those cases do not support its view, as the Panel recognizes. Op. at 54. *El-Masri v. United States*, 479 F.3d 296, 303–04 (4th Cir. 2007) does not concern preemption at all. It merely cites *dicta* in *United States v. Nixon*, 418 U.S. 683, 711 (1974), which stated that where the privilege assertion "relates to the effective discharge of a President's powers, it is constitutionally based." This case is not about the President's powers in the sense at issue in *Nixon*, and in any event *General Dynamics* has since clarified that *Reynolds* describes a federal common law rule.

The other cases the Government cites do not even address the state secrets privilege. Two relate to Congress' power to impose limitations on the President's Article II powers. *See Dep't of Navy v. Egan*, 484 U.S. 518, 527–30 (1988) (security clearances to military personnel); *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 466 (1989) (confidential screening of potential federal judicial nominees). The other two concern whether the Administrative Procedures Act binds the President. *See Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991); *see also* Op. at 54 (distinguishing *Armstrong*).

Given the clear holdings of *Kasza* and *General Dynamics*, the cases on

which the Government relies cannot possibly support rehearing.

> **B.** **The Panel's conclusion that the Government sought to "use"**
> **electronic surveillance information was correct and does not**
> **warrant rehearing.**

The Government also errs in advocating rehearing to reverse the Panel's
conclusion that the Government's motion to dismiss Plaintiffs' claims based on the
state secrets privilege constitutes a "use" of electronic surveillance information
under Section 1806(f), which thereby triggers the district court's obligation to
review the secret information *ex parte* and *in camera* to determine whether the
surveillance was lawful. Gov't PFR at 12–15. The Government never explains why
this aspect of the Panel's ruling creates either conflict or an issue of exceptional
importance. *Id.* In any event, the Panel's interpretation of FISA is correct in light
of the statute's text, structure, and purpose.

*First*, with respect to the text, Section 1806(f) identifies three circumstances
that trigger its ex parte review procedures: (i) when a government notifies a court
pursuant to Sections 1806(c) or (d) of its intent to use or disclose electronic
surveillance information; (ii) when a suppression motion is made by an aggrieved
person pursuant to Section 1806(e); or (iii) "whenever any motion or request is
made by an aggrieved person pursuant to any other statute or rule of the United
States" to "discover or obtain" information "relating to" or "derived from"
electronic surveillance. The Panel correctly holds the first and third prongs apply

here.

The Government's privilege invocation satisfies the first prong of Section 1806(f) by signaling it "intends to enter into evidence or otherwise use . . . in any trial, hearing, or other proceeding in or before any court . . . information obtained or derived from an electronic surveillance." 50 U.S.C. 1806(c). Having access to both its public assertion of the privilege as well as the classified information, the Panel found "the Government, in its assertion of the state secrets privilege, has notified the court that it intends to use information obtained or derived from its electronic surveillance of Plaintiffs as part of its defense against Plaintiffs' allegations." Op. at 63. The Government claims its *public* filings did not make such a claim, but is silent on its secret filings. Gov't PFR at 14–15. In any event, the allegations in the complaint, supported by the declarations of the informant who conducted this surveillance, reveal a wide-ranging intelligence operation that directly captured information from electronic surveillance, and derived other information indirectly from electronic surveillance, sufficient to fall within the ambit of Section 1806(c). Op. at 16–21; ER 85–138 (informant declarations).[6]

The Government denies this, asserting instead that its privilege invocation

---

[6] The Government's assertion that the vast majority of the evidence at issue here does not related to electronic surveillance is impossible to reconcile with the informant's description of his surveillance activities. *See* Gov't PFR at 18; Pls.' Br., ECF 32-2 at 7–13 (statement of facts); ER 85–138 (informant declarations).

does not manifest any intent to use the information, but only a desire to remove it from the litigation. Gov't PFR at 15. This is incorrect, as the Panel rightly finds. Op. at 63. The Government seeks not only removal of the secret information but also *dismissal* of Plaintiffs' claims on the ground that the Government wishes to use the secret information to defend against Plaintiffs' claims. *Id.* ("It is precisely because the Government would like to use this information to defend itself that it has asserted the state secrets privilege."). Indeed, Plaintiffs have repeatedly made clear they have no need for this information to make their *prima facie* case; it is Defendants who wish to use their secret material to contest the evidence Plaintiffs have already presented. *See* Pls.' Br., ECF 32-2 at 37–41; Pls.' Reply Br., ECF 85-2 at 13.

In addition, the Panel rightly concludes the third requirement for triggering Section 1806(f) is met here. Op. at 64. By its terms, the broad "catch-all" language encompasses requests arising from affirmative civil litigation. The Government ignores the statute's language, claiming it does not apply because the reviewing court can only issue "an order suppressing the evidence … or otherwise grant[ing] the motion." Gov't PFR at 15–16. But the statute requires the reviewing court "to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted," which is precisely what Plaintiffs sought below when the Government moved to dismiss the suit, and also what Plaintiffs sought in their

prayer for relief. Op. at 64 (noting Plaintiffs sought injunction "ordering Defendants to destroy or return any information gathered through the unlawful surveillance program"). If the court rules the surveillance unlawful "it shall … otherwise grant the motion of the aggrieved person." 50 U.S.C. 1806(g).

*Second*, the Panel's decision also does not warrant rehearing because its conclusion that FISA supplants the *Reynolds* privilege for cases involving electronic surveillance constitutes the only plausible reading of FISA's structure and purpose as a whole. Op. at 67–69. Congress enacted FISA to govern precisely the scenario for which the Government invokes the *Reynolds* privilege here: to adjudicate in civil litigation the lawfulness of electronic surveillance while simultaneously protecting government secrets from public disclosure. Op. at 59–61.

In particular, the Government's position cannot be reconciled with the private right of action Congress created in Section 1810. Op. 62–69. Section 1810 explicitly permits civil litigants to sue for unlawful electronic surveillance. Plaintiffs pled that cause of action, the district court did not dismiss it, and the Panel affirms that ruling (in part). Op. at 30–31. Section 1810 states:

> An aggrieved person … who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation …

17

Thus, FISA creates a mechanism to challenge unlawful domestic surveillance through civil litigation. Op. at 24–26, 67; *see also* Permanent Select Committee on Intelligence, Foreign Intelligence Surveillance Act of 1978, H.R. Rep. 95-1283, Pt. I, 95th Cong., 2d Sess. 21 (1978) ("In the past several years, abuses of domestic national security surveillances have been disclosed. This evidence alone should demonstrate the inappropriateness of relying solely on executive branch discretion to safeguard civil liberties"); *Matter of Kevork*, 788 F.2d 566, 569 (9th Cir. 1986) (FISA intended to strike "a sound balance between the need for such surveillance and the protection of civil liberties") (quoting S. Rep. No. 604, 95th Cong., 2d Sess. 9, *reprinted in* 1978 U.S. Code Cong. & Ad. News 3904, 3910).

Suits under Section 1810 obviously require procedures for dealing with sensitive national security information. The logical place to find those procedures is in neighboring Section 1806(f). For this reason as well, the Government is wrong to assert Section 1806(f)'s procedures can *only* be used when the Government seeks to introduce electronic surveillance information or in a suppression motion in a criminal case. That reading simply ignores Section 1810. As the Panel explains, "[i]t would make no sense for Congress to pass a comprehensive law concerning foreign intelligence surveillance, expressly enable aggrieved persons to sue for damages when that surveillance is unauthorized, *see id.* § 1810, and provide procedures deemed adequate for the review of national

18

security-related evidence, *see id.* § 1806(f), but not intend for those very procedures to be used when an aggrieved person sues for damages under FISA's civil enforcement mechanism." Op. at 67.

Thus, the court *must* use Section 1806(f) procedures "notwithstanding" the applicability of any other law, including *Reynolds*. 50 U.S.C. 1806(f) (district court "shall, notwithstanding any other law," utilize *in camera*, *ex parte* procedures). That both Section 1806(f) and the *Reynolds* privilege require a formal assertion by a senior government official of their application (the Attorney General with respect to Section 1806(f) and the head of the relevant department with respect to *Reynolds*) further confirms that Congress specifically intended FISA to replace the *Reynolds* privilege by enacting a statutory scheme that protects the same information but allows an aggrieved party their day in court, albeit through restrictive procedures. Op. at 45.[7]

For all these reasons, even if a clear statement abrogating the state secrets

---

[7] The Panel's interpretation of FISA is also consistent with its legislative history, as its extensive review of the legislative record shows. *See generally* Op. at 59. The Government's selective invocation of a sliver of that history does not establish that the Panel erred. *Compare* Gov't PFR at 16–17 (quoting S. Rep. No. 95-701, at 63) (suggesting Section 1806(f) was designed only to protect the Government's secrecy interests) *with* H.R. Rep. No. 95-1283(I) at 93 (1978) ("A decision of illegality [of government surveillance] may not always arise in the context of suppression; rather it may, for example, arise incident to a discovery motion in a civil trial.").

privilege were required, FISA's plain language would satisfy that requirement because FISA clearly manifests Congressional intent to displace the state secrets privilege in cases involving electronic surveillance. Op. at 54.

*Finally*, the Government's request for rehearing on this issue is particularly unjustified because the Panel left open the possibility for the Government to contest any national security concerns raised by the district court's application of FISA. Indeed, it held the district court could even entertain a renewed state secrets motion, depending on how the evidence develops. Op. at 101. If any subsequent evidentiary ruling risks an undue disclosure of secret information notwithstanding FISA's rigorous procedures, the Government may contest that decision, including by appeal. The Panel's decision therefore does not risk endangering the Government's national security prerogatives. It creates no issue of exceptional importance.

## C.    The Panel correctly holds that Section 1806(f) applies to the remainder of Plaintiffs' claims.

What remains of the Government's petition—a plea that the Panel errs in requiring the district court to use Section 1806(f)'s procedures to assess non-electronic surveillance evidence, *compare* Op. at 97–101 *with* Gov't PFR at 18—does not present either conflict or a question of importance warranting rehearing, for at least two reasons.

*First*, the Panel rightly rejects the Government's assertion that Plaintiffs'

20

non-electronic surveillance claims "have nothing to do with FISA," Gov't PFR at 2, 18. Plaintiffs' detailed allegations (and evidence) show the challenged electronic surveillance was central to the broader purpose of Operation Flex. Op. at 17; ER 207 (First Am. Compl.). In any event, the Panel explicitly permits the district court to revisit this ruling if the evidence at issue turns out to overlap less than it appears to at this stage. Op. at 101.

*Second*, the Panel's ruling correctly prevents the absurd result where the district court would review evidence relevant to the search claims (which the Government did not move to dismiss on state secrets grounds) and the FISA Section 1810 claim, but would have to dismiss non-FISA claims because of the Government's assertion of secrecy over *the very same evidence*. Op. at 69. Rather than work a "great expansion" of FISA procedures, Gov't PFR at 18, this aspect of the Panel's holding is most faithful to the common law basis origins of the state secrets privilege by requiring it to incorporate FISA's procedures given the particular facts of this case. *Gen. Dynamics*, 563 U.S. at 485; *Funk v. United States*, 290 U.S. 371, 383 (1933) ("[T]he common law is not immutable but flexible, and by its own principles adapts itself to varying conditions").

## III. The Panel correctly rejects the individual Defendants' constitutional challenges to the use of Section 1806(f) procedures.

The individual Defendants also seek rehearing based on a distinct argument: that utilizing FISA's procedures for secret evidence violates their rights to jury trial

under the Seventh Amendment and their due process rights under the Fifth Amendment. AAR PFR at 3–6; TW PFR at 9–14. But the Panel nowhere says Defendants cannot have a jury trial (assuming both sides survive summary judgment). It holds only that the district court will determine the legality of the electronic surveillance using FISA's procedures. That process comports with the uniform law of this and other courts upholding FISA's application in the criminal context. Defendants' objection is also premature, and makes no coherent attempt to account for the harm that complete dismissal—as Defendants advocate—would impose on Plaintiffs' constitutional rights.

*First*, the Panel's conclusion comports with numerous cases upholding FISA's procedures in criminal prosecutions, despite the right to jury trial in that context. Op. at 70 n.31. Defendants assert the criminal context differs because it involves suppression of evidence rather than adjudication of the merits, *see* TW PFR at 11, but they misread the relevant law and misapprehend Plaintiffs' challenge. The cases upholding FISA do so not because they involve suppression, but because they authorize FISA's procedures only to determine the legality of surveillance, just as the Panel does here. Indeed, some of the cases authorize the use of unclassified summaries and other FISA-like procedures in criminal cases for purposes of adjudicating guilt under CIPA and its common law analogues, not just for litigating suppression issues. In the roughly four decades since the passage of

22

these statutes, "[n]umerous courts have held that FISA's ex parte proceedings do not violate a defendant's due process rights," *United States v. Mohamud*, No. 3:10-CR-00475-KI, 2012 WL 12952303, at \*5 (D. Or. May 7, 2012), while CIPA's constitutionality also "has been tested repeatedly and uniformly upheld," *United States v. Hashmi*, 621 F. Supp. 2d 76, 80 (S.D.N.Y. 2008).

In this regard, the Panel's decision creates no conflict. Defendants cite *no* case holding that FISA procedures (when used to determine the lawfulness of electronic surveillance) violate either the Due Process Clause or the Seventh Amendment, and Plaintiffs are aware of none. As the Panel recognizes, the individual Defendants in this civil action are entitled to no more process than the criminal defendants in the cases cited above. Op. at 70 n.31.

Defendants also hypothesize that FISA's procedures could deny them or their counsel access to certain information that would be useful in their defense. TW PFR at 11. As Defendants acknowledge, the Panel does not dictate how the district court should approach such questions, because they may never even arise. But in any event, this Court and others have upheld restrictions on access to information to parties and cleared counsel, including when a district court utilizes Section 1806(f) to make a merits determination about the legality of FISA-authorized surveillance. In *United States v. Ott*, 827 F.2d 473, 475–77 (9th Cir. 1987), this Court rejected a due process challenge to *in camera* and *ex parte*

disclosure of FISA materials, holding that Section 1806(f) procedures preventing security-cleared criminal defense counsel from accessing the information did not violate due process even though the procedures were to determine "the legality of the government's surveillance activities." Defendants incorrectly suggest *Ott* and other cases "addressed the entirely different context" of admissibility in criminal cases. TW PFR at 13–14. For present purposes, the context is the same; the purpose of a suppression motion is to consider the legality of the evidence collection, and that is precisely what the Panel requires the district court to do here, as Plaintiffs allege the surveillance was unlawful for the various reasons pled in the complaint.

The Panel does not err in refusing Defendants' invitation to reject a large body of FISA and CIPA jurisprudence. Courts have upheld significant restrictions on the disclosure of secret information to criminal defendants by citing the purpose of FISA and CIPA, which is to balance the need to protect legitimately secret information with civil rights. For example, in *United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010), the Second Circuit upheld against a due process challenge a district court's determination, using Section 1806(f)'s procedures, that the government lawfully conducted electronic surveillance against the defendant. *See also United States v. Abu-Jihaad*, 531 F. Supp. 2d 299, 300 (D. Conn. 2008) (describing defendant's suppression motion as including arguments that "FISA-

derived evidence in this case was unlawfully acquired in violation of the Fourth Amendment" and "the FISA-derived evidence in this case was acquired in violation of the statutory requirements of FISA"); *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 346121, at *1 (D. Conn. Feb. 4, 2008) (granting protective order precluding discovery and admissibility of specific classified information pursuant to CIPA after *in camera* and *ex parte* motion).[8]

Defendants Walls and Tidwell also raise a parallel Fifth Amendment due process challenge to Section 1806(f), but it fails for the same reason. Numerous cases have upheld *ex parte* and *in camera* review of FISA materials to determine the *legality* of the surveillance. TW PFR at 11–12. In the analogous CIPA context, courts have also uniformly rejected challenges to serious restrictions on the adversarial process in criminal cases.[9]

---

[8] *See also United States v. Belfield*, 692 F.2d 141, 149 (D.C. Cir. 1982) (rejecting Fifth and Sixth Amendment challenge, noting that "[i]n this circuit and in others, it has constantly been held that the legality of electronic, foreign intelligence surveillance may, even should, be determined on an *in camera*, *ex parte basis*."); *United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) (use of Section 1806 procedures without adversary process to review "the legality of the FISA surveillance" does not violate due process); *United States v. Mahamud*, 838 F. Supp. 2d 881, 889 (D. Minn. 2012) (same); *United States v. Warsame*, 547 F. Supp. 2d 982, 989 (D. Minn. 2008) (same). *See United States v. Falvey*, 540 F. Supp. 1306, 1316 (E.D.N.Y. 1982) (rejecting First, Fourth, Fifth, and Sixth Amendment challenge to FISA, and holding "that the FISA procedures for reviewing the *legality* of a particular surveillance are constitutional") (emphasis added).

[9] *United States v. Hanna,* 661 F.3d 271, 296 (6th Cir. 2011) ("While CIPA

Just as the Fifth and Sixth Amendments permit courts rather than juries to determine the legality of surveillance in criminal cases, so too does the Seventh Amendment. *See* Op. at 70 n.31. Defendants cite no case holding that FISA or CIPA procedures violate a defendant's right to a jury trial. The Seventh "Amendment was designed to preserve the basic institution of jury trial in only its most fundamental elements, not the great mass of procedural forms and details, varying even then so widely among common-law jurisdictions." *Galloway v. United States*, 319 U.S. 372, 392 (1943). Among these procedural forms and details are rulings on questions of law and on the admissibility of evidence, which have historically been reserved for judges, not juries. *Id.* at 390 n.22; *Taglianetti v. United States*, 394 U.S. 316, 317 (1969) (per curiam) (adversary proceedings and full disclosure are not necessarily required "for resolution of every issue raised by an electronic surveillance."). As such, using Section 1806(f) procedures to

---

and constitutional standards contemplate that all records will be made available to a reviewing court in order to assess decisions made below, that does not mean that the materials properly withheld in the district court must be disclosed to the defense, so that they, too, can assess the information."). *See, e.g.*, *United States v. Moussaui*, 382 F.3d 453, 477 (4th Cir. 2004) (in trial of individual allegedly involved in planning 9/11 attacks, ordering substitutions for testimony from witnesses the Government refused to disclose on national security grounds); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 130 (2d Cir. 2008) (CIPA limit on access to classified information did not deprive defendant's Fifth and Sixth Amendment rights); *United States v. Yunis*, 924 F.2d 1086, 1094 (D.C. Cir. 1991) (same).

determine the legality of electronic surveillance to be offered as evidence does not violate the Seventh Amendment.

*Second*, even if Defendants' Seventh Amendment argument would eventually have merit, they raise it prematurely here. Nothing in the Panel's decision states Defendants will not receive a jury trial on whatever portions of the claims must be tried to a jury under the Seventh Amendment. Defendants cite the Panel's statement that FISA procedures will differ from "the open and transparent processes to which litigants are normally entitled." TW PFR at 7 (quoting Op. at 45). But the Panel only requires that the district court handle the secret evidence at issue pursuant to FISA's procedures. It hardly follows that there will be no jury trial. The Panel requires only that FISA's procedures be used to deal with the national security evidence over which the Government would otherwise assert the state secrets privilege, so that the district court can determine the legality of the surveillance at issue. The Panel rightly declines to dictate how the district court should proceed if, at some later stage, it determines there are factual issues relating to the secret information that, under the Seventh Amendment, must be presented to the jury.

In any event, if the district court's hypothetical future ruling on such an issue did not comport with the Seventh Amendment (even though comparable procedures in criminal cases comport with the Fifth and Sixth Amendments),

Defendants could challenge them at that time. Defendants cite no case even suggesting such procedures could *never* satisfy the Seventh Amendment, which is unsurprising given that the Seventh Amendment permits district courts to rule for Plaintiffs (or Defendants) on summary judgment, *Fidelity & Deposit Co. of Maryland v. United States*, 187 U.S. 315, 319–21 (1902), and also via directed verdicts, *Galloway*, 319 U.S. at 388–93.

*Finally*, Defendants provide no coherent account for why their proposed remedy for the hypothetical Seventh Amendment problem they describe— dismissal with prejudice of Plaintiffs' otherwise-cognizable claims against them— does not violate *Plaintiffs'* Seventh Amendment and Due Process rights. On Defendants' theory, the specter of certain limited constraints on full-blown adversarial process to which Defendants would otherwise be entitled requires wholesale denial of *any* process or jury trial to Plaintiffs seeking to vindicate their constitutional and statutory rights.

No case has ever held that the valid assertion of the state secrets privilege and resulting dismissal of litigation violates any party's Seventh Amendment right—even when the government asserts it as a non-party. *See, e.g.*, *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1076 (9th Cir. 2010) (concerning assertion of state secrets privilege by government as intervenor in private civil suit). If application of the *Reynolds* privilege in a circumstance resulting in total

28

dismissal does not violate the Seventh Amendment rights of a civil defendant, as in *Jeppesen*, the procedures of Section 1806(f) certainly cannot.

Defendants suggest this context is different because Plaintiffs benefit from FISA's truncated procedures insofar as they are permitted to proceed at all. TW PFR at 13. But Defendants receive a benefit, too: the ability to defend themselves using otherwise-privileged information via Section 1806(f). Under the Panel's decision, the individual Defendants can also avail themselves of Section 1806(f) procedures should they decide to use secret evidence to defend themselves.

In any event, Defendants' bargaining theory of the Seventh Amendment is incoherent as constitutional law. If there is a Seventh Amendment problem with utilizing FISA's procedures in civil suits for any of the causes of action here, it exists equally for both parties, and therefore can be solved only by adopting some procedure that protects the rights of both. Courts have repeatedly upheld the use of such procedures in analogous contexts. *Cf. Moussaoui*, 382 F.3d at 477 ("CIPA thus enjoins district courts to seek a solution that neither disadvantages the defendant nor penalizes the government (and the public) for protecting classified information that may be vital to national security.").

Congress designed FISA as a mechanism to protect the government's interest in maintaining secret information while simultaneously allowing civil Plaintiffs some recourse when the government oversteps its bounds. The Panel's

determination that FISA does not violate the Seventh Amendment is correct, and

does not warrant rehearing.

## IV. Defendants Armstrong, Allen, and Rose's separate arguments do not warrant rehearing.

### A. The Panel's treatment of Plaintiffs' religious discrimination creates no conflict with *Vernon*.

Individual Defendants AAR also argue for rehearing en banc based on the

Panel's treatment of Plaintiffs' religious discrimination claim, but their argument is

meritless. Plaintiffs' complaint sets forth detailed allegations of Defendants'

intentional discrimination. They directed an investigation targeting Muslims

because of their religion, out of their belief that "Islam is a threat to national

security." ER 215. Given the disturbing nature of these well-pled allegations, the

Panel rightly concludes that these Defendants are not entitled to qualified

immunity on the religious discrimination claims. Op. at 82–83; 91 n.44. Both the

First and Fifth Amendments require strict scrutiny of facial religious

discrimination—such actions are prohibited unless "justified by a compelling

governmental interest" and "closely fitted to further that interest." *Larson v.

Valente*, 456 U.S. 228, 247 (1982); *see also Church of Lukumi Babalu Aye v. City

of Hialeah*, 508 U.S. 520, 546 (1993) (non-neutral government action subject to

"the most rigorous of scrutiny" such that they must be "narrowly tailored in pursuit

of" "interests of the highest order"). Citing *Larson* and *Lukumi*, the Panel

concludes the Agent Defendants are not entitled to qualified immunity "as to claims involving intentional discrimination based on Plaintiffs' religion." Op. at 91 n.44.

Defendants AAR argue that in following this clear Supreme Court precedent, the Panel errs by ignoring (and implicitly overruling) *Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994), or at least by failing to recognize that *Vernon* meant that Plaintiffs' right to be free of "religiously motivated" investigations was not clearly established. But Defendants' argument is based on a fundamental misreading of both *Vernon* and the Panel's discussion of it. *See* AAR PFR at 7–12.

Defendants wrongly assert that *Vernon* held that a "religiously motivated" investigation does not violate the First Amendment. *Id.* at 7. In fact, as the Panel recognizes, Op. at 91 n.44, *Vernon* simply did not involve a "religiously motivated" investigation in the sense of intentional religious discrimination that triggers strict scrutiny. Rather, *Vernon* involved an investigation by the Los Angeles Police Department into whether Vernon, an assistant police chief with LAPD, had improperly imposed his religious views through his office, in violation of the Establishment Clause, by giving favorable treatment to those who held similar religious views; pressuring LAPD officers to attend religious meetings; working to thwart the promotion of gay, lesbian, and female officers because of his

31

religious beliefs; and using religious symbols in official correspondence. *Vernon* emphasized that the investigation had *not* targeted Vernon's religious views in themselves, noting, "[m]ost importantly, it is undisputed that the defendants' actions were aimed at determining whether Vernon's alleged on-duty conduct violated the Establishment Clause." *Vernon*, 27 F.3d at 1397.

The Supreme Court has recognized that government action aimed at avoiding Establishment Clause violations is neutral conduct that does not discriminate among religions and, therefore, does not trigger strict scrutiny. *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 339 (1987) ("*Larson* indicates that laws discriminating among religions are subject to strict scrutiny, . . . and that laws 'affording a uniform benefit to all religions' should be analyzed under *Lemon*. . . . [W]here a statute is neutral on its face and motivated by a permissible purpose of limiting governmental interference with the exercise of religion, we see no justification for applying strict scrutiny to a statute that passes the *Lemon* test."). *Vernon* therefore analyzed the neutral investigation into Vernon's potential Establishment Clause violations under the familiar three-prong test of *Lemon v. Kurtzman*, 403 U.S. 602 (1971).

The Panel rightly refuses to apply *Vernon*'s analysis of—and its application of the *Lemon* test to—neutral government action to the intentional discrimination

Plaintiffs allege here. Op. at 91 n.44. The Supreme Court has clearly stated the *Lemon* test does not apply to facial discrimination against a particular religion. "[T]he [*Lemon*] 'tests' are intended to apply to laws affording a uniform benefit to *all* religions, and not to provisions… that discriminate *among* religions." *Larson*, 456 U.S. at 252 (emphasis in original). The Panel does not overrule *Vernon*, but simply rejects Defendants' arguments that it supplied the governing test, as courts may properly do. *See Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001) ("Courts occasionally must . . . determine whether the current case is closer to one or the other of the earlier opinions.").

Similarly, because *Vernon* did not involve intentional discrimination based on religion, it in no way muddied the clearly established rule of *Larson*, recognized by the Panel, that intentional discrimination against a religion is subject to strict scrutiny. Op. at 91 n.44. The Panel therefore properly denies the Agent Defendants qualified immunity on claims of intentional religious discrimination.

### B. The Panel appropriately holds these agents responsible based on express and plausible allegations that they were personally involved in the unlawful placement of surveillance devices.

Finally, Defendants AAR argue that the Panel improperly holds them responsible for the acts of other individuals based on the allegation that unnamed FBI agents placed listening devices in Fazaga's office and AbdelRahim's home. AAR PFR at 12. Even if true, this would hardly warrant rehearing. But it is not.

33

Defendants argument simply ignores the complaint's specific factual allegations of their personal involvement. Op. at 40–41. The complaint alleges that "Agents Allen and Armstrong caused… electronic surveillance equipment to be installed at the Mission Viejo mosque and used it to monitor conversations of Plaintiff Yassir Fazaga, including conversations held in parts of the mosque not open to the public, including Sheikh Fazaga's office," ER 208–09; and "told Monteilh that the FBI had electronic listening devices in AbdelRahim's house, as well as in AbdelRahim's car and phone . . . . [and] asked him about something that happened inside the house . . . they knew [about] because they had audio surveillance in the home." ER 237. As the district court also recognized, "[t]he complaint sets forth detailed allegations that Defendants planted electronic listening devices in one Plaintiff's home and another's office." ER 27. These allegations sufficiently "plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[10]

---

[10] Although Defendants do not raise this argument in their Petition for Rehearing, these allegations are also unquestionably plausible under *Iqbal*, given that they contain specific factual details, not merely "formulaic recitation of the elements of a constitutional discrimination claim," *Iqbal*, 556 U.S. at 681, and in light of other detailed allegations, including that Defendants had developed a specific interest in both Fazaga and AbdelRahim (based on innocuous and protected First Amendment activity) and had instructed the informant to gather more information on them. ER 227–30, 235–38.

## CONCLUSION

For the foregoing reasons, Defendants' Petitions for Rehearing fail to raise any conflicts between the Panel's decision and any circuit or Supreme Court, and fail to identify any question of exceptional importance warranting rehearing. Plaintiffs respectfully request the Court deny Defendants' Petitions.


Dated:  August 23, 2019               Respectfully submitted,

                                      ACLU OF FOUNDATION OF
                                      SOUTHERN CALIFORNIA

                                       /s/ Mohammad Tajsar
                                      MOHAMMAD TAJSAR

                                      Counsel for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

This brief contains 8,270 words, excluding the items exempted by Fed R.

App P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6). I certify that this brief complies with the length limit designated

by court order dated June 28, 2019.

         s/Mohammad Tajsar

         MOHAMMAD TAJSAR
         Counsel for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

  s/Mohammad Tajsar

MOHAMMAD TAJSAR
Counsel for Plaintiffs-Appellants