**Consolidated Case Nos. 13-55017, 12-56867, 12-56874**
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

Yassir Fazaga, *et al.*,

Plaintiffs-Appellants,

v.

Federal Bureau of Investigation; *et al.*

Defendants- Appellees.
_____

On Appeal from the United States District Court, Central District of California
No. CV 11-301-CJC (VBK)
_____

### PLAINTIFFS' SUPPLEMENTAL BRIEF
_____

Ahilan Arulanantham
arulanantham@law.ucla.edu
UCLA SCHOOL OF LAW
385 Charles Young Drive East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Peter Bibring
pbibring@aclusocal.org
Mohammad Tajsar
mtajsar@aclusocal.org
ACLU FOUNDATION OF
    SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone:  (213) 977-9500
Facsimile:  (213) 977-5297

Dan Stormer
dstormer@hadsellstormer.com
Shaleen Shanbhag
sshanbhag@hadsellstormer.com
HADSELL STORMER RENICK
    & DAI LLP
128 North Fair Oaks Avenue
Pasadena, CA 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079

Amr Shabaik
ashabaik@cair.com
Dina Chehata
dchehata@cair.com
COUNCIL ON AMERICAN-ISLAMIC
    RELATIONS
 Greater Los Angeles Area Office
2180 W. Crescent Ave., Ste. F
Anaheim, CA 92801
Telephone: (714) 776-1177

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

BACKGROUND ...............................................................4

ARGUMENT ....................................................................8

    I.     The State-Secrets Privilege as Clarified by *General Dynamics* Does Not Allow Dismissal Here ........................................8

          A.    Under *General Dynamics*, Dismissal Based on State Secrets is Unavailable Outside the Government Contracting Context ..................................................8

          B.    The *Pre-General Dynamics* State-Secrets Precedent on Which the District Court Relied is No Longer Controlling......11

          C.    The District Court's Dismissal Ruling Contravenes *General Dynamics*....................................................17

  II.   Even Under *Jeppesen*, the District Court Erred in Concluding That Litigating This Case Would Rob Defendants of a Valid Defense or Present an Unacceptable Risk of Disclosure ............................19

  III.  Dismissal of the Religion Claims on State Secrets Grounds at This Preliminary Stage was Premature Because, at Minimum, it is Not Certain That Litigation Will Require Disclosure of State Secrets-Privileged Evidence .........................................................23

          A.    The Government Cannot Show "With Certainty" That Privileged Information is Required to Litigate Plaintiffs' Religion Claims....................................................23

CONCLUSION ...............................................................30

# TABLE OF AUTHORITIES

## Cases

*Al-Haramain Islamic Foundation, Inc., v. Bush*,
    507 F.3d 1190 (9th Cir. 2007) ............................................................12, 13, 29

*Braunfeld v. Brown*,
    366 U.S. 599 (1961)............................................................................................25

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993)............................................................................................25

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)..............................................................................................23

*Duncan v. Cammell, Laird & Co.*
    (1942) A.C. 624, 638 ...................................................................................13, 28

*Emp't Div. v. Smith*,
    494 U.S. 872 (1990)............................................................................................24

*Evans v. Fed. Bureau of Prisons*,
    951 F.3d 578 (D.C. Cir. 2020)...........................................................................19

*Fazaga v. FBI*,
    965 F.3d 1015 (9th Cir. 2020) .................................................................6, 8, 20

*FBI v. Fazaga*,
    142 S. Ct. 1051 (2022).............................................................................1, 3, 7

*General Dynamics Corp. v. United States*,
    563 U.S. 478 (2011)....................................................................................*passim*

*Gratz v. Bollinger*,
    539 U.S. 244 (2003)............................................................................................25

*Kasza v. Browner*,
    133 F.3d 1159 (9th Cir. 1998) ....................................................................11, 12

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ...........................................................................18

*Langere v. Verizon Wireless Servs., LLC*,
    983 F.3d 1115 (9th Cir. 2020) ............................................................16

*Larson v. Valente*,
    456 U.S. 228 (1982).............................................................................24

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) (en banc) ................................2, 9, 16, 17

*Mohamed v. Jeppesen Dataplan, Inc.*,
    614 F.3d 1070 (9th Cir. 2010) (en banc) ......................................*passim*

*Molerio v. FBI*,
    749 F.2d 815 (D.C. Cir. 1984) .............................................................20

*In re Nichols*,
    10 F.4th 956 (9th Cir. 2021) ........................................................16, 17

*Tenet v. Doe*,
    544 U.S. 1 (2005)..................................................................10, 11, 14

*Totten v. United States*,
    92 U.S. 105 (1875)...........................................................................*passim*

*United States v. Lindsey*,
    634 F.3d 541 (9th Cir. 2011) ........................................................16, 17

*United States v. Reynolds*,
    345 U.S. 1 (1953)............................................................................*passim*

*United States v. Slade*,
    873 F.3d 712 (9th Cir. 2017) ...............................................................16

*United States v. Zubaydah*,
    142 S. Ct. 959 (2022)....................................................................9, 11

*Webster v. Doe*,
    486 U.S. 592 (1988)............................................................................23

*Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*,
    454 U.S. 139 (1981)............................................................................14

**Statutes**

50 U.S.C. 1810.................................................................................4, 6, 7, 8

**Other Authorities**

FBI's Domestic Investigations and Operations Guide (2008),
    https://perma.cc/FFX2-G4LT..............................................................26

## INTRODUCTION

Pursuant to this Court's supplemental briefing order, ECF 160, Plaintiffs herein address how this Court should resolve the issues left open by the Supreme Court's decision. *See FBI v. Fazaga*, 142 S. Ct. 1051 (2022). The Supreme Court did not decide "whether the District Court was correct to dismiss [Plaintiffs'] claims on the pleadings." *Id*. at 1063.

This Court should hold the district court erred in dismissing Plaintiffs' religion claims on the pleadings, for three reasons. *First*, the state-secrets privilege does not authorize the dismissal of the religion claims in this case because the state-secrets doctrine applicable here is only the *Reynolds* evidentiary privilege. *See United States v. Reynolds*, 345 U.S. 1 (1953). Like other evidentiary privileges, when a court finds *Reynolds* applicable, "[t]he privileged information is excluded and the trial goes on without it. . . . [T]he Court [does] not order judgment in favor of the Government." *General Dynamics Corp. v. United States*, 563 U.S. 478, 485 (2011). Under *Reynolds*, dismissals can occur only when plaintiffs cannot prove their case without the secret evidence.

This Court has deviated from that approach by permitting dismissal under *Reynolds* where litigation will deprive the defendant of a "valid defense," and where litigation creates an "unacceptable risk" of disclosure. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1083-84 (9th Cir. 2010) (en banc). But this Court's

1

precedent expanding *Reynolds* is clearly irreconcilable with *General Dynamics*. That case establishes that *Reynolds* describes "an evidentiary rule," not a justiciability bar. Courts may dismiss state secrets cases where their subject matter renders them non-justiciable, but only when exercising the common law "authority to fashion contractual remedies in Government-contracting disputes," *General Dynamics*, 563 U.S. at 485-86 (citing *Totten v. United States*, 92 U.S. 105 (1875)). As this case is not a contracting dispute, the district court had no authority to dismiss Plaintiffs' religion claims unless it concluded that excluding the secret evidence would leave Plaintiffs unable to make their case. Because this Court must follow *General Dynamics*, it must disavow prior circuit precedent authorizing dismissal on other bases, and reverse the district court's conclusion that dismissal was a permissible remedy here. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

*Second*, even if the Court concludes *General Dynamics* has not abrogated prior circuit precedent, the district court still erred in applying that precedent to dismiss Plaintiffs' religion claims. The district court erred in holding the Government had established a "valid defense," 1 E.R. 60-62, particularly under the rule this Court adopted for what constitutes such a defense (which remains unaffected by the Supreme Court's decision and therefore is law of the case). In addition, the district court erred in concluding this case presents an "unacceptable

risk" of disclosing state secrets both because the record does not support that conclusion and because Plaintiffs have unambiguously disavowed any interest in discovering secret information. *See* 1 E.R. 63-64. Even before *General Dynamics*, there was no basis to apply this Court's "unacceptable risk" dismissal rule where the only risk would be of the Government's own making. Furthermore, the district court erred in applying the dismissal rule in light of the remedy Plaintiffs seek here, which involves claims for injunctive relief from ongoing constitutional violations. *See* 1 E.R. 48-49.

*Third*, as Plaintiffs argued in prior briefing to this Court, *see* ECF 32-2 at 36-50, ECF 85-2 at 26-31, the district court acted prematurely in concluding that litigating this case will necessarily require the disclosure of state secrets. Whether or not a court could ever reach that conclusion on the pleadings, it was error here, where the Government has acknowledged that a substantial body of non-privileged evidence—including "the majority of the audio and video" recordings made by their informant—is available for the litigation; Plaintiffs have not requested any discovery; and the district court had no factual record on which to assess both the risk of disclosure from proceeding to trial and whether that risk could be mitigated by procedural safeguards short of dismissal. Indeed, the district court had no way of knowing whether "the Government's evidence is privileged" at all, ECF 160 (quoting *Fazaga*, 142 S. Ct. at 1063), because the Government has not—and could

not have—identified what its evidence *is*, as neither side has sought to introduce any purportedly secret documents into the record to prove any claims or defenses in this case.

## BACKGROUND

The facts underlying this appeal are described in detail in Plaintiffs' opening brief. *See* ECF 32-2 at 7-13. As explained there, Plaintiffs have plausibly alleged that the FBI surveilled them and thousands of other Americans in Southern California simply because they practice Islam. Various publicly-available sources confirm the allegations, including declarations from the Government's own informant already filed in this case.

Plaintiffs sued the United States, the FBI, and five individual officers who oversaw the informant's actions, alleging two types of unlawful conduct: illegal searches under the Fourth Amendment, 50 U.S.C. 1810 (FISA), and California law (both under Article 1, section 1 of the California constitution and common law invasion of privacy torts) actionable through the Federal Tort Claims Act ("search claims"); and unlawful targeting of religion under the First and Fifth Amendments, 42 U.S.C. 1985(3), the Religious Freedom Restoration Act, the Privacy Act, and California's Constitution and the Bane Act, Cal. Civil Code § 52.1 through the FTCA ("religion claims"). ECF 63-2, SER 232-38. They sought damages, declaratory relief, and expungement or disclosure of the records of unlawful

surveillance. 2 E.R. 248-49.

In district court, the Government moved to dismiss the religion claims under the state-secrets privilege. ECF 63-2, SER 232-38. Among other supporting materials, it submitted a public declaration from then-Attorney General Eric Holder, 2 E.R. 283-94, stating that he based his privilege assertion on review of the declarations and "personal consideration of the matter," concluding that disclosure of information within the categories he described "could reasonably be expected to cause significant harm to the national security." 2 E.R. 284-85. The Government then argued that its decision to assert state secrets robbed itself of a "valid defense" to the religion claims, thus requiring their dismissal. 2 E.R. 173-78.

Notably, the Government did not seek dismissal of the search claims, stating that "[a]t least at this stage of the proceedings, sufficient non-privileged evidence may be available to litigate these claims should they otherwise survive motions to dismiss on non-privilege grounds." 2 E.R. 161. In particular, the Government did not assert privilege over much of the information its informant collected, as it "expect[ed] that the majority of the audio and video will be available in connection with further proceedings" in this case. 2 E.R. 162. *See also id*. at 2 E.R. 160 ("[t]he Government does not seek . . . to bar disclosure of all information concerning Operation Flex or Monteilh's activities.").

In response, Plaintiffs disclaimed any need for secret evidence to establish

their religion claims, filing four public declarations from the Government's informant describing in detail the surveillance program he conducted and how he targeted Plaintiffs because of their religion at the direction of his FBI handlers—i.e., Defendants. *See* Opp'n to Mot. to Dismiss at 21-22, *Fazaga v. FBI*, No. 8:11-cv-0031 (C.D. Cal. Dec. 23, 2011), ECF No. 64. Plaintiffs also argued dismissal would be premature, and that the privilege was inapplicable. *Id.* at 31-40.

The district court granted the Government's motion to dismiss the religion claims on state-secrets grounds, and also dismissed the search claims the Government had *not* moved to dismiss, leaving only Plaintiffs' FISA claim under Section 1810. 1 E.R. 65-66. The district court concluded dismissal was required for two reasons: 1) "the Government will inevitably need the privileged information to defend" against Plaintiffs' claims, and 2) the "privileged and nonprivileged information are inextricably intertwined" and "cannot be separated as a practical matter." 1 E.R. 54-55, 63-64.

On appeal, this Court affirmed in part, reversed in part, and remanded. *Fazaga v. FBI*, 965 F.3d 1015 (9th Cir. 2020), *rev'd*, 142 S. Ct. 1051. As to the state secrets issues, this Court first ruled the district court erred in dismissing the search claims, because Defendants had *not* sought to dismiss them on privilege grounds. *Id.* at 1042-10473.

This Court also reversed the district court's dismissal of Plaintiffs' religion

claims, holding FISA's procedures codified in Section 1806(f) displaced the "dismissal remedy" that accompanies the state-secrets privilege (under this Court's law) and required the district court to review the surveillance ex parte and in camera to determine whether it was lawfully authorized and conducted. *Id*. at 1043-52.

Following the Government's successful petition for certiorari, the Supreme Court reversed this Court's FISA holding, resolving "only the narrow question whether § 1806(f) displaces the state secrets privilege." *Fazaga*, 142 S. Ct. at 1062–63. The Court held FISA did not displace the privilege, concluding "Section 1806(f) does not have that effect." *Id.* at 1063.

The Supreme Court did not decide "whether the District Court was correct to dismiss [Plaintiffs'] claims on the pleadings." *Id.* at 1063. Specifically, it did not decide whether state secrets authorizes dismissal in cases that do not "concern[] a Government contract or where the very subject of the action is secret." *Id*. (noting "[t]he Ninth Circuit did not decide those questions, and we do not resolve them here."). Nor did it decide whether the district court acted prematurely, *see* ECF 32-2 at 36-50, or whether the Government had established that the Attorney General had personally determined that any information subject to disclosure was in fact secret, *id*. at 29 n.7 & ECF 85-2 at 36-37 n.11.

This brief now addresses "which issues should be addressed by this Court on

remand and the appropriate resolution of those issues." ECF 160.[1]

## ARGUMENT

**I.**   **The State-Secrets Privilege as Clarified by *General Dynamics* Does Not Allow Dismissal Here**

The district court erred in dismissing Plaintiffs' religion claims because

dismissal is not available as a remedy under the state-secrets evidentiary privilege

where, as here, a plaintiff can make their case without privileged evidence. The

Supreme Court explained in *General Dynamics* that, like other evidentiary

privileges, when a court finds the *Reynolds* state-secrets privilege applicable "[t]he

privileged information is excluded and the trial goes on without it. . . . [T]he Court

[does] not order judgment in favor of the Government." *General Dynamics*, 563

U.S. at 485. *General Dynamics* also recognized a "quite different" state secrets

doctrine permits dismissal in certain Government-contracting disputes, including

those involving contracts to spy, because they are not justiciable. *Id.* at 485 (citing

---

[1] Plaintiffs do not address those aspects of this Court's prior decision that remain unaffected by the Supreme Court's ruling. Specifically, nothing in the Supreme Court's decision alters this Court's reversal of the district court's dismissal of the search claims, *see Fazaga*, 965 F.3d at 1042-43; its test for what constitutes a "valid defense," *id.* at 1067; its rejection of Defendants' cross-appeal seeking dismissal of Plaintiffs' FISA claims, *see id.* at 1030-39; its conclusion that expungement relief remains available for Plaintiffs' constitutional claims, *see id.* at 1053-55; its resolution of various questions under *Bivens*, *see id.* at 1056-59; and its rejection of alternative grounds for dismissal of Plaintiffs' FTCA claims, *see id.* at 1064-65. As the Government challenged none of these holdings at the Supreme Court, they are now law of the case.

*Totten*). But that doctrine does not apply here, as this is not a contract dispute.

This Court has deviated from the doctrinal framework described above by permitting dismissal under *Reynolds* even in cases *not* involving the federal courts' common law authority over disputes concerning secret contracts, and even where the plaintiff can make their case without privileged information. *Jeppesen*, 614 F.3d at 1083-84. But that precedent no longer governs. "Although we are typically bound by the prior decision of another three-judge panel, we may depart from such precedent if a subsequent Supreme Court opinion 'undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'" *Miller*, 335 F.3d at 900. Thus, *General Dynamics* controls, and it requires reversal.

### A. Under *General Dynamics*, Dismissal Based on State Secrets is Unavailable Outside the Government Contracting Context

As the Supreme Court made clear in *General Dynamics*, the concept of state secrets encompasses two "quite different" doctrines. *General Dynamics*, 563 U.S. at 485. The one involved here is a common-law privilege "in the law of evidence," concerning "military and state secrets," *Reynolds*, 345 U.S. at 6–7. The *Reynolds* "state secrets privilege permits the Government to *prevent disclosure of information* when that disclosure would harm national security interests." *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022) (emphasis added). *See also id*. at 972 ("most litigation . . . may, after a successful assertion of the state secrets

9

privilege, continue without the government's privileged proof").

Like other privileges, the *Reynolds* privilege is a creature of the law of evidence. Therefore, when the Government successfully invokes it, "the trial goes on without" the secret information. *General Dynamics*, 563 U.S. at 485. Under a proper understanding of *Reynolds*, dismissals occur only when plaintiffs cannot prove their case without the secret evidence. *See also* Professor Donohue Amicus Brf. at 4-17, *FBI v. Fazaga*, No. 20-828 (U.S. Aug. 6, 2021), available at, https://www.supremecourt.gov/DocketPDF/20/20-828/186908/ 20210812133600601_FBI%20v.%20Fazaga%20amicus%20brief.pdf. (describing privilege's origin and collecting cases)).

The other state-secrets doctrine—not involved here—is a justiciability bar the Supreme Court created from its "authority to fashion contractual remedies in Government-contracting disputes." *General Dynamics*, 563 U.S. at 485. That doctrine requires dismissal of government-contracting lawsuits "where the very subject matter of the action . . . [i]s a matter of state secret." *Tenet v. Doe*, 544 U.S. 1, 9 (2005) (discussing *Totten*) (cleaned up); *Tenet*, 544 U.S. at 12 (Scalia, J., concurring) ("the bar of *Totten* is a jurisdictional one"). The authority for such dismissals is "something quite different from a mere evidentiary point," and the "state-secrets jurisprudence bearing upon that authority is not *Reynolds*, but two cases dealing with alleged contracts to spy." *General Dynamics*, 563 U.S. at 485-

10

86 (citing *Tenet* and *Totten*). Individuals who enter into such secret contracts "assume[] the risk that state secrets would prevent the adjudication of" any disputes that may arise from them. *Id.* at 491.

Because this case is not a "Government-contracting dispute," *General Dynamics*, 563 U.S. at 485, the state-secrets privilege applicable here is the evidentiary rule. That rule only permits the Government to "prevent disclosure of information." *Zubaydah*, 142 S. Ct. at 967. Plaintiffs never contracted with the Government, and never assumed the risk they would forfeit their First Amendment rights simply by practicing their faith. Nor is there any risk of "graymail" that could justify dismissal in cases where the plaintiffs' work with the government has given them access to secrets they could use as leverage. *Tenet*, 544 U.S. at 11. Therefore, the state secrets rule applicable in this case is just an evidentiary privilege: evidence covered by the privilege is excluded, but "the trial goes on without it." *General Dynamics*, 563 U.S. at 485.

### B. The Pre-*General Dynamics* State-Secrets Precedent on Which the District Court Relied is No Longer Controlling

Prior to *General Dynamics*, this Court adopted a different understanding of state-secrets doctrine. Over time, it has departed far from the Supreme Court's current understanding. That departure likely began in *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998), a suit by "former workers at a classified [Air Force] facility" concerning alleged mishandling of hazardous waste materials. *Id.* at 1162. The

district court granted summary judgment for the Air Force after it asserted state secrets to resist discovery and then argued that plaintiffs had no admissible evidence establishing that hazardous waste had been at the site. *Id*. at 1163. While *Reynolds* itself likely controlled the outcome insofar as the critical evidence Plaintiffs needed was privileged, this Court's reasoning went beyond *Reynolds*. It stated that a court could look at otherwise-privileged evidence to determine whether the defendant had a "valid defense," and if so rely on it to grant summary judgment for the defense. *See id*. at 1166. *Kasza* also stated that if "the very subject matter" of a case is secret, then it should be dismissed irrespective of whether the plaintiff could proceed with nonprivileged evidence, citing *Totten*. *Kasza*, 133 F.3d at 1166. *Kasza* thus conflated *Reynolds* and *Totten* to some degree, even as it also described "the state secrets privilege" as "an evidentiary privilege rooted in federal common law." *Id*. at 1167.

The tension between this Court's state secrets doctrine and the Supreme Court's understanding as explained in *General Dynamics* grew in *Al-Haramain Islamic Foundation, Inc., v. Bush*, 507 F.3d 1190 (9th Cir. 2007). There, a religious charity and its directors challenged the government's warrantless electronic surveillance of their communications based on a secret document the government had inadvertently disclosed. *Id.* at 1193. This Court held "the very subject matter" of the case was not a state secret, but nonetheless ordered dismissal because the

plaintiffs could not establish standing absent the secret document. *Id.* at 1203-05. Although this result also likely followed from straightforward application of *Reynolds*, *Al-Haramain* also conflated *Reynolds* with *Totten*, calling the latter "a form of the privilege," *id.* at 1196, and describing a "continuum of analysis" from *Totten*'s subject matter rule to *Reynolds*' privilege analysis. *Id.* at 1201.

This Court entirely abandoned any understanding of *Reynolds* as merely an evidentiary privilege in *Jeppesen*. That case involved damage claims against a private logistics company for its role in a government kidnapping and torture program. 614 F.3d at 1073-76. *Jeppesen* held, 6-5 en banc, that the whole case should be dismissed at the pleadings stage, thereby substantially expanding the circumstances under which a valid assertion of the *Reynolds* privilege may result in dismissal in at least three respects. *Id.* at 1087-89. *First*, it held the government may assert the *Reynolds* privilege even before a discovery request or motion calls for the disclosure of specific privileged evidence. *Compare Duncan v. Cammell, Laird & Co.*, (1942) A.C. 624, 638 (cited in *Reynolds*) (requiring asserting official "have seen and considered the *contents of the documents*" alleged to be secret) *with Jeppesen*, 614 F.3d at 1080 (permitting dismissal before specific documents could be identified). *Second*, *Jeppesen* created a new basis for dismissal. Even if the plaintiffs could make their case without resort to secret information, and even if defendants lacked a valid defense based on that information, the court still had to

dismiss if litigating the merits would present an "unacceptable risk" of disclosing state secrets. *Id.* at 1083. While the traditional rule under *Reynolds* (and every other privilege in the law of evidence) would merely require exclusion of specific evidence based on such risks, *Jeppesen* authorized dismissal on that basis. *Third*, *Jeppesen* appears to be the first case in which this Court actually dismissed claims not arising from a secret government contract. Again conflating *Reynolds* and *Totten*, *Jeppesen* contended the "discussion of *Totten* in *Reynolds*" must "mean that the *Totten* bar applies to cases in which 'the very subject matter of the action' is 'a matter of state secret,'" and that a "contract to perform espionage" is only one such example. *Id.* at 1078.[2]

The conflict between *General Dynamics* and this Court's prior cases—and in particular *Jeppesen*—is stark. Whereas *General Dynamics* established that the *Reynolds* evidentiary rule for excluding secret information is "quite different" from

_____

[2] *Jeppesen* concluded that the *Totten* bar must apply outside the government contracting context because it believed the Supreme Court had applied *Totten* to a NEPA case. *Jeppesen*, 614 F.3d at 1078 (citing *Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*, 454 U.S. 139 (1981)). But by its terms *Weinberger* simply applied NEPA's exception for classified information. *Id.* at 145-46. Its later statement that its rule was "similar" to the *Totten* bar did not indicate an expansion of that doctrine far beyond its rationale. *Jeppesen* also read *Tenet* to have recognized *Weinberger*'s purported expansion of *Totten*, but *Tenet* actually stated the opposite, holding that *Reynolds* "cannot plausibly be read to have replaced the categorical *Totten* bar . . . in the distinct class of cases that depend upon clandestine spy relationships." *Tenet*, 544 U.S. at 9-10. In any event, any ambiguity created by the Supreme Court's prior cases on this point was resolved by *General Dynamics*.

*Totten*'s justiciability bar for government contracting cases, *Jeppesen* viewed them as part of a single doctrine, with the two cases resting on a "continuum," *Jeppesen*, 614 F.3d at 1089 (citing *Al-Haramain*, 507 F.3d at 1201). And whereas *General Dynamics* made clear that *Reynolds* involved a "purely evidentiary" rule, such that "the Court [does] not order judgment for the Government" simply because the privilege applies, *Jeppesen* found dismissal appropriate not only when "the plaintiff cannot prove the prima facie elements of her claim with nonprivileged evidence," but *also* when "the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim," or, most unusually, when "privileged evidence [is] inseparable from nonprivileged information that will be necessary to the claims or defenses [such that] litigating the case to a judgment on the merits would present an *unacceptable risk* of disclosing state secrets." *Jeppesen*, 614 F.3d at 1083 (emphasis added). Those latter two bases for dismissal may make sense in the context of the subject matter jurisdiction rule the Supreme Court fashioned for "Government-contracting disputes," where the *Totten* justiciability bar applies, *General Dynamics*, 563 U.S. at 485, but they obviously have no place when resolving "a purely evidentiary dispute by applying evidentiary rules," which is what *Reynolds* did, as *General Dynamics* explained. *Id.*

Defendants may argue in response that the *holding* of *General Dynamics* is

15

not inconsistent with *Jeppesen*, insofar as *General Dynamics* ultimately applied the *Totten* bar to the government contract at issue there. However, this Court must "focus on the *reasoning* and *analysis* in support of a [Supreme Court] holding, rather than the holding alone," when assessing whether its precedent has been abrogated by subsequent Supreme Court authority. *United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011) (citing *Miller*). *Miller* applies even when the Supreme Court applies a rule to a wholly different factual context, and without explicitly overturning prior precedent on which this Court relied. *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1122 (9th Cir. 2020) ("At the end, our cases distill to a simple principle: when a rule announced by this court and a rule later announced by the Supreme Court cannot both be true at the same time, they are clearly irreconcilable."); *see, e.g.*, *In re Nichols*, 10 F.4th 956 (9th Cir. 2021) (setting aside prior bankruptcy decision when the holding of an intervening Supreme Court decision interpreting an entirely different section of bankruptcy code established a rule that undermined prior circuit precedent); *United States v. Slade*, 873 F.3d 712, 715 (9th Cir. 2017) (decision effectively overruled because its reasoning skipped an "analytical step" the Supreme Court later required).

Thus, *Miller*'s rule turns not on the presence of similar factual circumstances between the earlier precedent and the intervening Supreme Court authority, but rather on the reasoning undergirding the conflicting cases. *Langere*, 983 F.3d at

16

1121 (recognizing that "even when the issue in the Supreme Court case is not 'identical' to the one decided by our court, the Supreme Court's reasoning may be controlling nonetheless.") (quoting *Miller*).[3]

Accordingly, *Jeppesen*'s rejection of plaintiffs' argument that "the *Totten* bar applies only to a narrow category of . . . claims premised on a plaintiff's espionage relationship with the government," and its reasoning that "the *Totten* bar and the *Reynolds* privilege form a 'continuum of analysis,'" are clearly irreconcilable with *General Dynamics.* 614 F.3d at 1078, 1089. *Jeppesen* "cannot stand" after *General Dynamics*, *In re Nichols*, 10 F.4th at 961, and no longer binds this Court.

## C.    The District Court's Dismissal Ruling Contravenes *General Dynamics*

Because the district court's dismissal ruling relied heavily on those aspects of *Jeppesen* that contravene *General Dynamics*, it is clearly irreconcilable with Supreme Court authority and therefore must be reversed. Rejecting Plaintiffs' arguments as "impl[ying] an overly rigid understanding of the difference between the *Totten* bar and *Reynolds* privilege," the district court held that dismissal was warranted both because Defendants needed privileged evidence to establish their

---

[3] *Miller* applies even when a three-judge panel is faced with intervening authority that undercuts prior precedent established *en banc*, as in *Jeppesen*. *See, e.g.*, *Lindsey*, 634 F.3d at 548-50 (declining to follow prior en banc decision in the face of subsequent Supreme Court rule).

"full and effective defense against Plaintiffs' claims," 1 E.R. 61, and because

"privileged and nonprivileged information are inextricably intertwined, such that

litigating the instant case to judgment on the merits would present an unacceptable

risk of disclosing state secrets," 1 E.R. 63. *See also* 1 E.R. 43 (describing *Reynolds*

and *Totten* as lying on a "continuum").

Those holdings are untenable after *General Dynamics*. That decision

clarified that *Reynolds* operates "purely" as an evidentiary rule, and that *Totten*'s

rule permitting dismissal of certain contracting suits involves "something quite

different from a mere evidentiary point." 563 U.S. at 485. Therefore, courts

applying the *Reynolds* privilege may not dismiss because the defendants would

have a valid defense if they could introduce secret evidence, or because litigation

presents an "unacceptable" risk of inadvertent disclosure. If a district court finds

the privilege properly invoked, "[t]he privileged information is excluded and the

trial goes on without it." *Id*. Put differently, there is no way to affirm the district

court's dismissal order "without running afoul of the intervening authority." *Lair v.

Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (internal quotations and citation

omitted).

Because neither side disputes that Plaintiffs can make out their prima facie

case of religious discrimination using only non-privileged evidence, this Court

should reverse the dismissal. If, on remand, the district court concludes that

privileged and non-privileged information are so inextricably intertwined that litigation is likely to result in inadvertent disclosure, it could exclude not just privileged information, but also the information inextricably intertwined with it. *Cf. Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (in Freedom of Information Act context, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions") (internal quotations and citation omitted). Because the district court's rationale for dismissal rested entirely on *Jeppesen*'s holding expanding the *Totten* bar beyond government contracting disputes, it contravenes *General Dynamics*. *Compare* 1 E.R. 45-46, 60 (citing *Totten*) *with General Dynamics*, 563 U.S. at 485 (making clear that dismissal authority is limited to contracting suits).

## II. Even Under *Jeppesen*, the District Court Erred in Concluding That Litigating This Case Would Rob Defendants of a Valid Defense or Present an Unacceptable Risk of Disclosure

Even if *Jeppesen* remains good law, reversal would still be required because the record here does not support application of either the "valid defense" or the "unacceptable risk of disclosure" grounds for dismissal.[4]

*First*, the Government's early assertion of the privilege here failed to satisfy

---

[4] The Government has not argued for dismissal on the ground that "the very subject matter" of this case is a state secret. Any such argument would be meritless, as the Government has acknowledged its informant worked for the FBI and represented that it could likely make large portions of his recordings and notes available without threatening national security. 2 E.R. 161-62, 268-70.

the high standard a defendant must meet to win dismissal based on a "valid defense." As this Court explained, to dismiss on that basis, a district court must find the defense is "meritorious and not merely plausible and would require judgment for the defendant." *Fazaga*, 965 F.3d at 1067 (quoting *In re Sealed Case*, 494 F.3d 139, 149 (D.C. Cir. 2007)). To make that determination, a district court must "conduct[] an appropriately tailored *in camera* review of the privileged record" in order to determine whether "defendants have a legally meritorious defense that prevents recovery by the plaintiffs." *Fazaga*, 965 F.3d at 1067 (internal quotations and citation omitted).

The district court conducted no such assessment here. Nor could it have, since the prematurity of the Government's privilege assertion—made before Plaintiffs served any discovery requests, filed dispositive motions, or presented their own evidence—would have rendered *in camera* review of privileged evidence to resolve the merits impossible. *Cf. Molerio v. FBI*, 749 F.2d 815, 822, 825-26 (D.C. Cir. 1984) (reviewing secret materials to determine, after "in camera consideration" of privileged information, that plaintiff's claims were "properly dismissed" on the merits). Indeed, the Government has never asserted that secret information would in fact exonerate Defendants—i.e., prove that religion played no motivating part in the decision to surveil Plaintiffs, or that their use of a

religious classification was sufficiently tailored to satisfy strict scrutiny.[5] Because the district court did not reach—and could not have reached—the conclusion that the secret information would exonerate Defendants, it erred in dismissing the suit on "valid defense" grounds.

*Second*, the district court erred when it held that litigating this case will generate an unacceptable risk that secret information will be disclosed. 1 E.R. 63-64. The pleadings alone do not provide the certainty required to evaluate whether and how "inextricably intertwined" the Government's secret evidence may be, given the troves of public material the parties have already shown are not privileged. The Government itself acknowledged that litigation over the search claims could proceed. And, even on the religion claims, it suggested in the alternative that the district court allow some discovery to establish a fuller record before resolving its privilege assertion. ECF 63-2 at SER 235-37.

In addition, the risk of disclosure cannot justify dismissal where, as here, neither Plaintiffs nor the informant possesses any state secrets, and Plaintiffs have disclaimed any interest in obtaining them. Only the FBI holds the secrets here; there is no risk that Plaintiffs could disclose them. *See* 2 E.R. 269 ("the FBI cannot

---

[5] The district court did not resolve even whether the anti-discrimination standard articulated here is the one that it would have applied had it attempted to resolve the merits, which further confirms that it did not conduct any meaningful merits analysis. 2 E.R. 78 n.25 (Government's brief expressing skepticism that strict scrutiny should apply); *see also* ECF 73 at 50 (arguing same on appeal).

publicly disclose" identities, reasons, and sources); 2 E.R. 271 ("The FBI seeks to protect . . . information that would confirm or deny" those facts); 2 E.R. 279 (same as to sources and methods). The *Reynolds* privilege is concerned only with preventing the disclosure of secret information. Because Plaintiffs have disclaimed any intention to seek secret information, the Government has complete control over any disclosure risk. State-secrets doctrine does not permit the Government to win dismissal at the pleading stage based on the risk that its *own* actions could disclose state secrets.[6]

*Third*, as Plaintiffs argued at length in their prior briefing to this Court, dismissal is unavailable here because Plaintiffs seek injunctive relief for an on-going constitutional violation: the maintenance of records obtained in violation of their rights to freedom of religion. *See* ECF 32-2 at 69-87 & ECF 85-2 at 31-36. Unlike in *Totten* cases, where litigants "assume the risk" they will lose the opportunity to vindicate their rights under the secret contract, *General Dynamics*, 563 U.S. at 491, Plaintiffs here waived no rights simply by practicing their faith.

---

[6] The Government argued previously the district court ordered dismissal because litigation would present an unacceptable risk of disclosing secret information even *without* privileged evidence, but the district court made no such finding. It found that "the Government will inevitably need the privileged information to defend against Plaintiffs' [religion claims]." 1 E.R. 55. While the district court noted that secret and non-secret information were "inextricably intertwined," 1 E.R. 63, it was referring to the *Government's* evidence; its rationale was that "any *rebuttal*" of Plaintiffs' allegations would create the risk of disclosure. 1 E.R. 49 (emphasis added); 1 E.R. 60-62 (same).

Absent any such implicit waiver, denying Plaintiffs a forum in which to present their constitutional claims to stop on-going constitutional violations poses serious constitutional problems. *Cf. Webster v. Doe*, 486 U.S. 592, 603 (1988) (noting "the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim").

"[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). As Plaintiffs previously explained, this Court should not expand the state-secrets privilege to cut off that form of relief here, where doing so would contravene the basic structure of our constitutional system of government.

**III.  Dismissal of the Religion Claims on State Secrets Grounds at This Preliminary Stage was Premature Because, at Minimum, it is Not Certain That Litigation Will Require Disclosure of State Secrets-Privileged Evidence**

Alternatively, this Court could reverse the district court's dismissal of the religion claims because it acted prematurely in ruling on that basis, as Plaintiffs previously argued. *See* ECF 32-2 at 36-50 & ECF 85-2 at 26-31. Neither this Court nor the Supreme Court has addressed these arguments, and they constitute a sufficient basis on which to reverse the district court.

**A.  The Government Cannot Show "With Certainty" That Privileged Information is Required to Litigate Plaintiffs' Religion Claims**

Even under *Jeppesen*, the Government may assert the *Reynolds* privilege at

the pleading stage only if it can show "*with certainty* from the nature of the
allegations and the government's declarations in support of its claim of secrecy
that litigation must be limited or cut off in order to protect state secrets, even
before any discovery or evidentiary requests have been made." *Jeppesen*, 614 F.3d
at 1081 (emphasis added). Here, the district erred in concluding "with certainty"
that privileged evidence is required to litigate Plaintiffs' religion claims. That is
obvious as to Plaintiffs' prima facie case. The record already establishes them. It is
also true as to the Government's need to defend against the religion claims. Indeed,
litigating the religious discrimination claims is unlikely to require introduction of
any privileged information at all.

    To understand why, a brief summary of Plaintiffs' legal theory is necessary.
In its simplest form, Plaintiffs' religious discrimination argument is that, except
where religion is considered for purposes of accommodating religious exercise, the
Free Exercise Clause, the Establishment Clause, and the Equal Protection
component of the Fifth Amendment all require courts to treat religion *like race* in
the anti-discrimination context: its use must always be justified by strict scrutiny.
*Larson v. Valente*, 456 U.S. 228, 246–47 (1982) (holding that statute granting a
denominational preference must be analyzed under strict scrutiny); *Emp't Div. v.
Smith*, 494 U.S. 872, 886 n.3 (1990) ("Just as we subject to the most exacting
scrutiny laws that make classifications based on race, or on the content of speech,

so too we strictly scrutinize governmental classifications based on religion.")
(citations omitted); *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) ("If the purpose
or effect of a law . . . is to discriminate invidiously between religions, that law is
constitutionally invalid even though the burden [on the observance of religion]
may be characterized as being only indirect."); *cf. Church of Lukumi Babalu Aye v.
City of Hialeah*, 508 U.S. 520, 531–32 (1993) (holding that Free Exercise Clause
requires that government action that is not "neutral and of general applicability
. . . must be justified by a compelling governmental interest and must be narrowly
tailored to advance that interest").

Critically for present purposes, strict scrutiny applies even if the suspect
classification was not the *sole* factor in the challenged action, but rather only *one*
factor. *See generally Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) (holding use of
race as one factor in college admissions unconstitutional because it failed to satisfy
strict scrutiny).

Plaintiffs' complaint plausibly alleges the Government adopted a facially
discriminatory classification by targeting them for surveillance because of their
religion. *See generally* 2 E.R. 187-97, 206-22, 242-45 (excerpts of Plaintiffs' First
Amended Complaint). Plaintiffs need no discovery to prove this claim. The
Government's own informant has submitted sworn declarations showing the
Government engaged in intentional discrimination specifically against Muslims.

25

Those declarations are corroborated by numerous policy and training documents revealing how FBI practices sanction the facially discriminatory treatment of religious minorities. *Compare* Monteilh Dec., 2 E.R. 85-138 *with* documents described at 2 E.R. 187-95 ¶¶ 24-39; *see also* FBI's Domestic Investigations and Operations Guide (2008) (Section 4.2(B) at 27–28)[7].

In response to Plaintiffs' evidence, the Government is free to rely on various sources of non-privileged information to defend itself. It could introduce evidence to attempt to refute that it instructed the informant to target people based on religion. It has already disclosed some of the informant's tasking orders to this Court. *See* ECF 72-2. Its other written and oral instructions to the informant will no doubt also be available; the Government surely did not disclose state secrets to this informant—a convicted felon who had no security clearance, and who has given extensive public statements about the operation. And the Government can introduce much of the audio and video recordings the informant took, as the Government has acknowledged those recordings are not privileged. 2 E.R. 161-62. These sources of information foreclose any assertion, *at least at this stage*, that the religion claims cannot be litigated.

In prior litigation, the Government has stated that it may also attempt to justify its use of religion by claiming that a practice of treating people who practice

---

[7] Available at https://perma.cc/FFX2-G4LT.

Islam as more suspicious could somehow satisfy the narrow tailoring requirement, and that it may have to use secret information to make that showing. *See* ECF 73 at 50 n.8. It is hard to imagine how the Government could narrowly tailor a policy that treats one's status as a Muslim as itself suspicious, but it is at the very least premature to assume both that the Government will make such a claim and that resolution of it will require disclosure of state secrets. Even if the Government had a basis for targeting specific individuals in this community, or even Plaintiffs themselves, that basis could not justify subjecting *every Muslim* in a particular religious community to surveillance merely because they shared the same religion as the individual targets. Were the Government to advance that remarkable argument, it would have to prove it through information about all Muslims— information that surely cannot be secret.

Nor does the district court need to learn what reasons *other than religion* were employed by the Government in its decision to target Plaintiffs or anyone else. Nor need the FBI disclose who its ultimate "subjects" were for purposes of this surveillance, as the district cout speculated. *See* 1 E.R. 57-58. Plaintiffs challenge only the Government's use of religion to target them, which likely can be litigated using only non-privileged evidence.

Even if the litigation poses some speculative risk of identifying an allegedly discrete set of individuals who were targets of the investigation or allegedly

isolated reasons for targeting Plaintiffs, it was error to conclude with *certainty* that disclosure of such information *today*, more than fifteen years later, requires dismissal (and not merely the rigorous protection that could come through ex parte, in camera review, protective orders, or other security measures).

Finally, as Plaintiffs argued before, *see* ECF 32-2 at 29 n.7 & ECF 85-2 at 36-37 n.11, the extent to which the district court acted prematurely is underscored by the district court's error in accepting the Attorney General's declaration as sufficient to support the Government's privilege assertion, given the strict procedural strictures required to assert the privilege. *Reynolds* drew its description of the requirements for asserting the privilege from English law, including the rule that "[t]here must be formal claim of privilege, lodged by the head of the department which has control over the matter, after *actual personal consideration* by that officer. 345 U.S. at 7–8 (emphasis added). For this proposition, it cited *Duncan v. Cammell, Laird & Co.*, (1942) A.C. 624, 638, which made clear that "the decision to object should be taken by the minister who is the political head of the department, and that he should have seen and considered *the contents of the documents* and himself have formed the view that on grounds of public interest they ought not to be produced." *Id.* (cited in *Reynolds*, 345 U.S. at 8 n.20) (emphasis added).

As that passage makes clear, no one can assert the *Reynolds* privilege by

reference merely to subjects or categories of information. Rather, the privilege must be asserted in reference to particular "documents." Here, the Attorney General never declared that he personally reviewed any actual *evidence* the Government wishes to protect from disclosure. *See* 2 E.R. 284 (stating only that he personally considered "the matter," not the underlying evidence). Nor could he have, given how early the assertion here occurred. No one knows what documents might be disclosed, because Plaintiffs have not served discovery or even fully articulated their theory of liability. If the Attorney General has not personally reviewed *documents*, the privilege assertion fails. *Al-Haramain*, 507 F.3d at 1202 (the first step of privilege analysis is that the district court "*must* ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied") (emphasis added) (internal quotation and citation omitted).

Thus, the Government cannot satisfy the "especially difficult" showing required to win dismissal on the pleadings. *Jeppesen*, 614 F.3d at 1081. At a minimum, the district court should delay ruling on the privilege until the Government identifies specific, privileged evidence that it needs to introduce in order to respond to particular discovery requests (or to use for summary judgment), and until the Government submits a supporting declaration that actually satisfies the procedural requirements for the privilege's invocation by reference to those specific documents.

## CONCLUSION

For these reasons, this Court should reverse the district court's dismissal of

Plaintiffs' religion claims based on the state-secrets privilege.

Respectfully submitted,

Dated:  June 30, 2022                                     s/ Ahilan Arulanantham
                                                         AHILAN ARULANANTHAM
                                                         Counsel for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's Order regarding supplemental briefing, ECF 160, I certify that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 6,999 words.

Dated:  June 30, 2022           s/ Ahilan Arulanantham
                                AHILAN ARULANANTHAM
                                Counsel for Plaintiffs-Appellants