**Nos. 12-56867, 12-56874, 13-55017**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YASSIR FAZAGA, et al.,
*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Cross-Appellees,*

and

BARBARA WALLS, J. STEPHEN TIDWELL, KEVIN ARMSTRONG,
PAUL ALLEN, AND PAT ROSE,
*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court
for the Central District of California, No. 8-11-cv-00301-CJC-VBK (Carney, J.)

**JOINT SUPPLEMENTAL BRIEF FOR DEFENDANTS
BARBARA WALLS, J. STEPHEN TIDWELL,
KEVIN ARMSTRONG, PAUL ALLEN, AND PAT ROSE**

ALEXANDER H. COTE
WINSTON & STRAWN LLP
333 S. Grand Ave.
Los Angeles, CA 90071
(203) 615-1993
acote@winston.com

*Counsel for Defendants
Armstrong, Allen, and Rose*

HOWARD M. SHAPIRO
CATHERINE M.A. CARROLL
ALLISON M. SCHULTZ
CHARLIE JOHNSON
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663-6000
howard.shapiro@wilmerhale.com

KATIE MORAN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 S. Grand Ave., Suite 2400
Los Angeles, CA 90071

*Counsel for Defendants
Walls and Tidwell*

September 19, 2022

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION .............................................................................................1

BACKGROUND ...............................................................................................4

ARGUMENT ....................................................................................................8

I.  THE STATE-SECRETS DISMISSAL SHOULD BE
    AFFIRMED ..............................................................................................8

    A.  The District Court Correctly Dismissed The Religion
        Claims Pursuant To The State-Secrets Doctrine ...................................8

    B.  Plaintiffs' Arguments Lack Merit ......................................................12

        1.  *General Dynamics* supports this Court's precedent .................12

        2.  Dismissal was proper under this Court's precedent
            because assertion of the privilege deprived the
            Individual-Capacity Defendants of a valid defense .................16

II. *EGBERT* PRECLUDES A *BIVENS* REMEDY ...........................................19

    A.  No *Bivens* Remedy Is Available For The Religion Claims ...............21

    B.  No *Bivens* Remedy Is Available For The Fourth
        Amendment Claim ..............................................................................24

CONCLUSION ...............................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190
(9th Cir. 2007) ............................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................23

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971).........................................................................1

*Davis v. Passman*, 442 U.S. 228 (1979) ...................................................21

*Egbert v. Boule*, 142 S. Ct. 1793 (2022).......................................... 3, 19-25

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007)...................2, 9, 11, 16, 18

*Fazaga v. FBI*, 916 F.3d 1202 (9th Cir. 2019) ..................................... 1-2

*Fazaga v. FBI*, 965 F.3d 1015 (9th Cir. 2020) ........................ 2-3, 6-7, 16-19, 22-25

*FBI v. Fazaga*, 142 S. Ct. 1051 (2022)............................................. 2, 7-8

*General Dynamics Corp. v. United States*, 563 U.S. 478
(2011)........................................................ 2, 8-9, 10-11, 14-16, 18

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020)........................................19, 23

*In re Sealed Case*, 494 F.3d 139 (D.C. Cir. 2007)..............................2, 9, 15-16, 18

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998).................................2, 9

*Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir.
2010) ........................................................ 2, 6, 9, 11-12, 14, 17, 19

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007) .............................10

*Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005) ......................................19

*Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022) ......................22

*Tenenbaum v. Simonini*, 372 F.3d 776 (6th Cir. 2004)...........................2, 9

ii

*Tenet v. Doe*, 544 U.S. 1 (2005) .......................................................... 12-13

*Totten v. United States*, 92 U.S. 105 (1876) .................................9, 11, 13

*United States v. Reynolds*, 345 U.S. 1 (1953).............................8-9, 15-16

*Weinberger v. Catholic Action of Hawaii/Peace Education Project*,
    454 U.S. 139 (1981)...................................................................13, 14

*Wikimedia Foundation v. National Security Agency*, 14 F.4th 276
    (4th Cir. 2021) .........................................................................2, 9, 15

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)...................................... 7, 19-23

## STATUTORY PROVISIONS

50 U.S.C.
    § 1806 ......................................................................................6, 8
    § 1810 ........................................................................................25

## INTRODUCTION

Plaintiffs allege that the FBI and other defendants targeted Plaintiffs for surveillance during a counterterrorism investigation solely because of their religion. Among other claims, Plaintiffs asserted causes of action against Agents Walls, Tidwell, Armstrong, Allen, and Rose (the "Individual-Capacity Defendants") under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), seeking damages for alleged violations of the First Amendment's Establishment and Free Exercise Clauses and the Fifth Amendment's Equal Protection Clause (the "Religion Claims"), as well as the Fourth Amendment (collectively, "*Bivens* Claims").

The government asserted the state-secrets privilege. The district court agreed that litigating Plaintiffs' claims would risk disclosure of information "vital to our country's national security." ER33. Following settled precedent, the court dismissed the *Bivens* Claims, concluding that the assertion of the state-secrets privilege deprived Defendants of evidence "essential … for [their] full and effective *defense* against Plaintiffs' claims—namely, showing that Defendants' purported 'dragnet' investigations were not indiscriminate schemes to target Muslims, but were properly predicated and focused." ER61. This Court reversed, holding that the Foreign Intelligence Surveillance Act ("FISA") "overrides … the state secrets evidentiary dismissal option," *Fazaga v. FBI*, 916 F.3d 1202, 1231-

1232 (9th Cir. 2019), *amended on reh'g*, 965 F.3d 1015 (9th Cir. 2020), but the Supreme Court disagreed and remanded for further proceedings, *FBI v. Fazaga*, 142 S. Ct. 1051, 1063 (2022).

As Plaintiffs suggest, the state-secrets dismissal is now ripe for review. That dismissal was correct. Under widely settled precedent, the government's assertion of the state-secrets privilege precludes further litigation of the *Bivens* Claims because the Individual-Capacity Defendants cannot fully and fairly defend themselves without the privileged information. ER59-64; *see Wikimedia Found. v. National Sec. Agency*, 14 F.4th 276, 303-304 (4th Cir. 2021), *petition for cert. filed*, No. 22-190 (U.S. Aug. 30, 2022); *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1079 (9th Cir. 2010) (en banc); *In re Sealed Case*, 494 F.3d 139, 148-151 (D.C. Cir. 2007); *El-Masri v. United States*, 479 F.3d 296, 309-311 (4th Cir. 2007); *Tenenbaum v. Simonini*, 372 F.3d 776, 777-778 (6th Cir. 2004); *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).

Plaintiffs ask this Court to reject that controlling precedent. But in doing so, they disregard that their arguments, if accepted, would require the Individual-Capacity Defendants to defend themselves with both hands tied behind their backs—a result the Supreme Court has decried as the "height of injustice." *General Dynamics Corp. v. United States*, 563 U.S. 478, 487 (2011). Whatever

purchase Plaintiffs' arguments might have as to the government, they have none as to the Individual-Capacity Defendants.

But there is another, even more straightforward ground on which to affirm the dismissal of the *Bivens* Claims. The Supreme Court recently and emphatically reaffirmed that "no *Bivens* action may lie" whenever there is any "rational reason to think" it is Congress, not the courts, that should decide whether to create a damages remedy. *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). And the Supreme Court specifically rejected any extension of *Bivens* to First and Fourth Amendment claims in the national-security context: "a *Bivens* cause of action may not lie where, as here, national security is at issue." *Id.* at 1805. That holding forecloses expansion of *Bivens* liability to the sensitive claims alleged here. Even before *Egbert*, this Court acknowledged "there are likely to be few, if any, remaining *Bivens* claims" in this case given the "narrow availability of *Bivens* remedies under current law." *Fazaga*, 965 F.3d at 1052 n.31. Now that *Egbert* has shut the door completely, the Court should not delay the inevitable. This suit has been pending for more than a decade; the availability of *Bivens* relief is a purely legal question that admits of no real dispute; and resolving the *Bivens* Claims on this ground would allow the Court to avoid more complex questions concerning the state-secrets dismissal remedy. The Court should affirm the dismissal of the *Bivens* Claims under *Egbert*.

3

## BACKGROUND

Plaintiffs allege that, during a post-9/11 counterterrorism investigation, Defendants conducted an indiscriminate surveillance "dragnet" targeting Muslims in southern California, including Plaintiffs, solely because of their religion. *See* ER181, 206.[1] As relevant here, Plaintiffs allege that by targeting them for surveillance based solely on their religion, Defendants violated Plaintiffs' rights under the Establishment and Free Exercise Clauses of the First Amendment and the Equal Protection Clause of the Fifth Amendment, *see* ER242-245, and that Defendants violated Plaintiffs' Fourth Amendment rights by conducting electronic surveillance without a warrant, ER246. Purporting to state causes of action under *Bivens*, Plaintiffs sought compensatory and punitive damages against the Individual-Capacity Defendants in their personal capacities. ER249.

Recognizing that litigating the *Bivens* Claims would require inquiry into the persons who were (or were not) subjects of the investigation, the reasons for the investigation, and the sources and methods used, the Attorney General of the United States asserted the state-secrets privilege over those categories of information. ER53-54; ER283-289. In support, the government submitted a public declaration from the Attorney General, ER283-289; a sealed, *ex parte*

---

[1] "ER__" refers to Dkt. No. 33 (Plaintiffs' Excerpts of Record). "TW ER__" refers to Dkt. No. 62-2 (Tidwell and Walls's Excerpts of Record). "RAA SER__" refers to Dkt. No. 57-2 (Rose, Allen, and Armstrong's Supplemental Excerpts of Record). "Br." refers to Plaintiffs' supplemental brief (Dkt. No. 166).

declaration from the Assistant Director of the FBI Counterterrorism Division, Mark Giuliano; a public declaration from Mr. Giuliano, ER259-281; and a sealed memorandum, *see* ER41. Countering Plaintiffs' allegations, the government's public submissions stated that the investigation focused on fewer than 25 people and sought to detect and prevent possible terrorist attacks by determining whether particular individuals were involved in recruiting or training people for terrorist activity. ER268.

The government moved to dismiss the Religion Claims on the ground that litigating them, even with privileged evidence excluded, would present an unacceptable risk of disclosing state secrets, jeopardizing national security. ER41. The Individual-Capacity Defendants also moved to dismiss, arguing that the government's assertion of the privilege precludes them from fully and fairly defending themselves against the Religion Claims. TW ER17-20; RAA SER170-171. The Individual-Capacity Defendants further argued that the court should not recognize a *Bivens* claim in the new context presented by Plaintiffs' complaint. ER155-159; TW ER20-28.

The district court dismissed the *Bivens* Claims based on the state-secrets privilege. ER31-66. In doing so, the court "thoroughly and skeptically examined the Government's public and classified submissions," ER55, which provided

"comprehensive and detailed" information about the nondisclosed matters, ER34, 55; *see* ER160 n.1.

Based on that review, the court dismissed the *Bivens* Claims in part "because the privileged information gives Defendants a valid defense."  ER60 (citing *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1083 (9th Cir. 2010) (en banc)).  The court held that Defendants would "inevitably need the privileged information to defend against Plaintiffs' core allegation that Defendants conducted an indiscriminate 'dragnet' investigation" targeting Muslims.  ER55.  Determining whether Defendants had a compelling, nondiscriminatory reason for investigating particular individuals and whether their actions were narrowly tailored to achieve that interest would "necessitate a detailed inquiry into the nature, scope, and reasons for the investigations"—precisely the information covered by the privilege. ER62.  The court also held that even with privileged information excluded, the privileged and nonprivileged information were so closely intertwined that further litigation would "present an unacceptable risk of disclosing state secrets."  ER63. Given this holding, the court did not reach the availability of a *Bivens* remedy.

This Court reversed in part, holding that the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1806(f), provides the "exclusive procedure for evaluating evidence that threatens national security in the context of electronic surveillance-related determinations" and "overrides … the state secrets evidentiary

dismissal option." *Fazaga v. FBI*, 965 F.3d 1015, 1045 (9th Cir. 2020). In holding that the *Bivens* Claims could proceed within the FISA framework, however, the Court narrowed those claims "considerably." *Id.* at 1059. As to the Religion Claims, the Court concluded that available statutory remedies preclude a *Bivens* claim except as to alleged conduct "motivated by intentional discrimination against Plaintiffs because of their Muslim faith." *Id.* at 1058; *see id.* at 1056-1059. As to the Fourth Amendment claim, the Court held that qualified immunity bars all search-and-seizure claims against all Individual-Capacity Defendants except Allen and Armstrong, and the Court limited the Fourth Amendment claim against Allen and Armstrong to their alleged involvement in planting recording devices. *Id.* at 1031-1039, 1056.

The Court recognized that the Supreme Court's then-recent decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), had "severely restricted the availability of *Bivens* actions." *Fazaga*, 965 F.3d at 1055. In light of the "narrow range" of claims remaining against the Individual-Capacity Defendants, however, the Court found it "far from clear" that Plaintiffs would continue to press those claims. *Id.* at 1056; *see id.* at 1052 n.31, 1059. The Court accordingly declined to decide whether any *Bivens* remedy is available. *Id.* at 1059.

On the government's petition for certiorari, the Supreme Court reversed, holding that FISA does not displace the state-secrets privilege. *FBI v. Fazaga*, 142

S. Ct. 1051, 1060 (2022). By enacting § 1806(f), the Court held, "Congress did not eliminate, curtail, or modify the state secrets privilege." *Id.* at 1062. The Supreme Court did not decide whether dismissal was appropriate under the state-secrets doctrine but remanded for further proceedings. *Id.* at 1063.

Following remand from the Supreme Court, this Court directed the parties to file supplemental briefs identifying "which issues should be addressed by this Court on remand and the appropriate resolution of those issues." Dkt. 160.

## ARGUMENT

I. **THE STATE-SECRETS DISMISSAL SHOULD BE AFFIRMED**

A. **The District Court Correctly Dismissed The Religion Claims Under The State-Secrets Doctrine**

The state-secrets privilege absolutely protects information from disclosure if disclosure would "undermine the government's intelligence capabilities and compromise national security"—including by revealing "means, sources, and methods of intelligence gathering." *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1196, 1203-1204 (9th Cir. 2007). Where the privilege has been asserted and the court independently concludes that the government has satisfied the rigorous requirements for invoking it, *see United States v. Reynolds*, 345 U.S. 1, 7-10 (1953), the privileged information is excluded from trial, and the government cannot be compelled to produce it, *id.* at 11; *see also General Dynamics Corp. v. United States*, 563 U.S. 48, 484-485 (2011).

8

As this Court has held, "[i]n some instances, … application of the privilege may require dismissal of the action." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1079 (9th Cir. 2010) (en banc); *see Reynolds*, 345 U.S. at 11 n.26 (citing *Totten v. United States*, 92 U.S. 105 (1876)). "[W]hen full litigation … 'would inevitably lead to the disclosure of' state secrets," the assertion of the privilege means that "neither party can obtain judicial relief." *General Dynamics*, 563 U.S. at 486 (quoting *Totten*, 92 U.S. at 107). Similarly, if the removal of privileged information from a case precludes a defendant from defending himself or herself, the action must be dismissed. *See Wikimedia Found. v. National Sec. Agency*, 14 F.4th 276, 303-304 (4th Cir. 2021); *Jeppesen*, 614 F.3d at 1083; *In re Sealed Case*, 494 F.3d 139, 148-151 (D.C. Cir. 2007); *El-Masri v. United States*, 479 F.3d 296, 309-311 (4th Cir. 2007); *Tenenbaum v. Simonini*, 372 F.3d 776, 777-778 (6th Cir. 2004); *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).

That rule plays a particularly important role in cases where private defendants are sued alongside the government. In such cases, dismissal appropriately avoids not only the risk that litigation would lead to disclosure of state secrets, but also the manifest unfairness that would result if the government's assertion of the privilege precluded the private defendants from fully and fairly defending themselves. As the Supreme Court has recognized, it would be the "height of injustice" to allow the government's invocation of the state-secrets

9

privilege to deprive a defendant of an available defense. *General Dynamics*, 563 U.S. at 487; *cf. Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (Due Process Clause prohibits "punishing an individual without first providing that individual with an opportunity to present every available defense" (quotation marks omitted)). Rather, when the privilege forecloses "full litigation of [a] defense," the "traditional course is to leave the parties where they stood when they knocked on the courthouse door." *General Dynamics*, 563 U.S. at 486-487.

The district court correctly applied these principles here. The crux of the Religion Claims is that the Individual-Capacity Defendants engaged in "a broad[] pattern of dragnet surveillance" that "ensured that … Plaintiffs and numerous other people were surveilled solely due to their religion." ER206. Absent the government's assertion of the privilege, the Individual-Capacity Defendants would seek to defend themselves by showing, for example, that they did not undertake or approve any investigative actions based on religion; that they had nondiscriminatory reasons for investigating specific individuals; and that any methods they used or authorized were narrowly tailored to advance the governments' legitimate counterterrorism interests. ER62. But as the district court concluded, those are "fact-intensive questions that necessitate a detailed inquiry into the nature, scope, and reasons for the investigations." *Id.* Establishing any valid defense "would require [the Individual-Capacity] Defendants to summon

privileged evidence" that they cannot obtain or introduce—"including the subjects who may or may not have been under investigation, the reasons and results of those investigations, and their methods and sources"—because the government chose to assert the state-secrets privilege over precisely that evidence. ER61-62. Dismissal is warranted in those circumstances. *See, e.g.*, *Jeppesen*, 614 F.3d at 1083; *El-Masri*, 479 F.3d at 309-310. Plaintiffs suggest (Br. 26) Defendants could defend themselves by relying on non-privileged information, such as the audio and video recordings the informant took. But as the district court explained, defending against the Religion Claims requires inquiry into the scope and predicates of the investigation—not its fruits, and not any representations the government might have made to the informant.

The district court also correctly held that the state-secrets privilege requires dismissal because continued litigation "'would inevitably lead to the disclosure of' state secrets." *General Dynamics*, 563 U.S. at 486 (quoting *Totten*, 92 U.S. at 107). Even if it were possible to litigate the Religion Claims without relying directly on the privileged evidence, those claims are so intertwined with state secrets that "there is no feasible way to litigate [the Individual-Capacity Defendants'] liability without creating an unjustifiable risk of divulging state secrets." *Jeppesen*, 614 F.3d at 1087-1088 (collecting cases). The Individual-Capacity Defendants' alleged roles in the counterterrorism investigation—

11

including whether, why, and how they targeted (or did not target) any particular individuals for surveillance, ER185-187, 219-222—could not possibly be disentangled from the information the district court rightly held privileged, ER56-58. There is, thus, "precious little [the Individual-Capacity Defendants] could say about [their] relevant conduct and knowledge without revealing information about how the United States government does *or does not* conduct covert operations." *Jeppesen*, 614 F.3d at 1089.

### B.    Plaintiffs' Arguments Lack Merit

Plaintiffs principally contend that this Court should reject binding circuit precedent holding that dismissal is required in a case like this one. They argue (Br. 11) that the Supreme Court's decision in *General Dynamics* abrogated that precedent by limiting the state-secrets dismissal remedy to cases involving government contracts. *General Dynamics* did no such thing. Rather, the reasoning of that decision confirms that claims cannot proceed against private defendants when the government's assertion of the privilege precludes them from establishing their defense and litigation would unreasonably risk of disclosure of state secrets.

### 1.    *General Dynamics* supports this Court's precedent

The Supreme Court has expressly rejected the argument that the dismissal rule first articulated in *Totten* is "merely a contract rule," holding that "*Totten* was not so limited." *Tenet v. Doe*, 544 U.S. 1, 8 (2005). Rather, *Totten*'s "sweeping

holding" broadly "'forbids the maintenance of *any suit* in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential.'" *Id.* at 8-9 (quoting *Totten*, 92 U.S. at 107 (emphasis supplied in *Tenet*)).

Thus, in *Weinberger v. Catholic Action of Hawaii/Peace Education Project*, 454 U.S. 139 (1981), the Supreme Court relied on *Totten*'s broad rule to dismiss an action that involved not a government-contract claim but a challenge to the government's compliance with environmental regulations. The plaintiffs contended that the Navy had failed to prepare an environmental-impact statement regarding storage of nuclear weapons at a particular site, in violation of the National Environmental Policy Act of 1969 ("NEPA"). *See id.* at 142. But, as in this case, litigating that claim would have required, or at least substantially risked, disclosure of national-security information because the Navy's obligation to prepare an environmental-impact statement depended on whether the government intended to store nuclear weapons at the contested site—a fact the government could neither admit nor deny. *See id.* at 146. Analogizing to *Totten*, the Supreme Court held that whether the Navy had complied with the law was "beyond judicial scrutiny" and ordered that the case be dismissed because trial "would inevitably lead to the disclosure of" national-security information. *Id.* at 146-147 (quoting *Totten*, 92 U.S. at 107); *see also Tenet*, 544 U.S. at 9 (discussing *Weinberger*). As

13

this Court has recognized, *Weinberger* thus confirms that the state-secrets dismissal remedy is not limited to government-contracting disputes. *See Jeppesen*, 614 F.3d at 1078-1079.[2]

Nothing in *General Dynamics* limited the dismissal remedy to government-contracting cases or disavowed *Tenet*'s or *Weinberger*'s broad articulations of that remedy. To the contrary, *General Dynamics* endorsed the principle, reflected in this Court's precedent, that where a defendant's liability turns on "the validity of a plausible … defense," and "full litigation of that defense would inevitably lead to the disclosure of state secrets," then "neither party can obtain judicial relief." 563 U.S. at 486 (quotation marks omitted).

That reasoning rested not on the contractual nature of the dispute, *cf.* Br. 9-11, but on considerations of common sense and fairness that apply equally here—particularly with respect to the Individual-Capacity Defendants. Where privileged information supports a party's defenses, its exclusion would result in unreasonably one-sided litigation. As *General Dynamics* explained, it is "unrealistic to separate … the claim from the defense, and to allow the former to proceed while the latter is

---

[2]     Plaintiffs' attempt (Br. 14 n.2) to cabin *Weinberger* to the NEPA context is unpersuasive. While the confidential information at issue in *Weinberger* was protected from disclosure by NEPA's statutory provisions rather than by the state-secrets privilege, the question resolved in *Weinberger* was the same as here: whether dismissal was required because litigation risked disclosure of protected information. *See* 454 U.S. at 146-147.

barred," because "[i]t is claims and defenses *together* that establish the justification, or lack of justification, for judicial relief." 563 U.S. at 487. Therefore, "when public policy precludes judicial intervention for the one it should preclude judicial intervention for the other as well." *Id.* The same is true here. Plaintiffs allege that the Individual-Capacity Defendants unlawfully targeted them for surveillance based on their religion. Whether those claims have merit depends on evidence regarding the individuals who were surveilled and why and how they were targeted. *See* ER61-62. But all that information is a matter of state secret. *See* ER285, 270-271. Allowing "a one-sided trial" to proceed without that information—in which Plaintiffs may "substantiate [their] claims by presenting [their] half of the evidence to the factfinder as if it were the whole"—would "'be a mockery of justice.'" *Wikimedia Found.*, 14 F.4th at 304 (quoting *Sealed Case*, 494 F.3d at 148).

As *General Dynamics* confirms, those concerns are particularly acute where the government's invocation of the state-secrets privilege deprives a private defendant of evidence relevant to his or her defense. Only the government can assert the privilege, *see Reynolds*, 345 U.S. at 7, yet the assertion precludes all defendants, including those sued in their personal capacities, from adducing or relying on information necessary to their defense. To avoid that unfairness, a court should "leave the parties where they stood when they knocked on the courthouse

door." *General Dynamics*, 563 U.S. at 487. The district court properly did so here, consistent with this Court's precedent.[3]

> **2. Dismissal was proper under this Court's precedent because assertion of the privilege deprived the Individual-Capacity Defendants of a valid defense**

Citing this Court's prior decision, Plaintiffs contend the district court failed to conduct the assessment necessary to determine whether the privileged information would give the Defendants a defense that is "'meritorious and not merely plausible and would require judgment for the defendant.'" Br. 20 (quoting *Fazaga*, 965 F.3d at 1067). Plaintiffs mischaracterize both this Court's articulation of the dismissal standard and the district court's decision.

This Court's prior decision stated that the state-secrets privilege does not require dismissal for a defense that is merely "'plausible or colorable.'" *Fazaga*, 965 F.3d at 1067 (quoting *Sealed Case*, 494 F.3d at 150). Rather, dismissal is required when the assertion of the state-secrets privilege "inhibits [the defendant]

---

[3] Plaintiffs emphasize (Br. 18) *General Dynamics*'s observation that *Reynolds* involved an evidentiary issue "quite different" from the dismissal remedy, but that does not make *General Dynamics* inconsistent with *Jeppesen*. The evidentiary issue addressed in *Reynolds* and the dismissal remedy discussed in *General Dynamics* are distinct but not mutually exclusive. The "essential question" in *Reynolds* was simply "whether there was a valid claim of privilege." 345 U.S. at 3, 6. The Court held that there was, *id.* at 10-11, but because the privileged records were "peripheral to the plaintiffs' action," the case could fairly proceed without them. *El-Masri*, 479 F.3d at 306; *see Reynolds*, 345 U.S. at 10-11 (noting the plaintiffs made only a "dubious showing of necessity"). The Court had no occasion to address what should happen when the exclusion of privileged evidence precludes full and fair litigation of a party's claims or defenses, as it does here.

16

from presenting a *valid* defense"—*i.e.*, one that is "legally meritorious" and "prevents recovery by the plaintiffs." *Id.* (emphasis added). Contrary to Plaintiffs' assertion (Br. 20-21), that standard does not require the Individual-Capacity Defendants to "prove" that the privileged information "would in fact exonerate" them. Such a standard would be impossible to meet for private defendants, who have no control over the government's decision to assert the privilege and no ability to compel the government to submit sufficient *ex parte*, *in camera* evidence to "exonerate" the private defendants. Plaintiffs' overreading of this Court's prior opinion would result in precisely the injustice the Supreme Court denounced in *General Dynamics*. Nothing in the prior opinion suggests this Court intended that untenable result.

The district court's dismissal was fully consistent with this Court's prior decision. The court concluded, after careful review of the confidential record, that "the privileged information gives Defendants a valid defense." ER60 (citing *Jeppesen*, 614 F.3d at 1083). The court found "that privileged information provides essential evidence for Defendants' full and effective *defense* against Plaintiffs' claims—namely, *showing that Defendants' purported 'dragnet' investigations were not indiscriminate schemes to target Muslims, but were properly predicated and focused*." ER61 (second emphasis added). That defense, if proven, would be legally sufficient to defeat Plaintiffs' claims, and the court

made clear the privileged record provides "essential evidence" supporting it. ER61; *see* ER55-59, 61-62.

Indeed, the public record alone establishes a genuine issue for trial that would "prevent[] recovery by the plaintiffs" under Rule 56. *Fazaga*, 965 F.3d at 1067. Whereas Plaintiffs allege that the Individual-Capacity Defendants engaged in a "dragnet" operation that indiscriminately targeted Muslims for surveillance based solely on their religion, the government's public submissions indicate that the investigation targeted fewer than 25 people for the nondiscriminatory purpose of detecting and preventing terrorist attacks. *Supra* pp. 4-5. Where, as here, a defense would be meritorious enough to preclude summary judgment for the plaintiff, the claim should not be allowed to proceed against private defendants who have no ability to adduce evidence essential to proving that defense. *General Dynamics*, 563 U.S. at 487. Indeed, here, "*any* valid defense … would require resort to privileged materials." *Sealed Case*, 494 F.3d at 149 (emphasis added); *see El-Masri*, 479 F.3d at 310 (affirming dismissal where "any conceivable response" to the plaintiff's claims "would disclose privileged information").

Plaintiffs suggest (Br. 20) the district court should have delayed its determination that the Individual-Capacity Defendants have a valid defense until later in the case, after Plaintiffs propounded discovery, filed dispositive motions, and presented their "own evidence." But as Plaintiffs' admit (Br. 21-22), those

materials could shed no light on the valid defense the district court found to be
supported by privileged information about the nature and scope of the
counterterrorism investigation or its targets and methods, ER60. By contrast, the
privileged record (as described by the district court) contains "comprehensive and
detailed" information, ER55, and "fulsome discussion of the nondisclosed
matters," ER34. Delaying dismissal would only "'chance further disclosure—
inadvertent, mistaken, or even intentional—that would defeat the very purpose for
which the privilege exists.'" *Jeppesen*, 614 F.3d at 1081 (quoting *Sterling v.
Tenet*, 416 F.3d 338, 344 (4th Cir. 2005)). The district court was not required to
"'play with fire'" in that manner. *Id.*

## II.   *EGBERT* PRECLUDES A *BIVENS* REMEDY

Even if the Court harbored doubt about the state-secrets dismissal, it should
affirm as to the Individual-Capacity Defendants because the Supreme Court's
decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), is fatal to the *Bivens* Claims.
*See also Hernandez v. Mesa*, 140 S. Ct. 735 (2020); *Ziglar v. Abbasi*, 137 S. Ct.
1843 (2017). Although this Court previously declined to address dismissal on this
basis in the first instance, *see Fazaga*, 965 F.3d at 1057, *Egbert* so plainly
forecloses the *Bivens* Claims that the issue can and should be resolved now.

Elaborating on its decisions in *Abbasi* and *Hernandez*, the Supreme Court in
*Egbert* explained that a court evaluating an asserted *Bivens* claim must ask first

"whether the case presents a new *Bivens* context—*i.e.*, is it meaningful[ly]

different from the three cases in which the Court has implied a damages action."

142 S. Ct. at 1803 (quotation marks omitted). If so, then "a *Bivens* remedy is

unavailable if there are 'special factors' indicating that the Judiciary is at least

arguably less equipped than Congress to 'weigh the costs and benefits of allowing

a damages action to proceed.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857-1858). But

*Egbert* makes clear that those two steps "often resolve to a single question:

whether there is any reason to think that Congress might be better equipped to

create a damages remedy." *Id.*

Thus, under *Egbert*, no new *Bivens* claim may be created where "there is *any*

rational reason (even one) to think that *Congress* is better suited to weigh the costs

and benefits of allowing a damages action to proceed." 142 S. Ct. at 1805

(quotation marks omitted). If "even a single reason to pause" exists, a court "may

not recognize a *Bivens* remedy." *Id.* at 1803 (quotation marks omitted). The

inquiry is not specific, but general—focusing not on "the balance of circumstances

in the particular case" but on whether "there is any reason to think that judicial

intrusion into a given field might be harmful or inappropriate." *Id.* at 1805

(quotation marks omitted). And "uncertainty alone" about "the 'systemwide'

consequences of recognizing a cause of action under *Bivens*" is itself "a special

factor that forecloses relief." *Id.* at 1804-1805. Thus, "in all but the most unusual

circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800.

## A. No *Bivens* Remedy Is Available For The Religion Claims

The Religion Claims arise in a new context. *Egbert*, 142 S. Ct. at 1803. A *Bivens* claim presents a new context if it differs in a "meaningful way from *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859. Relevant differences can include, among others, "the rank of the officers involved; the constitutional right at issue; … the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1859-1860.

The Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Egbert*, 142 S. Ct. at 1807 (quotation marks omitted). And though the Supreme Court has recognized one *Bivens* claim alleging violations of the Fifth Amendment's Equal Protection Clause, it involved a markedly different context. In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court inferred a narrow damages remedy against a United States Congressman who allegedly terminated the plaintiff because of her gender. *Id.* at 248-249. The Fifth Amendment *Bivens* claim alleged here, by contrast, involves FBI agents conducting or overseeing a counterterrorism investigation. *See Abbasi*, 137 S. Ct. at 1860 (holding Fifth Amendment claim alleging religious discrimination in violation of Equal

Protection Clause arose in new context); *Strickland v. United States*, 32 F.4th 311, 373-374 (4th Cir. 2022) (Fifth Amendment Equal Protection claim arose in a new *Bivens* context).

As in *Egbert*, there are many "reason[s] to think that judicial intrusion into [this] field might be harmful or inappropriate." 142 S. Ct. at 1805 (quotation marks omitted). In particular, the national-security implications of the Religion Claims foreclose relief. Under *Egbert*, "a *Bivens* cause of action may not lie where, as here, national security is at issue." *Id.* The Religion Claims "challenge more than standard law enforcement operations"; they challenge "major elements of the Government's whole response to the September 11 attacks, thus of necessity requiring an inquiry into sensitive issues of national security." *Abbasi*, 137 S. Ct. at 1861; *see also, e.g.*, ER187-188. But "[n]ational-security policy is the prerogative of the Congress and President," and "courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs unless Congress specifically has provided otherwise." *Abbasi*, 137 S. Ct. at 1861 (quotation marks omitted). That alone forecloses judicial creation of a cause of action where Congress has created none. *Id.* at 1862.[4]

---

[4]    As this Court held, the Privacy Act and Religious Freedom Restoration Act provide alternative remedial schemes for aspects of the Religion Claims, which by itself precludes *Bivens* relief for claims addressed by those statutes. *Fazaga*, 965 F.3d at 1057-1059. But Congress chose not to create any statutory right of action

If more were needed, the possible chilling effects of "personal damages liability … caus[ing] an official to second-guess difficult but necessary decisions concerning national-security policy" also precludes relief. *Abbasi*, 137 S. Ct. at 1861. The Supreme Court has thus repeatedly disapproved creation of a *Bivens* remedy in cases posing that risk. Just as *Bivens* claims seeking to regulate the conduct of federal agents at the border are foreclosed, *see Egbert*, 142 S. Ct. at 1804-1805; *Hernandez*, 140 S. Ct. at 746-747, so too are *Bivens* claims seeking to regulate the conduct of federal agents conducting a counterterrorism investigation.

Moreover, as *Egbert* makes clear, these concerns are heightened where claims turn on "an official's state of mind," which is "easy to allege and hard to disprove." 142 S. Ct. at 1807 (quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (discrimination turns on purpose). As narrowed by this Court's prior opinion, the Religion Claims here focus on intentional discrimination. *Fazaga*, 965 F.3d at 1057-1059. If the Court were to recognize *Bivens* liability here, it would present an acute risk that "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties" in conducting investigations aimed at rooting out terrorist threats to the national security. *Egbert*, 142 S. Ct. at 1807 (quotation marks omitted). The

---

for damages for discrimination claims challenging the conduct of a national-security investigation. *Id.*

question "is not whether national security, or some other governmental interest, actually requires [the defendant's] conduct," but "whether the Judiciary should alter the framework established by the political branches for addressing" whether the defendant's conduct violates the Constitution. *Id.* at 1808 (quotation marks omitted). Given the national-security implications here, courts are "ill equipped to alter that framework." *Id.*

### B. No *Bivens* Remedy Is Available For The Fourth Amendment Claim

For similar reasons, *Egbert* held that even a Fourth Amendment excessive-force claim—the very type of claim asserted in *Bivens* itself—could not proceed given the national-security implications presented. 142 S. Ct. at 1804-1806. The same is true of the Fourth Amendment claim against Allen and Armstrong here.

If anything, the context of this case stands even further removed from *Bivens* than *Egbert* did. *See* 142 S. Ct. at 1804-1805. As narrowed by this Court, the sole remaining Fourth Amendment claim concerns Plaintiffs' allegations that Defendants Allen and Armstrong planted recording devices as part of the FBI's counterterrorism investigation, and Plaintiffs do not allege excessive force. *Fazaga*, 965 F.3d at 1031-1039, 1056. And in that national-security context, *Egbert* "reaffirm[ed] that a *Bivens* cause of action may not lie." 142 S. Ct. at 1805.

Moreover, as this Court has recognized, no *Bivens* remedy is available "where there is any alternative, existing process for protecting the plaintiff's

interests." *Fazaga*, 965 F.3d at 1057 (quotation marks omitted); *see Egbert*, 142 S.
Ct. at 1804 ("a court may not fashion a *Bivens* remedy if Congress already has
provided, or has authorized the Executive to provide, an alternative remedial
structure" (quotation marks omitted)). Here, FISA provides such an alternative
remedy. Plaintiffs allege a claim for damages under 50 U.S.C. § 1810 that is
substantively "identical to the allegations" supporting their Fourth Amendment
claim. *Fazaga*, 965 F.3d at 1055. And given this Court's qualified-immunity
analysis, the sole remaining Fourth Amendment claim "overlap[s]" entirely with
the narrow remaining FISA claim against Defendants Allen and Armstrong. *Id.* at
1056. The availability of a FISA remedy "independently foreclose[s] a *Bivens*
action here." *Egbert*, 142 S. Ct. at 1806.

## CONCLUSION

The Court should affirm the dismissal of the *Bivens* Claims.

Respectfully submitted,

/s/ *Catherine M.A. Carroll*

ALEXANDER H. COTE
WINSTON & STRAWN LLP
333 S. Grand Ave.
Los Angeles, CA 90071
(203) 615-1993
acote@winston.com

*Counsel for Defendants*
*Armstrong, Allen, and Rose*

HOWARD M. SHAPIRO
CATHERINE M.A. CARROLL
ALLISON M. SCHULTZ
CHARLIE JOHNSON
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663-6000
howard.shapiro@wilmerhale.com

KATIE MORAN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 S. Grand Ave., Suite 2400
Los Angeles, CA 90071

*Counsel for Defendants*
*Walls and Tidwell*

September 19, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation set by this Court's May 10, 2022, and August 29, 2022 Orders (Dkt. Nos. 160, 163, 172):

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 5,641 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


/s/  Catherine M.A. Carroll
CATHERINE M.A. CARROLL

September 19, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Catherine M.A. Carroll*
CATHERINE M.A. CARROLL