Nos. 12-56867, 12-56874, & 13-55017

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

YASSIR FAZAGA, et al.,

Plaintiffs-Appellants,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Central District of California

————————————

## SUPPLEMENTAL BRIEF FOR FEDERAL APPELLEES

————————————

SARAH E. HARRINGTON
  *Deputy Assistant Attorney*
  *General*
MARTIN ESTRADA
  *United States Attorney*
SHARON SWINGLE
JOSEPH F. BUSA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION AND SUMMARY ....................................................... 1

ARGUMENT ......................................................................................... 3

I.  The District Court Properly Dismissed Claims that Risk or
Require Disclosure of State Secrets. ................................................. 3

    A.  The State-Secrets Privilege Safeguards National
Security and Sometimes Requires Dismissal. ......................... 3

    B.  The Privilege Applies to the Reasons for and Scope of
Counterterrorism Investigations. ............................................ 7

    C.  Further Litigation of Plaintiffs' Religion Claims Would
Jeopardize State Secrets. ........................................................ 14

II.  Plaintiffs' Arguments to the Contrary Are Unavailing. ................ 20

    A.  State-Secrets Dismissals Are Not Limited to Cases
Involving Clandestine Contracts. .......................................... 20

    B.  Dismissal Does Not Turn on Whether Privileged
Information "Would Exonerate Defendants." ........................ 30

    C.  The Privilege Applies Even Where Litigants Allege
Constitutional Violations. ...................................................... 35

CONCLUSION ..................................................................................... 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Abilt v. CIA,*
848 F.3d 305 (4th Cir. 2017) ............................................................ 22

*ACLU v. NSA,*
493 F.3d 644 (6th Cir. 2007) ............................................................ 22

*Al-Haramain Islamic Found., Inc. v. Bush,*
507 F.3d 1190 (9th Cir. 2007) ............................................ 6, 22, 33, 36

*Bareford v. General Dynamics Corp.,*
973 F.2d 1138 (5th Cir. 1992) ............................................................ 22

*Black v. United States,*
62 F.3d 1115 (8th Cir. 1995) ............................................................ 22

*Bowles v. United States,*
950 F.2d 154 (4th Cir. 1991) ............................................................ 22

*Brazil v. U.S. Dep't of the Navy,*
66 F.3d 193 (9th Cir. 1995) ............................................................ 16

*Department of Navy v. Egan,*
484 U.S. 518 (1988) ............................................................ 5

*DTM Research, LLC v. AT&T Corp.,*
245 F.3d 327 (4th Cir. 2001) ............................................................ 22

*El-Masri v. United States,*
479 F.3d 296 (4th Cir. 2007) .............................. 2, 3, 7, 14, 18, 22, 31

*Ellsberg v. Mitchell,*
709 F.2d 51 (D.C. Cir. 1983) ............................................................ 22

*Farnsworth Cannon, Inc. v. Grimes,*
635 F.2d 268 (4th Cir. 1980) ............................................................ 22

*Fazaga v. FBI,*
965 F.3d 1015 (9th Cir. 2020) ............................................................ 34

iii

*FBI v. Fazaga,*
142 S. Ct. 1051 (2022) ............................................. 3, 6, 29, 30, 32, 35

*Firth Sterling Steel Co. v. Bethlehem Steel Co.,*
199 F. 353 (E.D. Pa. 1912) ........................................... 29, 30

*Fitzgerald v. Penthouse Int'l, Ltd.,*
776 F.2d 1236 (4th Cir. 1985) ....................................... 22, 33

*General Dynamics Corp. v. United States,*
563 U.S. 478 (2011) ........................... 26, 27, 28, 31, 32, 33

*Guong v. United States,*
860 F.2d 1063 (Fed. Cir. 1988) ........................................ 22

*Halkin v. Helms:*
598 F.2d 1 (D.C. Cir. 1978) ............................................. 22
690 F.2d 977 (D.C. Cir. 1982) ........................................ 22

*Johnson v. Board of Educ. of Chi.,*
457 U.S. 52 (1982) ........................................................... 35

*Kasza v. Browner,*
133 F.3d 1159 (9th Cir. 1998) ................................. 5-6, 13, 22

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) ...................................... 28, 35

*Mohamed v. Jeppesen Dataplan, Inc.,*
614 F.3d 1070 (9th Cir. 2010) ..................... 1, 4, 5, 6, 7, 14, 15, 16, 17, 18, 21, 22, 28, 29, 30, 31

*Molerio v. FBI,*
749 F.2d 815 (D.C. Cir. 1984) ........................................ 22

*Rangel v. PLS Check Cashers of Cal., Inc.,*
899 F.3d 1106 (9th Cir. 2018) ........................................ 21

*Russell v. Commissioner,*
678 F.2d 782 (9th Cir. 1982) ......................................... 34

*Salisbury v. United States,*
690 F.2d 966 (D.C. Cir. 1982) ........................................ 22

iv

*Sealed Case, In re,*
    494 F.3d 139 (D.C. Cir. 2007) ........................................................... 22

*Sterling v. Tenet,*
    416 F.3d 338 (4th Cir. 2005)................................................... 17, 22, 31

*Tenenbaum v. Simonini,*
    372 F.3d 776 (6th Cir. 2004) ........................................................... 22

*Tenet v. Doe.*
    544 U.S. 1 (2005) ........................................................ 25, 26, 27, 36

*Totten v. United States,*
    92 U.S. 105 (1875)........................................................... 6, 7, 23, 24

*Under Seal, In re,*
    945 F.2d 1285 (4th Cir. 1991) ........................................................... 22

*United States, In re,*
    872 F.2d 472 (D.C. Cir. 1989) ........................................................... 22

*United States v. Morgan,*
    313 U.S. 409 (1941) ........................................................... 13

*United States v. Nixon,*
    418 U.S. 683 (1974) ........................................................... 3, 5

*United States v. Reynolds,*
    345 U.S. 1 (1953) ............................... 3, 4, 5, 6, 7, 12, 13, 24, 29, 31, 36

*United States v. Sineneng-Smith,*
    140 S. Ct. 1575 (2020) ........................................................... 12

*United States v. Zubaydah,*
    142 S. Ct. 959 (2022) ........................................................ 1, 3, 5, 13

*Webster v. Doe,*
    486 U.S. 592 (1988)...........................................................36

*Weinberger v. Catholic Action of Haw./Peace Educ. Project,*
    454 U.S. 139 (1981) ........................................................... 24, 25

*Wikimedia Found. v. NSA,*

14 F.4th 276 (4th Cir. 2021) ............................................................ 22

*Zuckerbraun v. General Dynamics Corp.*,
   935 F.2d 544 (2d Cir. 1991) ........................................................ 22

## INTRODUCTION AND SUMMARY

The state-secrets privilege "prevent[s] disclosure of information [in litigation] when that disclosure would harm national security interests." *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022). Where the privilege is properly invoked, privileged information is "completely" removed from the case, and "dismissal of the action" is warranted where the "maintenance of [the] suit" would risk or require disclosure of privileged information. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077, 1083, 1089 (9th Cir. 2010) (en banc) (quotation marks omitted).

Then-Attorney General Eric Holder personally determined that certain information in this case would, if disclosed, cause "significant harm to the national security." 2-ER-284. Plaintiffs do not dispute that predictive judgment or the district court's identical conclusion. 1-ER-55. Accordingly, the subjects of FBI counterterrorism investigations, the reasons for and results of those investigations, and the sources and methods used in those investigations are all properly privileged. Those state secrets have been completely removed from this case to protect national security.

Those same secrets, however, lie at the heart of a large swath of plaintiffs' claims. Plaintiffs' core allegation is that they were indiscriminately investigated because of their religion. Any attempt to litigate that issue would require examination of who the FBI investigated, why, and how. But those are state secrets. Precedent thus requires dismissal of all claims that would risk or require disclosure of those state secrets. That is not a result the government seeks lightly. But the state-secrets doctrine is founded on the principle that the private interests of litigants must sometimes, as here, be subordinated to "'a greater public value'": "the collective interest in national security." *El-Masri v. United States*, 479 F.3d 296, 313 (4th Cir. 2007).

Plaintiffs devote remarkably few words in their supplemental brief to seriously disputing that precedent requires dismissal. They instead seek to raise arguments they previously forfeited in an attempt to avoid application of that precedent. But this Court's case law is consistent with the unanimous view of the other courts of appeals and a long and unbroken line of Supreme Court precedent: dismissal is required where further litigation would jeopardize state secrets. This Court should affirm the dismissal of plaintiffs' religion claims because

2

adjudication of those claims would risk or require disclosure of state secrets.

## ARGUMENT

## I. The District Court Properly Dismissed Claims that Risk or Require Disclosure of State Secrets.

### A. The State-Secrets Privilege Safeguards National Security and Sometimes Requires Dismissal.

The Supreme Court "has repeatedly recognized 'a Government privilege against court-ordered disclosure of state and military secrets.'" *FBI v. Fazaga*, 142 S. Ct. 1051, 1056 (2022). "The state secrets privilege permits the Government to prevent disclosure of information [in litigation] when that disclosure would harm national security interests." *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022).

The privilege is rooted, as the Supreme Court has explained, in the Executive Branch's "Art[icle] II duties" to protect the national security and conduct foreign affairs, which include the duty to safeguard "military or diplomatic secrets." *United States v. Nixon*, 418 U.S. 683, 710 (1974); *accord El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007). In addition to that constitutional foundation, the state-secrets privilege is also "well established in the law of evidence." *United States v. Reynolds*, 345 U.S. 1, 6-7 (1953). The privilege applies

3

where "there is a reasonable danger that compulsion of the evidence will expose military [or other state-secret] matters which, in the interest of national security, should not be divulged." *Id.* at 10-11.

The government does not "lightly invoke[]" the state-secrets privilege. *Reynolds*, 345 U.S. at 7. The government can assert the privilege only through "a formal claim … lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* at 7-8 (footnote omitted). Since 2009, the Department of Justice has also conducted a high-level review that results in the personal approval of the Attorney General before the Department will defend the assertion of the privilege in litigation. *See* 2-ER-291-94 (Attorney General's memorandum). That process ensures that the privilege is invoked "only when genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests." 2-ER-291. This Court has remarked that this process, although not required by law, "is appropriate and to be encouraged." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1080 (9th Cir. 2010) (en banc).

Following a formal claim of privilege, "[t]he court itself must determine whether the circumstances are appropriate for the claim of privilege." *Reynolds*, 345 U.S. at 8. Consistent with the high-level Executive Branch review needed to assert the privilege, and consistent with the privilege's roots in the Executive's "Art[icle] II duties," the Supreme Court has made clear that courts owe the Executive's assertion of the privilege the "utmost deference." *Nixon*, 418 U.S. at 710; *see also Department of Navy v. Egan*, 484 U.S. 518, 530 (1988) (same). A reviewing court thus "must exercise the traditional 'reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs'" when "assessing the Government's claim that disclosure may harm national security." *Zubaydah*, 142 S. Ct. at 967 (quoting application of *Egan*'s utmost-deference standard); *see id.* at 977 (Thomas, J., concurring in part and concurring in the judgment); *id.* at 983 (Kavanaugh, J., concurring in part).

Where the privilege is properly invoked and upheld, it is "absolute[]." *Jeppesen*, 614 F.3d at 1081. The privileged material "is completely removed from the case." *Id.* at 1082 (quoting *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998)). "[E]ven the most

5

compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that [state] secrets are at stake." *Reynolds*, 345 U.S. at 11.

"[T]he state secrets privilege … sometimes authorizes district courts to dismiss claims." *Fazaga*, 142 S. Ct. at 1062. Such dismissal is not "automatically require[d]" in every case. *Jeppesen*, 614 F.3d at 1079. A case may be able to proceed after the successful invocation of the privilege "with no consequences save those resulting from the loss of evidence." *Id.* at 1082 (quoting *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1204 (9th Cir. 2007)). "In some instances, however, application of the privilege may require dismissal of the action" or specific claims to protect state secrets. *Id.* at 1083. Dismissal is required when the "maintenance of [the] suit" or claims would risk or require disclosure of privileged information. *Id.* at 1077, 1089 (quoting *Totten v. United States*, 92 U.S. 105, 107 (1875)).

The Supreme Court has recognized that dismissal is required where "the very subject matter of the action" or claim—such as an alleged espionage agreement—is a "matter of state secret," in which case the action or claim may be "dismissed on the pleadings without

ever reaching the question of evidence." *Reynolds*, 345 U.S. at 11 n.26. Dismissal is also required if, at any stage, it becomes apparent that "litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Jeppesen*, 614 F.3d at 1083. A "proceeding in which the state secrets privilege is successfully interposed must be dismissed if the circumstances make clear that privileged information will be so central to the litigation that any attempt to proceed will threaten that information's disclosure." *Id.* (quoting *El-Masri*, 479 F.3d at 308). Dismissal may even be "required at the outset" of a case where, for example, "the claims and possible defenses are so infused with state secrets that the risk of disclosing them is both apparent and inevitable." *Id.* at 1089. "Dismissal under these circumstances … reflects the general principle that 'public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential.'" *Id.* (quoting *Totten*, 92 U.S. at 107).

## B. The Privilege Applies to the Reasons for and Scope of Counterterrorism Investigations.

**1.** The district court commended the government for "narrowly tailor[ing] its assertion of the privilege" in this case and for invoking the

privilege "with restraint." 1-ER-52 n.10. Pursuant to the Department of Justice's special procedures governing invocation of the privilege, Attorney General Holder personally asserted the privilege in this case in a public declaration "[a]fter careful and actual personal consideration of the matter." 2-ER-284. The government also supported the claim of privilege with public and classified declarations from the Assistant Director for the Counterterrorism Division of the FBI, Mark Giuliano. 2-ER-260-61 & n.1.

The district court "thoroughly" examined the government's public and classified submissions. 1-ER-55. The court concluded that those declarations supported the claim of privilege over three categories of information: (1) information that might confirm or deny which individuals were the subject of an FBI counterterrorism investigation; (2) information that might reveal the reasons for and results of a counterterrorism investigation; and (3) information regarding the undisclosed sources and methods used in a counterterrorism investigation. 1-ER-53; *see* 2-ER-285 (Holder Decl.); 2-ER-270-71 (Public Giuliano Decl.). The court concluded that this information, "if disclosed, would significantly compromise national security." 1-ER-55.

8

With respect to the first category, the court explained that "[d]isclosure of subjects under investigation would undoubtedly jeopardize national security" because those subjects could "flee, destroy evidence, or alter their conduct so as to avoid detection." 1-ER-57. "Disclosure of those *not* under investigation by the FBI is, likewise, dangerous because individuals who desire to commit terrorist acts may then be motivated to do so upon discovering that they are not being monitored." 1-ER-57-58. "Information about who is being investigated while the status of others [remains] unconfirmed may be manipulated by individuals and terrorist groups to discover whether they or any of their members are being investigated." 1-ER-58.

Revelation of the second category of information, the reasons for and results of an FBI counterterrorism investigation, could reveal "the identities of human sources, such as confidential informants or undercover agents and officers." 1-ER-58. "The disclosure of the reasons" for "counterterrorism investigations would unquestionably compromise national security because it would reveal to those involved in plotting terrorist activities what the FBI knows and does not know about their plans." 1-ER-58. "Even if a person is not intent on

9

committing terrorist acts, the reasons they came under suspicion may involve sensitive intelligence information" the "disclosure of which could harm other pending or future investigations." 2-ER-278-79 (Public Giuliano Decl.). More generally, "disclosure of the reasons for an investigation could provide insights to persons intent on committing terrorist attacks as to what type of information is sufficient to trigger an inquiry by the FBI." 2-ER-287-88 (Holder Decl.).

Disclosure of the third category of information—undisclosed sources and methods—"could reveal the identities of particular subjects and the steps taken by the FBI in counterterrorism matters." 1-ER-58. Revealing sources and methods would also "effectively disclos[e] a road map to adversaries on how the FBI detects and prevents terrorist activities." 1-ER-58.

As the government explained in the panel briefs, and as remains true today after another round of careful review by the Department of Justice and the FBI to ensure that continued invocation and defense of the state-secrets privilege assertion remains necessary at this stage of the litigation to protect national security, the passage of time does not erode the need to protect this information. Even after investigations

have been closed, "[d]isclosure that an individual had been, but is no longer, under investigation might induce that subject to evaluate previous conduct and interactions to determine what information the Government may have obtained about them." 2-ER-276 (Public Giuliano Decl.). To the extent that cases are closed because "terrorism-related intentions were not previously detected," information about closed cases could give rise to the same concerns as information about individuals who are not under investigation at all. 2-ER-276-77. And "even if the former subjects are law-abiding, the disclosure that they had been investigated could still provide valuable information to terrorists and terrorist organizations about the FBI's intelligence and concerns, particularly where the former subjects have associates whom the FBI may still be investigating based on suspected ties to terrorist activity." 2-ER-287 (Holder Decl.).

The classified Giuliano declarations set out, in more detail than is possible to include in this unclassified setting, the specific harms to national security that would follow from disclosure of the state secrets at issue here and why such information is properly privileged. Those

11

declarations are available for this Court's inspection *ex parte* and *in camera*. *See* No. 12-56867 (ECF Nos. 45, 46, 48, 102).

**2.** Plaintiffs do not dispute that there is a "reasonable danger" that disclosure of the matters over which the government invoked the privilege would "expose military [or other] matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10-11. Accordingly, under the "principle of party presentation," that issue is not before this Court. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 1581 (2020).

Plaintiffs' only argument with respect to whether the sensitive national-security matters at issue here are properly privileged is procedural. As noted, *Reynolds* requires "a formal claim of privilege" by "the head of the department which has control over the matter" after "actual personal consideration by that officer." 345 U.S. at 7-8. The Attorney General satisfied that standard by invoking the privilege "[a]fter careful and actual personal consideration of the matter." 2-ER-284. He elaborated that he had "read and carefully considered the public and classified declarations of Mark Giuliano," which "describe[] in classified detail the information over which I am asserting the state

12

secrets privilege." 2-ER-284. And he emphasized that his declaration was "based on my personal knowledge, on information provided to me in my official capacity, and on my evaluation of that information." 2-ER-284. *Reynolds* requires nothing more. And courts may not further "'probe the mental processes'" of a department head regarding "the manner and extent of his study of the record and his consultation with subordinates." *United States v. Morgan*, 313 U.S. 409, 421-22 (1941).

Plaintiffs quibble that the declaration states that the Attorney General considered "'the matter,' not the underlying evidence." Pls. Suppl. Br. 29. But *Reynolds* itself specifies that the official invoking the privilege shall do so with respect to "the matter" at issue. 345 U.S. at 7-8. And it is unexceptional that the Attorney General invoked the privilege with respect to three specified "categories of information." Pls. Suppl. Br. 29. The Supreme Court explained just last Term in *Zubaydah* why the privilege precluded further discovery into "three categories of information" at issue in that case. 142 S. Ct. at 971. This Court similarly explained in *Kasza* that a department head may "properly invoke[] the claim of privilege" by "adequately identif[ying] categories of privileged information." 133 F.3d at 1169.

13

### C.     Further Litigation of Plaintiffs' Religion Claims Would Jeopardize State Secrets.

The state secrets at issue here have been "'completely removed'" from this case. *Jeppesen*, 614 F.3d at 1082. That consequence of the privilege is undisputed. The dispute between the parties at this juncture centers on whether dismissal of any of plaintiffs' claims is "required at the outset" of this case because "the claims and possible defenses are so infused with state secrets that the risk of disclosing them is both apparent and inevitable." *Id.* at 1089. This Court has held that dismissal of claims is required where "the circumstances" of the case "make clear that privileged information will be so central to the litigation that any attempt to proceed will threaten that information's disclosure." *Id.* at 1083 (quoting *El-Masri*, 479 F.3d at 308).

Litigation of plaintiffs' religion claims "would certainly require or, at the very least, greatly risk disclosure of secret information, such that dismissal at this stage of the proceeding is required." 1-ER-55. "This is because," as the district court explained, "Plaintiffs' core allegation [is] that Defendants conducted an indiscriminate 'dragnet' investigation and gathered information on Plaintiffs and Muslims in Southern California based on their religion." 1-ER-55. There is no way to litigate

14

that core allegation without examining state secrets: the government's actual reasons for conducting the FBI counterterrorism investigations at issue here and the nature and scope of those investigations, including who was investigated, how, and why. For that reason, dismissal of the religion claims is required under *Jeppesen* because "the claims and possible defenses are so infused with state secrets that the risk of disclosing them" in continued litigation "is both apparent and inevitable." 614 F.3d at 1089. The central issue in those claims—the FBI's reasons for conducting counterterrorism investigations—"is so sensitive that there is no way it can be litigated without risking national secrets." *Id.* at 1083 (quotation marks omitted). For that reason, "the case must be dismissed." *Id.*

Plaintiffs wrongly insist that "litigating the religious discrimination claims is unlikely to require introduction of any privileged information at all." Pls. Suppl. Br. 24. If this case were to proceed to discovery and trial, even if plaintiffs were able to establish a prima facie case, the government and individual-capacity defendants would need to present evidence to demonstrate that certain counterterrorism activities were premised on legitimate considerations.

15

Those legitimate considerations could not be explained without disclosing which individuals were under investigation, why they were targeted for investigation, and how the government structured its investigations—the very matters that the privilege protects. If a court cannot weigh the validity of those reasons, it cannot adjudicate the case.

This Court so held in *Brazil v. U.S. Department of the Navy*, 66 F.3d 193 (9th Cir. 1995). There, the Court determined that it could not adjudicate claims of alleged racial discrimination in the revocation of a plaintiff's security clearance because the court was precluded from evaluating "the Navy's proffered reasons for its decision," and such evaluation would be required if those claims were to proceed. *Id.* at 196-97. The same is true here.

That straightforward conclusion can be made with confidence at the pleading stage, as in *Jeppesen*, based on the "nature of the allegations and the government's declarations." 614 F.3d at 1081. "[W]aiting for specific evidentiary disputes to arise would be both unnecessary and potentially dangerous." *Id.* "Courts are not required to play with fire and chance further disclosure—inadvertent, mistaken, or even intentional—that would defeat the very purpose for which the

16

privilege exists." *Id.* (quoting *Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005)).

Plaintiffs incorrectly suggest that the applicable level of scrutiny would have some bearing on whether dismissal is proper. Pls. Suppl. Br. 21, 24-27. Dismissal is necessary regardless of whether strict or any other level of scrutiny would apply because privileged information will inevitably be at issue. Gov. Resp. Br. 50 & n.8. It should be beyond question that the government may launch an investigation based upon information that a group of individuals may be involved in terrorist activity, even if the group consisted of persons of a specific religion or race. Thus, even if plaintiffs are correct that certain investigations focused upon a particular group of people who are Muslim (an issue whose resolution itself would require resorting to privileged information), it would still be necessary to determine whether the government's investigation was based on "reasons *other than religion*." Pls. Suppl. Br. 27.

Indeed, plaintiffs themselves argued in district court that there was dragnet surveillance of Muslims "without other basis to believe them involved in criminal or terrorist activity," which plaintiffs

contended would not be "'closely fitted to further' the government's interest in preventing terrorism." SER-9. If these claims were to proceed to summary judgment or trial, the district court or trier of fact would have to determine whether individuals who are Muslim were targeted in this investigation and, if so, whether they were targeted "without other basis to believe them involved in criminal or terrorist activity"—an inquiry that would necessarily require disclosure of the subjects of investigations, the reasons for the investigations, and the way those investigations were carried out. As in *Jeppesen*, "virtually any conceivable response to [plaintiffs'] allegations would disclose privileged information." 614 F.3d at 1087 n.12 (quoting *El-Masri*, 479 F.3d at 310). Litigation of those allegations thus cannot proceed.

The government's disclosure that a particular person, Monteilh, was used as an informant, and the government's limited disclosure of some specific materials related to his time as an informant, does not change the analysis. Monteilh's public statements "do not constitute a disclosure or confirmation by the FBI of any information concerning his activities as an informant." 2-ER-269-70 (Public Giuliano Decl.). And they do not change the fact that the government's national-security

18

information that would be needed to properly litigate plaintiffs' claims remains privileged. 2-ER-268-69. The privileged information relevant to plaintiffs' religion claims extends well beyond Monteilh's own actions and the instructions he was given, to encompass subjects and underlying justifications for the overall investigation, as well as other undisclosed sources and methods. The specific subjects of the counterterrorism investigations remain privileged, as do the reasons that particular individuals were selected for investigation and undisclosed sources and methods, 2-ER-269—all of which the government has properly protected and all of which would inevitably be at issue if litigation of plaintiffs' religion claims were to go forward.

Accordingly, the state-secrets privilege precludes litigation of plaintiffs' contention that they were investigated because of their religion. The district court thus properly dismissed plaintiffs' First Amendment and related discrimination claims.

The privilege also precludes relying on the religious-discrimination argument to buttress plaintiffs' other claims. While the government did not seek to dismiss the search claims on state-secrets grounds at the pleading stage, the government did recognize that,

19

depending on how those claims were litigated, they too might be precluded by the privilege. *See* SER-14. Plaintiffs themselves heightened this concern as they asserted in the original panel briefing that, in connection with the search claims, they intend to raise "the same exact question at issue in the discrimination claims." Pls. Opening Br. 63. The reasons for and scope of the FBI's counterterrorism investigations can no more be resolved in connection with plaintiffs' search claims than they could in connection with their other claims.

## II. Plaintiffs' Arguments to the Contrary Are Unavailing.

### A. State-Secrets Dismissals Are Not Limited to Cases Involving Clandestine Contracts.

In supplemental briefing, plaintiffs primarily contend that the en banc Ninth Circuit erred in *Jeppesen* and that the state-secrets doctrine does not permit dismissal where further litigation would risk or require disclosure of state secrets. Instead, they contend, litigation must continue in most such cases, even if it causes grave harm to national security; in their view, dismissal to protect state secrets is permissible only in a small subset of cases seeking recovery on clandestine contracts. Pls. Suppl. Br. 1-2, 8-19.

Plaintiffs forfeited that novel argument by failing to raise it in district court or in previous briefing before this panel. *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1112 n.6 (9th Cir. 2018). Indeed, in their prior briefing, plaintiffs argued that "[a]ssertion of the *Reynolds* privilege … may lead to dismissal of a lawsuit" where, for example, "litigating the case" would "present an unacceptable risk of disclosing state secrets." Pls. Opening Br. 17-18 (quoting *Jeppesen*, 614 F.3d at 1083). Plaintiffs should not now be heard to call for avoiding application of precedent they previously acknowledged. Plaintiffs made their newfound argument for the first time before the Supreme Court. That the Supreme Court declined to address that argument only reinforces the straightforward conclusion that the argument is forfeited; it should not serve as an invitation to look past the forfeiture.

In any event, plaintiffs are wrong on the merits. "The Supreme Court has long recognized that in exceptional circumstances courts must act in the interest of the country's national security to prevent disclosure of state secrets, even to the point of dismissing a case entirely." *Jeppesen*, 614 F.3d at 1077. Indeed, for well over 40 years the courts of appeals have uniformly recognized that state-secrets

dismissals are not restricted to cases involving the federal common law of government contract remedies.[1] Instead, as this Court explained most recently in *Jeppesen*, this Court applies the "'general principle'" that dismissal is required where "further litigation presents an unacceptable risk of disclosure of state secrets." 614 F.3d at 1089 (quoting *Totten*, 92 U.S. at 107). Precedent thus forecloses plaintiffs' argument.

---

[1] *Wikimedia Found. v. NSA*, 14 F.4th 276, 301-04 (4th Cir. 2021) (Diaz, J.); *id.* at 309-11 (Rushing, J., concurring in part and in the judgment); *Abilt v. CIA*, 848 F.3d 305, 313-14 (4th Cir. 2017); *Jeppesen*, 614 F.3d at 1081; *Al-Haramain*, 507 F.3d at 1196-1202, 1204-05; *ACLU v. NSA*, 493 F.3d 644, 655 (6th Cir. 2007) (Batchelder, J.); *id.* at 692-93 (Gibbons, J., concurring); *In re Sealed Case*, 494 F.3d 139, 145-54 (D.C. Cir. 2007); *El-Masri*, 479 F.3d at 306-08; *Sterling*, 416 F.3d at 347-48; *Tenenbaum v. Simonini*, 372 F.3d 776, 777 (6th Cir. 2004); *DTM Research, LLC v. AT&T Corp.*, 245 F.3d 327, 334 (4th Cir. 2001); *Kasza*, 133 F.3d at 1166-67, 1170; *Black v. United States*, 62 F.3d 1115, 1119 (8th Cir. 1995); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1140 (5th Cir. 1992); *Bowles v. United States*, 950 F.2d 154, 156 (4th Cir. 1991) (per curiam); *In re Under Seal*, 945 F.2d 1285, 1288-90 (4th Cir. 1991); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547-48 (2d Cir. 1991); *In re United States*, 872 F.2d 472, 476-77 (D.C. Cir. 1989); *Guong v. United States*, 860 F.2d 1063, 1066-67 (Fed. Cir. 1988); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1241-44 (4th Cir. 1985); *Molerio v. FBI*, 749 F.2d 815, 825 (D.C. Cir. 1984); *Ellsberg v. Mitchell*, 709 F.2d 51, 64-65 (D.C. Cir. 1983); *Halkin v. Helms*, 690 F.2d 977, 997-1001 (D.C. Cir. 1982); *Salisbury v. United States*, 690 F.2d 966, 977 (D.C. Cir. 1982); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir. 1980) (en banc) (per curiam); *Halkin v. Helms*, 598 F.2d 1, 10-11 (D.C. Cir. 1978).

This Court's precedent is also consistent with an unbroken line of Supreme Court cases. In *Totten*, 92 U.S. 105, the Court held that a contract claim had to be dismissed because adjudication would turn on the existence or nonexistence of an alleged espionage agreement. The Court's reasoning did not rest solely on contract law. The Court also recognized the President's "undoubted[]" constitutional authority, "as commander-in-chief of the armies of the United States, to employ secret agents." *Id.* at 106. And the Court explained that "disclosure" of a clandestine arrangement "in time of war, or upon matters affecting our foreign relations" "might compromise or embarrass our government in its public duties," to "the serious detriment of the public," by making it "impossible" for the President to exercise his "indispensable" authority to maintain a "secret service." *Id.* at 106-07. The Court explained that dismissal was thus required under the "general principle" that "the maintenance of any suit" is forbidden where continued litigation "would inevitably lead to the disclosure of matters which the law itself regards as confidential." *Id.* at 107.

The Court reaffirmed that general principle nearly a century later in *Reynolds*, where it described *Totten* as holding that protecting state

23

secrets may sometimes require dismissal "without ever reaching the question of evidence" where "the very subject matter of the action, a contract to perform espionage, was a matter of state secret" and "it was so obvious that the action should never prevail over the privilege." 345 U.S. at 11 n.26.

The Court again emphasized the general applicability of state-secrets dismissal in *Weinberger v. Catholic Action of Hawaii/Peace Education Project*, 454 U.S. 139 (1981). There, the Court concluded that a suit under the National Environmental Policy Act (NEPA) was "beyond judicial scrutiny" because determining whether the Navy had to complete an environmental impact study would depend on whether the Navy proposed to store nuclear weapons in a particular location— information that the Navy could not disclose without harming national security. *Id.* at 146-47. The Court noted that *Totten* presented a "similar situation" and quoted *Totten* and cited *Reynolds* for the general proposition that a suit could not be maintained where it "would inevitably lead to the disclosure" of such matters. *Id.*

More recently, in *Tenet v. Doe*. 544 U.S. 1 (2005), the Court squarely rejected the argument that *Totten* is "merely a contract rule."

24

*Id.* at 8. "In fact, *Totten* was not so limited." *Id.* In *Tenet*, the Court concluded, dismissal was required to protect a state secret—an alleged clandestine relationship with the CIA—where the plaintiff did not seek to recover on a contract but instead pressed a constitutional due process claim, and where the existence or nonexistence of a secret relationship was at the heart of the claim. *Id.* at 3, 11. The Court explained that *Totten*'s "core concern" was "preventing the existence of the plaintiff's relationship with the Government" in that case—that is, a state secret—"from being revealed" by continued litigation. *Id.* at 10.

The Court's holdings in those cases did not rest on the conclusion that the plaintiffs "assumed the risk" under contract law that the government would fail to comply with NEPA or the requirements of due process. Pls. Suppl. Br. 11. Rather, as the Court explained, continued adjudication could not "provide the absolute protection [the Court] found necessary." *Tenet*, 544 U.S. at 11. "The possibility that a suit may proceed" and state secrets "may be revealed" was "unacceptable"; as was "[f]orcing the Government to … settle a case … out of fear that any effort to litigate the action would reveal classified information that may undermine ongoing covert operations." *Id.*

*General Dynamics Corp. v. United States*, 563 U.S. 478 (2011) is not to the contrary and does not diminish *Jeppesen*'s binding precedential force. Indeed, consistent with prior precedent, the Supreme Court explained in *General Dynamics* that it was better to "leave the parties without a remedy rather than risk the 'potential injustice'" of resolving their claims "on a distorted evidentiary record," where the key issues were shrouded by state secrets. *Id.* at 488-89. The Court explained that, if litigation were to proceed, state secrets would be at risk "since both sides have an incentive to probe up to the boundaries of state secrets," secrets "can also be indirectly disclosed," and "[e]ach assertion of the privilege" in a trial "can provide another clue" about state secrets. *Id.* at 486-87. The centrality of state secrets to the issues thus made the key claims and defenses "nonjusticiable question[s]." *Id.* at 490.

*General Dynamics* reached that conclusion in the context of contract claims and counterclaims between the United States and a defense contractor. The Court therefore grounded its ruling on its "common-law authority to fashion contractual remedies in Government-contracting disputes." 563 U.S. at 485. But, contrary to plaintiffs'

26

suggestion, *General Dynamics* did not retroactively and silently limit state-secrets dismissals to *only* those cases involving the federal common law of government contract remedies. *General Dynamics* had no occasion to address that question. It did not erase the Supreme Court's discussion in *Nixon* of the privilege's constitutional basis or the discussion in *Totten* of the constitutional function served by dismissing the case to protect the Executive's Article II authorities. It did not reverse the Supreme Court's endorsement in *Totten*, *Reynolds*, and *Weinberger* of a trans-substantive rule of dismissal extending beyond principles of contract law. It did not reverse the Supreme Court's conclusion in *Tenet* that *Totten* is not "merely a contract rule." 544 U.S. at 8. And it did not call into question the courts of appeals' unanimous and longstanding agreement that dismissal is required where necessary to protect state secrets.

There is nothing inconsistent about the Supreme Court's and this Court's longstanding recognition that dismissal is sometimes required to protect state secrets, and the Supreme Court's observation in *General Dynamics* that some state-secrets cases involve a "purely" evidentiary issue of excluding information to protect state secrets while other cases

27

involve the "quite different" issue of dismissing a case to protect state secrets. Pls. Suppl. Br. 18 (quoting *General Dynamics*, 563 U.S. at 485). As this Court has already explained, noting "that distinction … does not mean that the *Reynolds* privilege can never … result in a dismissal." *Jeppesen*, 614 F.3d at 1087 n.12.

*General Dynamics* therefore provides no basis for this Court to depart from its prior precedents, including its en banc decision in *Jeppesen*. Nothing in *General Dynamics* is "clearly irreconcilable" with *Jeppesen* or other precedents requiring dismissal of claims to protect state secrets; those precedents thus continue to bind this panel. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Plaintiffs incorrectly insist (at 17-18) that cases involving dismissal (*Totten*, *Weinberger*, and *Tenet*) are based on wholly separate doctrinal foundations than cases involving only the exclusion of information (*Reynolds*). This Court in *Jeppesen*, however, already rejected that cramped reading of those decisions, recognized the proper role of dismissal in the state-secrets doctrine, and applied the privilege to dismiss a case on the pleadings. 614 F.3d at 1087 n.12. And the Supreme Court recently held that "the state secrets privilege …

28

sometimes authorizes district courts to dismiss claims on the pleadings." *Fazaga*, 142 S. Ct. at 1062.

That conclusion was and remains sound. *Reynolds*, the modern Supreme Court case that expounded the doctrine, cited the *Totten* dismissal case as the leading case establishing that the state-secrets privilege was already "well established in the law of evidence." 345 U.S. at 6-7 & n.11. *Reynolds* also described *Totten* as establishing the principle that dismissal can be required under the doctrine "on the pleadings without ever reaching the question of evidence" when "it [is] so obvious that the action should never prevail over the privilege." *Id.* at 11 n.26. *Reynolds* also relied on another foundational state-secrets case, *Firth Sterling Steel Co. v. Bethlehem Steel Co.*, 199 F. 353 (E.D. Pa. 1912), which cited *Totten* for the proposition that the court could "dismiss a suit based upon military secrets." *Id.* at 355. *Firth Sterling* concluded that, if an entire case could be dismissed to protect state secrets, then, *a fortiori*, the court could order a private plaintiff not to introduce into evidence state secrets already in the plaintiff's possession. *Id.* Dismissal to protect state secrets has thus always been at the heart of the doctrine.

Just last Term, in this very case, the Supreme Court again highlighted the foundational role of, and general applicability of, the state-secrets dismissal cases, citing those cases alongside the exclusion-of-evidence cases to illustrate the general point that the Supreme Court "has repeatedly recognized 'a Government privilege against court-ordered disclosure of state and military secrets.'" *Fazaga*, 142 S. Ct. at 1056 (citing *General Dynamics*, *Zubaydah*, *Tenet*, *Reynolds*, and *Totten*). The district court and this Court are thus in good company in placing *Totten* on a "continuum of analysis" with *Reynolds*. Pls. Suppl. Br. 17 (quoting *Jeppesen*, 614 F.3d at 1087 n.12, 1089).

## B. Dismissal Does Not Turn on Whether Privileged Information "Would Exonerate Defendants."

Plaintiffs further err in suggesting that dismissal should turn on whether "the secret information" protected by the privilege "would exonerate Defendants." Pls. Suppl. Br. 21. That contention is forfeited, as plaintiffs never advanced it in prior briefing before this panel. To the contrary, plaintiffs' opening panel brief states that *Jeppesen* "adopt[ed] th[e] rule" that "even if the Court reviewed the secret evidence and determined that the Government's conduct was *unlawful*, it still would have to dismiss." Pls. Opening Br. 71-72.

30

Plaintiffs' newfound argument is also foreclosed by precedent. "When … the occasion for the privilege is appropriate, … the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." *Reynolds*, 345 U.S. at 10. "When the government successfully invokes the state secrets privilege, 'the evidence is completely removed from the case.'" *Jeppesen*, 614 F.3d at 1082 (quoting *Kasza*, 133 F.3d at 1166); *see General Dynamics*, 563 U.S. at 485 (the "privileged information is excluded" from the case); *Sterling*, 416 F.3d at 348, 349 (a court is "neither authorized nor qualified to inquire further" into privileged matters "even in camera"); *El-Masri*, 479 F.3d at 306 (privileged information "is absolutely protected from disclosure—even for the purpose of in camera examination by the court"). State secrets thus cannot be used to adjudicate any claim or defense, even *ex parte* and *in camera*.

That sensible rule follows from the overriding need to safeguard national security. The risk of harm to national security includes the possibility of mistaken or inadvertent disclosure that might occur when a court undertakes an evidentiary evaluation of privileged information

31

in chambers. That risk also includes the possibility that dismissal based on an *in camera* determination that the excluded information would mandate judgment for one party or another could itself reveal the very information sought to be protected. *See General Dynamics*, 563 U.S. at 487 ("State secrets can also be indirectly disclosed.").

Indeed, as the Supreme Court explained in this case last Term, the "central question" in applying the state-secrets privilege is not whether the government would be entitled to judgment if the government were to rely on privileged information; the central question is whether "disclosure would harm national-security interests." *Fazaga*, 142 S. Ct. at 1061; *see id.* ("We have never suggested that an assertion of the state secrets privilege can be defeated by showing that the evidence was unlawfully obtained.").

If further litigation poses a sufficient risk to state secrets, then dismissal is required. There is no third option of using state secrets to adjudicate a claim or defense on the merits *in camera.* "The state secrets privilege, because of its unique national security considerations, does not lend itself to a compromise solution." *Al-Haramain*, 507 F.3d at 1204. Holding an *in camera* trial on the merits using privileged

32

information would contravene the point of the privilege, which is to *exclude* such information from litigation. That holds true in purely private disputes in which the government appears as a third-party to assert the privilege. *See Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1243 (4th Cir. 1985) (affirming dismissal because "the proof required by the parties to establish or refute the claim" involved state secrets). And it holds true here because the privilege likewise prevents proper adjudication of the religion claims and defenses. "It is claims and defenses *together* that establish the justification, or lack of justification, for judicial relief." *General Dynamics*, 563 U.S. at 487. And the state secrets at issue here, which would be essential to establishing the justification or lack thereof for judicial relief on plaintiffs' religion claims, are "completely barred" from any use in this litigation. *Al-Haramain*, 507 F.3d at 1204. Plaintiffs' contrary suggestion misinterprets the case law, is inconsistent with the privilege's operation, and is inconsistent with the Executive Branch's constitutional responsibility to safeguard national security.

The earlier panel opinion in this case should not be read to suggest that dismissal would be proper only if the district court were to

conclude that the defendants are factually entitled to judgment based on privileged information that has been removed from the case. *See Fazaga v. FBI*, 965 F.3d 1015, 1067 (9th Cir. 2020) (providing for dismissal where the privilege deprives defendants of a "*legally meritorious defense*" (emphasis added)). To the extent the prior panel opinion is read as requiring the establishment of a *factually* meritorious defense using privileged information before a claim may be dismissed, such a clearly erroneous statement should not be followed for the reasons above. Moreover, that issue, which was unbriefed by either party in the original panel briefs, was not necessary to the panel's conclusion that the state-secrets privilege had been displaced by statute. The panel's discussion of that issue was thus dicta, as the panel opinion appears to acknowledge. *See id.* (providing "guidance" to help the district court and others in the future). And "dicta … is not part of the law of the case." *Russell v. Commissioner*, 678 F.2d 782, 785 (9th Cir. 1982).

In any event, the Supreme Court reversed this panel's prior judgment. *Fazaga*, 142 S. Ct. at 1063; *see Johnson v. Board of Educ. of Chi.*, 457 U.S. 52, 53-54 (1982) ("Because we have vacated the Court of

Appeals' judgments in this case, the doctrine of the law of the case does not constrain … the Court of Appeals."). The Supreme Court did so in a unanimous opinion that explained that application of the state-secrets privilege turns on whether disclosure "would harm national-security interests," not on "the lawfulness" of alleged government conduct. *Fazaga*, 142 S. Ct. at 1061. Accordingly, any reading of the prior panel opinion that would require a determination that the government would prevail on the merits of plaintiffs' religion claims using privileged information, before allowing dismissal to protect state secrets, would be "clearly irreconcilable with the reasoning or theory of intervening higher authority" and thus should be rejected. *Miller*, 335 F.3d at 893.

## C. The Privilege Applies Even Where Litigants Allege Constitutional Violations.

Plaintiffs also assert, without support, that dismissal to protect state secrets is not permissible where plaintiffs request injunctive relief for an alleged constitutional violation. Pls. Suppl. Br. 22-23. As the government has explained, Gov. Resp. Br. 61-63, that argument is foreclosed by the Supreme Court's decision in *Tenet* and this Court's decision in *Al-Haramain*, both of which upheld dismissal of constitutional claims seeking injunctive relief on the basis of the state-

secrets doctrine. *Tenet*, 544 U.S. at 10-11; *Al-Haramain*, 507 F.3d at 1196-1206.

Indeed, *Tenet* expressly rejected the contention that a serious constitutional question would arise if a constitutional claim seeking injunctive relief were to be dismissed to protect state secrets. 544 U.S. at 10-11 (distinguishing *Webster v. Doe*, 486 U.S. 592 (1988)). As the Supreme Court explained long ago, "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Reynolds*, 345 U.S. at 11.

## CONCLUSION

For the foregoing reasons, the dismissal of plaintiffs' religion

claims should be affirmed.

Respectfully submitted,

SARAH E. HARRINGTON
*Deputy Assistant Attorney*
*General*[2]
MARTIN ESTRADA
*United States Attorney*
SHARON SWINGLE
/s/ ***Joseph F. Busa***
JOSEPH F. BUSA
*Attorneys, Appellate Staff*
*Civil Division, Room 7537*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*
*Joseph.F.Busa@usdoj.gov*

September 19, 2022

---

[2] The Principal Deputy Assistant Attorney General is recused in
this matter.

# CERTIFICATE OF COMPLIANCE

This brief complies with this Court's orders of May 10, 2022, and August 29, 2022, because it contains 6,998 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Joseph F. Busa*
Joseph F. Busa
Counsel for Federal Appellees

# CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Joseph F. Busa*

Joseph F. Busa
Counsel for Federal Appellees