**Consolidated Case Nos. 13-55017, 12-56867, 12-56874**
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

Yassir Fazaga, *et al.*,

Plaintiffs-Appellants,

v.

Federal Bureau of Investigation; *et al.*

Defendants- Appellees.
_____

On Appeal from the United States District Court, Central District of California
No. CV 11-301-CJC (VBK)
_____

### PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF
_____

Ahilan Arulanantham
arulanantham@law.ucla.edu
UCLA SCHOOL OF LAW
385 Charles Young Drive East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Peter Bibring
pbibring@aclusocal.org
Mohammad Tajsar
mtajsar@aclusocal.org
ACLU FOUNDATION OF
   SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone:  (213) 977-9500
Facsimile:  (213) 977-5297

Dan Stormer
dstormer@hadsellstormer.com
Shaleen Shanbhag
sshanbhag@hadsellstormer.com
HADSELL STORMER RENICK
   & DAI LLP
128 North Fair Oaks Avenue
Pasadena, CA 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079


Amr Shabaik
ashabaik@cair.com
Dina Chehata
dchehata@cair.com
COUNCIL ON AMERICAN-ISLAMIC
   RELATIONS
 Greater Los Angeles Area Office
2180 W. Crescent Ave., Ste. F
Anaheim, CA 92801
Telephone: (714) 776-1177

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

I. *GENERAL DYNAMICS* MAKES CLEAR THAT THE STATE-SECRETS PRIVILEGE CANNOT LEAD TO DISMISSAL OF A NON-CONTRACT CASE UNDER *REYNOLDS* ...............................3

    A. The Government Fails to Meaningfully Engage *General Dynamics*' Reasoning and Reconcile It with *Jeppesen* .............4

    B. *General Dynamics*' Limitations of the Dismissal Remedy to Espionage Agreements Is Consistent with U.S. and English Law Going Back Two Centuries ................................................9

    C. Plaintiffs Did Not Waive the Argument that Dismissal is Unavailable Here, and this Court Should Address It................11

II. EVEN IF IT STILL GOVERNS, *JEPPESEN* DOES NOT AUTHORIZE DISMISSAL HERE BECAUSE DEFENDANTS HAVE NOT ESTABLISHED A "VALID DEFENSE." ...................14

III. DISMISSAL ON THE PLEADINGS IS PREMATURE...................17

IV. JUST AS BEFORE, THIS COURT SHOULD REMAND TO THE DISTRICT COURT TO CONSIDER THE *BIVENS* ISSUES IN THE FIRST INSTANCE ..........................................................................22

CONCLUSION .................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abilt v. CIA*,
848 F.3d 305 (4th Cir. 2017) ...............................................................11

*ACLU v. NSA*,
493 F.3d 644 (6th Cir. 2007) ...............................................................10

*Bareford v. General Dynamics Corp.*,
973 F.2d 1138 (5th Cir. 1992) ..............................................................10

*Black v. United States*,
62 F.3d 1115 (8th Cir. 1995) ...............................................................10

*Bowles v. United States*,
950 F.2d 154 (4th Cir. 1991) ...............................................................10

*Brazil v. U.S. Department of the Navy*,
66 F.3d 193 (9th Cir. 1995) ...............................................................9

*Cent. Pines Land Co. v. United States*,
274 F.3d 881 (5th Cir. 2001) ..............................................................16

*Clark v. Chappell*,
936 F.3d 944(9th Cir. 2019) ..............................................................23

*Department of the Navy v. Egan*,
484 U.S. 518 (1988)........................................................................8

*DTM Research, LLC v. AT&T Corp.*,
245 F.3d 327 (4th Cir. 2001) ..............................................................11

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) ....................................................... 11, 12

*El-Masri v. United States*,
    479 F.3d 296 (4th Cir. 2007) ................................................................11

*Farnsworth Cannon, Inc. v. Grimes*,
    635 F.2d 268 (4th Cir. 1980) .......................................................... 10, 11

*Fazaga v. FBI*,
    965 F.3d 1015 (9th Cir. 2020) .................................................... passim

*FBI v. Fazaga*,
    142 S. Ct. 1051 (2022) ................................................................8, 10

*Firth Sterling Steel Co. v. Bethlehem Steel Co.*,
    199 F. 353 (E.D. Pa. 1912) ..................................................................7

*Fitzgerald v. Penthouse Int'l, Ltd.*,
    776 F.2d 1236 (4th Cir. 1985) .............................................................10

*Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*,
    344 F.3d 1288 (11th Cir. 2003) ..........................................................16

*General Dynamics Corp. v. United States*,
    563 U.S. 478 (2011).......................................................................3, 5

*Guong v. United States*,
    860 F.2d 1063 (Fed. Cir. 1988) .........................................................11

*Halkin v. Helms*,
    598 F.2d 1 (D.C. Cir. 1978).............................................................10

*In re Sealed Case*,
    494 F.3d 139 (D.C. Cir. 2007)............................................. 10, 11, 16

*In re Under Seal*,
    945 F.2d 1285 (4th Cir. 1991) .........................................................11

*In re United States*,
    872 F.2d 472 (D.C. Cir. 1989).........................................................11

*Johnson v. Bd. Of Educ. Of City of Chicago*,
    457 U.S. 52, (1982)..........................................................................15

*Kasza v. Browner*,
　133 F.3d 1159 (9th Cir. 1998) ............................................................................21

*Koerner v. Grigas*,
　328 F.3d 1039 (9th Cir. 2003) .................................................................. 12, 13

*Mohamed v. Jeppesen*,
　614 F.3d 1070 (9th Cir. 2010) ............................................................ 4, 17, 18

*Molerio v. FBI*,
　749 F.2d 815 (D.C. Cir. 1984) ................................................................ 11, 16

*Operating Eng'rs Pension Trust v. Charles Minor Equip. Rental, Inc.*,
　766 F.2d 1301 (9th Cir.) .......................................................................................15

*Ortega v. O'Connor*,
　50 F.3d 778 (9th Cir. 1995) ................................................................................15

*Salisbury v. United States*,
　690 F.2d 966 (D.C. Cir. 1982) ...........................................................................10

*Seminole Tribe of Fla. v. Fla.*,
　517 U.S. 44 (1996) .................................................................................................15

*Sterling v. Tenet*,
　416 F.3d 338 (4th Cir. 2005) .............................................................................11

*Tenenbaum v. Simonini*,
　372 F.3d 776 (6th Cir. 2004) .............................................................................11

*Tenet v. Doe*,
　544 U.S. 1 (2005) ...............................................................................................3, 6

*Totten v. United States*,
　92 U.S. 105 (1875) ...................................................................................................3

*United States v. Alexander*,
　106 F.3d 874 (9th Cir. 1997) .............................................................................14

*United States v. Nixon*,
  418 U.S. 683 (1974) ...........................................................................8, 16

*United States v. Reynolds,*
  345 U.S. 1 (1953) ........................................................................ 3, 7, 21

*United States v. Sineneng-Smith*,
  140 S. Ct. 1575 (2020) .........................................................................18

*United States v. Zubaydah*,
  142 S. Ct. 959 (2022) ...........................................................................21

*Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*,
  454 U.S. 139 (1981) ...............................................................................5

*Zuckerbraun v. General Dynamics Corp.*,
  935 F.2d 544 (2d Cir. 1991) .................................................................10

## INTRODUCTION

The Government's brief reads as though it were written in an alternate universe in which the Supreme Court never decided *General Dynamics*. Although that case clearly describes two "quite different" state-secrets doctrines—one a justiciability bar requiring dismissal of certain government contracting disputes and the other an evidentiary rule permitting only exclusion of evidence—the Government conflates the two seamlessly throughout. As a result, it never confronts its greatest weaknesses: Because this is not a government contracting dispute, the state-secrets doctrine applicable here is the evidentiary rule. But how can an evidentiary rule require the dismissal of this case if Plaintiffs can proceed without the excluded evidence? And how could litigating this case risk disclosure of secret information if only the Government possesses it?

Instead of confronting these problems, the Government argues the Court should ignore them because Plaintiffs waived this argument. But they did not. Plaintiffs' original opening brief repeatedly cited *General Dynamics* and argued at length that the state-secrets doctrine does not permit dismissal of their constitutional claims. Moreover, in reply they specifically endorsed an amici's assertion that *General Dynamics* is clearly irreconcilable with this Court's prior state-secrets caselaw. Those more than sufficed to distinctly raise the argument and

put Defendants on notice—even before it became the *first section* of Plaintiffs' Answering Brief at the Supreme Court.

The Government's responses to Plaintiffs' alternative arguments for reversal are no more plausible. The Government failed to seek en banc review or certiorari in response to this Court's holding that the district court cannot grant dismissal based on the existence of a "valid defense" unless it determines the defense is actually meritorious, but it now asks this Court to disregard that prior holding as either clearly erroneous or dicta. It is neither. That holding adopting the D.C. Circuit's test is now law of the case and circuit. The district court did not apply the D.C. Circuit's test. Nor could it have, given that it prematurely granted dismissal before Plaintiffs sought discovery or summary judgment. Because this Court already held the district court must conduct an in camera review sufficient to "determine[] that defendants have a legally meritorious defense," *Fazaga v. FBI*, 965 F.3d 1015, 1067 (9th Cir. 2020), and because the district court did not and could not have determined that state secrets would have to be disclosed to litigate this case at such a preliminary stage, reversal is required.

Finally, the Individual Defendants ask this Court to disregard normal practice and reach a host of *Bivens*-related issues that the district court has never addressed. This Court confronted the same situation earlier and chose to adhere to the normal practice. It should do so again.

I.   ***GENERAL DYNAMICS*** **MAKES CLEAR THAT THE STATE-SECRETS PRIVILEGE CANNOT LEAD TO DISMISSAL OF A NON-CONTRACT CASE UNDER *REYNOLDS*.**

As set forth in Plaintiffs' Supplemental Brief, Dkt. 166, *General Dynamics Corp. v. United States*, 563 U.S. 478 (2011) establishes that the state-secrets privilege encompasses two distinct doctrines: the bar set out in *Totten v. United States*, 92 U.S. 105 (1875), and rooted in courts' "common-law authority to fashion contractual remedies in Government-contracting disputes," requires courts to dismiss as non-justiciable certain government contracting claims, including those "based on covert espionage agreements," *General Dynamics,* 563 U.S. at 485-86; and the evidentiary privilege in *United States v. Reynolds,* 345 U.S. 1 (1953), which rests on courts' "power to determine the procedural rules of evidence" and authorizes the exclusion of sensitive national security information in litigation "by applying evidentiary rules: The privileged information is excluded and the trial goes on without it." *General Dynamics,* 563 U.S. at 485. *General Dynamics* clarified that the caselaw governing courts' power to address state secrets through dismissal "is not *Reynolds*" at all, but rather *Totten* and *Tenet v. Doe*, 544 U.S. 1 (2005). *General Dynamics*, 563 U.S. at 485-86.

As Plaintiffs argued, *General Dynamics*' explanation that the state-secrets privilege encompasses two "quite different" doctrines, *id.*, is clearly irreconcilable

with *Mohamed v. Jeppesen*, 614 F.3d 1070 (9th Cir. 2010) (en banc), which viewed *Reynolds* and *Totten* as on "a 'continuum of analysis'" that allowed the Government to seek dismissal of cases based on the state-secrets evidentiary privilege—i.e., dismissal even in cases not involving government contract disputes. *Id.* at 1089; Pls. Suppl. Br. 11-15.

> ### A. The Government Fails to Meaningfully Engage *General Dynamics*' Reasoning and Reconcile It with *Jeppesen*

In its brief, the Government makes no serious attempt to reconcile its position with the rationale of *General Dynamics*, and instead continues to elide *Totten* and *Reynolds* by asserting that the state-secrets evidentiary privilege can justify dismissal. Gov't Suppl. Br. 3-7. When the Government does eventually address *General Dynamics*, *id.* at 26, it cherry-picks quotes out of context while ignoring its rationale. While of course the opinion contains language supporting the notion that courts are rightly concerned about the disclosure of state secrets in litigation, exclusion addresses that concern just as well as dismissal. The Government cites *General Dynamics*' discussion of how risks of disclosure can arise from litigation of both claims and defenses. Gov't Suppl. Br. 26. But it never disputes that *in this case* only the Government possesses the secret information. Pls. Suppl. Br. 21-22. Nor does it explain why mere exclusion cannot therefore cure any risk of harm, as the Government can on its own mitigate any risk of inadvertent disclosure.

The Government also acknowledges that *General Dynamics* "grounded its ruling on its 'common-law authority to fashion contractual remedies in Government-contracting disputes,'" Gov't Suppl. Br. 26 (quoting *General Dynamics*, 563 U.S. at 485), but nonetheless asserts *General Dynamics* did not "retroactively and silently limit state-secrets dismissals to *only* those cases involving the federal common law of government contract remedies." *Id.* at 27. But the Supreme Court has *never* dismissed a case on state secrets that did *not* involve a government contract, and the reasoning of prior cases authorizing dismissal derived from that context. Nor is *General Dynamics* "silent" on this point: it explicitly distinguishes between the dismissal remedy available in government contracting disputes and the exclusion remedy available under *Reynolds*.

The Government suggests *General Dynamics*' sharp distinction between the *Totten* bar and *Reynolds* evidentiary privilege is at odds with earlier state-secrets decisions in *Tenet*, *Totten*, *Reynolds*, and *Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*, 454 U.S. 139 (1981). Gov't Suppl. Br. 23–25. Even were that true, the most recent decision would control. But all four cases are consistent with *General Dynamics*' recognition that there are two distinct state-secrets doctrines.

*Tenet* concerned a government contract to spy, and therefore fits firmly within *General Dynamics*' framework. *General Dynamics*, 563 U.S. at 485–86

(characterizing *Tenet* and *Totten* as "two cases dealing with alleged contracts to spy"). The Government plucks a phrase out of context to argue that *Tenet* concluded *Totten* was not "merely a contract rule," 544 U.S. at 8; Gov't Suppl. Br. 27, but that language only recognized *Totten* established a *justiciability* rule that turns not on whether the cause of action involves a breach of contract, but rather on whether the underlying subject matter involves a secret government contract, *see Tenet*, 544 U.S. at 8 ("No matter the clothing in which alleged spies dress their claims, *Totten* precludes judicial review in cases such as respondents' where success depends upon the existence of their secret espionage relationship with the Government."). *Tenet* characterized its dismissal ruling as applying "the longstanding rule, announced more than a century ago in *Totten*, prohibiting suits against the Government *based on covert espionage agreements*"—regardless of the nature of the claim that arose from those contracts. *Tenet*, 544 at 3 (emphasis added); *see also id.* at 9 (reaffirming *Totten*'s holding that "lawsuits premised on alleged espionage agreements are altogether forbidden"); *id.* at 10 (*Reynolds* does not supplant *Totten* "in the distinct class of cases that depend upon clandestine spy relationships"). *Tenet* therefore does not authorize dismissal beyond this limited universe of cases.

The Government also mischaracterizes *Reynolds* as supporting dismissal in non-government contracting cases because it states "dismissal can be required

under the doctrine 'on the pleadings without ever reaching the question of evidence' when 'it is so obvious that the action should never prevail over the privilege.'" Gov't Suppl. Br. 29 (quoting *Reynolds*, 345 U.S. at 11 n.26). That passage simply explains that dismissal may flow from the exclusion of evidence where the plaintiff cannot prevail without using privileged evidence, and that this may be obvious at the pleading stage. Nothing in it authorizes dismissal based on justiciability grounds even where Plaintiffs can "prevail" *without* privileged evidence. Indeed, other than *Totten*, not a single case *Reynolds* cited (nor any case in a treatise *Reynolds* cited), whether here or in England, authorized dismissal on justiciability grounds rather than mere exclusion of evidence. *See infra* Section I.B.

The Government emphasizes *Reynolds*' reliance on *Firth Sterling Steel Co. v. Bethlehem Steel Co.*, 199 F. 353 (E.D. Pa. 1912), but that case supports Plaintiffs' position. *Firth Sterling* involved a dispute between two manufacturers over patents for "armor-piercing projectiles" that "embodied military secrets." *Id.* at 353. The trial court simply excluded the secret evidence and allowed the case to proceed, which is entirely consistent with the *General Dynamics* framework providing evidentiary remedies for cases involving the evidentiary privilege.

Defendants also argue—seriously—that the Supreme Court's statement in *this* case that "the state secrets privilege … sometimes authorizes district courts to dismiss claims on the pleadings" constitutes a holding that affirms *Jeppesen*'s

7

rejection of "wholly separate doctrinal foundations" for state-secrets dismissals. Gov't Suppl. Br. 28-29 (quoting *FBI v. Fazaga*, 142 S. Ct. 1051, 1062 (2022)). That is obviously wrong, as the very next sentence explicitly declines to address the parties' dispute over whether state-secrets privilege allows dismissal outside of "spy-contracting case[s]." *Id*. at 1062.

Other Supreme Court cases Defendants cite are even further afield. The Government suggests *Weinberger* stands for the "general applicability of state-secrets dismissal," Gov't Suppl. Br. 24, but *Weinberger* did not even apply the state-secrets privilege. *See* Pls. Suppl. Br. 14 n.2 (discussing *Weinberger*). It merely noted that it had confronted a "similar situation" in *Totten*, but did no more than draw an analogy to that case.

Defendants also cite *United States v. Nixon*, 418 U.S. 683 (1974), for the premise that the state-secrets privilege has a "constitutional basis," but ignore that *Nixon* actually authorized the district court to review the potentially secret presidential information at issue in camera. *Id*. at 715 n.21 (citing *Reynolds*). It therefore radically undermines the Government's claim for dismissal here. Even then, *Nixon* recognized only that secret national security information contained in the President's own communications might be privileged against subpoena by a grand jury, not that this fact would somehow result in dismissal. *Id.* at 705-06.

Finally, the Government cites *Department of the Navy v. Egan*, 484 U.S. 518

(1988), for its mention of deference to the executive in national security matters. Gov't Suppl. Br. 5. But *Egan* involved only the "narrow question" of which administrative agency within the Executive branch handles appeals from security clearance denials, not state secrets, let alone dismissal.[1]

## B. *General Dynamics'* Limitations of the Dismissal Remedy to Espionage Agreements Is Consistent with U.S. and English Law Going Back Two Centuries

The Supreme Court's view of the stark differences between the dismissal remedy in *Totten* and the rule of evidence applied in *Reynolds* comports with two centuries of state-secrets jurisprudence in both American and English law. In her amicus brief filed before the Supreme Court, Prof. Laura Donohue details the history of state-secrets decisions going back to early nineteenth-century English cases, demonstrating that "English decisions [establishing the privilege] show that the common law treated state secrets purely as a matter of exclusion of evidence

---

[1] *Brazil v. U.S. Department of the Navy*, 66 F.3d 193 (9th Cir. 1995), an employment discrimination case not involving the state-secrets privilege, is also inapposite. Gov't Suppl. Br. 16. *Brazil* held that deference to security clearance decisions under *Egan* precluded analysis of a Title VII racial discrimination claim alleging discriminatory revocation of a security clearance. *Brazil*, 66 F.3d at 197 ("It is impossible for the court to establish in the first place whether the Navy's proffered reasons were legitimate without evaluating their merits"). Unlike in *Brazil*, where "the merit of such decisions simply cannot be wholly divorced from a determination of whether they are legitimate or pretextual," *id.*, the merits of employing an explicit religious classification to target Plaintiffs here *can* be divorced from whatever legitimate justifications the Government may have had to target certain other individuals. *See infra* Section III.

rather than any bar to presenting a defense or continuing a suit." Brief of Professor Laura K. Donahue As Amicus Curiae In Support of Neither Party at 4, *FBI v. Fazaga*, 142 S. Ct. 1051 (2022) No. 20-828 ("Donohue Amicus"). Prof. Donohue traces that history forward, finding that, with the "sole exception" of *Totten*, English and American cases up to *Reynolds* treated state secrets as an evidentiary rule requiring exclusion of privileged material, not a jurisdictional bar. *Id.* at 10; 4-12. Prof. Donohue also described how in subsequent cases, the relatively rare dismissals on state-secrets grounds generally resulted either from the exclusion of evidence necessary for plaintiffs' prima facie case, *id.* at 21-25, or after review of the secret evidence concluded that Defendants had a valid defense, *id.* at 25-27.

The Government's brief does not address this history other than to string cite 24 cases that themselves confirm the distinction Plaintiffs advocate.[2]

---

[2] Several of these cases apply the privilege to exclude secret evidence from the case, then dismiss only because plaintiffs cannot establish a prima facie case without it. *See Halkin v. Helms*, 598 F.2d 1, 6–7 (D.C. Cir. 1978); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547-48 (2d Cir. 1991); *Bowles v. United States*, 950 F.2d 154, 156 (4th Cir. 1991) (per curiam); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1140 (5th Cir. 1992); *Black v. United States*, 62 F.3d 1115, 1119 (8th Cir. 1995); *ACLU v. NSA*, 493 F.3d 644, 655 (6th Cir. 2007) (Batchelder, J.); *id*. at 692 (Gibbons, J., concurring); *In re Sealed Case*, 494 F.3d 139, 145-54 (D.C. Cir. 2007) (dismissing as to one defendant but letting case proceed against others). Some out-of-circuit cases use broad language, but still boil down to plaintiffs' inability to prove a prima facie case without privileged secrets. *See Salisbury v. United States*, 690 F.2d 966, 977 (D.C. Cir. 1982); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1244 (4th Cir. 1985); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir. 1980) (en banc) (per curiam) ("any

(cont'd)

### C.   Plaintiffs Did Not Waive the Argument that Dismissal is Unavailable Here, and this Court Should Address It.

The Government argues Plaintiffs waived this argument, but they are wrong.

Plaintiffs raised the argument that *General Dynamics* forecloses dismissal of their

claims under *Reynolds* in their opening merits brief before this Court. They

---

attempt on the part of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets" as to require dismissal); *see also In re United States*, 872 F.2d 472, 476 (D.C. Cir. 1989) (reading *Farnsworth* as "affirming dismissal of complaint because plaintiff could not make out prima facie case of tortious interference with contract without resort to privileged information").

Others fall within the narrow category of espionage agreements or other secret government contracts where *Totten* authorizes dismissal. *See Guong v. United States*, 860 F.2d 1063, 1066-67 (Fed. Cir. 1988) (violation of espionage agreement); *Sterling v. Tenet*, 416 F.3d 338, 347–48 (4th Cir. 2005) (CIA operative's claim of racial discrimination in employment); *Abilt v. CIA*, 848 F.3d 305, 313-14 (4th Cir. 2017) (CIA operative's claim of disability discrimination in employment); *see also Farnsworth Cannon*, 635 F.2d at 281 (wrongful interference with military contract).

In others, courts dismissed claims only after reviewing the secret evidence and determining that it provided defendants a valid defense, essentially ruling for defendants on the merits. *Molerio v. FBI*, 749 F.2d 815, 825 (D.C. Cir. 1984); *In re Under Seal*, 945 F.2d 1285, 1288-90 (4th Cir. 1991); *Tenenbaum v. Simonini*, 372 F.3d 776, 777 (6th Cir. 2004); *In re Sealed Case*, 494 F.3d 139, 145-54 (D.C. Cir. 2007).

Finally, several cases did *not* dismiss the case, but excluded the secret evidence and allowed the case to proceed, as Plaintiffs advocate. *Ellsberg v. Mitchell*, 709 F.2d 51, 68 (D.C. Cir. 1983); *In re United States*, 872 F.2d at 476-77; *DTM Research, LLC v. AT&T Corp.*, 245 F.3d 327, 334 (4th Cir. 2001).

The only cases that actually support Defendants' view are those in this Court, decided prior to *General Dynamics*, that Plaintiffs already addressed in their Supplemental Brief, see Pls. Suppl. Br. 11-15, and a short line of Fourth Circuit cases resting on a similar error (and on which *Jeppesen* relied heavily), *see, e.g.*, *El-Masri v. United States*, 479 F.3d 296, 306–08 (4th Cir. 2007).

explained that *General Dynamics* clarified that the state-secrets privilege did not apply to the constitutional claims in this case, and therefore foreclosed application of *Jeppesen* to support dismissal here. Opening Br., Dkt. 32-2, 82-84. They argued specifically that it was wrong to conflate *Totten* and *Reynolds* because "permit[ting] dismissal of suits brought by individuals who did not have contractual dealings even where they suffer from ongoing constitutional violations would run contrary to the most basic features of our constitutional system" *Id*. at 86; Reply Br., Dkt. 85-2, 34-36 (same). And Plaintiffs concluded that dismissal of their claims of ongoing constitutional harm would itself raise constitutional problems that could be avoided by holding that FISA preempts application of the privilege. Reply Br. 31; *see also* Pls. Suppl. Br. 22-23. These passages "specifically and distinctly argue[]," *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (internal citation omitted), that the *Reynolds* privilege did not permit dismissal of Plaintiffs' constitutional claims because Plaintiffs had no "contractual dealings" with the government, and they discuss the relevant precedent. This Court's cases require nothing further to preserve the issue.

Any suggestion that these arguments differed too much from the one Plaintiffs advance here to provide adequate notice is foreclosed by the explanation provided in their reply, which cited Electronic Frontier Foundation's amicus brief as "persuasively argu[ing] that the *Totten* bar applies only in government

contracting cases in light of the Supreme Court's explanation of the doctrine in
*General Dynamics*." Reply Br. 35 n.10 (citing EFF Amicus Br. 20). Plaintiffs
specifically referenced that portion of the EFF brief urging this Court to reconsider
*Jeppesen* because it is "clearly irreconcilable" with *General Dynamics*. *See* EFF
Amicus Br. 19-21 & n.4. While Plaintiffs made clear that this Court need not reach
the question, they again unambiguously included it within their broader argument
that the dismissal remedy was not available under *General Dynamics*. *See* Reply
Br. 35 n.10 (arguing that "[p]rior to *General Dynamics*, this Court had rejected
[Plaintiffs'] argument in *Jeppesen*," but the Court "need not revisit the question
here given that the Government has stated unequivocally that the *Totten* bar does
not apply to this case.").

Even if this Court concludes that Plaintiffs previously failed to raise this
pure legal argument, it should nonetheless consider it. Courts may address an issue
not presented in an opening brief where doing so "[would] not prejudice the
defense of the opposing party." *Koerner*, 328 F.3d at 1048–49. Plaintiffs have
argued that *General Dynamics* does not allow dismissal based on secrets outside
the government contracting context for years—in their original briefs in this Court,
as their lead argument at the Supreme Court, and now here. Defendants have had
more than adequate opportunity to respond.

13

## II. EVEN IF IT STILL GOVERNS, *JEPPESEN* DOES NOT AUTHORIZE DISMISSAL HERE BECAUSE DEFENDANTS HAVE NOT ESTABLISHED A "VALID DEFENSE."

Should this Court decline to address the continued viability of dismissal under *Jeppesen*, it must nevertheless reverse the district court's dismissal order by applying the rule established in its prior decision in this case explaining how to apply the "valid defense" ground for dismissal. *Fazaga*, 965 F.3d at 1067.

This Court previously held the district court should apply the D.C. Circuit's definition of what constitutes a "valid defense" when assessing whether to dismiss a case on the grounds that excluding privileged information could deprive the Government of a "valid defense." Pls. Suppl. Br. 19-20 (citing *Fazaga*, 965 F.3d at 1067). Now, more than two years later, the Government argues for the first time that this otherwise controlling rule should be set aside because it is "clearly erroneous," was dicta, and was impliedly reversed by the Supreme Court. These contentions are meritless.

*First*, the Government says this Court's holding on the definition of "valid defense" was "clearly erroneous," apparently because it would require the district court to review the Government's factual submission. Gov't Suppl. Br. 34. But the Government waived its right to challenge this holding by not seeking rehearing or certiorari. It remains the law of this case and of the circuit. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("a court is generally precluded from

reconsidering an issue that has already been decided by the same court, or a higher court in the identical case").

*Second*, this Court's "valid defense" ruling is not dicta. *Contra* Gov't Suppl. Br. 34. This Court's statements concerning the meaning of "valid defense" under *Jeppesen* were necessary to the Court's remand instructions to the district court, as they dictate how it should consider any re-assertion of privilege. "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result" that are binding. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 67 (1996). A "direction to the district court on how to proceed continues to be binding precedent." *Operating Eng'rs Pension Trust v. Charles Minor Equip. Rental, Inc.*, 766 F.2d 1301, 1304 (9th Cir.) (explaining it was not dicta for this Court to direct the district court on how to resolve an issue on remand which might not arise), *modified*, 778 F.2d 538 (9th Cir.1985). Otherwise, a district court could simply disregard remand instructions from this Court.

*Third*, the Government conflates reversal with vacatur in arguing that the Supreme Court's reversal of this Court's unrelated FISA ruling vacated all other portions of its prior opinion. Gov't Suppl. Br. 34-35. Although law of the case does not apply where a prior ruling is *vacated*, *Johnson v. Bd. Of Educ. Of City of Chicago*, 457 U.S. 52, 53–54, (1982), a decision merely *reversing* a portion of a lower court's opinion leaves the unreversed portions intact. *Ortega v. O'Connor*,

50 F.3d 778, 780 (9th Cir. 1995) (treating unreversed portion of prior opinion as binding, because "a judgment of reversal by an appellate court is an adjudication only of matters expressly discussed and decided") (citation omitted); *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 n.57 (5th Cir. 2001) (circuit opinions in which the judgment was reversed on some but not all grounds are still precedent for the unreversed portions); *Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1291 (11th Cir. 2003) (same). Here, all but this Court's FISA holding remain controlling in this case and precedent for this Circuit.

*Finally*, even if this Court had authority to revisit its prior holding, there would be no basis for adopting Defendants' proposal permitting dismissal without any inquiry into the facts. The D.C. Circuit has applied the rule to examine secret facts. *E.g.*, *Molerio v. FBI*, 749 F.2d 815, 822, 825-26 (D.C. Cir. 1984) (Scalia, J.). And the Supreme Court has long endorsed the widespread practice of courts examining privileged material, including even highly sensitive information in national security cases. *E.g.*, *Nixon*, 418 U.S. at 15 n.21. The alternative—where the Government could win dismissal based on patently false claims that would not in fact establish any valid defense—would replace our approach of "decid[ing] cases on the basis of evidence 'in favor of a system of conjecture.'" *Fazaga*, 965 F.3d at 1067 (quoting *In Re Sealed Case*, 494 F.3d 139, 149 (D.C. Cir. 2007)).

The Individual Defendants also make distinct argument on this issue, asking

this Court to rewrite its holding to adopt an alternative standard, under which a valid defense is one "meritorious enough to preclude summary judgment for the plaintiff." Ind. Defs'. Suppl. Br. 18. This Court has no authority to adopt this new standard well below what it (and the D.C. Circuit) previously required. A valid defense must be meritorious enough to "prevent[] recovery," not merely prevent summary judgment. *Fazaga*, 965 F.3d at 1067.

## III. DISMISSAL ON THE PLEADINGS IS PREMATURE.

Even if this Court does not agree that *General Dynamics* abrogated *Jeppesen*, and even if it rejects its prior holding on valid defense, the district court's dismissal of Plaintiffs' religious discrimination claims still must be reversed because it was prematurely issued. The Government asserted the state-secrets privilege to win dismissal on the pleadings before Plaintiffs moved for summary judgment with non-privileged evidence, and without the district court having determined whether privileged information would be relevant to the Government's as-yet-undefined legal defenses. Pls. Suppl. Br. 24-28.

The Government states "with confidence" that it requires the full breadth of its secret evidence to defend against Plaintiffs' claims, Gov't Suppl. Br. 16, but that self-serving confidence is misplaced, and in any event insufficient to justify dismissal on the pleadings. The *district court* must decide "with certainty" that the secret information will be necessary to the Government's defenses. *Jeppesen*, 614

F.3d at 1081. Although courts are not required to "chance further disclosure" by allowing a case to proceed before an evidentiary dispute arises, *id.*, the Government offers no plausible explanation for how allowing Plaintiffs to fully set forth their legal theory of the case, with citations to publicly-available evidence, would jeopardize national security by somehow risking disclosure of information that Plaintiffs do not possess.

Contrary to the Government's claim, Gov't Suppl. Br. 12, Plaintiffs *do* dispute the "predictive judgment" that disclosure of secret information purportedly required to litigate this case would harm national security. As Plaintiffs have argued repeatedly, the Government's "predictive judgment" is necessarily flawed because it cannot predict what evidence it may need to defend itself against a legal theory Plaintiffs have not yet fully presented. *See* Opening Br., Dkt. 32-2, 42-47; Pls. Suppl. Br. 23-28. And in any event, neither side can assess the strength of the state-secrets assertion at this preliminary stage, as Plaintiffs are not privy to the underlying records over which the Government may claim privilege, and Defendants do not know what information (if any) they will rely upon to respond to Plaintiffs' as-yet-unfiled summary judgment motion. As a result, the district court erred in assuming secret information might be needed, as no one yet knows what issues will need to be decided in the first instance. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (principle of party presentation "is designed

around the premise that [parties represented by competent counsel] *know* what is best for them") (emphasis added) (cited by Gov't Suppl. Br. 12).

The Government resists this, arguing that Plaintiffs' religious discrimination theory will inevitably require the Government to proffer in defense (and Plaintiffs to disprove) a legitimate—and secret—reason the FBI targeted a limited number of individuals as part of Operation Flex. Gov't Suppl. Br. 14-17. But this rests on a flawed legal premise: that the FBI can broadly surveil a large class of people based on their religion, so long as that class contains within it a small group of individuals that the FBI targets for valid investigative reasons.

That view is wrong as a matter of substantive law. Plaintiffs can show, based on nonprivileged evidence—the testimony of the Government's own informant, FBI agents' direct communications with him, witnesses' observations, and the FBI's own policies—that the Government's operation surveilled individuals based on their religion and religious practices, regardless of who the actual "targets" were. That is all Plaintiffs must show to prevail: the Government's use of religion as a factor in surveilling members of the putative class violates the Constitution even if there were some legitimate non-discriminatory reasons that justified surveilling some individuals. *See* Pls. Suppl. Br. 24-25.

Thus, Defendants err in suggesting the trier of fact will have to determine "whether individuals who are Muslim were targeted in this investigation

19

[…]'without other basis to believe them involved in criminal or terrorist activity,'" Gov't Suppl. Br. 18, or that this case requires they prove that "they had nondiscriminatory reasons for investigating specific individuals," Ind. Defs'. Suppl. Br. 10. To satisfy strict scrutiny, the Government bears the burden of offering a compelling reason for *the religious classification* of Plaintiffs—not for any other basis for surveilling some segment of the community to which Plaintiffs belonged. *See* Pls. Suppl. Br. 26-27. The Government offers no reason why it must reveal privileged information either to deny that it engaged in any religious classification—which it *still has never done*, despite testimony from its own informant and its own policy documents permitting such classification—or to justify its policy that treated being Muslim *in general* as inherently suspicious. Throughout this litigation, the Government has been careful *not* to defend its facial classification of Muslims at all.

*Finally*, the Government's reliance on a procedurally insufficient declaration from the Attorney General confirms the prematurity of the district court's dismissal. As Plaintiffs explained, *Reynolds* relied on *Duncan v. Cammell, Laird & Co.,* [1942] A.C. 624, 638, in setting forth the procedural requirements for invocation of the privilege. Pls. Suppl. Br. 28. Under *Duncan*, the head of the department must personally review "the *contents* of the documents" over which a privilege is asserted, not merely the "categories" of information presented to that

most senior official by a subordinate officer. Gov't Suppl. Br. 12-13. Although the Government cites both *United States v. Zubaydah*, 142 S. Ct. 959 (2022) and *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) to elide the critical distinction between *contents* and *categories*, neither addressed the issue. Indeed, the agency head in *Zubaydah* did far more to assert the privilege than the Attorney General did here when he attested that he "personally reviewed a representative sample" of the secret records *themselves* (not merely categories of information), in addition to reviewing a comprehensive appendix and taking other steps to support the privilege assertion. Pet'rs. App. at 144a, *Zubaydah*, 142 S. Ct. 959 (2022) (No. 20-827). Here, the Attorney General's declaration states only that he reviewed a subordinate's classified declaration and "the matter," not *any* of the underlying documents themselves. 2 E.R. 284-85 (Holder Decl. ¶ 3); *see* Pls. Suppl. Br. 28-29.[3]

Of course, given the prematurity of the privilege assertion, the Attorney General could not have reviewed actual documents, because no one knows which

---

[3] This Court should give no credit to the Government's new statements that the FBI has conducted a renewed review of its original privilege assertion, for two reasons. First, there is no declaration or other evidence explaining what this review entailed or who did it. Given that the Attorney General apparently failed to look at any underlying evidence when first asserting the privilege, it is hard to believe anyone conducted a more detailed review now. Second, assertion of the privilege requires a formal claim and all associated procedures. *Reynolds*, 345 U.S. at 7-8. The claim that the Government has informally blessed its own flawed original assertion is therefore worthless.

secret documents (if any) the Government may choose to rely on in its defense.

And that is precisely the point. The district court acted prematurely; it cannot

dismiss on the pleadings until such time as the Government asserts privilege over

particular documents and shows that it actually needs them to respond to a motion

Plaintiffs have filed.

## IV.  JUST AS BEFORE, THIS COURT SHOULD REMAND TO THE DISTRICT COURT TO CONSIDER THE *BIVENS* ISSUES IN THE FIRST INSTANCE.

The Individual Defendants spend the bulk of their brief addressing new

developments in *Bivens* case law and asking this Court to rule on their relevance to

this case in the first instance. Ind. Defs' Suppl. Br. 19-25. But the district court

never considered these various legal developments in addressing the availability of

*Bivens* remedies. And Individual Defendants never explain why this Court should

depart from its normal rule of letting the district court assess those issues first.

While this Court's prior opinion analyzed how "the Privacy Act and RFRA, taken

together, function as an alternative remedial scheme for protecting some, but not

all, of the interests Plaintiffs seek to vindicate via their First and Fifth Amendment

Bivens claims," *Fazaga*, 965 F.3d at 1059, it remanded to the district court to

resolve whether *Bivens* remedies were available under the then-newly issued

*Abbasi* decision, *id.* at 1055-56. Since neither the petition for certiorari nor any of

the proceedings in the Supreme Court challenged this Court's disposition of the

*Bivens* question, this Court should remand to the district court as it did before.

*Clark v. Chappell*, 936 F.3d 944, 971(9th Cir. 2019) ("[w]hen faced with a determination of applying a new legal principle, a standard practice ... is to remand to the district court for a decision in the first instance.").

## CONCLUSION

For these reasons, this Court should reverse the district court's judgment below.

Respectfully submitted,

Dated: November 11, 2022          s/ Ahilan Arulanantham

AHILAN ARULANANTHAM

Counsel for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's Order regarding supplemental briefing, ECF 175, I certify that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 5,553 words.

Dated: November 11, 2022                     s/ Ahilan Arulanantham

                                             AHILAN ARULANANTHAM

                                             Counsel for Plaintiffs-Appellants