**Mejia v. Miller, 61 F.4th 663 (2023)**
2023 Daily Journal D.A.R. 1692

61 F.4th 663

United States Court of Appeals, Ninth Circuit.

Denise MEJIA, an individual, Plaintiff-Appellee,

v.

Wesley MILLER, Bureau of Land Management Officer, in his individual and official capacity, Defendant-Appellant,

and

United States of America, Defendant.

No. 21-56282

Argued and Submitted October 3, 2022 Pasadena, California

Filed November 14, 2022

Amended March 2, 2023

**Synopsis**

**Background:** Utility terrain vehicle (UTV) passenger brought action against United States under Federal Tort Claims Act (FTCA) and against Bureau of Land Management (BLM) officer under Bivens alleging that officer used excessive force while attempting to arrest her. The United States District Court for the Central District of California, Stanley Blumenfeld, Jr., J., denied officer's motion for summary judgment on qualified immunity grounds, 2021 WL 5707273, and denied officer's motion for relief from judgment, 2021 WL 5707272. Officer filed interlocutory appeal.

The Court of Appeals, Freudenthal, District Judge, sitting by designation, held that Bivens did not provide implied cause of action permitting passenger to seek damages from BLM officer.

Vacated and remanded.

Opinion, 53 F.4th 501, amended and superseded.

Mejia v. Miller, 61 F.4th 663 (2023)
2023 Daily Journal D.A.R. 1692

**Procedural Posture(s):** Petition for Rehearing; Petition for Rehearing En Banc; Interlocutory Appeal; Motion for Summary Judgment.

**\*664** Appeal from the United States District Court for the Central District of California, Stanley Blumenfeld, Jr., District Judge, Presiding, D.C. No. 5:20-cv-01166-SB-SP

**Attorneys and Law Firms**

Dennis E. Wagner (argued), Wagner Zemming Christensen LLP, Riverside, California, for Defendant-Appellant.

Barry M. Walker (argued), Walker Trial Lawyers LLP, Canyon Lake, California; Athul K. Acharya, Public Accountability, Portland Oregon; for Plaintiff-Appellee.

Scott F. Regan, Anya Bidwell, and Patrick M. Jaicomo, Institute for Justice, Arlington, Virginia, for Amicus Curiae Institute of Justice.

Todd Gregorian and Garner Kropp, Fenwick & West LLP, San Francisco, California, for Amicus Curiae Council on American-Islamic Relations.

Brett Max Kaufman and Elizabeth Gyori, American Civil Liberties Union Foundation, New York, New York; Cecillia D. Wang, American Civil Liberties Union Foundation, San Francisco, California; for Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Northern California, American Civil Liberties Union of Southern California, and American Civil Liberties Union of Washington.

Per A. Ramfjord, Jeremy D. Sacks, Rachel C. Lee, Crystal S. Chase, and Christopher Rifer, Stoel Rives LLP, Portland, Oregon; Kelly K. Simon and Rachel Dallal Gale, ACLU of Oregon, Portland Oregon; for Amici Curiae Pettibone Plaintiffs.

Before: A. Wallace Tashima and Kenneth K. Lee, Circuit Judges, and Nancy D. Freudenthal,[*] District Judge.

[*] The Honorable Nancy D. Freudenthal, United States District Judge for the District of Wyoming, sitting by designation.

Order;

Opinion by Judge Freudenthal

## ORDER

The opinion filed on November 14, 2022 (Dkt. No. 33) is amended, and the amended opinion is

filed concurrently with this order. Judges Tashima, Lee, and Freudenthal have voted to deny the Petition for Rehearing. Judge Lee has voted to deny, and Judges Tashima and Freudenthal recommended denying, the Petition for Rehearing **\*665** En Banc. The full court has been advised of the Petition for Rehearing En Banc, and no judge of the court has requested a vote. Appellee Denise Mejia's Petition for Rehearing or Rehearing En Banc (Dkt. No. 39), filed January 30, 2023, is DENIED. The parties may not file another petition for rehearing or petition for rehearing en banc.

## AMENDED OPINION

FREUDENTHAL, District Judge:

Defendant-Appellant Wesley Miller, a now-retired officer of the Bureau of Land Management ("BLM"), brings an interlocutory appeal from the denial of qualified immunity on summary judgment.

## I. JURISDICTION

In light of *Egbert v. Boule*, 596 U.S. ——, 142 S. Ct. 1793, 213 L. Ed. 2d 54 (2022), we first address whether a cause of action exists under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We have jurisdiction to do so on this interlocutory appeal because the existence of the cause of action is an antecedent legal question defining the claim (*Hernández v. Mesa*, 589 U.S. ——, 137 S. Ct. 2003, 2006, 198 L. Ed. 2d 625 (2017), ("*Hernández I*")), and it is directly implicated by the defense of qualified immunity. *Rodriguez v. Swartz*, 899 F.3d 719, 735 (9th Cir. 2018), *vacated on other grounds*, —— U.S. ——, 140 S. Ct. 1258, 206 L.Ed.2d 250 (2020); *Hartman v. Moore*, 547 U.S. 250, 257 n.5, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (appellate jurisdiction on interlocutory appeal to consider the definition of an element of the claim). As the Court concludes below, there is no *Bivens* cause of action for Plaintiff-Appellee Denise Mejia's claim. Therefore, we do not reach the question of qualified immunity.

## II. BACKGROUND

Mejia alleges that Miller used excessive force while attempting an arrest on June 10, 2018 in Berdoo Canyon, part of public lands managed by BLM near Joshua Tree National Park. At the time, Miller was a senior law enforcement officer for BLM. Mr. and Mrs. Mejia had spent the day driving their utility terrain vehicle ("UTV"). Shortly before sunset, the Mejias failed to yield to a park ranger. The ranger was attempting to stop them for a traffic violation and to alert the Mejias that one of their rear tires was very low. The UTV temporarily stopped but then went off-road.

The National Park Service requested that Miller assist them. The dispatcher indicated the suspected violation was at a felony level due to reported speeds endangering the park ranger and the public, and an apparent attempt to ram the ranger. Miller and the park ranger searched until late at night when they saw a flashlight above them on high ground and heard an engine start. Miller and the park ranger positioned their vehicles to block the UTV as it came down. They turned on their vehicle lights when they saw the UTV approach. Miller yelled, "police, put your hands up."

Most of what happened next is disputed. But the parties do not dispute that the UTV passed Miller within arm's reach, and as it did so, he fired multiple shots. Mejia was shot in the right hand and a bullet grazed her head.

In the case below, Mejia asserts several claims against the United States under the Federal Tort Claims Act ("FTCA"). The district court denied the United States' summary judgment motion, and those claims await trial. Mejia also brought *Bivens* claims against Miller, asserting unreasonable **\*666** seizure and excessive force in violation of the Fourth Amendment.[1] Miller did not raise the issue of whether a *Bivens* cause of action existed and sought summary judgment on qualified immunity. The district court granted his motion on the unreasonable seizure claim but denied it as to excessive force. Miller timely sought relief under Rules 59(e) and 60(b)(6), which was denied. He timely appeals from these decisions.

[1] Mejia also sued the park ranger but voluntarily dismissed those claims.

### III. THE *BIVENS* QUESTION

In 1971, the Supreme Court in *Bivens* adopted an "implied cause of action theory" permitting the petitioner to seek damages from federal officers for unreasonable search and seizure in his home. The petitioner also asserted "unreasonable force" during his arrest, but the Court noted he "primarily" asserted the officers violated his rights of privacy. *Bivens*, 403 U.S. at 389–90, 91 S.Ct. 1999. The opinion focuses entirely on the unreasonable search-and-seizure context. The Court held:

> the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But it is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.

*Id.* at 396, 91 S.Ct. 1999 (marks omitted).

Since then, the Supreme Court has recognized a *Bivens* action in two other contexts: a claim

asserting a Congressman discriminated on the basis of gender in employment, in violation of Fifth Amendment due process (*Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)), and an Eighth Amendment claim for cruel and unusual punishment against federal jailers for failing to treat a prisoner's severe asthma. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). "These three cases— *Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 137 S. Ct. 1843, 1855, 198 L. Ed. 2d 290 (2017).

Since *Carlson*, there has been a "notable change in the Court's approach to recognizing implied causes of action." *Id.* at 1857. The Court has grown increasingly reluctant to recognize any new *Bivens* claims. Indeed, "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 1856. However, the Court also held

> it must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose.

*Abbasi*, 137 S. Ct. at 1857. In sum, *Bivens* is "settled law" in the search-and-seizure context and relied upon "as a fixed principle in the law," but "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.*

Under a longstanding framework, courts were first to determine whether the *Bivens* claim arose in a "new context," such as a "new category of defendants." A "new context" is one that is "different in a meaningful way from previous *Bivens* cases decided by this Court." The Court gave non-exclusive examples:

> the rank of the officers involved; the constitutional right at issue; the generality **\*667** or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60.

If the context was new, *Abbasi* required courts to analyze whether there were other "special factors counselling hesitation." *Id.* at 1857–58. Without defining an exhaustive list,

Mejia v. Miller, 61 F.4th 663 (2023)
2023 Daily Journal D.A.R. 1692

*Abbasi* held "[t]he necessary inference ... is that the inquiry must concentrate on *whether the Judiciary is well suited*, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* (emphasis added). "[S]eparation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts? * * * The answer most often will be Congress." *Id.* at 1857. In that case, alien detainees' claims regarding a post-9/11 policy presented a new context due to the national security concerns and executive level of the policy. For largely the same reasons, the creation of such a cause of action was for Congress, not the Judiciary.

Three years later, the Court issued *Hernández v. Mesa*, 589 U.S. ——, 140 S. Ct. 735, 206 L. Ed. 2d 29 (2020) ("*Hernández II*"). *Hernández II* articulated the same analytical framework as *Abbasi*, including whether the Judiciary is well suited to creating the new cause of action. *Hernández II* also observed that the Court's "understanding of a 'new context' is broad." *Id.* at 743. The cross-border shooting in that case was a new context, and several factors counselled hesitation—including the case's potential effect on international relations. Again, the cause of action was for Congress to create, not the courts.

Neither the district court nor the parties' briefing to this Court addressed whether a *Bivens* cause of action existed. Then shortly after the briefing in this case, the Court issued *Egbert*. *Egbert* reiterates the longstanding first step of the *Bivens* question, but clarified that the second step is now whether:

> special factors indicate that the Judiciary is *at least arguably less equipped than Congress* to weigh the costs and benefits of allowing a damages action to proceed.

*Egbert*, 142 S. Ct. at 1797–98 (emphasis added, marks omitted).

The question is no longer whether the Judiciary is well suited, but whether Congress is better suited. After *Egbert*, the two-step analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803. "[A]ny rational reason ... to think that *Congress* is better suited to weigh the costs and benefits" is enough to preclude extending *Bivens*. *Id.* at 1805 (marks omitted). "If there are alternative remedial structures... that alone ... is reason enough to ... [not] infer a new *Bivens* cause of action." *Id.* at 1804 (marks omitted). Similarly, uncertainty about the potential " 'systemwide' consequences" of implying a new *Bivens* cause of action is by itself "a special factor that forecloses relief." *Id.* at 1803-04 (quoting *Abbasi*, 137 S. Ct. at 1858).

In *Egbert*, a border patrol agent allegedly used excessive force against a Washington resident (Boule) in the driveway of his home. His property backed to the Canadian border and was notorious for illegal *668 crossings and smuggling. This Court held in relevant part that the Fourth Amendment claim was a " 'modest extension' in a new context" because the officer was a border patrol agent, not an F.B.I. agent. *Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021). But because it was a "conventional Fourth Amendment excessive force claim arising out of actions by a[n] ... agent on Boule's own property," this Court held that no special factors weighed against the extension. *Id.*

The Supreme Court reversed and held that "similar allegations of excessive force," "almost parallel circumstances," or a "similar 'mechanism of injury' " as *Bivens* "are not enough to support the judicial creation of a cause of action." *Egbert*, 142 S. Ct. at 1805. The Court held that Boule had no *Bivens* action for two independent reasons: courts are not better suited than Congress to weigh creating a cause of action that involves national security concerns, and alternative remedies were available. *Id.* at 1806–07.

Given the Supreme Court's decision in *Egbert*, this Court requested supplemental briefs on its significance. Miller argues Mejia's claim presents a new context because he is a new category of defendant. He further argues that unlike *Bivens*' narcotics arrest in a home, this incident occurred on public lands. Miller was also exercising a different mandate than the narcotics officers; his mandate was "to find [Mejia] after a reported high-speed chase in Joshua Tree National Park, which was a violation of federal law on federal lands." Miller further notes that Mejia has existing alternative remedies, a special factor weighing against this Court creating a cause of action.

Mejia argues *Egbert* gives no guidance regarding what constitutes a new context, and there is no new context here. She argues there is no meaningful distinction between narcotics officers and BLM officers, relying on this point from the dissent in *Egbert. Egbert*, 142 S. Ct. at 1815 (Sotomayor, J., Breyer, J., and Kagan J., concurring in part and dissenting in part). But the majority opinion in *Egbert*, to the contrary, identifies the "legal mandate under which the officer was operating" as an example of a new context. *Id.* at 1814. Mejia does not point to any reason to believe that most federal agencies have the same or similar legal mandates, or more to the point, that BLM has the same mandate as agencies enforcing federal anti-narcotics law. The majority also emphasizes that the question is whether to create a cause of action against all of an agency's officers. *Id.* at 1806. This likewise focuses on the agency.

Mejia does not identify any Supreme Court cases recognizing a *Bivens* excessive force claim against a BLM officer, and this Court is aware of none. The only case in which the Court has considered any kind of *Bivens* claim against BLM officers is *Wilkie v. Robbins*, 551 U.S. 537, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007). The Court declined to find a *Bivens* due process

claim for a landowner alleging retaliation for exercising property rights. *Id.* at 561–62, 127 S.Ct. 2588.

More importantly, unlike 🚩*Bivens*, none of the events in question occurred in or near Mejia's home. The entire incident occurred on public lands managed by BLM and the National Park Service, a place where Mejia had no expectation of privacy. In 🚩*Bivens*, the unreasonable government intrusion occurred in his home. In short, Mejia's claim presents a new context. And given this new context, special factors counsel against implying a cause of action here. For example, a Fourth Amendment excessive force claims against BLM officers would have " 'systemwide' consequences" for BLM's mandate to maintain order on federal lands, and uncertainty about these consequences provides a reason **\*669** not to imply such a cause of action. 🚩*Egbert*, 142 S. Ct. at 1803-04.

Under *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend 🚩*Bivens* even modestly. The creation of a new cause of action is inherently legislative, not adjudicative. 🚩*Egbert*, 142 S. Ct. at 1802 ("At bottom, creating a cause of action is a legislative endeavor"). Although Mejia points to 🚩*Egbert's* discussion of national security as a special factor—a concern which is not present here—that was only one of the factors counselling hesitation in that case. The other factor was that Boule had alternative remedies. 🚩*Egbert*, 142 S. Ct. at 1806–07. The same is true here: Mejia has alternative administrative remedies. *See Report Misconduct*, U.S. Dep't of the Interior Bureau of Land Mgmt, https://www.blm.gov/programs/public-safety-and-fire/law-enforcement/report-misconduct, last accessed February 23, 2023; 43 C.F.R. § 20.103 (requiring BLM employees to "report directly or through appropriate channels to the Office of Inspector General or other appropriate authority matters coming to their attention which do or may involve violations of law or regulation by employees").

In short, under *Egbert* "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." 🚩142 S. Ct. at 1800. This case is not the rare exception. Accordingly, we vacate the district court's denial of summary judgment and remand with instructions to enter summary judgment dismissing the 🚩*Bivens* excessive force claim with prejudice.

**VACATED AND REMANDED.**

**All Citations**

61 F.4th 663, 2023 Daily Journal D.A.R. 1692

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**Mejia v. Miller, 61 F.4th 663 (2023)**
2023 Daily Journal D.A.R. 1692